# Walden Macht & Haran LLP



One Battery Park Plaza, 34th Floor
New York, NY 10004
212 335 2030

November 15, 2019

**VIA ECF and E-Mail**
Hon. Katherine Polk Failla
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

      Re:    *Leibowitz et al. v. iFinex Inc., et al.*, 19-CV-09236-KPF (pre-motion letter)

Dear Judge Failla:

      On behalf of Defendants Tether Holdings Limited, Tether Operations Limited, and Tether International Limited ("Tether"), as well as Defendants iFinex Inc., BFXNA Inc., BFXWW Inc., and DigFinex Inc. (together with Tether, the "Defendants"), we respectfully submit this pre-motion letter to request permission to file a motion to dismiss Plaintiffs' complaint in its entirety, and to request a pre-motion conference to set a briefing schedule. Plaintiffs do not consent to our motion.

      Tether issues a cryptocurrency called "tether" ("USDT"), which traders use to purchase other cryptocurrencies. USDT is a "stablecoin" pegged to the U.S. dollar and redeemable at Tether for U.S. dollars on a 1:1 basis. Defendants BFXNA Inc., BFXWW Inc., and iFinex Inc. operate Bitfinex, an exchange where customers can deposit, trade, and withdraw USDT and other cryptocurrencies. DigFinex Inc. ("DigFinex") is a part owner of Tether Holdings Limited and iFinex. Plaintiffs allege (1) Defendants falsely represented that USDT is fully "backed" by reserves, when no such reserves purportedly existed, (2) Defendants "manipulated" bitcoin prices in 2017 and 2018 by issuing $2.5 billion of "unbacked" USDT and purchasing bitcoin during market downturns, and (3) the bitcoin market thereafter crashed, resulting in bitcoin prices being lower than they would be otherwise (but higher than they were before the "bubble").[1] Significantly, Plaintiffs do *not* allege they personally purchased USDT or transacted on Bitfinex. Nonetheless, Plaintiffs assert claims under the various statutes described below.

      Although the Court must accept these allegations as true on a motion to dismiss, healthy skepticism of this case is warranted for three reasons. First, the Complaint conveniently omits published analyses concerning the causes of the spike in the bitcoin price in 2017, which have nothing to do with Defendants' actions. Second, Plaintiffs' "proof" of Defendants' alleged manipulation of bitcoin comes from a draft, unpublished academic paper (the "Griffin Report"), whose authors—as described below—have since walked back a key allegation underlying this lawsuit in a subsequent version of their paper. Third, the allegation of manipulation is simply preposterous: Plaintiffs allege that, in the "bubble period" of March to December 2017, Tether issued $1.2 billion USDT. During this same period, however, *total bitcoin trading exceeded $860 billion on more than 30 different exchanges*. Thus, the USDT issuances represent less than 1/6 of

---

[1] Defendants deny these claims and will show, at an appropriate time if necessary, that many of the most prejudicial and hyperbolic allegations in the complaint were intended for PR value more than substantive evidentiary purposes.

one percent of the bitcoin total trade volume during the bubble, making Plaintiffs' core theory impossible to sustain. The Court need not reach these issues given the manifest problems with the pleadings. The grounds for dismissal we intend to raise include the following:

**CEA Claims**. The elements of a market manipulation claim are: (1) Defendants had an ability to influence market prices; (2) an artificial price existed; (3) Defendants caused the artificial price; and (4) Defendants specifically intended to cause the artificial price. *Harry v. Total Gas & Power N. Am., Inc.*, 244 F. Supp. 3d 402, 412 (S.D.N.Y. 2017), *aff'd as modified*, 889 F.3d 104 (2d Cir. 2018). To establish "intent," Plaintiffs must allege facts that "give rise to a strong inference of fraudulent intent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). That inference "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). In addition, Plaintiffs must allege they suffered an *actual injury* as a result of their transactions. *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018).

Here, although the original Griffin Report essentially blamed Tether and Bitfinex for manipulating bitcoin prices, the *updated* "Griffin Report" (which is still unpublished, but was publicly released) concedes that its supposed findings are "consistent with one large player"—*i.e.*, a *customer*—"purchasing Tether with cash at Bitfinex and then exchanging it for Bitcoin." This concession negates any compelling inference of *Defendants*' fraudulent intent—or even manipulative *conduct*. Further, Plaintiffs have not alleged an actual injury, offering only the threadbare and conclusory allegation that "[t]he fallout continues to affect the cryptocurrency market, including by causing prices to be lower than they would have been but for the manipulation." (Compl. ¶ 10.) In addition, the behavior described—buying bitcoin on market downturns—is "a trading pattern supported by a legitimate economic rationale"—precluding liability as a matter of law. *Miller v. Pac. Inv. Mgmt. Co. LLC*, No. 12-cv-4122, 2013 WL 12305507, at *3 (S.D.N.Y. Apr. 23, 2013).[2]

