UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEIBOWITZ, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　　　-<br>　　　　　v.-<br><br>IFINEX INC., *et al.*,<br><br>　　　　　　　　Defendants. | 19 Civ. 9236 (KPF) |
| ERIC YOUNG, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　　-v.-<br>IFINEX INC., *et al.*,<br><br>　　　　　　　　Defendants. | 20 Civ. 169 (KPF) |
| BRYAN FAUBUS,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　-v.-<br>IFINEX INC., *et al.*,<br><br>　　　　　　　　Defendants. | 20 Civ. 211 (KPF) |
| JOSEPH EBANKS,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　-v.-<br>IFINEX INC., *et al.*,<br><br>　　　　　　　　Defendants. | 20 Civ. 453 (KPF) |

**LEIBOWITZ PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE**
***YOUNG* AND *EBANKS* MOTIONS TO APPOINT INTERIM CLASS COUNSEL**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................................ III

**INTRODUCTION** ...................................................................................................... - 1 -

**ARGUMENT** ............................................................................................................... - 3 -

**I.   RCF AND SWCK HAVE UNDERTAKEN SIGNIFICANT EFFORTS TO IDENTIFY AND INVESTIGATE CLAIMS TO THE BENEFIT OF THE CLASS.** ............................................................................................................. - 4 -

    A.   THE *LEIBOWITZ* PLAINTIFFS WERE THE FIRST TO FILE, IDENTIFIED NOVEL CLAIMS, AND SPENT SIGNIFICANT RESOURCES TO EFFECT SERVICE ON THE DEFENDANTS. ....................................................................................- 5 -

    B.   ONLY RCF, SWCK AND S&G REPRESENT A PLAINTIFF WHO PURCHASED FUTURES. ..............................................................................................- 8 -

    C.   RCF AND SWCK DEMONSTRATED LEADERSHIP BY FILING IN THIS COURT. ..................- 11 -

    D.   THE *LEIBOWITZ* PLAINTIFFS HAVE ADDED SIGNIFICANT RESOURCES TO THEIR COUNSEL TEAM SINCE THE ORIGINAL MOTION FOR CLASS COUNSEL, WITH THE EXPANSION OF RCF AND THE ADDITION OF SELENDY & GAY. .........................................- 12 -

**II.  RCF, SWCK AND S&G ARE THE ONLY LEADERSHIP GROUP WITH CRYPTOCURRENCY EXPERTISE, AND  HAVE ALREADY RETAINED WORLD-CLASS EXPERTS.** ..................................................................... - 18 -

**III. THE *YOUNG* PLAINTIFFS OVERSTATE THE SIGNIFICANCE OF THEIR EXPERT ANALYSIS.** ................................................................................... - 20 -

**CONCLUSION** .......................................................................................................... - 22 -

# TABLE OF AUTHORITIES

**Cases**

*Bank Brussels Lambert, S.A. v. Intermetals Corp.*,
  779 F. Supp. 741 (S.D.N.Y. 1991) .................................................................... 9

*Bernstein v. Cengage Learning, Inc.*, 18-cv-7877-VEC-SLC,
  2019 WL 6324276 (S.D.N.Y. Nov. 26, 2019) .................................................. 4

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  3 N.Y.3d 200 (N.Y. 2004) ........................................................................... 5, 6

*Braynina v. TJX Companies, Inc.*, 15 CIV. 5897,
  2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ................................................. 6

*Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17 (S.D.N.Y. 2016) ............................ 4

*Chicago Board Options Exchange Volatility Index Manipulation Antitrust
  Litig.*, ECF No. 120, No. 18-cv-4171 (N.D. Ill. Aug. 16, 2018) ........... 8, 10, 11

*Dependable Component Supply Corp. v. Murata Mfg. Co.*,
  2018 U.S. Dist. LEXIS 71432 (N.D. Cal. April 27, 2018) .............................. 5

*Federal Housing Finance Agency v. Nomura Holding America, Inc., et ano.*,
  68 F. Supp. 3d 439 (S.D.N.Y. 2014) ............................................................... 7

*Federal Housing Finance Agency v. Nomura Holding America, Inc., et ano.*,
  104 F. Supp. 3d 441 (S.D.N.Y. 2015) ............................................................. 5

*Federal Housing Finance Agency v. Nomura Holding America, Inc.*, 873 F.3d
  85 (2d Cir. 2017) ............................................................................................. 5

*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (N.Y. 2002) ...................... 6

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
  60 F. Supp. 3d 914 (N.D. Ill. 2014) ................................................................ 9

*In re Disposable Contact Lens Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 186983 (M.D. Fla. June 15, 2016) ........................... 10

*In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437 (S.D.N.Y. 2019) ............... 6

*In re Interest Rate Swaps Antitrust Litig.*, 16-MC-2704 (PAE),
2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ..................................................... 5

*In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498 (S.D.N.Y. 2004). .............. 9

*In re TransCare Corp,* 552 B.R. 69 (Bankr. S.D.N.Y. 2016) ................................20

## Rules and Statutes

FEDERAL RULE OF CIVIL PROCEDURE 23 ...........................................................*passim*

NEW YORK GENERAL BUSINESS LAW § 349 .........................................................5, 6

Plaintiffs, David Leibowitz, Benjamin Leibowitz, Jason Leibowitz, Aaron Leibowitz, and Pinchas Goldstein (the "*Leibowitz* Plaintiffs"), respectfully submit this memorandum in response to the *Young* and *Ebanks* Plaintiffs' motions for appointment as interim class counsel, and in further support of their motion to appoint their counsel Roche Cyrulnik Freedman LLP (RCF),[1] Schneider Wallace Cottrell Konecky LLP (SWCK), and the additional firm now representing the *Leibowitz* Plaintiffs, Selendy & Gay (S&G) as interim class counsel.

