UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
DAVID LEIBOWITZ, et al, Individually and : Civil Action No. 1:19-cv-09236-KPF
on Behalf of All Others Similarly Situated, : (Consolidated with Case Nos. 1:20-cv-00169-
                : KPF, 1:20-cv-00211-KPF, 1:20-cv-00453-
       Plaintiff, : KPF)
                :
 vs. :
                :
IFINEX INC., et al, :
                :
      Defendants. :
---------------------------------------------------------- x

**PLAINTIFF JOSEPH EBANKS' RESPONSE TO COMPETING MOTIONS FOR
INTERIM CLASS COUNSEL**

Plaintiff Joseph Ebanks submits the following response to the competing motions for interim class counsel. *See* ECF No. 80. Plaintiffs in the *Leibowitz* matter have filed a motion in favor of appointing Roche Cyrulnik Freedman LLP, Schneider Wallace Cottrell Konecky LLP and Selendy & Gay (the "RSS Group"), and plaintiffs in the *Young* matter have filed a motion in favor of appointing Kirby McInerney LLP and the Radice Law Firm, P.C. (the "KR Group"). These competing submissions have simply reinforced the need to appoint class counsel dedicated to bitcoin purchasers in the consolidated action. Plaintiff Ebanks respectfully submits that his motion should be granted, and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") – the only firm focused on safeguarding the interests of Bitcoin purchasers – should be appointed to this position. *See* ECF No. 69.

As explained in Plaintiff Ebanks' opening papers, the claims at issue are inherently market specific. The core theory of the case is that defendants issued tethers absent investor demand. They then used these tethers to buy large blocks of Bitcoin to artificially inflate the price of Bitcoin, allowing defendants to cash out at artificially inflated prices. Investors in this distorted market suffered injury by overpaying for Bitcoins. Robbins Geller is the only firm that is solely focused on these Bitcoin investors – the core victims of defendants' manipulative scheme.

By contrast, the competing motions seek to represent expansive classes of investors of which Bitcoin purchasers are only a subset, including investors in Bitcoin futures (in the case of the KR Group) or in all cryptocurrencies (in the case of the RSS Group). The problem with this approach is that it raises intra-class conflicts that risk undermining the interests of Bitcoin purchasers. Each cryptocurrency investment trades in its own market. Facts demonstrating manipulation and injury in the Bitcoin market under the Commodities Exchange Act ("CEA") and the federal antitrust laws will not necessarily demonstrate manipulative conduct or injury in other cryptocurrency markets. Bitcoin

purchasers should not have their claims compromised because class counsel has split loyalty to tertiary victims who may or may not have suffered collateral damage from defendants' scheme for their own market-specific reasons.

As the Second Circuit has reaffirmed, "Rule 23(a)(4), which requires that 'the representative parties . . . fairly and adequately protect the interests of the class,' 'serves to uncover conflicts of interest between named parties and the class they seek to represent,' as well as the 'competency and conflicts of class counsel.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (finding separate counsel was needed for damages class and injunctive relief class in antitrust class action). The Second Circuit has likewise found that separate class counsel may be necessary in situations where groups of class members are fundamentally differently situated. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 253 (2d Cir. 2011) ("The rationale is simple: how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?"). This concern is properly considered in the appointment of interim class counsel under Rule 23(g), which requires class counsel to "fairly and adequately represent the interests of the class" and allows courts to consider "any other matter pertinent to counsel's ability" to do so. *See* Fed. R. Civ. P. 23(g)(1)(B) & 23(g)(4).

The arguments of competing movants only reinforce the need to appoint dedicated Bitcoin counsel here. For example, the RSS Group argues that no subclass counsel is needed where a putative class would be "seeking the same damages against the same [defendants] based on the same conduct." *See* ECF No. 78 at 10. But then the corollary must also be true. Where, as here, there are differently situated class members who have suffered fundamentally different damages based on conduct impacting different markets, then Rule 23 requires each group be provided its own

representative to fight for their specific interests.  This is true for cryptocurrencies just as it would be for any market.  Indeed, even more so because many investments colloquially referred to as "cryptocurrencies" are in fact not commodities at all, and thus precluded from asserting market manipulation claims under the CEA.  *See, e.g.*, *Framework for 'Investment Contract' Analysis of Digital Assets*, U.S. Securities and Exchange Commission (providing framework for analyzing whether digital tokens are securities rather than commodities).[1]

