WALDEN MACHT & HARAN LLP

One Battery Park Plaza
34th Floor
New York, NY 10004

wmhlaw.com
T: 212-335-2030
F: 212-335-2040

May 6, 2020

**VIA ECF**
Hon. Katherine Polk Failla
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

  Re: *Leibowitz et al. v. iFinex Inc., et al.*, 19-CV-09236-KPF

Dear Judge Failla:

  On behalf of Defendants Tether Holdings Limited, Tether Operations Limited, Tether International Limited, iFinex Inc., BFXNA Inc., BFXWW Inc., and DigFinex Inc. (collectively, the "Tether Defendants"), we write to address Plaintiffs' proposed Case Management Order (the "Proposed CMO")(Dkt. No. 103-1) and corresponding letter to the Court (Dkt. No. 103).

  By way of background, on April 2, 2020, Plaintiffs forwarded a version of the Proposed CMO to counsel for the Tether Defendants for review; the parties subsequently engaged in conference calls in a good faith attempt to resolve outstanding disputes as to the Proposed CMO's content. The Tether Defendants believed these communications were confidential discussions and were therefore somewhat surprised to see Plaintiffs had taken it upon themselves to present to the Court their understanding of defense counsel's objections to the Proposed CMO. Regardless, defense counsel appreciates the opportunity to accurately explain its objections.

  As a preliminary matter, the issues described in Plaintiffs' letter to the Court concerning Interim Lead Counsel's communications with the press on behalf of the putative class members (subdivision "q" in paragraph 3) were resolved during the conference calls with Plaintiffs' counsel and are no longer the basis of an objection. Further, while it is unclear to the Tether Defendants why Interim Lead Counsel has not shared the contents of the Proposed CMO with the other Plaintiffs' counsel, that, too, is not a basis for the Tether Defendants' objections.

  However, in their letter, Plaintiffs have omitted the Tether Defendants' objection to subdivision "j" of paragraph 3, which provides that Interim Lead Counsel shall have sole authority in "conducting trial." This provision is inappropriate given that Interim Lead Counsel is only appointed to act on behalf of the putative class until the class is certified (which may never happen); thus, the appointment does not last through trial.

The Tether Defendants also object[1] to Section IV of the Proposed CMO, Interim Lead Counsel's Fees and Costs. This section is a request by Plaintiffs for this Court to issue an advisory opinion concerning an attorneys' fee application that may never be awarded in this case. This is both premature and unnecessary, as well as contrary to Rule 23(h).

That Rule provides in relevant part: "*[i]n a certified class action*, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." (Emphasis added). The Rule further provides that any such claim must be made on motion, on notice to all parties, and, if made by class counsel, "directed to class members in a reasonable manner." Fed. R. Civ. P. Rule 23(h)(1). Further, both the "party from whom payment is sought" and "[a] class member" may object to the motion." Fed. R. Civ. P. Rule 23(h)(2).

Here, no class has been certified, no award has been obtained, and no class members are receiving notice or opportunity to be heard on what is, in effect, an application to prejudge the reasonableness of fees. We believe the Court can and must be free to make any such determination only after those necessary predicates are satisfied.

We also believe the application is unprecedented in important respects. For example, the provision at issue is not a part of the Southern District's standard practices. The Tether Defendants have been unable to find any orders issued by your Honor, or any other judge in the Southern District, that contain such a section addressing fee provisions. We requested from Plaintiffs' counsel examples of CMOs with similar provisions filed in the Southern District and, tellingly, Plaintiffs' counsel shas provided only CMOs from multi-district litigations ("MDLs"). MDLs present an entirely different set of circumstances that require uniformity due to a sizeable number of parties, counsel, and jurisdictions involved. By contrast, this matter has just three lead interim counsel, who all presumably can easily implement a pre-certification internal protocol to address their concerns.

Plaintiffs rely heavily on the *Manual for Complex Litigation* in advocating for an early CMO with fee provisions. However, the *Manual* appears to cite only one case in support of a generic statement that an early pretrial order or conference "is helpful to establish guidelines and procedures that will lighten the burdens on the participants, clarify expectations, and reduce the opportunities for disputes." That decision was issued more than 30 years ago from a different jurisdiction and did not address the Rule 23(h) concern discussed above.[2]

We also disagree with Plaintiffs' view that this Court adopted similar fee provisions in *Gordon v. Amadeus IT Group, SA*, No. 1:15-cv-05457-KPF. In *Amadeus*, your Honor requested Plaintiffs file a letter, "detailing why it is necessary to appoint five separate law firms as interim

---

[1] Plaintiffs imprecisely cite to *Mendez v. The Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) in support of their contention that the Tether Defendants' objections should not be accorded much weight because they are adversarial. The *Mendez* Court merely stated that "objections by defendants to **the adequacy of class counsel** sometimes need to be taken 'with a grain of salt.'" *Id*. at 43 (emphasis added).

[2] *See Manual for Complex Litigation,* § 14.211, fn 565, citing *In re Cont'l Ill. Sec. Litig*., 572 F. Supp. 931 (N.D. Ill. 1983), *rev'd on other grounds*, 962 F.2d 566 (7th Cir. 1992).

co-lead counsel." Dkt. No. 117 (Oct 20, 2015). In response, Plaintiffs filed a three-page letter detailing the need for five law firms, and stated that proposed interim co-lead counsel had adopted "[a] monthly time reporting protocol designed to monitor lodestar submissions" in order "to assure the efficient and economical prosecution of this case going forward." Dkt. No. 118 (Oct 26, 2015). They filed a subsequent letter, at the Court's request, that outlined their plan for the division of labor and referenced, but did not annex, an internal time and expense reporting protocol. Dkt. No. 134 (Nov. 12, 2015). In stark contrast to the present case, the *Amadeus* Plaintiffs neither submitted their protocol for the Court's review, nor did they ask the Court to approve it. The resulting Order your Honor issued in appointing proposed interim co-lead counsel reflects this, by providing general guidance such as keeping contemporaneous time entries and avoiding unnecessary expenses. *See* Dkt. No. 144 (Dec 7, 2015). There are no provisions describing the circumstances in which Plaintiffs' counsel is entitled to book first-class travel.[3]

In sum, while we do not object to Plaintiffs' counsel's voluntary adherence to such protocols, we do not believe, based upon our reading of Rule 23(h) and our review of available precedent, that it is appropriate for the Court to issue an order that prejudges the reasonableness of any fee application where no class has been certified, and no class members have received notice.

Respectfully submitted,

**Walden Macht & Haran LLP**

/s/ Jim Walden

By: Jim Walden

cc: All counsel (via ECF)

---

[3] Further, while Plaintiffs are correct that the Second and Third Circuits, have, in *dicta*, broadly encouraged courts to manage class counsel from the outset of the litigation, our review of filed pre-certification CMOs in the Southern District, as well as other jurisdictions, suggest that courts continue to issue CMOs containing general management guidelines similar to those your Honor issued in *Amadeus*, rather than guidelines describing the reimbursement of car service charges, as proposed by Plaintiffs.