August 7, 2020

**VIA ECF AND E-MAIL**

Hon. Katherine Polk Failla
United States District Court Southern District of New York
40 Foley Square, Courtroom 618
New York, New York 10007

    Re:  *In re Tether and Bitfinex Crypto Asset Litigation, No. 1:19-cv-09236-KPF*

Dear Judge Failla:

    We represent Defendants Bittrex, Inc., and Poloniex, LLC (the "Exchange Defendants") and respectfully write to request a pre-motion conference be scheduled for August 24 or later due to a previously planned vacation outside the U.S. The Exchange Defendants plan to move for summary judgment under Federal Rule of Civil Procedure 56 because all the claims asserted against them rest on a demonstrably false factual premise. While there are also significant pleading deficiencies in each of the six causes of action asserted against them appropriate for Rule 12(b)(6) resolution, we suggest it would be most efficient for the parties and the Court if the Exchange Defendants first brought a short, focused summary judgment motion.

    **Background.** Plaintiffs filed this case last October against DigFinex, Inc., and several of its shareholders and subsidiaries, including "Tether" and "Bitfinex." Plaintiffs claimed that Tether was fraudulently issuing to itself USDT, a crypto-asset pegged to the U.S. dollar, and using it on the Bitfinex exchange to purchase other crypto-assets, such as bitcoin, and artificially inflate their market price. (*See generally* Dkt. No. 1.)

    In June, plaintiffs filed a Consolidated Class Action Complaint (the "CAC") with a new theory. Plaintiffs no longer claim that allegedly fraudulent USDT was used for transactions on the Bitfinex exchange, but that Bitfinex transferred that USDT to two other crypto exchanges, Poloniex and Bittrex, for Bitfinex's supposedly improper trading. Plaintiffs rely on "expert analysis" showing large transfers of USDT from Bitfinex to a Poloniex address known as "1J1d" and to a Bittrex address known as "1AA6." (*See* CAC ¶¶ 205–06.) Importantly, plaintiffs allege that these addresses are not associated with "legitimate customers," but instead are owned or controlled by Bitfinex, which "used these addresses to move USDT to its accounts" and then undertook "transactions to artificially inflate cryptocommodity prices." (*Id.* ¶¶ 190, 207, 214.)

    With the CAC, plaintiffs accuse the Exchange Defendants of violating the Sherman Act (Sections 1 and 2), the Commodity Exchange Act, and RICO. Plaintiffs take the position that the Exchange Defendants *must* have been in a conspiracy with Bitfinex because *Bitfinex* used the 1J1d and 1AA6 addresses to carry out the scheme: "That Bitfinex, unlike normal customers, was able to use the same addresses repeatedly shows that Bitfinex had made special arrangements with Bittrex and Poloniex." (*Id.* ¶ 314; *see also id.* ¶ 315 ("That the 1J1d and 1AA6 addresses were reused illustrates that Bitfinex made a bespoke arrangement with Bittrex and Poloniex . . . .").) Plaintiffs allege that the Exchange Defendants "knew which assets the Tether Defendants [sic] were buying and when, and that the cryptocommodities they purchased were being transferred back to Bitfinex" because, according to plaintiffs, the Exchange Defendants knew that the addresses belonged to Bitfinex. (*Id.* ¶ 331.)

**Summary Judgment Is Appropriate.** Plaintiffs cannot prove the central premise of their claims against the Exchange Defendants—i.e., that the 1J1d and 1AA6 addresses belong to Bitfinex, and the Exchange Defendants knew Bitfinex was using them to manipulate the market. In fact, both addresses belong to an individual with no apparent connection to Bitfinex, other than as a customer of its exchange, who is known to engage in a lawful arbitrage strategy. *See ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 440 n.2 (5th Cir. 1995) ("Arbitrage trading is the simultaneous purchase and sale of the same or equivalent securities or commodities in different markets or on different exchanges at different prices, in order to profit from the price differences between markets."). So while plaintiffs might believe that this individual's high-volume, cross-market trading renders him not, in their view, a "normal customer" (CAC ¶¶ 313, 314), it does not yield an inference that he was manipulating the market for Bitfinex, much less that the Exchange Defendants would know that.

The Exchange Defendants will submit with their summary judgment motions admissible evidence demonstrating the actual ownership of the 1J1d and 1AA6 accounts by this individual, rather than Bitfinex. The burden will then shift to plaintiffs to submit admissible evidence sufficient to create a genuine dispute as to the two alleged facts in the CAC on which their claims against the Exchange Defendants rest: (i) Bitfinex's ownership or control of the accounts and (ii) the Exchange Defendants' knowledge of, and agreement to, Bitfinex's alleged use of the accounts for market manipulation. *See, e.g.*, *Zeak v. United States*, 2015 WL 246340, *2 (S.D.N.Y. Jan. 20, 2015) (Failla, J.) (once defendant shows that plaintiff cannot prove essential element of his case, plaintiff must respond with "specific facts showing a genuine issue for trial using affidavits or otherwise, and cannot rely on the mere allegations or denials contained in the pleadings" (internal quotation marks omitted)).

