# WILLKIE FARR & GALLAGHER LLP

Charles D. Cording

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8154
Fax: 212 728 9154

August 7, 2020

**VIA ECF and E-MAIL**

The Honorable Katherine Polk Failla
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236-KPF (pre-motion letter)

Dear Judge Failla:

On behalf of Defendant Philip G. Potter, I respectfully submit this pre-motion letter, pursuant to Rule 4.A of the Court's Individual Rules of Practice, to request permission to file a motion to dismiss Plaintiffs' Consolidated Class Action Complaint (the "Complaint") (ECF No. 114) in its entirety. Additionally, Mr. Potter anticipates joining, where appropriate, the motion to dismiss to be filed by Defendants Tether Holdings Limited, Tether Limited, Tether Operations Limited, Tether International Limited (collectively, "Tether"), iFinex Inc., BFXNA Inc., BFXWW Inc. (collectively "Bitfinex"), and DigFinex Inc (and together with "Tether" and "Bitfinex," the "Corporate Defendants"). Mr. Potter will file his motion to dismiss on or before September 3, 2020, in accordance with Your Honor's July 7, 2020 scheduling order (ECF No. 130).

As explained by the Corporate Defendants in their November 15, 2019 pre-motion letter (ECF No. 28), Tether issues a cryptocurrency called "tether" (USDT), which traders then use to purchase other cryptocurrencies. USDT is a "stablecoin" pegged to the U.S. Dollar and is redeemable at Tether for U.S. Dollars on a 1:1 basis. Until he stepped down in June 2018, Mr. Potter served as Chief Strategy Officer for the Tether and Bitfinex entities. Mr. Potter's previous title is one of only a handful of facts that Plaintiffs specifically allege against him. Indeed, throughout their Complaint, Plaintiffs improperly lump Mr. Potter with the other 14 defendants without identifying any individual conduct by Mr. Potter that resulted in alleged injury to the Plaintiffs. Aside from Plaintiffs alleging that Mr. Potter participated in an interview wherein he commented on correspondent banks and the cryptocurrency market, *see* Complaint at ¶¶ 343–47, Mr. Potter barely features in the Complaint's 156 pages, and he should be dismissed from this action. The grounds for dismissal Mr. Potter intends to raise include the following:

**Antitrust Claims.**  To state a claim under Section 2 of the Sherman Antitrust Act, the Plaintiffs must plausibly allege facts that establish "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *PepsiCo, Inc. v. Coca-Cola, Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (internal quotations omitted). However, nowhere do the Plaintiffs allege that Mr. Potter possessed, let alone unlawfully acquired, monopoly power to prevent competitors from issuing stablecoins or to restrict competition across the entire panoply of non-USDT cryptocurrencies. Plaintiffs similarly fail to identify any overt act or intent on the part of Mr. Potter to

Judge Katherine Polk Failla
Page 2

agree to a restraint of trade or conspiracy to monopolize. Moreover, Plaintiffs have failed to allege antitrust injury. *Atl. Ritchfield Co. v. USA Petroleum Inc.*, 495 U.S. 328, 337 (1990).

**CEA Claims.** Plaintiffs have failed to establish standing to bring a private action against Mr. Potter for allegedly violating the CEA. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 620 (S.D.N.Y. 2013) ("[T]o avoid dismissal, plaintiffs not only must allege the elements of a commodities manipulation but also must show that they have standing to sue."). To survive a motion to dismiss, the CEA plaintiff "must fall within one of the four required relationships set forth in § 22(a)(1)(A–D)." *In re MF Global Holdings Ltd. Inv. Litig.,* 998 F. Supp. 2d 157, 176 (S.D.N.Y. 2014) (internal quotations omitted). The Complaint fails to specify which subsection of Section 22 applies, let alone the Plaintiffs' specific relationship to Mr. Potter. One plaintiff alleges to have transacted in bitcoin futures, but fails to allege that Mr. Potter or the other defendants manipulated the price of any identifiable contract. Moreover, the CEA claims against Mr. Potter fail for the same reason that the other claims against him fail: there are no specific allegations as to Mr. Potter's fraudulent behavior. "In situations where multiple defendants are alleged to have committed fraud, ***the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement***." *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) (emphasis added). Finally, Plaintiffs are unable to identify any transaction that lost value as a result of Mr. Potter's alleged market manipulation. Rather they vaguely allege that they "suffered actual damages and injury in fact due to artificial prices to which they would not have been subject but for the unlawful conduct of the Defendants." Complaint at ¶ 438. This failure to allege any actual losses or injury on any specific transaction is fatal to the CEA claims. *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 570–72 (S.D.N.Y. 2017).

