August 12, 2020

**Via ECF and E-mail**

Hon. Katherine Polk Failla
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

For Plaintiffs, we respond to the August 7, 2020 pre-motion letter of Defendants Bittrex, Inc., and Poloniex, LLC (the "Exchange Defendants") seeking leave to move for pre-answer summary judgment. The Court should deny that request. If, as the Exchange Defendants represent, an as-yet unidentified individual owns the 1J1d and 1AA6 accounts, it is highly plausible they were part of Defendants' market-manipulation scheme, and Plaintiffs' claims against the Exchange Defendants would remain valid. The evidence the Exchange Defendants cite thus does not make this the extraordinary case required to justify pre-answer summary judgment that would deprive Plaintiffs of their right to discovery. *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 83 (2d Cir. 2018).

## Background

This action concerns Defendants' manipulation of the cryptocommodities market. At the heart of their scheme was "USDT," a supposed stablecoin issued by Tether, that Defendants falsely claimed was backed by U.S. dollars, Dkt. 114 ¶¶ 112-38, and used to manipulate the cryptocommodity markets, *id.* ¶¶ 193-258. Public data shows that Bitfinex—an exchange controlled by Tether—transferred large amounts of USDT from accounts on its exchange to the 1J1d and 1AA6 accounts on Bittrex and Poloniex, respectively. *Id.* ¶¶ 204-06. Bitfinex "used" these accounts to transfer USDT to other accounts "controlled" by Bitfinex on the two exchanges, *id.* ¶¶ 205-07, from which Defendants purchased large amounts of cryptocommodities, *id.* ¶¶ 259-79. Plaintiffs allege the Exchange Defendants were knowing participants in this scheme, *id.* ¶¶ 310-341, and bring claims against them under the Sherman Act, the Commodities Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act. *Id.* ¶¶ 410-48, 561-72.

Recently, the Exchange Defendants represented to Plaintiffs that the 1J1d and 1AA6 accounts were registered to an individual, not Bitfinex, and they "[were] not aware of any link between that person and Bitfinex," Ex. 1 at 3, although they later stated that they never provided the individual's name to Bitfinex for confirmation, *id.* at 1. Claiming that "confidentiality and privacy" obligations prevented them from producing the accounts owners' name absent a court order, the Exchange Defendants proposed a request to the Court to order (1) Plaintiffs to request documents from the Exchange Defendants sufficient to show the individual's identity; and (2) the Exchange Defendants to request from the Plaintiffs all documents supporting their allegations regarding the accounts. *Id.* at 4.

Honorable Katherine Polk Failla
August 12, 2020

Plaintiffs said they were glad to receive any documents the Exchange Defendants wanted to produce and offered to negotiate an appropriate protective order. *Id.* at 2. Plaintiffs asked them to explain why their privacy policies prevented them from simply producing the information, noting that Poloniex's privacy policy, for example, allows disclosure of information where "necessary to … defend against claims[.]" *Id* at 3. (citing https://poloniex.com/privacy/). The Exchange Defendants did not explain why. *Id.* at 2. Plaintiffs also asked how the Exchange Defendants could affirmatively prove the individual has no connection to Bitfinex or the scheme, citing allegations from which it would be reasonable to infer the accounts' owner participated in the scheme with the Exchange Defendants' knowledge. *Id.* at 3 (citing Dkt. 114 ¶¶ 259-79). The Exchange Defendants did not explain how. *Id*. at 2. Instead, the Exchange Defendants filed their pre-motion letter.

## Argument

The documents described, if authentic and accurate, provide no basis to dismiss Plaintiffs' claims against the Exchange Defendants. If an individual (not Bitfinex) is the registered owner of the 1J1d and 1AA6 accounts, the Complaint lays out numerous facts from which it would be more than reasonable to infer the owner was part of Defendants' scheme. First, there is the sheer volume of trading: The accounts traded 72% of all USDT issued during the time period—supposedly billions of dollars' worth—which is hard to explain absent a manipulative scheme. *Id.* ¶ 208. Next, transfers of USDT through the accounts were highly correlated with USDT issuances, Dkt. 114 at ¶ 209—indicating the owner coordinated with Tether and Bitfinex. The transfers also responded to Bitfinex-specific events—abruptly stopping after a report suggesting that USDT was unbacked, for example *id.* ¶¶ 212-215—further indicating coordination. At one point, Tether delisted nearly 40% of all USDT in circulation—supposedly over a billion dollars' worth—just before Deutsche Bank published a letter describing Tether's cash holdings, *id.* ¶¶ 251-54—which also likely would have required the cooperation of the account owner.

