August 12, 2020

**Via ECF and E-mail**

Hon. Katherine Polk Failla
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

Re:     *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

For Plaintiffs, we respond to the August 7, 2020 pre-motion letter of Defendant Phillip G. Potter, which seeks leave to move to dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt. 114). Potter's argument in support of his proposed motion are meritless. His legal arguments against Plaintiffs' claims are based on inappropriate or inapplicable legal standards. And his arguments that Plaintiffs do not sufficiently allege his role in Defendants' manipulative scheme are contradicted by allegations that show he was a key member of that scheme, as Chief Strategy Officer for Bitfinex and Tether.

<u>**Plaintiffs State Valid Claims**</u>

**Antitrust.** In arguing that Plaintiffs do not adequately plead market power, Potter incorrectly equates market power with the power to prevent the creation of other stablecoins. Defendants' scheme provided Defendants, including Potter, with market power because it enabled them to control prices in the cryptocommodity market. *See, e.g.*, *Merced Irrigation District v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 141 (S.D.N.Y. 2016). Potter's argument that Plaintiffs have not shown antitrust injury is similarly meritless: Plaintiffs transacted in a market subject to price manipulation, which courts consistently regard as creating antitrust injury. *Id.* at 133.

**CEA.** In arguing that Plaintiffs do not establish their standing, Potter relies on a reading of Section 22 that is unduly restrictive and that courts in this circuit have rejected. The CEA requires a plaintiff plausibly to allege only that "she transacted in at least one commodity contract at a price that was lower or higher than it otherwise would have been absent the defendant's manipulations" and that "the manipulated prices were detrimental to her." *In re Term Commodities Cotton Futures Litig.*, 371 F. Supp. 3d 95, 100 (S.D.N.Y. 2019). Plaintiffs have alleged they transacted in markets manipulated by the conspiracy— of which Potter was a part—and were injured thereby. *E.g.*, Compl. ¶ 438.

**RICO.** Contrary to Potter's assertions, Plaintiffs have sufficiently alleged both "but for" and proximate causation linking the enterprise's scheme—and Potter's conduct in furtherance of that scheme—to Plaintiffs' injuries. The RICO enterprise harmed Plaintiffs because its market manipulation caused them to pay more than they otherwise would have paid for cryptocommodities absent Defendants' conduct—including Potter's. *See* Compl. ¶¶ 457, 541-42. Plaintiffs also allege a direct link between the enterprise's conduct and their injuries—the enterprise issued debased USDT, laundered it through Bittrex and

Honorable Katherine Polk Failla
August 12, 2020

Poloniex, and illicitly converted it into cryptocommodities at artificially inflated prices, *id.* ¶¶542-46, stating a RICO claim. *Accord Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 650, 661 (2008).

**Common Law Fraud**. Potter's vague suggestion that Plaintiffs fail to plead the elements of fraud—reliance, causation, and damages—is contradicted by Plaintiffs' well-pled allegations that lay out each element in detail. *E.g.*, Compl. ¶¶ 18-22; 579.

**GBL § 349.** Potter's argument that § 349 does not apply to *securities* is irrelevant, as Plaintiffs allege cryptocommodities are *commodities*—products directly available to consumers. *E.g.*, Compl. ¶ 65. Potter's sole case for the proposition that § 349 does not apply to commodities, *DeAngelis v. Corzine*, 17 F. Supp. 3d 270 (S.D.N.Y. 2014), is inapposite, as it involved a sophisticated party's investments in MF Global, which that party made "as investments, not as a purchase of traditional consumer goods." *Id.* at 284. Here, the relevant cryptocommodities are available directly to consumers and are frequently purchased as goods to be "consumed" or "used." *Gray v. Seaboard Secs.*, Inc. 14 A.D.3d 852, 852 (3d Dep't 2005). Because Plaintiffs allege a scheme aimed at cryptocommodity consumers, they adequately allege causation, *see N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5 (2d Dep't 2012), and damages, *see* Compl. ¶¶ 18-22.

