**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re Tether and Bitfinex Crypto Asset
Litigation

Case No.: 1:19-cv-09236-KPF-SN

---

**DEFENDANT PHILIP G. POTTER'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT**

WILLKIE FARR & GALLAGHER LLP
Charles D. Cording
787 Seventh Avenue
New York, NY  10019-6099
Tel.:  (212) 728-8000
Email:  CCording@willkie.com

*Attorney for Defendant Philip G. Potter*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT ............................................................................................................................... 5

I      The Complaint Suffers from Pervasive Pleading Deficiencies ............................................ 5

II     Plaintiffs Fail to Plead Antitrust Violations Against Mr. Potter ......................................... 6

III    Plaintiffs Fail to Plead CEA Violations Against Mr. Potter .............................................. 7

      A.     Plaintiffs Lack Standing to Bring a CEA Claim ...................................................... 7

      B.     Plaintiffs Fail to State a Claim for Market Manipulation Under the CEA ............. 8

      C.     Plaintiffs' Principal Agent Liability And Aiding and Abetting Claims Fail ......... 10

IV    Plaintiffs Fail to Plead RICO Violations Against Mr. Potter ........................................... 11

      A.     The Plaintiffs Fail to Plead Essential Elements of a RICO Claim ........................ 11

      B.     Plaintiffs Fail to Properly Allege any Predicate Acts Against Mr. Potter ............. 12

      C.     Plaintiffs' Reply Letter Fails to Address the Defects in Their RICO Claims ........ 14

V      Plaintiffs Fail to Plead Common Law Fraud Against Mr. Potter ..................................... 15

VI    Plaintiffs Fail to Plead a Violation of GBL Section 349 Against Mr. Potter.................... 17

CONCLUSION .......................................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...................................................................18

*In re Amaranth Natural Gas Commodities Litig.,*
  587 F. Supp. 2d 513 (S.D.N.Y. 2008)......................................................................6

*Appalachian Enters., Inc. v. ePayment Solutions, Ltd.,*
  No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004)..................5

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)......................................................................................9

*Concord Assocs., L.P. v. Entm't Prop. Tr.*
  No. 12-Civ.-1667 (ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) .....................6

*Connaughton v. Chipotle Mexican Grill, Inc.,*
  29 N.Y.3d 137, 75 N.E.3d 1159, 43 N.Y.S.3d 598 (2017)......................................17

*Conte v. Newsday, Inc.,*
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ....................................................................14

*In re Crude Oil Commodity Litig.,*
  No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)................8

*In re DDAVP Direct Purchaser Antitrust Litig.,*
  585 F.3d 677 (2d Cir. 2009)....................................................................................16

*DeAngelis v. Corzine,*
  17 F. Supp. 3d 270 (S.D.N.Y. 2014) ................................................................16, 17

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
  822 F.2d 1242 (2d Cir. 1987)..................................................................................15

*DLJ Mortg. Capital Inc. v. Kontagiannis,*
  594 F. Supp. 2d 308 (E.D.N.Y. 2009) ....................................................................12

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,*
  375 F.3d 168 (2d Cir. 2004)....................................................................................15

*Gray v. Seaboard Secs., Inc.,*
  14 A.D.3d 852, 788 N.Y.S.2d 471 (3d Dep't 2005)...............................................17

*Gross v. Waywell,*
  628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................................6, 13

*Holmes v. Sec. Inv'r Prot. Corp.,*
  503 U.S. 258 (1992)...................................................................................................12

*Jus Punjabi, LLC v. Get Punjabi Inc.,*
  No. 1:14-cv-3318-GHW, 2015 WL 2400182 (S.D.N.Y. May 20, 2015) ...............13

*In re London Silver Fixing, Ltd., Antitrust Litig.,*
  213 F. Supp. 3d 530 (S.D.N.Y. 2016).......................................................................8

*Merced Irrigation Dist. v. Barclays Bank PLC,*
  165 F. Supp. 3d 122 (S.D.N.Y. 2016).......................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,*
  No. 91-Civ.-2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)...................11, 12–13

*In re MF Global Holdings Ltd. Inv. Litig.,*
  998 F. Supp. 2d 157 (S.D.N.Y. 2014).......................................................................11

*Nakahata v. New York Presbyterian Healthcare Sys., Inc.,*
  723 F.3d 192 (2d Cir. 2013)......................................................................................15

*In re Platinum & Palladium Commodities Litig.,*
  828 F. Supp. 2d 588 (S.D.N.Y. 2011).......................................................................10

*Pludeman v. N. Leasing Sys., Inc.*
  10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422 (N.Y. 2008) .....................15, 16

*Ritter v. Klisivitch,*
  No. 06-CV-5511 (DRH) (WDW), 2008 WL 2967627 (E.D.N.Y. July 30, 2008)..................14

*In re Rough Rice Commodity Litig.,*
  No. 11 C 618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012)....................................9, 11

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG,*
  277 F. Supp.3d 521 (S.D.N.Y. 2017)........................................................................10

*Tymoshenko v. Firtash,*
  No. 11-CV-2794 (KMW), 2015 WL 5505841 (S.D.N.Y. Sept. 18, 2015)...............14

