November 12, 2021

**VIA ECF AND E-MAIL**

Hon. Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square, Courtroom 618
New York, New York 10007

      Re: *In re Tether and Bitfinex Crypto Asset Litigation, No. 1:19-cv-09236-KPF*

Dear Judge Failla:

      We represent Defendants Bittrex, Inc., and Poloniex, LLC (the "Exchange Defendants") and respectfully write to request a pre-motion conference to discuss the Exchange Defendants' proposed motion for summary judgment and limited discovery pending resolution of that motion. With their motion, the Exchange Defendants will submit admissible evidence disproving the factual allegations the Court accepted as true in denying the Exchange Defendants' motion to dismiss—including testimony from the true owner of the deposit addresses on the Exchange Defendants' trading platforms allegedly controlled by Bitfinex.[1]  Because only limited discovery (at most) is necessary for plaintiffs to oppose the Exchange Defendants' motion, we believe that discovery on unrelated issues should be delayed until the motion is resolved.  *See* Fed. R. Civ. P. 1 (The Rules "should be construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding.").

      **Background.**  The crux of the plaintiffs' complaint is that Bitfinex and its affiliates transferred allegedly fraudulent USDT to a Poloniex deposit address, "1AA6," and to a Bittrex deposit address, "1J1d," and then used that USDT to purchase other cryptocurrencies in order to improperly drive up their prices.  (*See* Sept. 28, 2021 Op. at 17–19; *see also id.* at 27.)  Plaintiffs contend "that the Exchange Defendants knew that Bitfinex was the entity depositing massive volumes of USDT into the 1J1d and 1AA6 addresses" and "that Bitfinex controlled the 1J1d and 1AA6 addresses" because "federal know-your-customer requirements prohibit them from accepting such large transfers from an anonymous source."  (*Id.* at 28, 29 (cleaned up).)

      The Exchange Defendants long ago provided plaintiffs with a 9-page sworn declaration from the owner of the 1J1d and 1AA6 deposit addresses.  (*See* Exhibit A (October 27, 2020 email attaching declaration).)  In it, the owner of the two deposit addresses swears that he has no relationship with Bitfinex or its affiliates (other than as a customer) and explains why his legitimate arbitrage trading strategy (with his own money) caused the trading patterns that plaintiffs confuse with market manipulation by Bitfinex.  Specifically, he testifies that he uses a computer program to simultaneously buy and sell the same cryptocurrency on different exchanges so that he profits from the price differential—without regard to whether the prices increase.  In doing so, he has to constantly transfer USDT across the exchanges to keep his accounts balanced.  The program ran at all times during the relevant period, often executing very large volumes of relatively small trades in a single day.  The declarant also described ways in

---

[1] The Court previously told the Exchange Defendants that it preferred to hear their motion to dismiss before a motion for summary judgment.  The Court's decision on that motion confirms that the claims rest on easily disproved factual allegations.  With plaintiffs now obtaining discovery, we believe that the Exchange Defendants should have their opportunity to show the Court the evidence.

Hon. Katherine Polk Failla<br>
*In re Tether and Bitfinex Crypto Asset Litigation,*<br>
No. 1:19-cv-09236-KPF<br>
Page 2

which his testimony can be independently verified with public information and provided his contact information so that plaintiffs could reach out to him directly. They declined to do so.

The Exchange Defendants would like to proceed with their motion for summary judgment to demonstrate to the Court the falsity of plaintiffs' allegations about the deposit addresses. The Exchange Defendants are producing to plaintiffs the account-opening documents for the owner of the deposit addresses, along with communications with him about the accounts.

**Summary Judgment Is Appropriate.** As we have represented to the Court, the central premise of plaintiffs' claims against the Exchange Defendants—i.e., that the Exchange Defendants knew that Bitfinex was using the 1J1d and 1AA6 addresses to manipulate the market—is simply wrong. In fact, the Exchange Defendants will present evidence that squarely disproves the precise allegations the Court identified in finding plaintiffs had plausibly pleaded the Exchange Defendants' participation in a conspiracy:

- Plaintiffs claim that the Exchange Defendants violated their regulatory obligations because they knew about the supposed scheme and suspicious transactions yet failed to report them. (Op. at 67 (citing CAC ¶¶ 331–33).) In fact, the evidence will show that the information available to the Exchange Defendants demonstrated that the accounts and deposit addresses were being used for cross-exchange arbitrage, which is legal and not suspicious, so the Exchange Defendants had no duty to "report" the transactions.

- Plaintiffs claim that the Exchange Defendants "were required to know basic information about their users . . . and as such knew or should have known that Bitfinex controlled those accounts." (Op. at 67–68.) In fact, the evidence will show that the Exchange Defendants knew exactly who owned the accounts and deposit addresses—an arbitrage trader who, to the Exchange Defendants' knowledge, had no affiliation with Bitfinex.

- Plaintiffs claim that the Exchange Defendants' conduct shows "knowing facilitation" of Bitfinex using USDT to buy large quantities of cryptocommodities for illegitimate purposes. (*Id.* at 68.) In fact, the evidence will show that an individual trader purchased the USDT in his account with his own money. The evidence will also show that, while there were large USDT transfers from his Bitfinex account to his accounts on other exchanges, there were also large transfers back. That is the product of high-frequency, delta-neutral arbitrage trading, as acknowledged by the experts whom plaintiffs tout in their complaint. *See* M. Griffen and A. Shams, *Is Bitcoin Really Untethered?*, JOURNAL OF FINANCE, VOL. LXXV, No. 4 at 1924 (Aug. 2020), available at https://onlinelibrary.wiley.com/doi/pdf/10.1111/jofi.12903 ("The printing of Tether may also be driven by its usefulness as a facilitator of cross-exchange arbitrage to eliminate pricing discrepancies across cryptocurrency exchanges.").

