November 17, 2021

**Via ECF and E-mail**

Hon. Katherine Polk Failla
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

For Plaintiffs, we respond to the November 12, 2021, letter motion of Defendants Bittrex, Inc., and Poloniex, LLC (the "Exchange Defendants") seeking a conference on their proposed motion for early summary judgment based on limited discovery. This motion rehashes the Exchange Defendants' prior attempt at premature summary judgment, which this Court denied on August 14, 2020, stating that "the Court does not believe summary judgment is appropriate at this early stage of litigation." Dkt. 139. For the reasons that follow, it remains inappropriate, and the Court should again reject the Exchange Defendants' attempt to circumvent the appropriate litigation process.

## Background

This action concerns Defendants' manipulation of the cryptocommodities market. At the heart of their scheme was "USDT," a supposed stablecoin that Tether issued, which Defendants falsely claimed was backed by U.S. dollars, Dkt. 114 ¶¶ 112–38, and which Defendants used to manipulate the cryptocommodity markets, *id.* ¶¶ 193–258. Plaintiffs identified suspicious trading patterns in the flow of USDT from Bitfinex to two accounts, 1J1d and 1AA6, on Bittrex and Poloniex, respectively. *Id.* ¶¶ 204–06. These accounts traded 72% of all USDT ever issued through the end of 2018, during periods highly correlated with USDT issuances. *Id.* ¶¶ 208–09. The trading behavior of these accounts also correlated with events specific to Bitfinex, such as when it abruptly stopped trading following a report questioning the backing of USDT. *Id.* ¶¶ 212–15.

In addition to allegations regarding these accounts, Plaintiffs alleged other facts indicating that Bittrex and Poloniex were necessary and knowing conspirators in the plan to use debased USDT to inflate cryptocommodity prices. For example, Poloniex and Tether enjoyed a close partnership that greatly benefitted Poloniex through increased trading and withdrawal fees. *Id.* ¶¶ 166–68. Bittrex endorsed USDT. *Id.* ¶ 330. Bittrex and Poloniex also both experienced an inflow of USDT hugely disproportionate to their overall market share. *Id.* ¶¶ 333–36. Both exchanges ignored information indicating that USDT was unbacked. *Id.* ¶¶ 326–28. And both exchanges knew that purchases of cryptocommodities with newly issued USDT inflated cryptocommodity prices. *Id.* ¶ 331.

On August 7, 2020, the Exchange Defendants sought to move for summary judgment, saying they would submit evidence showing that the 1J1d and 1AA6 accounts belonged not to Bitfinex, but instead to an individual. Dkt 135 at 2. In response, Plaintiffs cited allegations, such as the close correlation between transfers through these addresses

Honorable Katherine Polk Failla
November 17, 2021

and new issuances of USDT, which suggested that whoever controlled these accounts (if not Bitfinex) and the Exchange Defendants were participants in the conspiracy. *See* Dkt. 137. After the Court denied this request, Dkt. 139, all Defendants moved to dismiss, and, on September 28, 2021, the Court denied Defendants' motions to dismiss as to six counts and denied in part dismissal of Count Six. Dkt. 182.

On November 2, 2021, the parties participated in a Rule 26(f) Conference, during which the Exchange Defendants said they would again seek early summary judgment. On November 11, Plaintiffs responded that the duplicative early summary judgment proposal remained inappropriate. The Exchange Defendants then filed the instant letter motion seeking summary judgment based on the declaration of an anonymous individual (the "Anonymous Declaration") whom they say was engaged in "legitimate arbitrage trading." *See* Dkt. 188.