**Antitrust Claim**. A Sherman Act § 2 violation requires: (1) possessing monopoly power, *i.e.* the power to control prices or exclude competition in the relevant market, and (2) acquiring that power willfully rather than through superior product, business acumen, or historic accident. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Here, Plaintiffs conflate two distinct markets, alleging that Tether (a) has a "stablecoin" monopoly, which (b) somehow enables Defendants to exclude competition *across the entire cryptocurrency market*. (Compl. ¶¶ 273-74.) Yet Plaintiffs nowhere allege (much less *plausibly offer proof*) that Defendants (a) can prevent *competitors* from issuing stablecoins, (b) acquired any such power *willfully* and unlawfully, or (c) can restrict *competition across the entire universe of non-USDT cryptocurrencies*. Plaintiffs also fail to allege *antitrust injury, i.e., losses flowing from anticompetitive conduct*. *Atlantic Richfield Co. v. USA Petroleum, Inc.*, 495 U.S. 328, 337 (1990).

**RICO Claim**. To state a RICO claim, a Plaintiff must allege, *inter alia*, that Defendants engaged in the conduct of an enterprise, through a pattern of racketeering activity, which was the

---

[2] In addition, a transaction in futures contracts is required for a private cause of action under the CEA. *See* 7 U.S.C. § 25(a)(1). Only one Plaintiff alleges he transacted in bitcoin futures, and he fails to allege Defendants manipulated the price of any identifiable contract.

proximate cause of injuries to Plaintiffs. *See Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990). Although we will address these elements in our motion, the RICO claim has two glaring defects. First, Plaintiffs do not allege injury to their person or property, *i.e.*, an actual, out-of-pocket financial loss. *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015). Second, Plaintiffs do not allege "but for" and proximate causation. *See Anza v. Ideal Steel Supply Corp*, 547 U.S. 451, 457 (2006).

**Common Law Fraud Claim**: The elements of common-law fraud are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Newman v. Family Mgmt. Corp.*, 530 F. App'x 21, 24 (2d Cir. 2013). Here, Plaintiffs fail to allege facts establishing a compelling inference of fraudulent intent. Further, even assuming Defendants made any material misrepresentation (which Defendants deny), Plaintiffs do not allege actual reliance upon any such misrepresentations even in conclusory fashion, which is fatal to their claim. *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177-78 (2d Cir. 2016). Plaintiffs similarly fail to allege: (a) that Defendants' conduct *caused Plaintiffs* to enter any transactions; (b) that any revelation *by or about* Defendants *caused Plaintiffs* to suffer a loss; or even (c) *a specific identifiable loss* that Plaintiffs suffered because of Defendants' actions. Plaintiffs thus fail to either allege transaction causation and loss causation, *see Laub v. Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002), or damages, *i.e.*, an out-of-pocket loss. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421-22 (1996).

**GBL § 349 Claims**. The elements of a GBL § 349 claim are: (1) "the challenged act or practice was consumer-oriented"; (2) "it was misleading in a material way"; and (3) "the plaintiff suffered injury as a result of the deceptive act." *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 58 (S.D.N.Y. 2015). Courts have "routinely rejected attempts to apply GBL § 349 to securities transactions and other financial transactions," which do not involve consumer products. *JPMorgan Chase Bank, N.A. v Controladora Comercial Mexicana S.A.B. De C.V.*, No. 603215/18, 2010 WL 4868142, at *12 (N.Y. Sup. Ct. Mar. 16, 2010). Such rulings, and their underlying rationale, apply equally here. Further, Plaintiffs fail to allege that: (a) *Plaintiffs* received a deceptive statement made by Defendants, (b) actual injury, or (c) that they "suffered actual injury *caused by a materially misleading act*, not that a misleading act *led to further steps which eventually harmed them*." *Frintzila v. DirectTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018) (emphasis added).

**Dismissal of DigFinex**. DigFinex, an alleged corporate parent of two other Defendants, is a BVI company. (Compl. ¶ 20.) The Complaint alleges no conduct in the U.S. by or on behalf of DigFinex other than opening a New York bank account. (*Id.* ¶ 173.) Because the Complaint does not link that account to any of the alleged conduct, this allegation fails to establish any basis either for personal jurisdiction or substantive liability. Further, even assuming the Tether and Bitfinex Defendants are subject to personal jurisdiction (an issue as to which Defendants reserve their rights), that alone does not subject DigFinex, as a parent entity, to personal jurisdiction (*see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998), nor is corporate parent status standing alone a basis for substantive liability. [3]

---

[3] In filing a motion to dismiss, Defendants will also move to strike certain prejudicial and irrelevant paragraphs of the Complaint.

Respectfully submitted,

**Walden Macht & Haran LLP**

By: Jim Walden

**Law Offices of Michael Jason Lee**

By: Michael Jason Lee

**Dillon Miller Ahuja LLP**

By: Sunjina Ahuja

cc: All counsel (via ECF)