## **INTRODUCTION**

RCF, SWCK and S&G are the firms "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). RCF, SWCK and S&G are the superior counsel because they were first to identify the potential claims at issue, their complaint is the most comprehensive, and their clients, the *Leibowitz* Plaintiffs, represent the the broadest group of harmed investors because they are the only named plaintiffs alleging purchases of bitcoin futures and other cryptocurrencies.

Selendy & Gay's decision to join the team solidifies a group of counsel with the best expertise and experience to address Defendant's prospective motion to dismiss and to lead the class thereafter.

As an initial matter, the *Leibowitz* complaint—not any government investigation—set forth the blueprint for the claims in all other complaints filed concerning the unprecedented manipulation of bitcoin and other cryptocurrencies that is at issue in this litigation. While the New York Attorney General (NYAG) investigation has been public since April 2019, no firm

---

[1] Since filing their motion for appointment as interim class counsel, ECF 58, as discussed further below, Roche Freedman LLP has become Roche Cyrulnik Freedman LLP, with the addition of twelve new attorneys to the firm.

took action to protect the interests of the putative class until the *Leibowitz* action was filed in October 2019 and the other firms took many weeks after that before they could even file their derivative actions.

The *Leibowitz* complaint is the most comprehensive of the complaints. Aside from identifying more Defendants, all of the substantive claims that the *Young* and *Ebanks* plaintiffs assert, the *Leibowitz* complaint is the only one to include a class representative who has purchased bitcoin futures. All other complaints include only plaintiffs who have purchased bitcoin, even though all other complaints assert claims on behalf of class members who have traded in bitcoin futures. The *Leibowitz* complaint is also the only complaint with a class representative who has purchased several other cryptocurrencies whose manipulation may bear on the class recovery; the other complaints do not offer this optionality in class representativeness. RCF, SWCK and S&G are therefore the only firms representing plaintiffs capable of bringing the claims necessary to maximize the recovery for the putative class. RCF, SWCK and S&G have combined their resources to form a skilled and highly experienced team that is best positioned to litigate all aspects of this case. In addition to counsel, this team includes key experts, including arguably the most recognized expert on bitcoin and blockchain technologies in the world. The Rule 23(g) factors favor appointing RCF, SWCK and S&G as interim class counsel for the reasons set forth below in addition to the reasons set forth in their motion to be appointed interim class counsel.

The arguments that the *Young* and *Ebanks* Plaintiffs offer in support of their motion to be appointed interim lead counsel fall short. The *Young* Plaintiffs distinguish their leadership bid largely on the basis that they performed expert work. All of this analysis, however, is derivative of the work that Professor Griffin has done, which the *Leibowitz*

complaint expressly relies on throughout. Given that Professor Griffin had already analyzed the irregularities that led to these actions before any firm filed a complaint, the inclusion of minimal additional expert work product at the pleading stage should not be the measure for leadership. Indeed, as explained below, even with respect to the expert component of the case, RCF, SWCK and S&G are best positioned to lead the class, as they have retained two industry leaders in the cryptocurrency arena.

The *Ebanks* Plaintiffs seek to represent only bitcoin purchasers—a subset of class members harmed by the manipulation at issue. RCF, SWCK and S&G seek to recover on behalf of a more comprehensive group of harmed investors. The *Ebanks* Plaintiffs' proposal to represent only Bitcoin purchasers is risky given their reliance on the Commodities Exchange Act (CEA), which is the basis of the first four of the seven counts in the *Ebanks* complaint. While case law applying the CEA to cryptocurrencies such as bitcoin still evolving, it is nevertheless well-settled that the CEA only provides a private cause of action to investors that traded in futures contracts at artificial prices. Purchasers who transacted in "spot markets" for traditional commodities generally do not have claims under the CEA. Under that line of cases, if applied here, it is possible that only purchasers of bitcoin futures will have viable CEA claims. Because the *Ebanks* complaint does not include any plaintiffs who traded bitcoin futures, RCF, SWCK, and S&G have taken a more reliable approach and ensured standing for their CEA claims.

For these reasons, those set forth below, and those set forth in their motion for appointment as interim lead counsel, the *Leibowitz* Plaintiffs respectfully submit that the Court should appoint RCF, SWCK and S&G as interim class counsel.

## **ARGUMENT**

Courts generally consider the factors set forth in Rule 23(g)(1)(A) when appointing interim class counsel. *Buonasera v. Honest Co.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016). "Pursuant to Rule 23(g)(1)(A), a court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Bernstein v. Cengage Learning, Inc.*, 18-cv-7877-VEC-SLC, 2019 WL 6324276, at *1 (S.D.N.Y. Nov. 26, 2019). Each of these factors weighs in favor of appointing RCF, SWCK and S&G as interim lead counsel.

If the other applicants for leadership meet most if not all of the Rule 23(g)(1)(A) criteria, RCF, SWCK, and S&G are the "best" for purposes of Rule 23(g)(1)(B) and Rule 23(g)(2) because they have already demonstrated leadership in filing a complaint that is the blueprint for the factual and legal theories pled in all complaints; in advancing proceedings in this Court; and in maximizing the potential recovery to putative class members by including class representatives that traded in both bitcoin and bitcoin futures; and by assuring the appearance of all international defendants, through service, at great time and expense.