Similarly, both the KR Group and the RSS Group emphasize the distinction between purchasers of Bitcoins and of Bitcoin futures.  *See* ECF No. 75 at 7-8; ECF No. 78 at 9-10.  But these arguments only highlight the need for dedicated bitcoin counsel in this case.  To illustrate the point, the RS Group claims – wrongly – that "it is possible that only purchasers of bitcoin futures will have viable CEA claims."  ECF No. 78 at 3.  In fact, the U.S. Commodity Futures Trading Commission has expressly found that bitcoin is a commodity and thus subject to the CEA.  *See, e.g.*, *In the Matter of BFXNA Inc. d/b/a BITFINEX*, CFTC Docket No. 16 – 19 at 5-6 ("Bitcoin and other virtual currencies are . . . properly defined as commodities, and are therefore subject as a commodity to applicable provisions of the [CEA] and Regulations.")(Citations omitted).  But the contention simply highlights the fact that purchasers of Bitcoin and purchasers of Bitcoin futures operate in different markets and will confront different legal issues as this case progresses.  Thus, both sets of class members deserve dedicated counsel to ensure that the legal strategies most beneficial to their respective positions are effectively pursued.  Moreover, if the RSS Group genuinely believes that bitcoin futures purchasers have more viable CEA claims, appointing its members sole interim class counsel risks undermining the rights of bitcoin purchasers.

---

[1]    Available at https://www.sec.gov/corpfin/framewoork-investment-contract-analysis-digital-assets (Apr. 3, 2019).

Perhaps even more concerning, it is unclear whether either the KR Group or the RSS Group even represent a client with viable bitcoin purchaser claims. Plaintiff Ebanks alleges specific conduct that defendants undertook in the Bitcoin market that caused damage to Bitcoin purchasers such as himself. He is the only plaintiff that has specified his Bitcoin purchases and the "actual injury" he suffered as a result of defendants' market manipulation scheme. As the Second Circuit has held, this information is necessary to sustain the CEA and antitrust claims at the heart of the case. *See Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 112 (2d Cir. 2018). Bitcoin purchasers deserve counsel dedicated to their interests – which may diverge from those of other class members at key junctures for the reasons stated herein – and to be represented by a plaintiff who has pled an actual financial stake in their case. Only Plaintiff Ebanks and his counsel at Robbins Geller meet these criteria.

There can also be no question that Robbins Geller satisfies the Rule 23(g)(1)(A) factors. While the competing motions have emphasized different accomplishments, in the end all of the proposed counsel arrangements before the Court consist of well-qualified lawyers with substantial knowledge and experience in relevant areas of law. Each has dedicated substantial work to developing the claims at issue and the litigation strategies they believe will be successful. However, out of all the firms, Robbins Geller has by far the most significant resources to dedicate to this case. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Robbins Geller is the largest in the United States dedicated to vindicating the rights of injured investors, with an in-house team of forensic accountants, investigators, financial analysts and other specialized personnel. It has the financial wherewithal to go toe-to-toe with defendants no matter how protracted and expensive this litigation becomes, including through trial if necessary. This financial muscle is all the more important in this case given its novelty, scope and complexity.

By contrast, the members of the KR Group and the RSS Group are only a fraction of the size and thus offer only a fraction of the firepower. In particular, Roche Cyrulnik Freedman LLP ("Roche Cyrulnik"), the head of the RSS Group, has only been in existence a few short months. There is no indication they have ever taken on a case of this magnitude and complexity, and it is hard to fathom that they would have the financial wherewithal to withstand protracted litigation or the potentially tens of millions of dollars required to fully develop the evidence and take this case to trial if necessary. Indeed, the fact that they partnered with an additional firm, Selendy & Gay, weeks after filing their initial papers suggests that they require substantial outside support to take on this case.[2] Appointing Robbins Geller as part of the interim class counsel structure will ensure that adequate resources are dedicated to this case no matter the challenges that may arise.

For the reasons stated herein and previously provided, Plaintiff Ebanks respectfully submits that his motion should be granted. Robbins Geller should be appointed as dedicated counsel for Bitcoin purchasers in the consolidated action.

DATED: February 7, 2020    ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                           SAMUEL H. RUDMAN

*/s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

---

[2] If the Court is inclined to appoint the RSS Group, it should consider requiring Roche Cyrulnik to provide evidence that they have the financial ability to sustain the case. The fortunes of the class in a case of this magnitude should not be bound to the uncertain prospects of a newly-formed firm.

ROBBINS GELLER RUDMAN
 & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Telephone: 312/674-4674
312/674-4676 (fax)

LAW OFFICE OF GEORGE W COCHRAN
GEORGE W COCHRAN
1385 Russell Drive, Suite B
Streetsboro, OH  44241-8369
Telephone: 330/607-2187

*Attorneys for Plaintiff Joseph Ebanks*

CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on February 7, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

>                     */s/ Samuel H. Rudman*
>                     SAMUEL H. RUDMAN