"[T]here is no general right to discovery prior to the entry of summary judgment." *W.P. Carey, Inc. v. Bigler*, 2019 WL 1382898, *12 (S.D.N.Y. March 27, 2019) (Failla, J.) (collecting cases). Plaintiffs are certainly not entitled to conduct a fishing expedition merely because they have filed a complaint—particularly one built on demonstrably false speculation—and they should not be permitted to impose on the Exchange Defendants the burden of discovery without first rebutting the evidence about the actual owner of 1J1d and 1AA6 accounts. *See id.* ("Where a non-movant simply relies on bare allegations, dismissal is appropriate prior to discovery."). Indeed, none of plaintiffs' allegations about the 1J1d and 1AA6 addresses and the Exchange Defendants' knowledge of them is made on information and belief, so plaintiffs' counsel must believe that they already "have evidentiary support" for them. *See* Fed. R. Civ. P. 11(b)(3). Plaintiffs can of course oppose the motion by submitting a Rule 56(d) affidavit explaining precisely what discovery they need and why they believe it would allow them to prove their case. But that entreaty should be rejected if the Court "deems the request to be based on speculation as to what *potentially could be* discovered." *W.P. Carey*, 2019 WL 1382898, *13 (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)) (emphasis added).

**Pre-Motion Resolution Efforts.** The Exchange Defendants have already informed plaintiffs that they can prove the identity of the individual who owns the 1J1d and 1AA6 accounts and that he has no known links to Bitfinex. The Exchange Defendants offered to provide this evidence to plaintiffs—under a procedure the Exchange Defendants believed

necessary to satisfy customer confidentiality obligations—and asked them to provide the evidence or facts supporting their allegation that Bitfinex owns or controls the 1J1d and 1AA6 accounts. Plaintiffs refused. Plaintiffs demanded discovery to explore the possibility that the account holder had some sort of undisclosed relationship with Bitfinex. Plaintiffs did not provide any additional facts suggesting that such a relationship exists or explain how, if the relationship cannot be shown with publicly available information, plaintiffs have a good-faith basis to infer that the Exchange Defendants knew about it.

**Confidentiality Issues.** The Exchange Defendants believe that they owe the owner of the 1J1d and 1AA6 accounts privacy obligations. We therefore request permission to file the summary judgment papers under seal—and that plaintiffs be required to do so as well if their papers refer to him by name or otherwise contain nonpublic customer information taken from the Exchange Defendants' filings—with lightly redacted public versions filed promptly thereafter. Moreover, because no protective order has yet been entered, we ask the Court to order that the unredacted submissions be limited to attorneys' eyes only. The Exchange Defendants expect that if the CAC survives the initial motions and the claims proceed to discovery, the parties will agree to propose a more typical order governing the entire case. A proposed confidentiality order for the summary judgment briefing is attached as Exhibit A.

*       *       *

The Exchange Defendants can show that the CAC does not contain sufficient allegations to state the claims asserted against the Exchange Defendants. But given the breadth of claims asserted, we believe it would be more efficient to pursue summary judgment and not burden the Court with the pleading arguments unless and until the Court denies the Exchange Defendants' motion for summary judgment. We look forward to discussing this matter with the Court at the pre-motion conference.

Hon. Katherine Polk Failla<br>
*In re Tether and Bitfinex Crypto Asset Litigation,*<br>
No. 1:19-cv-09236-KPF<br>
Page 4

Respectfully submitted,

| **O'MELVENY & MYERS LLP** | **NELSON MULLINS RILEY & SCARBOROUGH LLP** |
|---|---|
| By: */s/ Abby F. Rudzin* | By: _____ |
| Abby F. Rudzin<br>William K. Pao<br>Seven Times Square<br>New York, NY 10026<br>Telephone: (212) 326-2000<br>arudzin@omm.com<br>wpao@omm.com | Matthew G. Lindenbaum<br>One Post Office Square 30th Floor<br>Boston, MA 02109<br>Telephone: (617) 217-4700<br>matthew.lindenbaum@nelsonmullins.com<br><br>Robert L. Lindholm<br>280 Park Avenue<br>15th Floor, West<br>New York, New York 10017<br>Telephone: (646) 428-2600<br>robert.lindholm@nelsonmullins.com<br><br>*Attorneys for Poloniex, LLC* |
| **MCNAUL EBEL NAWROT & HELGREN PLLC**<br><br>By: _____<br><br>Greg J. Hollon<br>Timothy B. Fitzgerald<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>Telephone: (206) 467-1816<br>ghollon@mcnaul.com<br>tfitzgerald@mcnaul.com<br><br>*Attorneys for Bittrex, Inc.* | |

cc: All counsel record by ECF and e-mail