**RICO Claims.** To state a RICO claim, the Plaintiffs must allege that Mr. Potter engaged in the conduct of an enterprise, through a pattern of racketeering, which was the proximate cause of injuries to the Plaintiffs. *See Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990). Plaintiffs fail to meet this bar. It is insufficient to group Mr. Potter with the other defendants and allege that they engaged in a pattern of racketeering. Rather, as the Southern District has held, "[t]he plaintiff must establish individual actions by defendants that form violations of RICO." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-cv-2923, 1994 WL 88129, at *6 (S.D.N.Y. Mar. 15, 1994). A defendant-by-defendant analysis to determine whether the RICO claims are adequately pled as against each individual defendant is required. *See U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) (the elements of a RICO claim "must be established as to each individual defendant"). The Complaint is silent as to any specific actions allegedly committed by Mr. Potter that would constitute a RICO violation. Moreover, the Plaintiffs fail to allege "but for" and proximate causation between Mr. Potter's conduct and their alleged injury. *See Holmes v. Sec Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (finding that the defendant's RICO violation must be the "but for" and proximate cause of the plaintiff's injury). Lastly, the supposed injury at issue—the loss of money as a result of artificially high cryptocommodity prices—is speculative and indirect, thus requiring dismissal. *See id; Gordon v. Palumbo*, No. 07-cv-6624 (PKC) (DCF), 2009 WL 6900647, at *9–10 (S.D.N.Y. Mar. 9, 2009). Plaintiffs have failed to establish any connection between Mr. Potter's interview remarks—the only specific conduct in the Complaint concerning him—and the alleged harm Plaintiffs suffered.

**Common Law Fraud Claim.** To state a claim for fraud under New York law, the Plaintiffs must show that Mr. Potter made a materially false misrepresentation; he intended to defraud the

Plaintiffs; and the Plaintiffs reasonably relied upon the misrepresentation and suffered damage as a result of such reliance. *See Newman v. Family Mgmt. Corp.*, 530 F. App'x 21, 24 (2d Cir. 2013); *Eternity Glob. Master Fund v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004). Plaintiffs fail to allege facts establishing a "strong inference of fraudulent intent" on behalf of Mr. Potter. *Eternity Glob. Master Fund*, 375 F.3d at 187 (internal quotations omitted). Within the Complaint, Plaintiffs fail to claim that Mr. Potter was the speaker of any alleged misrepresentation. *See* Complaint at ¶ 485 (listing 10 alleged misrepresentations that are summarily attributed to the Bitfinex, Tether, and Individual Defendants). Several misrepresentations were allegedly made *after* Mr. Potter stepped down from his position as Chief Strategy Officer in June 2018. *See id.* (identifying 3 alleged misrepresentations that were made after Mr. Potter's departure). In fact, beginning in late February 2018, Mr. Potter had ceased playing any meaningful role in the Tether and Bitfinex entities altogether. Plaintiffs also fail to allege actual reliance on the alleged misrepresentations. *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies, LLC*, 829 F.3d 173, 177–78 (2d Cir. 2016). None of the Plaintiffs alleged that they purchased or sold tether. Finally, Plaintiffs fail to allege that (a) Mr. Potter's conduct caused them to enter any cryptocommodity transaction; (b) that any revelation by or about Mr. Potter caused them to suffer a loss; or (c) that they suffered a ***specific identifiable loss*** due to Mr. Potter's actions. Thus, Plaintiffs fail to allege transaction causation and loss causation or damages, such as an out-of-pocket loss. *See Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017) (holding that "[i]f the fraud causes no loss, then the plaintiff has suffered no damages" and therefore cannot prevail on a fraud claim) (internal quotations omitted); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421–22 (1996) (discussing out-of-pocket loss).

**GBL § 349 Claims.** To state a prima facie case under New York General Business Law § 349, a plaintiff must prove three elements: (1) that the challenged act or practice was consumer-orientated; (2) that it was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the deceptive act. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995); *see also Spangola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 58 (S.D.N.Y. 2015). New York courts have "routinely rejected attempts to apply GBL § 349 to securities transactions and other financial transactions," which do not involve consumer products. *JP Morgan Chase Bank N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, No. 603215/08, 2010 WL 4868142, at *12 (N.Y. Sup. Ct. Mar. 16, 2010); *see, e.g., DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 285 (S.D.N.Y. 2014) ("The Court is not persuaded that commodities investments constitute consumer activity as described in § 349."); *Morris v. Gilbert*, 649 F. Supp. 1491, 1497 (E.D.N.Y. 1986) ("[S]ecurities are purchased as investments, not as goods to be consumed or used.") (internal quotations omitted); *Gray v. Seaboard Securities, Inc.*, 788 N.Y.S.2d 471, 473 (3d Dep't 2005) ("Thus, the clear weight of authority is that claims arising out of securities transactions are not the type of consumer transaction for which General Business Law § 349 was intended to provide a remedy."). GBL § 349 is inapplicable to commodities transactions, and any violation of the act alleged by the Plaintiffs against Mr. Potter must be dismissed. Moreover, Plaintiffs fail to allege that: (a) Plaintiffs received a deceptive statement made by Mr. Potter, (b) actual injury, or (c) that they "suffered actual injury ***caused by a materially misleading act***, not that a misleading act ***led to further steps which eventually harmed them***." *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018) (emphasis added) (internal quotations omitted).

Mr. Potter thanks the Court for its attention to this matter. We remain available at the Court's convenience.

Judge Katherine Polk Failla
Page 4

Respectfully Submitted,

<u>*/s/ Charles D. Cording*</u>
Charles D. Cording
WILLKE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
*Attorneys for Defendant Philip G. Potter*


cc: All Counsel of Record