Plaintiffs similarly allege facts from which it could be inferred that the Exchange Defendants were knowing, active participants in this scheme. For one thing, the repeated use of the 1J1D and 1AA6 accounts is abnormal for exchanges like the Exchange Defendants, *id.* ¶¶ 313-16, and so most likely resulted from a bespoke arrangement with the accounts' owner, granting him special accommodations for his trading. This bespoke arrangement is further demonstrated by the Exchange Defendants' acceptance of large transfers of USDT into these accounts prior to the date when customers could actually trade USDT on their platforms. *Id.* ¶¶ 317-19. The subsequent volume of USDT trades—72% of all USDT issued during the relevant time period—is grossly disproportionate to the Exchange Defendants' market share (larger exchanges saw far less USDT volume), *id.* ¶ 335, and indicates that they knew the trades were not legitimate. And, of course, the Exchange Defendants were subject to Know-Your-Customer obligations that would have been triggered by these large transfers. *Id.* ¶¶ 320-22.

The Exchange Defendants state in their letter (although not in the parties' discussions) that the accounts' owner is a Bitfinex customer "known to engage in a lawful arbitrage strategy." Dkt. 135 at 2. That the owner previously traded on price differences in crypto-assets makes it increasingly likely that they had the capacity to collude to create

Honorable Katherine Polk Failla
August 12, 2020

cryptocommodity market conditions from which they could benefit, especially given the massive amounts of debased USDT at issue. And the fact that the Exchange Defendants knew this individual was an arbitrager makes it highly plausible they also knew the individual was part of a manipulative scheme, which they facilitated for large fees. The Exchange Defendants do not explain how the alleged manipulation here could possibly be lawful arbitrage, and any such explanation would have to be tested through discovery. *See In re London Silver Fixing, Ltd.*, 213 F. Supp. 3d 530, 562 (S.D.N.Y. 2016) (denying motion to dismiss antitrust claims where "[d]efendants [allegedly] opportunistically (albeit frequently) suppressed the Fix Price in order to create, and then capitalize on, arbitrage conditions, particularly in the market for silver futures."); *CFTC v. Wilson*, 27 F. Supp. 3d 517, 534 (S.D.N.Y. 2014) (denying motion to dismiss CEA market manipulation claims, over defendants objections that they engaged in "lawful arbitrage").

The Exchange Defendants' representations thus do not make this the "rarest of cases" justifying pre-answer summary judgement. *Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (reversing grant of summary judgment where plaintiff was "denied the opportunity to conduct discovery of any sort"). Courts generally allow this remedy only if there is a dispositive, threshold legal issue. *See, e.g.*, *W.P. Carey, Inc. v. Bigler*, 2019 WL 1382898, *12 (S.D.N.Y. March 27, 2019) (Failla, J.) (granting pre-answer summary judgment that defendant waived claims).[1] The accounts' owner's identity is not a threshold legal issue that could preclude Plaintiffs from bringing their claims; it is evidence that Plaintiffs could use to prove their claims at trial.

Pre-answer summary judgment is also appropriate only if the opposing party cannot identify any discovery that would controvert the movant's evidence. *Id.* at *16. Here, Plaintiffs could disprove the Exchange Defendants' conclusory, untested assertion that the accounts' owner was not part of Defendants' scheme through evidence linking the individual to the Defendants. Plaintiffs could obtain such evidence through discovery such as: (1) the individual's communications with the relevant Defendants; (2) the individual's trading records for Bittrex and Poloniex; (3) the individual's and the relevant Defendants' internal documents regarding that trading activity; (4) expert analysis of that trading activity; and (5) depositions of the individual and Defendants regarding the individual's role in the scheme. Plaintiffs would be massively prejudiced if they were precluded from pursuing such discovery that could prove their claims.

Plaintiffs remain willing to receive whatever information the Exchange Defendants choose to provide, and to negotiate an appropriate protective order to facilitate that disclosure. But the Exchange Defendants provide no good reason, let alone good cause, for the Court to allow pre-answer summary judgment practice.

---

[1] The cases cited by this Court in *W.P. Carey* also dealt with dispositive threshold issues. *Martin v. Donahoe*, No. 12 Civ. 672 (JFB), 2016 WL 806871 (E.D.N.Y. Mar. 22, 2013) (failure to exhaust administrative remedies); *Cobbs v. Lamare*, No. 14 Civ. 96 (MAD), 2015 WL 2452323 (N.D.N.Y. May 21, 2015) (same); *Wells v. Evans*, No. 15 Civ. 6094 (CJS), 2016 WL 806871 (W.D.N.Y. Mar. 2, 2016) (same); *Ali v. City of New York*, No. 11 CIV. 5469 LAK, 2012 WL 3958154, at *4 (S.D.N.Y. Sept. 5, 2012) (qualified immunity).

Honorable Katherine Polk Failla
August 12, 2020

Respectfully submitted,

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com
kbates@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*