## Plaintiffs Make Sufficient Allegations Against Potter

Plaintiffs allege that Potter engaged in extensive fraudulent and unlawful conduct. Potter acknowledges that he was Chief Strategy Officer for both Bitfinex and Tether and co-founded Tether, Compl. ¶ 36, and he does not deny that he continues to be a shareholder in DigFinex, *id.* ¶ 24. Plaintiffs further allege that Potter, together with Defendant Devasini, founded the Tether enterprise by rebranding a different purported stablecoin—"Realcoin"—as "Tether" and incorporating Defendant Tether Holdings, Ltd. in 2014. Compl. ¶ 122. Plaintiffs allege that Potter concealed his simultaneous control of Tether and Bitfinex—two apparently distinct entities that played separate but significant roles in the crypto-economy—to enable Defendants' conspiracy. Compl. ¶ 152-56. And they allege that Potter made specific, repeated public statements evincing the enterprise's intent to evade banking laws and anti-money laundering regulations to further Defendants' scheme, demonstrating his control of the enterprise through the same pattern of racketeering activity that Potter openly espoused—money laundering and wire fraud. *See* Compl. ¶¶ 343-47.

This is more than sufficient to state fraud claims against Potter. Corporate "officers and directors" like Potter "may be held individually liable" for fraud "if they participated in or had knowledge of the fraud." *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184, 187 (N.Y. 2008). Even without "specific details of each individual defendant's conduct," New York courts "have never required talismanic, unbending allegations" because "sometimes such facts are unavailable prior to discovery." *Id.* at 188. What matters is that "the scheme, as alleged, gives rise to the reasonable inference . . . that the officers, as individuals and in the key positions they held, knew of and/or were involved in the fraud." *Id.* Plaintiffs allege not only that Potter held key positions and was involved in the fraud, but also that he made specific public statements to further it. While Potter says he was peripheral to the

Honorable Katherine Polk Failla
August 12, 2020

conspiracy—asserting he had no "meaningful" role in Tether and Bitfinex after February 2018—Plaintiffs allege he played a *key* role as Chief Strategy Officer for Bitfinex and Tether.

Potter thus cannot justify dismissal of Plaintiffs' CEA claim against him by suggesting that Plaintiffs have not plead his role with sufficient particularity. As for all claims, Plaintiffs allege that Potter specifically concealed links between Tether and Bitfinex that were central to the conspiracy. Compl. ¶¶24, 36, 122, 152-156, 343-47. But even assuming that Rule 9(b) applies to Plaintiffs' CEA claims, its requirements are "generally relaxed in the context of manipulation-based claims" *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 566 (S.D.N.Y. 2016). As courts have recognized in interpreting Rule 9(b), even if Plaintiffs could not "identify specific acts and representations by each specific defendant" it would be "of no moment" to their ability to allege with particularity because "[t]he very nature of the scheme, as alleged, gives rise to the reasonable inference that all defendants (including defendant officers who held 'key positions') were involved in the fraud." *Simington v. Lease Fin. Grp., LLC*, No. 10 Civ. 6052 (KBF), 2012 WL 651130, at *10 (S.D.N.Y. Feb. 28, 2012) (cleaned up).

Potter is also properly part of Plaintiffs' antitrust claims. These same allegations — that Potter was the Chief Strategy Officer for Tether and Bitfinex, concealed the links between Bitfinex and Tether, and used correspondent banking to conceal the fact that USDT was unbacked, Compl. ¶¶24, 36, 122, 152-156, 343-47—allege intentional and overt actions that Potter took in restraint of trade.

Potter finally cannot justify dismissal of Plaintiffs' RICO claims against him. Plaintiffs more than sufficiently allege that Potter is a "corporate insider" liable for the numerous and well-pleaded fraudulent misrepresentations made by the Tether and Bitfinex Defendants, as illustrated by the case Potter cites. *See U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 445 (S.D.N.Y. 2004) ("Plaintiff satisfies the particularity requirement because, in the RICO Case Statement, [Defendant] is alleged to be a corporate insider.").

Honorable Katherine Polk Failla
August 12, 2020

Respectfully submitted,

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com
kbates@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*