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,*
  303 F. Supp. 2d 432 (S.D.N.Y. 2004)..................................................................11, 15

*U.W. Marx, Inc. v. Bonded Concrete, Inc.,*
  7 A.D.3d 856, 776 N.Y.S.2d 617 (3d Dep't 2004)..................................................17

*United States v. Persico,*
    832 F.2d 705 (2d Cir. 1987)................................................................................11

*Wexner v. First Manhattan Co.,*
    902 F.2d 169 (2d Cir. 1990)................................................................................13

**Statutes**

18 U.S.C. § 1957.................................................................................................12

New York General Business Law Section 349.........................................2, 17, 18

**Other Authorities**

CPLR 3016(b).....................................................................................................16

Fed. R. Civ. P. 8...................................................................................................5

Fed. R. Civ. P.  9(b)....................................................................................6, 8, 15

Fed. R. Civ. P. 12(b)(6)........................................................................................1

*WhalePool Interview:  Bitfinex CSO Comments on Litigation Withdraw[a]l
    against Wells Fargo apr/2017* YouTube (Apr. 12, 2017),
    https://www.youtube.com/watch?v=6trVOpsoxfo ...............................................9

Defendant Philip G. Potter respectfully submits this Memorandum of Law in Support of his Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  To avoid duplicative arguments, Mr. Potter joins in the Memorandum of Law in Support of the Motion to Dismiss filed by Defendants Tether Holdings Limited, Tether Limited, Tether Operations Limited, and Tether International Limited (collectively, "Tether" or the "Tether Defendants"); Defendants iFinex Inc., BFXNA Inc., and BFXWW Inc. (collectively, "Bitfinex" or the "Bitfinex Defendants"); and Defendants DigFinex Inc. ("DigFinex"), Ludovicus Jan van der Velde, and Giancarlo Devasini ("Devasini") (and together with the Tether Defendants and the Bitfinex Defendants, the "Corporate Defendants").

## PRELIMINARY STATEMENT

Mr. Potter barely features in the Plaintiffs' 156-page Complaint.  Rather, he is a minor player in the sprawling market manipulation scheme that Plaintiffs attempt to allege.  When Mr. Potter does appear in the Complaint, Plaintiffs improperly group him with other Defendants without alleging any specific, fraudulent conduct by him, let alone conduct that resulted in actual injury.  Courts within this District have held that such group pleadings, which lump defendants together and fail to distinguish their conduct, deserve no weight and should be dismissed.

Plaintiffs allege the following against Mr. Potter:  (1) he was the Chief Strategy Officer ("CSO") of the Bitfinex and Tether entities from 2013 until June 2018; (2) he was or is a director of Defendant Tether Holdings Limited; (3) he was or is a shareholder of Defendant DigFinex; (4) he is a citizen of New York; (5) he helped conceal the connections between Bitfinex and Tether; (6) he publicly discussed Bitfinex's plans to create "a private market for the equity [shareholders] to trade among themselves"; (7) he discussed, in an interview on cryptocommodities and correspondent banks, "his intent to continue flouting [regulatory] laws"; and (8) in conclusory

1

terms, he was aware of the scheme to artificially inflate the value of tether coin ("USDT").  *See* Complaint at ¶¶ 36, 122, 144, 153, 343–47, 462(f), 480.  Nothing more specific is alleged.

Even putting aside that the Complaint suffers from fundamental pleading defects, as addressed by the Corporate Defendants, Plaintiffs fail to connect the above allegations against Mr. Potter to any injury they suffered.  Answering interview questions about cryptocommodities, correspondent banks, and USDT does not constitute fraud.  Plaintiffs never claim they transacted in USDT, and no relationship exists between them and Mr. Potter.  Indeed, Mr. Potter is individually referenced approximately 19 times in the Complaint's 593 paragraphs.

Despite the limited allegations against Mr. Potter, Plaintiffs have asserted twelve causes of action against him, including:  antitrust violations, violations of the Commodities Exchange Act ("CEA"), RICO violations, common law fraud, and violation of New York General Business Law ("GBL") Section 349.  However, for these causes of action, Mr. Potter is indiscriminately grouped with other Defendants.  Such reliance on group pleading compels dismissal of the Plaintiffs' claims, especially the antitrust, CEA, and RICO causes of action.  Plaintiffs also fail to properly satisfy the pleading requirements for common law fraud.  Not only did Plaintiffs never transact in USDT, but also they fail to plead transaction causation or loss causation as a result of relying on any alleged misrepresentations made by Mr. Potter.  In fact, none of the misrepresentations alleged in the Complaint are attributed to Mr. Potter, and a number of them were made ***after*** he stepped down as Chief Strategy Officer.  Finally, Plaintiffs' GBL Section 349 claim should be dismissed.  Commodity investments do not fall under the purview of the statute, and Plaintiffs have failed to allege any actual injury caused by Mr. Potter's purportedly deceptive conduct.  For the foregoing reasons, and as discussed in greater detail below, Mr. Potter respectfully requests that this Court dismiss, with prejudice, the Complaint in its entirety.