- Plaintiffs claim that the Exchange Defendants "coordinated" with Bitfinex and Tether to allow them to trade USDT on the exchanges "long before either of the [Exchange Defendants] enabled their account holders to engage in USDT trading for other crypto-assets." (CAC ¶ 319; *see* Op. at 68 (referring to "coordination" and citing CAC ¶¶ 318–

Hon. Katherine Polk Failla
*In re Tether and Bitfinex Crypto Asset Litigation,*
No. 1:19-cv-09236-KPF
Page 3

19).) In fact, the evidence will show that an individual trader owned the accounts and that USDT was first transferred into the accounts only after USDT trading was open to all customers on each exchange.

- Plaintiffs claim that USDT transfers to the accounts slowed down for a few days after an article was published accusing Tether of wrongdoing. (Op. at 68.) In fact, the evidence will show that the trader executed just as many trades in the days before and after the article's publication, but the pricing on the different exchanges during that period caused the flow of USDT to be to, rather than from, his account on Bitfinex.

**Discovery on the Exchange Defendants Should Be Limited.** "[T]here is no general right to discovery prior to the entry of summary judgment." *W.P. Carey, Inc. v. Bigler*, 2019 WL 1382898, *12 (S.D.N.Y. Mar. 27, 2019) (Failla, J.) (collecting cases). Plaintiffs should already "have evidentiary support" for their allegations, given that they were not made "on information and belief" and plaintiffs have stood on them even after having information to the contrary. *See* Fed. R. Civ. P. 11(b)(3). And the Exchange Defendants have already promised discovery to plaintiffs, including account documents and communications. If plaintiffs desire more discovery to respond to the Exchange Defendants' motion, Rule 56(d) requires them to submit an affidavit attesting to "specified reasons" why they "cannot present facts essential to" oppose the motion, with the scope of additional discovery limited to what is necessary. *See* Fed. R. Civ. P. 56(d). Because resolution of the Exchange Defendants' narrow summary judgment motion would dispose of all of plaintiffs' claims against them, plaintiffs should not be permitted to impose burdensome discovery on the Exchange Defendants until that motion is decided.

**Confidentiality Issues.** The account owner has asked us to maintain his confidentiality and to transmit the letter to the Court attached as Exhibit B. We therefore request permission to file the summary judgment papers under seal—and that plaintiffs be required to do so as well. The account owner has also requested that we ask the Court for an order affording his identity greater protection throughout the case than an "AEO" designation would under the current protective order—namely, that his identity be restricted to plaintiffs' counsel of record (e.g., not provided to support staff or experts) and that all parties be required to treat his identity as attorneys'-eyes-only. His confidentiality concerns are described in paragraph 20 of his declaration and in the enclosed letter. If the Court agrees, we can prepare an appropriate order.

\*   \*   \*

In finding plaintiffs' allegations sufficient at the motion-to-dismiss stage, the Court found that the Exchange Defendants were improperly asking "the Court to draw factual inferences in their favor instead of Plaintiffs'" to resolve their motion. (Op. at 70.) But that will not be the case on summary judgment, when the Exchange Defendants will be submitting admissible evidence to prove the facts, and it will be up to plaintiffs to present evidence rather than allegations in response. *See, e.g.*, *Zeak v. United States*, 2015 WL 246340, *2 (S.D.N.Y. Jan. 20, 2015) (Failla, J.) (plaintiff facing summary judgment motion supported by evidence "cannot rely on the mere allegations . . . contained in the pleadings" (internal quotation marks omitted)). We look forward to discussing this matter with the Court at the pre-motion conference.

Hon. Katherine Polk Failla
*In re Tether and Bitfinex Crypto Asset Litigation,*
No. 1:19-cv-09236-KPF
Page 4

Respectfully submitted,

| **O'MELVENY & MYERS LLP** | **NELSON MULLINS RILEY & SCARBOROUGH LLP** |
|---|---|
| By: */s/ Abby F. Rudzin* | By: */s/ Matthew G. Lindenbaum* |
| Abby F. Rudzin<br>William K. Pao<br>Seven Times Square<br>New York, NY 10026<br>Telephone: (212) 326-2000<br>arudzin@omm.com<br>wpao@omm.com | Matthew G. Lindenbaum<br>One Financial Center, Suite 3500<br>Boston, MA 02111<br>Telephone: (617) 217-4700<br>matthew.lindenbaum@nelsonmullins.com |
| **MCNAUL EBEL NAWROT & HELGREN PLLC** | Robert L. Lindholm<br>280 Park Avenue<br>15th Floor, West<br>New York, New York 10017<br>Telephone: (646) 428-2600<br>robert.lindholm@nelsonmullins.com |
| By: */s/ Greg J. Hollon* | *Attorneys for Poloniex, LLC* |
| Greg J. Hollon<br>Timothy B. Fitzgerald<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>Telephone: (206) 467-1816<br>ghollon@mcnaul.com<br>tfitzgerald@mcnaul.com | |
| *Attorneys for Bittrex, Inc.* | |

cc: All counsel of record by ECF and e-mail