## Summary Judgment Is Inappropriate at This Juncture

As the Court has already recognized, summary judgment at this early juncture is inappropriate. Given Plaintiffs' well-pled conspiracy allegations, early summary judgment based on limited, cherry-picked discovery would prejudice Plaintiffs' ability to litigate this case fully and fairly. Full discovery, from all Defendants, is needed to test the assertions in the Anonymous Declaration. Dkt. 188-2. For example, the Exchange Defendants assert that, to the best of their knowledge, the declarant has no relationship with Bitfinex or its affiliates. Dkt. 188 at 2. Testing that assertion requires documents and deposition testimony not only from the declarant, but also from the Exchange Defendants, Bitfinex, and their affiliates. Similarly, Plaintiffs allege a close correlation between trading on these accounts and USDT issuances, Dkt. 114 ¶ 209, and a correlation between cryptocommodity prices and transfers of USDT to Bittrex and Poloniex, *id.* ¶¶ 273–79. To understand whether the declarant's supposed arbitrage is consistent with these correlations requires not only discovery from the declarant, but also discovery from other Defendants into the process for issuing USDT and other links between those issuances and transfers to Bittrex and Poloniex.

Full discovery into the Exchange Defendants' state of mind is similarly critical. To determine whether the Exchange Defendants could plausibly (and not recklessly) have dismissed this high volume of trading from one individual as the "product of high-frequency, delta-neutral arbitrage trading," Dkt. 188 at 2, Plaintiffs and the Court will need documents and deposition testimony on the Exchange Defendants' monitoring of trading patterns and communications with other Defendants, as well as expert analysis distinguishing arbitrage from manipulation. The Exchange Defendants proposal would foreclose these inquiries.

In addition, if the facts contained in the Anonymous Declaration were accurate, they would not justify summary judgment against any Defendant on any claim, including the Exchange Defendants. Plaintiffs have adequately alleged a conspiracy to manipulate cryptocommodity prices independent of the allegations related to these two accounts. Plaintiffs allege that USDT was unbacked (which this declarant does not claim to be in a position to dispute), Dkt. 114 ¶¶ 112–38, and that the Exchange Defendants depended on USDT as the sole way for their customers to convert their fluctuating assets to something

that was purportedly backed, *id.* ¶¶ 164, 168, 172. As a result, both Exchange Defendants endorsed the backing of USDT and became close partners with Tether. *Id.* ¶¶ 166–67, 173–75. Plaintiffs further allege that cryptocommodity prices were closely correlated with new issuances of USDT. *Id.* ¶¶ 272–79. The Exchange Defendants knew that USDT was unbacked but remained silent in the face of impossible-to-support issuances, *id.* ¶¶ 326–28, and they face liability for allowing manipulative trading through their platforms. The Exchange Defendants profited from the scheme, through increased commissions and from the rise in value of their own assets. *Id.* ¶¶ 339–41.

The Exchange Defendants' requested confidentiality provision is also unworkable. They request that the identity of the declarant be kept from non-attorneys, including experts. This restriction would insulate the Anonymous Declaration from meaningful scrutiny. To test the assertions that the declarant controlled these accounts and had no affiliation with the other Defendants, Plaintiffs will need to (among other things) depose him (which would require revealing his identity to the court reporter and other staff), do background research in preparation for that deposition, and have experts opine on the plausibility of his claims. Plaintiffs would also have to use this person's name in asking Defendants' witnesses about their knowledge of the individual's activities. Ultimately, Plaintiffs may add the declarant as a defendant. The Exchange Defendants, in ignoring these realities, reveal the infeasibility and profound prejudice to Plaintiffs of their proposed process.

The sole case the Exchange Defendants cite, on which they also relied in their initial and unsuccessful request for such a conference, remains inapposite. That case, *W.P. Carey, Inc. v. Bigler*, involved summary judgment on the basis that the other party had already entered into an agreement waiving their claims. 2019 WL 1382898, at *13 (S.D.N.Y. March 27, 2019) (Failla, J.). This case involves no such dispositive threshold legal issue and is therefore not "the rarest of cases" in which summary judgment can be granted "against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000).

In sum, even if the Exchange Defendants' assertions were true, and Plaintiffs had known these asserted facts before filing their Amended Complaint, Plaintiffs would have brought the same claims against the Exchange Defendants, based on the strong circumstantial evidence that they participated in the market manipulation scheme and facilitated manipulative trading through their platforms. Plaintiffs deserve the opportunity to test those claims in full discovery, rather than being limited to the restrictive process the Exchange Defendants propose.

Honorable Katherine Polk Failla
November 17, 2021

Respectfully submitted,

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com
kbates@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*