## I.   RCF AND SWCK HAVE UNDERTAKEN SIGNIFICANT EFFORTS TO IDENTIFY AND INVESTIGATE CLAIMS TO THE BENEFIT OF THE CLASS.

The *Leibowitz* Plaintiffs filed a first-of-its-kind class action. Their complaint marked the first time consumers have brought CEA, federal antitrust, or RICO claims against a group of Defendants for manipulation of the cryptocurrency market—a market that, by design, is supposed to be decentralized. The *Leibowitz* Plaintiffs have chosen RCF, SWCK and S&G as their counsel in seeking to expose Defendants' coordinated misconduct and to protect the

substantial number of consumers who believe in the value of cryptocurrency, who want to participate in legitimate cryptocurrency markets, and whom Defendants have egregiously harmed.

**A. The *Leibowitz* Plaintiffs Were The First To File, Identified Novel Claims, And Spent Significant Resources To Effect Service On The Defendants.**

The Court should credit counsel for the *Leibowitz* Plaintiffs for acting promptly to identify claims, to file them in an appropriate venue, to arrange for service on behalf of the putative class, and then to negotiate a briefing schedule for responsive motions. *See Dependable Component Supply Corp. v. Murata Mfg. Co.*, 2018 U.S. Dist. LEXIS 71432, at *9 (N.D. Cal. Apr. 27, 2018) (citing "the efforts expended by BFA and Hausfeld to promptly identify and investigate the claims" in appointing interim co-lead class counsel).

With their counsel analyzing both the formidable technical issues and the relevant law in a novel context, the *Leibowitz* Plaintiffs filed the first complaint. "Critically, the firms did so not by piggybacking on an existing government investigation or enforcement action, but by undertaking an independent investigation." *In re Interest Rate Swaps Antitrust Litig.*, 16-MC-2704 (PAE), 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016). The NYAG has been investigating the Defendants, but in an action focused on Tether's representations about its reserve backing; it is not pursuing the allegations of market manipulation that run at the heart of the antitrust, CEA, and racketeering claims raised for the first time by the *Leibowitz* Plaintiffs.

The *Leibowitz* Plaintiffs are also the only plaintiffs who invoke New York's General Business Law, specifically Section 349. This is not a trivial or parochial matter. Section 349 is a powerful "consumer protection statute designed to protect against 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service

in this state.'" *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205 (2004) (quoting General Business Law § 349(a)).

Section 349 "is intentionally broad, applying to virtually all economic activity." *Id.* (quoting *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002)). Designed to hold companies to account, Section 349 claims "need not reach the level of common-law fraud to be actionable." *Braynina v. TJX Cos.*, 15 CIV. 5897, 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) ("Accordingly, § 349 claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."). It further warrants noting that as the former Solicitor General for the State of New York, Caitlin Halligan of S&G brings her extensive experience with New York's General Business Law more broadly, and with Section 349 claims in particular.

Accordingly, the *Leibowitz* Plaintiffs' complaint "is clearly the template for the great majority of the cases filed since," and therefore their work "'identifying or investigating potential claims in the action,' Fed. R. Civ. P. 23(g)(1)(A)(i), weighs in favor of appointment." *In re GSE Bonds Antitrust Litig.,* 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019). The other plaintiffs have not benefitted the class by identifying additional claims or parties, and in fact they have filed—perhaps unwittingly—*narrower* complaints that redress less of the harm caused by Defendants. In short, the other plaintiffs followed the *Leibowitz* complaint, and not the NYAG investigation.

As the *Leibowitz* Plaintiffs note in their complaint, Professor Griffin published his original paper concerning bitcoin price manipulation in June 2018. Yet no party sought to pursue a legal claim on the basis of any of Professor Griffin's conclusions, let alone one with the breadth of the *Leibowitz* Plaintiffs' complaint, until the *Leibowitz* Plaintiffs crafted and

filed their claims in October 2019.The timing of these filings strongly suggests that no one would have filed but for RCF's work identifying claims and viable theories of liability. Indeed, to counsel's knowledge, despite longstanding and widespread speculation that Defendants were manipulating the market, the *Leibowitz* complaint was the first to ever publicly articulate potential claims under the CEA, Sherman Act, or RICO statutes.

After being the first-to-file, RCF and SWCK also undertook significant efforts and expense to effect service on Defendants, none of whom agreed to waive service. As a result, RCF and SWCK went to great lengths to effectuate service on the international Defendants. The difficulty in doing so was exacerbated by the fact that the Bitfinex and Tether Defendants, by their own admission, "have decentralized operations in different countries" across the globe. Compl. ¶ 56. Indeed, as the *Leibowitz* Plaintiffs explained in their complaint, "[w]hile the Office of the New York Attorney General alleged that Tether Operations Limited and Tether International Limited were incorporated in Hong Kong, Plaintiffs were unable to identify any corroborating records in the Hong Kong registry," and instead uncovered their incorporation in the British Virgin Islands. Despite having the benefit of the *Leibowitz* complaint, the *Young* and *Faubus* complaints both mistakenly alleged that Tether Operations Limited and Tether International Limited were incorporated in Hong Kong. *Young* Compl. ¶¶ 28–29; *Faubus* Compl. ¶¶ 27-28.[2]

Notwithstanding these challenges, RCF and SWCK managed to serve the individual U.S. defendants (Reginald Fowler and Philip Potter), as well as the seven corporate defendants in the British Virgin Islands, within three weeks of filing the Complaint.[3] ECF 25–27. Two

---

[2] The *Ebanks* complaint does not specify any country at all.  *Ebanks* Compl. ¶ 25.