## STATEMENT OF FACTS

Mr. Potter was the CSO of the Bitfinex and Tether entities from in or around 2013 until in or around the end of February 2018.  His departure was officially announced in June 2018.  Back in September 2014, Mr. Potter and Defendant Devasini incorporated Tether Holdings Limited.  Complaint at ¶ 122.  Later that year, Realcoin—Tether's predecessor—was renamed Tether, and its crypto-asset, the realcoin, was rebranded as "tether" or "USDT."  *Id.*  Unlike other crypto-assets, USDT is a "stablecoin," meaning that it is pegged to and backed by U.S. dollars held in reserve.  Complaint at ¶¶ 5, 112, 116.  This backing by fiat currency makes stablecoins more secure and more attractive to cryptocommodity purchasers compared to other crypto-assets like bitcoin.

Plaintiffs allege that the 1:1 backing of USDT to U.S. dollars was illusory, and that Tether made a series of misrepresentations—several of which were made ***after*** Mr. Potter resigned as CSO—claiming that USDT was pegged to and backed by the U.S. dollar.[1]  This alleged misrepresentation is the crux of the Defendants' market manipulation scheme.  In short, Plaintiffs allege that from February 17, 2015 to the present, Mr. Potter and the 14 other Defendants made strategically timed, massive purchases of unbacked USDT wherein Tether would issue unbacked USDT to Bitfinex, which would then be deposited into accounts held by cryptocurrency-exchanges Bittrex and Poloniex, in order to purchase bitcoin and other cryptocommodities with USDT.  These timed purchases created the illusion that USDT was in high demand, thus prompting buyers to purchase other cryptocommodities at artificially inflated prices.  *See id.* at ¶¶ 7–13, 187.  Plaintiffs

---

[1] Mr. Potter stepped down in 2018, yet a number of allegations post-date his departure.  *See, e.g.*, Complaint at ¶ 132 ("On March 4, 2019, Tether claimed that every USDT was '1-to-1 pegged to the dollar' and '100% backed' by reserves that 'from time to time may include other assets'"); *id.* at ¶ 133 ("On April 25, 2019, Tether's counsel represented . . . that 'issuances of new [USDT] occur when an investor has requested to purchase [USDT] by depositing U.S. dollars with Tether the company'. . ."); *id.* at ¶ 134 ("In November 2019, Tether claimed that '[a]ll Tether tokens are fully backed by reserves.'  As of filing, the Tether website continues to proclaim:  'Tether allows you to store, send and receive digital tokens pegged to dollars, euros, and offshore Chinese yuan.'").

describe Bitfinex as the "only meaningful path for USDT to enter the crypto-economy," *id.* at ¶ 161, and allege that Mr. Potter and the other Individual Defendants concealed the corporate ties between Tether and Bitfinex. *See id.* at ¶¶ 152–161. Like Tether, Bitfinex made a number of alleged misrepresentations regarding the backing of USDT. Again, a number of those misrepresentations were made after Mr. Potter left the Tether and Bitfinex entities in 2018.[2]

Aside from alleging that Mr. Potter and the other Individual Defendants concealed the corporate ties between Bitfinex and Tether, there are few specific allegations against Mr. Potter. Plaintiffs focus on interviews Mr. Potter gave in April 2017. For example, Plaintiffs allege that Mr. Potter publicly discussed Bitfinex's plan to create a "'private market for the equity [shareholders] to trade among themselves.'" *Id.* at ¶ 144. Plaintiffs cite interviews Mr. Potter gave on April 12, 2017 and April 24, 2017, respectively, as indicative of a scheme to "continue flouting [banking regulations]." *Id.* at ¶ 343. At one point, Plaintiffs allege that, during his April 12, 2017 interview, Mr. Potter "described Bitfinex's past efforts to evade the 'system' of money laundering laws with which banks are required to comply, and expressed Bitfinex's commitment to evading them in the future." *Id.* at ¶ 345. Plaintiffs also quote Mr. Potter from his April 24, 2017 interview, and claim that his comments "hinted" at Bitfinex and Tether "regularly opening and using bank accounts in the name of shell companies to conceal their involvement with the transactions and circumvent legitimate banks' refusal to process their wire transfers because of the risk of money laundering liability." *Id.* at ¶ 347. The interview comments are effectively the only allegations particularized to Mr. Potter. There are no allegations specific to Mr. Potter about the role he played in the supposed market manipulation scheme or how he advanced that scheme. Throughout the

---

[2] *See, e.g.*, Complaint at ¶ 148 ("On August 20, 2019, the Bitfinex website represented that 'any assertion that we have misled our customers about Tether (USDT), its backing . . . is false.'"); *id.* ("On October 5, 2019, the Bitfinex website stated that 'all [USDT] are fully backed by reserves and are issued and traded on Bitfinex pursuant to market demand, and not for the purpose of controlling the pricing of crypto assets.'").

rest of the Complaint, Mr. Potter is grouped with the Individual Defendants, or the Complaint alleges misconduct that occurred in 2019 or 2020, well after Mr. Potter stepped down as Chief Strategy Officer.

In June 2020, Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 110). Mr. Potter submitted a pre-motion letter, requesting leave to file a motion to dismiss on August 7, 2020 (ECF No. 136).  On August 12, 2020, Plaintiffs responded with their reply letter (ECF No. 138) (the "Reply Letter").