[3] Digfinex, Inc., Tether Holdings Limited, Tether Operations Limited, Tether International Limited, iFinex, Inc., BFXNA Inc., BFXWW Inc.

days after being served, the seven BVI defendants appeared in the case, though their counsel notably did not appear on behalf of Tether Limited, CEO Ludovicus Jan van der Velde, or CFO Giancarlo Devasini, nor would counsel accept service on their behalf, or even identify their locations. RCF and SWKCK therefore arranged for service by mail on those three defendants in France and Hong Kong pursuant to the Hague Convention of Service Abroad and Federal Rule of Civil Procedure 4(f)(2)(C)(ii), which was completed on December 3, 2019. ECF No. 37–39. Tether Limited, Devasini, and Velde appeared in this case nine days later.

In sum, RCF and SWKCK expended significant time and expense simply to ensure that the Defendants appeared in this action. To RCF and SWKCK's knowledge, no other plaintiffs effected service on any defendant. It is possible that the Defendants agreed to accept service in the *Young*, *Faubus*, and *Ebanks* actions, but if so, that courtesy was only made possible by the *Leibowitz* Plaintiffs' successful service efforts.

### B. ONLY RCF, SWCK AND S&G REPRESENT A PLAINTIFF WHO PURCHASED FUTURES.

Only the *Leibowitz* action involves a named Plaintiff who purchased bitcoin futures— in addition to bitcoin itself—during the relevant time period. Compl. ¶ 19. The *Young* action does not assert claims on behalf of a named plaintiff that purchased bitcoin futures. *Young* Compl. ¶¶ 15-18. The same is true of the *Faubus* action. *Faubus* Compl. ¶¶ 15–16. The *Ebanks* action specifically proposes to exclude purchases of futures entirely. *Ebanks* Compl. ¶ 106; *see also* ECF No. 65 ("We write to inform Your Honor that we plan to file a motion for interim class counsel on behalf of the putative class alleged in the *Ebanks* matter, which is limited to bitcoin purchasers.")

A class leadership group should collectively represent "clients who traded in the gamut

of products" alleged to have been manipulated. *Chicago Bd. Options Exchange Volatility Index Manipulation Antitrust Litig.*, ECF No. 120, No. 18-cv-4171 (N.D. Ill. Aug. 16, 2018). Only the *Leibowitz* action was brought by a named plaintiff who purchased bitcoin futures, and as a result only RCF, SWCK and S&G are in a position to represent purchasers of both bitcoin and bitcoin futures through their class representatives. The *Leibowitz* complaint is also the only complaint with a class representative who purchased several other cryptocurrencies whose manipulation bears on the class recovery, which is a matter for expert analysis; the other complaints do not offer this optionality in class representativeness.[4]

The breadth of the *Leibowitz* complaint is particularly important here because the absence of a named plaintiff who purchased bitcoin futures maybe a closely contested and Defendants may argue that this is a dispositive issue in the motion to dismiss briefing on the CEA claims.[5] RCF and SWCK identified these issues before filing and took steps to mitigate

---

[4] The *Leibowitz* Plaintiffs are the only named plaintiffs alleging purchases of the other six cryptocurrencies analyzed in the Griffin Report with price increases linked to USDT issuances. *Compare* Compl. ¶¶ 15-19 *with* Griffin Report at 6 ("This 1% of our time series . . . is associated with 58.8% of Bitcoin's compounded return and 64.5% of the returns on six other large cryptocurrencies (Dash, Ethereum Classic, Ethereum, Litecoin, Monero, and Zcash).")

[5] *See, e.g.*, *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 966 (N.D. Ill. 2014) ("First, the CEA grants a private right of action only for manipulation of a futures market . . . The CEA therefore does not provide a private right of action to recover for damages suffered in the trading of spot [commodity] contracts."). No case in the Second Circuit appears to have applied these principles to bitcoin, and the *Leibowitz* Plaintiffs will pursue CEA claims for all putative class members. Nevertheless, pursuing CEA claims on behalf of purchasers of bitcoin futures is especially important because those claims will survive even if the authorities limiting claims to futures contracts are held to apply to bitcoin as well. *See Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F. Supp. 741, 749 (S.D.N.Y. 1991) ("With respect to the distinction between the current market and futures transactions, the [CEA], as noted above, simply limits its coverage and the CFTC's jurisdiction to futures. *It does not cover the spot market*, regardless of the motivation of the transactions.") (emphasis added); *see also See In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 511 (S.D.N.Y. 2004).

them by, among other things, ensuring their action included a purchaser of bitcoin futures. This initiative materially distinguishes the *Leibowitz* Plaintiffs' claims from those in the other actions, and serves as an indicator of the quality of RCF and SWCK's investigation to identify claims, as well as a concrete example of the value that their investigation has already provided to the putative class.

Particularly in light of the issues noted above, the Court should deny Robbins Geller's motion for appointment as interim lead counsel "on behalf of all purchasers of bitcoin from April 1, 2017 through the present." *Ebanks* Compl. ¶ 1. In seeking to represent a class "solely of bitcoin purchasers," ECF No. 65, Robbins Geller would exclude putative class members who purchased only bitcoin futures or other cryptocurrencies, as well as those who only purchased bitcoin prior to April 2017, and would forego claims for such purchases by any members of its proposed sub-class. Accordingly, the Court should deny reject Robbins Geller's request "to represent a subset of the existing putative class" that would be "seeking the same damages against the same [defendants] based on the same conduct." *In re Disposable Contact Lens Antitrust Litig.*, 2016 U.S. Dist. LEXIS 186983, at *103 (M.D. Fla. June 15, 2016).

It is not "necessary or appropriate to carve up assignments based on legal theories." *Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litig.*, ECF No. 120, No. 18-cv-4171 (N.D. Ill. Aug. 16, 2018). Such piecemeal litigation would be especially inefficient given that many of the putative class members purchased both bitcoin and bitcoin derivatives. In fact, that is precisely the case with one of the *Leibowitz* Plaintiffs, who held "bitcoin and bitcoin future contracts" during the relevant time period. Compl. ¶ 19.