## ARGUMENT

**I       The Complaint Suffers from Pervasive Pleading Deficiencies**

Plaintiffs levy group pleadings against Mr. Potter, which should be afforded no weight. Aside from alleging Mr. Potter was the Chief Strategy Officer of the Bitfinex and Tether entities, who helped conceal the ties between Tether and Bitfinex, and pulling excerpts from interviews he gave in April 2017, Plaintiffs barely include any specific allegations regarding Mr. Potter's purportedly fraudulent conduct or how such conduct contributed to Plaintiffs' alleged injury.

Rather, Mr. Potter is unceremoniously grouped with the other Individual Defendants, who are then often paired with the Tether Defendants and the Bitfinex Defendants.  Such tactics fail to satisfy the notice pleading standard under Federal Rule of Civil Procedure 8.  As one court stated, "A plaintiff fails to satisfy rule 8, where the complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct' because such 'allegations fail to give adequate notice to the[ ] defendants as to what they did wrong.'" *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004).  In *Appalachian Enters., Inc.*, the court dismissed the complaint, noting that it failed to identify any particular defendant who committed any specific act of wrongdoing against the plaintiff but rather "attributes the wrongful acts as being committed collectively by the seventeen defendants." *Id.*

Plaintiffs' fraud-based claims fail to meet the heightened pleading standard under FRCP 9(b), which provides, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Group pleading allegations fail to satisfy Rule 9(b).  *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (Rule 9(b) requires, "[s]uch particularity . . . in which each particular defendant was directly or indirectly involved or had responsibility, as well as information concerning where, when and by which defendant any representations involved in the alleged fraudulent scheme constituting deception of Plaintiffs [were made]").   No specific misrepresentation or misconduct is attributed to Mr. Potter.

Finally, Plaintiffs' reliance on group pleading undercuts the specific claims against Mr. Potter.  Courts in this District have routinely rejected such allegations when dismissing antitrust, RICO, and CEA claims.  *Concord Assocs., L.P. v. Entm't Prop. Tr.* No. 12-Civ.-1667 (ER), 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014) (dismissing antitrust claims where "Amended Complaint predominately attributes conduct that advanced the conspiracy to various defendants grouped together under a single name"); *Gross*, 628 F. Supp. 2d at 495 ("lumping the defendants into collective allegations results in a failure to demonstrate the elements of [RICO] with respect to each defendant individually, as required"); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 543 (S.D.N.Y. 2008) (dismissing CEA claims where "Complaint contains minimal specific factual allegations" and instead "lumped [certain defendants] together" raising "generalized allegations against them").

## II      Plaintiffs Fail to Plead Antitrust Violations Against Mr. Potter

The antitrust causes of action alleged against Mr. Potter should be dismissed for the reasons articulated by the Corporate Defendants in Section I of their Argument:  (1) the Plaintiffs lack antitrust standing because they allege no injury to competition; and (2) the Plaintiffs failed to plausibly allege that the Defendants have monopoly power in the cryptocurrency market, engaged

in anticompetitive conduct, attempted monopolization, conspired to monopolize, or agreed to a restraint in trade.  As to Mr. Potter, these allegations are even more attenuated:  nowhere do the Plaintiffs allege that Mr. Potter possessed, let alone unlawfully acquired, monopoly power to prevent competitors from issuing stablecoins or to restrict competition across the entire panoply of non-USDT cryptocurrencies.

The antitrust claims are not well-pled simply because Mr. Potter is a (now former) executive.  In their Reply Letter, Plaintiffs rely on *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122 (S.D.N.Y. 2016).  In *Merced Irrigation Dist.*, however, the antitrust claims were only alleged against a corporate entity.  The court determined that the plaintiff demonstrated Barclays' ability to fix prices, in part, because the plaintiff attached a report from the Federal Energy Regulatory Commission, which concluded that "Barclays manipulated the ICE Daily Index Prices during 655 product days over 35 product months."  *Id.* at 142.  Furthermore, the court dismissed the restraint of trade cause of action, finding that it was "not persuaded that the mere existence of a series of contracts between a defendant and unidentified counterparties in the service of the defendant's unilateral scheme constitutes an agreement to unreasonably restrain trade."  *Id.* at 139–40.  Here the Plaintiffs have failed to even allege the existence of an agreement or contract between Mr. Potter and the other Defendants to restrain trade.  In fact, Mr. Potter is not specifically referenced in the antitrust causes of action at all.  Complaint at ¶¶ 389–430.

## III    Plaintiffs Fail to Plead CEA Violations Against Mr. Potter

### A.    Plaintiffs Lack Standing to Bring a CEA Claim

As a threshold matter, and as discussed in Section II.A of the Corporate Defendants' Argument, Plaintiffs fail to properly allege standing under the CEA.  Thus, their claims of market manipulation, principal agent liability, and aiding and abetting against Mr. Potter must be dismissed.  Again, Plaintiffs' pleading deficiencies are particularly apparent in reference to the

CEA claims that they assert against Mr. Potter.  Plaintiff Goldshtein alleges summarily that he purchased 629 bitcoin futures positions between January 16, 2018 and June 3, 2020.  But as noted, Mr. Potter stepped down from his role as CSO by late February 2018, shortly after Plaintiff Goldshtein began transacting in bitcoin futures.  Thus, many or nearly all of these transactions, the basis for Plaintiffs' standing, could have taken place after Mr. Potter's departure.  However, the timing and amounts of these transactions are obscured by Plaintiffs.