RCF, SWCK and S&G comprise the only leadership group that "not only covers the

different products but also includes counsel who identified a range of legal theories and sued" all identifiable defendants[6] named in other actions, and some additional defendants that were not. *Chicago Bd. Options Exchange Volatility Index Manipulation Antitrust Litig.*, ECF No. 120, No. 18-cv-4171 (N.D. Ill. Aug. 16, 2018). The *Ebanks* complaint closes off theories of liability, which is premature given the early stage of this litigation and unnecessarily restricts the class's prospective bases for recovery.

### C. RCF AND SWCK DEMONSTRATED LEADERSHIP BY FILING IN THIS COURT.

RCF and SWCK identified New York as the most appropriate forum to bring this action. Documents show that the Defendants contracted with a New York-based public-relations firm, conducted meetings and operations in New York, opened New York bank accounts, and targeted New York investors. Defendant Philip Potter, who was previously Bitfinex and Tether's Chief Strategy officer, resides here. New York is also the center of the network of U.S. correspondent accounts that were essential to Defendants' scheme to manipulate prices, and Defendant Reginald Fowler is facing trial in this district for crimes allegedly committed in connection with his operation of a "shadow bank" utilized by Bitfinex and Tether. *See* Order, *United States v. Fowler*, No. 1:19-cr-00254-ALC-1 (S.D.N.Y. Jan. 17, 2020) (setting trial dates).

The *Young* Plaintiffs' decision to file in Washington, the *Leibowitz* action had been pending in this Court for nearly two months by that time, and all but one of the *Young*

---

[6] The *Young* complaint includes fifty unidentified "John Doe" defendants, only generally defined as "persons and entities, financial institutions, and/or trading firms that directly or indirectly participated in the manipulation and anticompetitive conduct in connection with bitcoin and the bitcoin futures market."

Defendants[7] had already made appearances in the Leibowitz action after being served. ECF No. 15–25 (appearances and affidavits of service). Filing in Washington was not necessary under the circumstances.

### D. THE *LEIBOWITZ* PLAINTIFFS HAVE ADDED SIGNIFICANT RESOURCES TO THEIR COUNSEL TEAM SINCE THE ORIGINAL MOTION FOR CLASS COUNSEL, WITH THE EXPANSION OF RCF AND THE ADDITION OF SELENDY & GAY.

Since the original motion for appointment as international class counsel, ECF No. 58, the *Leibowitz* Plaintiffs have significantly added to a team that was already best situated to represent the class.They first did so through RCF's expansion to a fifteen-lawyer litigation boutique, including the addition of attorneys with subject matter expertise relevant to this matter—Edward Normand, Jason Cyrulnik, and Amos Friedland.

Edward Normand represented both plaintiffs and defendants in class action, securities, and antitrust matters at Boies Schiller Flexner LLP for more than two decades. In addition to other such matters, Normand represented Vanguard in an opt-out from the recent securities class action against *ARCP, In re American Realty Capital Props., Inc. Litig.*, 1:15-mc-00040-AKH (S.D.N.Y.); represented HSBC in consolidated securities actions arising out of the sale of residential mortgage-backed securities, *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 11cv6189, 11cv6201 (DLC) (S.D.N.Y.); represented a class of employee health benefit plans in an ERISA action against Merck-Medco arising out of the defendant's management of pharmaceutical benefits, *C. States Southeast v. Merck-Medco*, 7:03-md-01508 (S.D.N.Y.);

---

[7] Defendants BFXNA Inc., BFXWW Inc., DigFinex Inc., Tether Holdings Limited, Tether International Limited, Tether Operations Limited, and iFinex Inc. The *Leibowitz* Plaintiffs served Tether Limited ten days after the *Young* complaint was filed. *See* Clerk Certificate of Mailing Received (Dec. 5, 2019) (confirming delivery of ECF No. 39 on December 2, 2019).

represented EchoStar in connection with its efforts to obtain FCC approval under the antitrust laws to acquire DirecTV; is representing IDT Corporation against a putative class of plaintiffs relating to Verizon's acquisition of Straight Path Communications, *In re Straight Path Communications Inc. Consol. S'holder Litig.*, 2017-0486-SG (Del. Ch.); represented ValueAct Capital against the DOJ's allegations that the company violated the HSR Act in connection with acquisition of certain voting securities; and has written regarding the implications of the operation of the HSR Act in conjunction with the antitrust laws, the First Amendment, and Equal Protection clause, S. Gant, A. Michaelson & E. Normand, *The Hart-Scott-Rodino Act's First Amendment Problem*, 103 CORNELL L. REV. 1 (2017).

Jason Cyrulnik has represented plaintiffs and defendants in complex commercial litigation for more than fifteen years at Boies Schiller Flexner LLP. Among his many matters, Cyrulnik defended PIMCO against manipulation claims under the CEA in *Hershey v. Pacific Investment Management Company LLC*, No. 2005cv04681 (N.D. Ill.); represented Straight Path Communications in defending against class action securities fraud claims in *Zacharia v. Straight Path Communications*, 15-cv-08051 (D.N.J.); represented Just Energy Group in defending against class action securities fraud claims in *Gutman, v. Just Energy Group*, 19-cv-03449 (S.D. Tex.); represented Just Energy in defending against class action consumer fraud claims in *Donin v. Just Energy Group Inc.*, 17 Civ. 5787 (E.D.N.Y.); represented Genie Energy in defending against class action consumer fraud claims; is representing IDT Corporation against a putative class of plaintiffs relating to Verizon's acquisition of Straight Path Communications, *In re Straight Path Communications Inc. Consol. S'holder Litig.*, 2017-0486-SG (Del. Ch.); and is representing a group of and has written regarding the distinction between derivative and direct claims in *Limits on Delaware's Tooley Standard:A*

*Brief Survey*, American Bar Association, Litigation Section, Vol. 28 Issue 4 (July 2018).