B.    Plaintiffs Fail to State a Claim for Market Manipulation Under the CEA

Within the context of manipulation-based claims, courts require Plaintiffs to "specify 'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the [commodities] at issue.'" *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 566 (S.D.N.Y. 2016).  In addition to the reasons included under Section II.B of the Corporate Defendants' brief, here, Plaintiffs do not state the date(s) on which bitcoin prices—or any other cryptocurrency price— were allegedly manipulated, which acts of manipulation Mr. Potter was responsible for, or how (or even whether) such manipulation by Mr. Potter caused Plaintiffs to suffer an actual trading loss.  Where, as here, the alleged manipulative scheme is described, "in a wholly speculative and conclusory matter," the claim fails to satisfy FRCP 9(b) and should be dismissed.  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007).

With regards to Mr. Potter, the Plaintiffs suggest that he and the other Individual Defendants concealed the relationship between Bitfinex and Tether, but they do not address how this alleged concealment constituted market manipulation.  Complaint at ¶¶ 153–57.  Additionally, Plaintiffs focus on comments Mr. Potter gave during an interview on April 12, 2017, to the cryptocurrency trading forum, WhalePool.  During this interview, Mr. Potter allegedly said, "'it was getting harder and harder to move money around.'"  *Id.* at ¶ 345.  This comment, however,

has nothing to do with any purported scheme to manipulate the price of cryptocurrencies.  Rather, Mr. Potter was discussing the challenges cryptocurrency companies faced in maintaining relationships with correspondent banks subject to U.S. regulations.  Correspondent banks were making it difficult for cryptocommodity users to withdraw money at will.[3]

None of Mr. Potter's interview comments support his participation in any market manipulation scheme, much less give rise to an inference that he had the specific intention to manipulate the price of cryptocurrencies.  During his April 12, 2017 interview, Mr. Potter asserted that "Bitfinex is solvent," "there is positive shareholder equity" and that Bitfinex was able to restart conversations with potential auditors to demonstrate its solvency to the world.[4]  Indeed, swaths of the interview focused on the need for policy changes to the cryptocommodity market and the market's interaction with correspondent banks.[5]  The interview comments are Plaintiffs' most specific allegations directed towards Mr. Potter.  And yet, upon review, these comments do not amount to some sort of highly public admission of illicit conduct or market manipulation.  They neither imply an intent on Mr. Potter's behalf to cause an artificial rise in prices, nor make it clear how Mr. Potter's comments relate to the "scheme" alleged by Plaintiffs.

Given the scant allegations against Mr. Potter, Plaintiffs principally rely on his position as Chief Strategy Officer of the Bitfinex and Tether entities.  However, merely being a corporate executive is insufficient to establish that Mr. Potter had the ability to influence prices in support of a market manipulation claim.  *See In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *6 (N.D. Ill. Feb. 9, 2012) (dismissing the market manipulation claim where plaintiffs

---

[3] *WhalePool Interview:  Bitfinex CSO Comments on Litigation Withdraw[a]l against Wells Fargo apr/2017,* YouTube (Apr. 12, 2017), https://www.youtube.com/watch?v=6trVOpsoxfo, at 3:25 (hereinafter the "April 12, 2017 Interview").  This Court is permitted to take judicial notice of the entirety of Mr. Potter's interview because it was cited and relied upon in the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[4] April 12, 2017 Interview at 1:16.

[5] *Id.* at 30:00.

merely alleged that Defendants, all of whom occupied an executive role at the corporation, had "'ample ability to cause and did cause artificial prices by injecting illegitimate and unlawful factors into the supply-and-demand equation for rough rice futures and option contract prices'").  Here Plaintiffs fail to establish how Mr. Potter, as Chief Strategy Officer, was able to control market prices or engage in market manipulation.  Furthermore, there are no allegations relating to Mr. Potter's ***intent*** to artificially manipulate prices.  *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 598 (S.D.N.Y. 2011) ("[I]n order to prove the intent element of a manipulation claim, a defendant must have acted with the purpose . . . of causing . . . a price or price trend in the [particular] market that did not reflect the legitimate forces of supply and demand.") (internal quotations omitted).

Additionally, Plaintiffs are unable to identify any transaction that lost value as a result of Mr. Potter's alleged market manipulation.  Rather, they vaguely allege that they "suffered actual damages and injury in fact due to artificial prices to which they would not have been subject but for the unlawful conduct of the Defendants."  Complaint at ¶ 438.  This failure to allege any actual injury from any specific transaction is fatal to their CEA claims.  *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp.3d 521, 570–72 (S.D.N.Y. 2017) (dismissing CEA claims for lack of standing where plaintiff failed to allege any facts that would support a reasonable inference that plaintiff suffered damages by transacting at times when defendants manipulated the market).