Amos Friedland practiced complex litigation on both sides of the "v." for more than a decade at Boies Schiller Flexner LLP and Quinn Emanuel Urquhart & Sullivan. Among his many matters, Friedland represented Barclays Plc in numerous LIBOR-related class action and individual actions in *In Re Libor-Based Financial Instruments Antitrust Litigation*, 1:11-md-02262-NRB (S.D.N.Y.); represented Barclays Plc in LIBOR-related States Attorney General investigation; represented Barclays Plc in LIBOR-related securities class action *Gusinsky v. Barclays Plc et al*, No. 12-05329 (S.D.N.Y.); represented a class of commercial rail shippers in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, No. 1:07-mc-00489 (D.D.C.); and represented a class of egg and egg product purchasers in *In re Processed Egg Products Antitrust Litigation*, Case No. 08-md-02002 (E.D. Pa.).

The *Leibowitz* Plaintiffs have further and significantly added to their team of counsel through the addition of Selendy & Gay. Founded two years ago by ten of the nation's leading trial lawyers, S&G's attorneys have deep experience in complex financial litigation, including litigation of RICO, antitrust, and consumer protection claims, litigation over commodities, and class action litigation. S&G's partnership also offers a diversity unmatched by other elite litigation firms, as the majority of its equity is owned by women. The S&G partners leading this matter will include Philippe Selendy, Caitlin Halligan, Maria Ginzburg, and Andrew R. Dunlap.

Philippe Selendy is one of the nation's top litigators, with over twenty-five years of experience at Quinn Emanuel Urquart & Sullivan, Boies Schiller Flexner, and Cravath Swaine & Moore, who has handled virtually every type of complex financial litigation. Named "Litigator of the Year" by the American Lawyer, which also awarded him its first-ever Grand

Prize in Litigation, Selendy was lead counsel for the Federal Housing Finance Agency (FHFA) in a series of suits against Bank of America, Barclays, Citigroup, Credit Suisse, Countrywide, Deutsche Bank, First Horizon, Goldman Sachs, HSBC, JPMorgan, Merrill Lynch, Nomura, RBS, and UBS, obtaining $25 billion in recoveries for U.S. taxpayers—the largest non-class action securities recoveries in history. This effort included a trial against two banks that did not settle, resulting in a victory on all claims in the trial court, *Federal Housing Finance Agency v. Nomura Holding America, Inc.*, 104 F. Supp. 3d 441 (S.D.N.Y. 2015), which was unanimously affirmed by the Second Circuit, *Federal Housing Finance Agency v. Nomura Holding America, Inc.*, 873 F.3d 85 (2d Cir. 2017). For this work, the *Financial Times* heralded Selendy as "The Man Who Took on Wall Street."Among his many other matters, Selendy represented plaintiffs in a class action involving ERISA claims over prescription benefit coverage, *In re Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation*, No. 03-1508 (S.D.N.Y.); represented a whistleblower before the Commodities Futures Trading Commission in a non-public matter involving manipulation of crude oil prices; represents MBIA and National Public Finance Guarantee in suits against eight major bank to hold them accountable for inequitable conduct in underwriting bonds, the default of which contributed to Puerto Rico's economic collapse, *National Public Finance Guarantee Corporation v. UBS Financial Services, Inc.*, No. SJ-2019-CV-07932 (P.R. Tribunal de Primera Instancia); and represents Cerberus Capital Management in a $950 million complex financial transaction dispute against the Canadian Imperial Bank of Commerce, *Securitized Asset Funding 2011-2, Ltd. v. Canadian Imperial Bank of Commerce*, No. 653911/2015 (N.Y Sup. Ct.).

Caitlin Halligan is the former Solicitor General of New York, former General Counsel

of the New York County District Attorney's office, and one of the nation's foremost appellate lawyers, who previously practiced at Gibson Dunn & Crutcher and Weil Gotshal & Manges.More than two decades ago, she was the first head of the New York Attorney General's Internet Bureau, allowing her to develop early expertise in cutting-edge cyber issues. Among her many matters, Halligan represented plaintiffs in a $1 billion RICO, fraud, and breach of contract action, *Lavastone Capital LLC v. Coventry First LLC*, 14-7139 (S.D.N.Y.); represented defendants in a successful, high-profile RICO action in the Second Circuit, *Chevron Corp. v. Donziger*, Nos. 14-0826(L) and 14-0832(C); and litigated novel issues regarding the scope of civil liability under RICO in the Second Circuit, *Empire Merchants LLC v. Empire Merchants North LLC*, No. 17-0887.She is a leading expert in New York law and has litigated numerous cases regarding New York's General Business Law, the basis for one of the claims at issue here, *e.g., Gaidon v. GuardianLife Insurance Co.*, 96 N.Y.2d 201 (2001); *Blue Cross & Blue Shield of N.J. v. Philip Morris USA Inc.*, 3 N.Y.3d 200 (2004); *Goshen v Mutual Life Insurance Co. of N.Y.*, 98 N.Y.2d 314 (2002); *Plavin v. Group Health Insurance*, CQ 19-02 (N.Y.).