C.    Plaintiffs' Principal Agent Liability And Aiding and Abetting Claims Fail

Mr. Potter joins the arguments raised by the Corporate Defendants in Section II.C of their brief.  Specifically, the Plaintiffs merely recite the elements of the claims without indicating how any of Mr. Potter's supposed conduct constituted principal agent liability or aiding and abetting.  Plaintiffs have failed to allege how Mr. Potter's actions constituted "an act in furtherance" of the

alleged scheme.  *See In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *7–9 (granting motion to dismiss for all individually named defendants because none of Plaintiffs' allegations constituted "an act in furtherance" of the co-defendants' alleged price manipulation).  Similarly, in *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 178 (S.D.N.Y. 2014), the court granted a motion to dismiss an aiding and abetting claim as to MF Global's General Counsel Laurie R. Ferber.  While Plaintiffs alleged that Ferber was involved in some meetings and other communications with regulators, "nothing about those communications plausibly suggests that Ferber participated in the illegal transfer of funds from customer accounts or intended for that result to occur."  *Id.*  Here, Plaintiffs have failed to advance any allegations suggesting that Mr. Potter was involved in or aware of any manipulation scheme.  Plaintiffs simply point to his corporate title.  That is insufficient.

**IV      Plaintiffs Fail to Plead RICO Violations Against Mr. Potter**

> A.      The Plaintiffs Fail to Plead Essential Elements of a RICO Claim

Mr. Potter joins in the arguments raised by the Corporate Defendants in Section III of their brief.  In addition, Plaintiffs' RICO claims against Mr. Potter lack the requisite specificity.  *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (noting that the focus of § 1962(c) "is on the *individual* patterns of racketeering engaged in by *a defendant* rather than the collective activities of the members of the enterprise.") (emphasis added); *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) (the elements of a RICO claim "must be established as to each individual defendant"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-Civ.-2923, 1994 WL 88129, at *6 (S.D.N.Y. Mar. 15, 1994) ("The plaintiff must establish individual actions by defendants that form violations of RICO.").  Here the Complaint is silent as to any specific actions allegedly committed by Mr. Potter that would constitute a RICO violation.  Plaintiffs also fail to allege "but for" and proximate causation between Mr. Potter's conduct and

their alleged injury.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (finding that

the defendant's RICO violation must be the "but for" and proximate cause of the plaintiffs' injury).

      B.     <u>Plaintiffs Fail to Properly Allege any Predicate Acts Against Mr. Potter</u>

      Even if Plaintiffs' pleadings were proper, their RICO claims against Mr. Potter would still

fail because Plaintiffs have failed to sufficiently plead any predicate act.  Plaintiffs allege five

predicate acts against Mr. Potter.  However, Plaintiffs are unable to articulate Mr. Potter's role in

any of these acts.  As with the other claims, Plaintiffs resort to impermissibly grouping Mr. Potter

with the other Defendants.  *DLJ Mortg. Capital Inc. v. Kontagiannis*, 594 F. Supp. 2d 308, 326

(E.D.N.Y. 2009) ("[T]he company simply clumps together the more than 20 RICO defendants it

sues and alleges, without any distinction among them, that all of these defendants committed all

of the enumerated acts.  This blunderbuss and conclusory pleading style . . . does not state a claim

against these defendants.").

      Plaintiffs group Mr. Potter with the other Individual Defendants, the Bitfinex Defendants,

and DigFinex to allege that they operated Bitfinex as a money transmitting business affecting

interstate or foreign commerce "'without an appropriate money transmitting license.'"  Complaint

at ¶ 525.  However, Plaintiffs offer no factual allegations showing that Mr. Potter transferred funds

on behalf of the public for fees or otherwise, nor do they discuss the specific role that Mr. Potter

played.  Similarly, Plaintiffs merely group Mr. Potter with the Defendants in alleging a predicate

act under 18 U.S.C. § 1957, monetary transactions in property derived from specific unlawful

activity.  Moreover, as the Corporate Defendants note in their brief, USDT does not constitute a

movement of "funds," which is fatal to both the unlawful money transactions and money

laundering predicate acts.

      Plaintiffs fail to sufficiently allege the predicate act of wire fraud against Mr. Potter due to

their inability to allege the specific role he played in the scheme to defraud.  In *Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, the court dismissed the mail and wire fraud claims against defendant Young in part because the complaint failed to "allege the mailing or interstate wire transportation of any communication by Young.  It also fails to allege facts showing the circumstances under which Young caused any of the listed communications to be transmitted by third parties."  1994 WL 88129, at *23.  Here, Plaintiffs identify 10 alleged misrepresentations made regarding the backing of USDT.  However, none of the 10 alleged misrepresentations are attributed to Mr. Potter. This lack of particularity is fatal, as recognized in *Gross*.  *See* 628 F. Supp. 2d at 494–95; *see also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172–73 (2d Cir. 1990) (finding that a claim for wire fraud must specify the content, date, and place of any alleged misrepresentation and the identity of the persons making them).  None of the 10 misrepresentations are connected to Mr. Potter, and three of them were made ***after*** Mr. Potter stepped down as CSO.  Complaint at ¶ 485:

- "On October 5, 2019, the Bitfinex website falsely stated that 'All [USDT] are fully backed by reserves and are issued and traded on Bitfinex pursuant to market demand, and not for the purpose of controlling the pricing of crypto assets.'"