Maria Ginzburg has over twenty years of experience litigating all variety of complex financial matters, including class actions involving RICO, antitrust, and consumer protection claims. Among many other matters, Ginzburg is counsel for a putative nationwide class of public students asserting claims, including under New York General Business Law § 349, against Navient for improper servicing of student loans, *Hyland v. Navient Corporation*, No. 18-9031 (S.D.N.Y.); she defended McKinsey & Co. against high-profile RICO claims brought by Jay Alix, the founder of AlixPartners, *Alix v. McKinsey & Co.*, 18-4141 (S.D.N.Y.); she defended the law firm Mel Harris and Associates against RICO claims involving debt

collection practices, *Sykes v. Mel Harris and Associates*, No. 09-8486 (S.D.N.Y.); she defended a major Wall Street bank in an antitrust class action asserting price fixing of naked short trading fees, *In re Short Sale Antitrust Litigation*, No. 06-2859 (S.D.N.Y); she represents CRC Credit Fund Ltd. in a federal interpleader action against Deutsche Bank AG Frankfurt regarding reference obligations underlying a credit default swap, *Bank of New York Mellon, London Branch v. Cart 1 Ltd.,*, No. 18-06093 (S.D.N.Y.); and she represented AIG in claims against major banks that sponsored RMBS, achieving over $2 billion in recoveries.

Andrew R. Dunlap has almost two decades of experience litigating complex financial matters, including antitrust, RICO, securities, and structured financial products matters, who previously practiced at Quinn Emanuel Urquhart & Sullivan and Kirkland & Ellis. He was co-counsel in the FHFA litigations, among other things obtaining a summary judgment ruling that banks did not act with reasonable care in creating the residential mortgage-backed securities they sold to investors during the run-up to the financial crisis. *Federal Housing Finance Agency v. Nomura Holding America, Inc.*, 68 F. Supp. 3d 439 (S.D.N.Y. 2014). He was co-lead counsel for U.S. Bank in *U.S. Bank, National Association v. UBS Real Estate Securities Inc.*, No. 12-7322 (S.D.N.Y.) and *U.S. Bank, National Association v. GreentPoint Mortgage Funding, Inc.*, No. 600352/2009 (N.Y Sup. Ct.), obtaining settlements of $850 million and $540 million respectively—the largest settlements obtained to date in such RMBS "putback" actions. Among his many other matters, Dunlap represented Cigna Healthcare against antitrust, RICO, and ERISA claims in a national class action alleging fixing of out-of-network reimbursement rates though use of a national fee database, *Franco v. Connecticut General Life Co.*, No. 07-6039 (D.N.J.); represented Cigna against RICO and ERISA claims involving so-called "prompt pay" discounts, *North Cypress Medical Center Operating Co. v.*

- 17 -

*Cigna Healthcare*, No. 09-2556 (S.D. Tex.); represented Honeywell International Inc. against class action securities claims, *In re Honeywell International Inc., Securities Litigation*, 00-3605 (D.N.J.); and represented Honeywell against antitrust claims alleging attempted monopolization of the hydrogen fluoride market, *Ineos Fluor Americas LLC v. Honeywell International Inc.*, 06-00189 (D. Del.).

## II.    RCF, SWCK AND S&G ARE THE ONLY LEADERSHIP GROUP WITH CRYPTOCURRENCY EXPERTISE, AND HAVE ALREADY RETAINED WORLD-CLASS EXPERTS.

The *Leibowitz* Plaintiffs now have a team combining RCF's extensive familiarity with novel cryptocurrency issues and considerable experience on both sides of the "v." on significantclass actions; SWCK's demonstrated track record in complex, plaintiff-side class action litigation; and S&G's quickly realized status as a preeminent litigation firm, with a history of success in the most complex matters and a level of antitrust, RICO, and GBL expertise that will particularly serve the class well in this case. With this mix, these lawyers are best positioned to protect the interests of the putative class. Indeed, this expertise has enabled counsel to retain two industry leaders in the cryptocurrency arena, including Andreas Antonopoulos, who is arguably the most recognized expert on bitcoin and blockchain technologies in the world.

Mr. Antonopoulos has worked in the Bitcoin and open blockchain industry since 2012, Antonopoulos Aff. ¶ 6 (attached hereto as Exhibit 1), long before Bitcoin's entry into the mainstream. He has published five books on the topics of Bitcoin and open blockchains, including MASTERING BITCOIN, which is widely viewed as the definitive guide on the subject and to date is the world's most cited book on Bitcoin. Antonopoulos Aff. ¶¶ 7–8. He has testified as an expert witness before regulators in multiple countries concerning Bitcoin

technology and is a frequent and prolific speaker in the arena.

Mr. Antonopoulos also serves as an independent expert on the Cryptocurrency Pricing Products Oversight Committee established jointly by CF Benchmarks Ltd. (CF) and the Chicago Mercantile Exchange (CME). The Oversight Committee reviews "all aspects of the methodology and calculation process" for the Bitcoin Reference Rate (BRR) and the Bitcoin Real Time Index (BRTI), which are generated based on pricing data from exchanges and trading platforms that include Bitstamp, Coinbase, Gemini, itBit, and Kraken. *Id.* ¶ 12; *CME CF Cryptocurrency Pricing Products Oversight Committee Founding Charter* (Sep. 11, 2019).[8] The BRR is a daily reference rate "representative of the bitcoin trading activity on constituent exchanges," while the BRTI is a real time index "representative of current bids and offers of market participants to buy or sell bitcoin on constituent exchanges."[9] Final settlement prices for CME Bitcoin Futures are determined by reference to the BRR.[10]

The *Leibowitz* Plaintiffs have also retained Michael Perklin, a digital forensic investigator, who has spent the past four years working exclusively investigating blockchain systems. Perklin Aff. ¶ 5 (attached hereto as Exhibit 2). Mr. Perklin's work as an expert witness has led to numerous companies around the world securing their blockchain systems, and his work has led to criminal convictions for those who have attempted to attack and exploit those systems. *Id.* He is the principal author of the CryptoCurrency Security Standard (CCSS), which is regularly referenced by blockchain companies and governments around the world as they write new laws and regulations that affect blockchain technologies. *Id.*

---

[8] https://www.cryptofacilities.com/cms/storage/resources/cme-cf-oversight-committee-charter.pdf.