-  "On August 20, 2019, the Bitfinex website falsely stated that 'Any assertion that we have misled our customers about tether (USDT), its backing, or about the negotiated transaction between Bitfinex and Tether is false.'"

-  "On March 4, 2019, Tether's website falsely stated that USDT was '1-1 pegged to the dollar' and '100% backed.'"

Because none of the alleged misrepresentations are claimed to have been made by Mr. Potter, and given that a number of them were made after he ceased his involvement with the Tether and Bitfinex entities, the Plaintiffs have failed to sufficiently plead wire fraud as a predicate act.

Plaintiffs thus fail to allege money laundering.  *See Jus Punjabi, LLC v. Get Punjabi Inc.*, No. 1:14-cv-3318-GHW, 2015 WL 2400182, at *9 (S.D.N.Y. May 20, 2015) ("None of the allegations regarding money laundering are sufficient to make out a claim . . . because plaintiffs do not allege any monetary value whatsoever for any of the allegedly unlawful transactions.");

*Tymoshenko v. Firtash*, No. 11-CV-2794 (KMW), 2015 WL 5505841, at *8 (S.D.N.Y. Sept. 18, 2015) ("Without specifying the particular contribution of each Defendant to the money laundering scheme, Plaintiffs fail to establish the requisite directness of relationship between each Defendant's conduct and the harm suffered by Tymoshenko."). The allegations for bank fraud are similarly deficient: Plaintiffs do not support an inference that Mr. Potter's "course of conduct was designed to deceive a federally chartered or insured bank into releasing property nor the inference that [Mr. Potter] possessed the requisite intent to victimize such a financial institution by exposing it to loss." *Ritter v. Klisivitch*, No. 06-CV-5511 (DRH) (WDW), 2008 WL 2967627, at *9 (E.D.N.Y. July 30, 2008). Additionally, as the Corporate Defendants note, Plaintiffs lack the requisite standing to allege bank fraud as a predicate act.

C.      Plaintiffs' Reply Letter Fails to Address the Defects in Their RICO Claims

In their Reply Letter, Plaintiffs maintain that the RICO enterprise harmed them because its market manipulation caused them to pay more than they otherwise would have paid for cryptocommodities. (ECF No. 138 at 1.) However, the paragraphs from the Complaint cited by the Plaintiffs to support this claim are unavailing. None of those paragraphs specify any alleged conduct by Mr. Potter to advance the alleged RICO enterprise. *See* Complaint at ¶ 457 ("At all times, the scheme required the coordination and active participation of each defendant involved in the Enterprise."); *id.* at ¶ 541 ("The Tether, Bitfinex, and Individual Defendants' use of unbacked USDT to purchase cryptocommodities . . . ."); *id.* at ¶ 542 ("The Tether, Bitfinex, and Individual Defendants' wire fraud . . . ."). Once again the Plaintiffs engage in impermissible group pleading. *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) ("In short, plaintiff fails to allege how each defendant associated with the other defendants in the alleged enterprise, what the defendants' roles were in any alleged enterprise, the structure and functioning of the alleged enterprise, or even a coherent common purpose of the enterprise.").

Plaintiffs' reliance on *U.S. Fire Ins. Co. v. United Limousine Serv. Inc.* is misplaced (ECF No. 138 at 3), as that court held that elements of a RICO claim "must be established as to each individual defendant." 303 F. Supp. 2d at 451. Plaintiffs cite *U.S. Fire Ins. Co.* to maintain that it is sufficient to allege that Mr. Potter was a corporate executive. However, to support that proposition, *U.S. Fire Ins. Co.* cited *DiVittorio v. Equidyne Extractive Indus., Inc.*, which held: "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation . . . However, no specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question." 822 F.2d 1242, 1247 (2d Cir. 1987) (internal quotations omitted). By contrast, Plaintiffs are not alleging fraud on the basis of an offering memorandum prepared by Mr. Potter. Indeed, Plaintiffs never transacted in USDT, let alone entered into any agreement with Mr. Potter. Thus, simply alleging Mr. Potter's position as a former officer is insufficient.

## V        Plaintiffs Fail to Plead Common Law Fraud Against Mr. Potter

Mr. Potter joins in the arguments made by the Corporate Defendants in Section IV.A of their brief. Allegations of fraud are subject to heightened pleading under FRCP 9(b). Plaintiffs must: "'(1) detail the statements (or omissions) that . . . are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). A plaintiff asserting fraud "'must allege facts that give rise to a *strong* inference of fraudulent intent.'" *Nakahata v. New York Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) (emphasis in original). In their Reply Letter, Plaintiffs incorrectly rely upon *Pludeman v. N. Leasing Sys., Inc.* (ECF No. 138 at 2).

*Pludeman* discusses the standard under New York CPLR 3016(b), which only calls for a "reasonable inference of the alleged conduct." 10 N.Y.3d 486, 492, 890 N.E.2d 184, 187, 860 N.Y.S.2d 422, 425 (N.Y. 2008).