[9] https://www.cmegroup.com/education/bitcoin/infographic-cme-cf-brr-and-brti.html.

[10] https://www.cmegroup.com/confluence/display/EPICSANDBOX/Bitcoin.

Finally, as outlined in the *Leibowitz* Plaintiffs' original motion, RCF, SWCK and S&G offer cryptocurrency expertise that is unmatched by any of the other firms seeking appointment. *See* Antonopoulos Aff. ¶¶ 17–22. Mr. Roche is a recognized thought leader in the industry, *see id.* ¶ 20; has published multiple articles on the intersection of cryptocurrency and law, *see e.g.*, *Bitcoin: Order without Law in the Digital Age*, 94 INDIANA L.J. 1497 (2019); *Why Bitcoin is Booming*, WALL ST. J. (July 10, 2017); and is a frequent speaker and lecturer on the topic, having guest-lectured a course at the Northwestern Pritzker School of Law. He and other attorneys at RCF bring to bear a unique level of expertise and experience with novel cryptocurrency issues, Antonopoulos Aff. ¶ 21, which further supports the appointment of RCF, SWCK, and S&G as interim class counsel. *See In re TransCare Corp*, 552 B.R. 69, 80 (Bankr. S.D.N.Y. 2016) (appointing interim class counsel in part because attorneys had "written numerous articles" and been "often cited in news publications such as the Wall Street Journal and the New York Times").

Finally, the mere fact that the *Young* Plaintiffs invoke separately filed actions does not constitute "majority support" for their leadership. If anyone can claim "majority support" for their leadership, it is the *Leibowitz* group, which consists of three law firms representing five named—and representative—plaintiffs. While the *Young* and *Faubus* group is similarly comprised of three law firms, it represents only four plaintiffs. RCF, SWCK and S&G could have filed separate complaints before joining forces. Instead, the firms have successfully collaborated and focused their energies exclusively on the first-filed action. This cooperation has benefitted both judicial economy and the putative class, which gains nothing from duplicative litigations that increase costs without advancing its claims.

## III.  THE *YOUNG* PLAINTIFFS OVERSTATE THE SIGNIFICANCE OF THEIR EXPERT ANALYSIS.

The analysis in the *Young* complaint contributed little new information beyond what had already been published by Professor Griffin and alleged in the *Leibowitz* Complaint. For example, the *Young* complaint included many charts that look like this:



The *Leibowitz* Plaintiffs had also created a chart to analyze the effect of USDT issuance on the price of bitcoin and included it in their complaint. Extracting the same time period from it yields an almost identical result:[11]



The significance of the *Young* analysis must also be viewed in the context of having been filed only *after* Professor Griffin updated his article in October 2019. For instance, the "recycling wallet" described by the *Young* Plaintiffs was identified by Professor Griffin in the updated article as a wallet with the address "1MZAayfFJ9Kki2csoYjFVRKHFFSkdoMLtX" and depicted in this helpful diagram:

---

[11] Robbins Geller claims to have been investigating for more than nine months but its "finely tuned analysis" wholesale lifted the above graphical analysis into its complaint—not once but twice—from the original work contained in the Leibowitz Complaint. Compare Leibowitz ¶ 135 with Ebanks Compl. ¶¶ 68, 79.



**Figure 1A9. Top Addresses Associated with Flow of Tether and Bitcoin between Bitfinex, Poloniex, and Bittrex.** This figure shows the relationship between top addresses associated with

Indeed, blockchain transactional data, like the data used in the *Young* complaint, is readily available to the public and can be retrieved with minimal effort from many sources by anyone sufficiently familiar with blockchain systems. Perklin Aff. ¶¶ 7, 9. Just as fundamental, this case will involve considerable expert work. Grounded in Professor Griffin's own analysis, which the *Leibowitz* Plaintiffs were the first to employ to benefit the putative class, the analysis in the *Young* complaint provides little-to-no new information and, given its overlap with the expert work that lead counsel will invariably oversee in this case, is no basis for appointing interim class counsel.

## CONCLUSION

The *Leibowitz* Plaintiffs respectfully submit, for the reasons set forth above and in their original motion for lead counsel, that the Court should appoint RF, SWCK, and S&G as interim co-lead counsel to represent the putative class.

Dated:          January 27, 2020

Respectfully submitted,

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice* pending)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL
    KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com
kbates@schneiderwallace.com

/s/ Philippe Selendy
Philippe Selendy
Caitlin Halligan
Maria Ginzburg
Andrew R. Dunlap
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
mginzburg@selendygay.com
adunlap@selendygay.com

/s/ Kyle W. Roche
Kyle W. Roche
Joseph M. Delich
Edward Normand
Jason Cyrulnik
Amos Friedland
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
jdelich@rcfllp.com
tnormand@rcfllp.com
jcyrulnik@rcfllp.com
afriedland@rcfllp.com

Velvel (Devin) Freedman (*pro hac vice*)
Constantine Economides
ROCHE CYRULNIK FREEDMAN LLP
200 South Biscayne Boulevard
Suite 5500
Miami, Florida 33131
vel@rcfllp.com
ceconomides@rcfllp.com

*Counsel for Plaintiffs and the Proposed Class*

- 23 -