Plaintiffs fail to allege facts establishing a "strong inference of fraudulent intent" against Mr. Potter. "In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for ***each defendant***; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) (emphasis added). Plaintiffs fail to claim that Mr. Potter was the speaker of any of the alleged 11 misrepresentations under the fraud cause of action. Rather, they summarily attribute the misrepresentations to the Bitfinex, Tether, and Individual Defendants. Complaint at ¶ 574. Like the misrepresentations under the wire fraud predicate act, three of the misrepresentations were made after Mr. Potter stepped down as CSO. *Id.* at ¶¶ 574a, 574b, 574d. Plaintiffs cite alleged misrepresentations that were published on Bitfinex's and Tether's public websites. However, as noted in *DeAngelis v. Corzine*, "it is far from obvious that senior corporate officers would be involved in drafting text for a corporate website." 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (internal quotations omitted).

Plaintiffs maintain they sufficiently alleged the elements of fraud. (ECF No. 138 at 2.) While Plaintiffs alleged that they purchased cryptocommodities, such as bitcoin, Complaint at ¶¶ 18–22, they fail to allege that they reasonably relied on ***any alleged misrepresentation that was made by Mr. Potter*** and that such reliance resulted in injury. None of the Plaintiffs allege that they purchased or sold USDT. Moreover, they fail to allege that (a) Mr. Potter's conduct caused them to enter any cryptocommodity transaction; (b) that any revelation by or about Mr. Potter caused them to suffer a loss; or (c) that they suffered specific identifiable losses due to Mr. Potter's

16

actions.  *See Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142, 75 N.E.3d 1159,

1163, 43 N.Y.S.3d 598, 602 (2017) ("If the fraud causes no loss, then the plaintiff has suffered no

damages" and therefore, cannot prevail on a fraud claim) (internal quotations omitted).

**VI     Plaintiffs Fail to Plead a Violation of GBL Section 349 Against Mr. Potter**

Mr. Potter joins in the arguments raised by the Corporate Defendants under Section IV.B

of their brief.  Plaintiffs' effort in their Reply Letter to equate cryptocommodities to "traditional

consumer products, such as vehicles, appliances or groceries," *Gray v. Seaboard Secs., Inc.*, 14

A.D.3d 852, 853, 788 N.Y.S.2d 471, 472 (3d Dep't 2005), is disingenuous.  (ECF No. 138 at 2.)

Cryptocommodities are distinguishable from tangible, traditional consumer products, and are more

akin to securities transactions.  As held in *U.W. Marx, Inc. v. Bonded Concrete, Inc.*, 7 A.D.3d

856, 858, 776 N.Y.S.2d 617, 619 (3d Dep't 2004), "a plaintiff must make a threshold showing that

the challenged act or practice was consumer orientated, that is, it must have a broad impact on

consumers at large."  Plaintiffs cite *Gray* to argue that cryptocommodities are available directly to

consumers and are frequently purchased as goods.  Yet, the thrust of the Complaint is that they are

complex financial instruments, and Plaintiffs expressly analogize crypto-exchanges to securities

exchanges:   "Crypto-exchanges emerged to enable smoother and faster trading between

individuals, just as stock and commodities exchanges emerged to enable easy trading of securities

among counterparties who never met."  Complaint ¶ at 105.  Moreover, *Gray* affirmed the motion

to dismiss the GBL Section 349 claim.  14 A.D. 3d at 853–54, 788 N.Y.S.2d at 473.  Plaintiffs also

ignore *DeAngelis*, where the court was "not persuaded that commodities investments constitute

consumer activity as described in § 349."  17 F. Supp. 3d at 285.

Even if cryptocommodities fell under Section 349, Plaintiffs' claim should be dismissed

because they have failed to allege facts demonstrating causation.  A plaintiff "must individually

plead that the disclosures he or she received were inadequate, misleading, or false, and that she

was injured as a result of the insufficient or false disclosures." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013).  Here Plaintiffs allege no facts showing how Mr. Potter's "knowing violations" caused their injury.  Plaintiffs do not allege that any misrepresentation or insufficient disclosure by Mr. Potter caused any purchase decision by any Plaintiff.

Finally, Plaintiffs request that Mr. Potter, the other Individual Defendants, the Tether Defendants, and the Bitfinex Defendants "be required to disgorge their ill-gotten gain."  Complaint at ¶ 590.  Plaintiffs are seeking restitution, a remedy not available to private parties under Section 349.  Section 349(h), which provides for a private right of action, is silent on restitution and only permits a private party to bring an action "to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

**CONCLUSION**

For the foregoing reasons, Mr. Potter respectfully requests that this Court dismiss, with prejudice, all counts alleged against him in the Complaint.

Respectfully submitted,

Dated:  September 3, 2020
New York, New York

**WILLKIE FARR & GALLAGHER LLP**

/ s / *Charles D. Cording*
Charles D. Cording
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019-6099
Tel.:  (212) 728-8154
Email:  CCording@willkie.com

*Attorney for Defendant Philip G. Potter*

18
