

July 28, 2022

<u>**Via ECF and E-mail**</u>
The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:     *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

Per Local Civil Rule 37.2 and Your Honor's Individual Rule 3.C, Plaintiffs respectfully request a pre-motion conference about two discovery disputes on which Plaintiffs and the B/T Defendants[1] are at impasse. *First*, the B/T Defendants refuse to collect and review many internal documents of Stuart Hoegner, who is ███████████████████████████████, made repeated public statements about USDT's purported backing, and serves as Bitfinex's general counsel. *Second*, the B/T Defendants refuse to produce documents from after October 6, 2019, eight months before Plaintiffs filed their Amended Consolidated Class Action Complaint ("CAC") (ECF No. 114).

## I.     The B/T Defendants Must Produce All Of Stuart Hoegner's Relevant Documents

The Court should compel the B/T Defendants to collect and review all of Stuart Hoegner's relevant internal documents. The B/T Defendants have agreed to produce Hoegner's external communications and his internal communications only with their designated custodians, but not with non-custodians. Ex. 7 at 4. When Plaintiffs requested clarification regarding the process by which the B/T Defendants propose to determine which communications count as "internal" and would thus not be reviewed, Ex. 6 at 3, the B/T Defendants refused to clarify their proposal, Ex. 7 at 4.

The B/T Defendants do not, and could not, dispute that Hoegner has engaged in relevant internal communications with non-custodians. Plaintiffs allege that the B/T Defendants participated in a scheme to issue debased USDT, including through false statements to investors that USDT was fully backed by U.S. dollars. CAC ¶¶ 124–34,193–218. Hoegner ████████████ ████████████████████████████████████████████████████████████████ Ex. 8. The New York Attorney General identified him as direct recipient and named account holder of "the vast majority of [Tether's] cash holdings (ostensibly backing USDT)" for significant portions of the Class Period.[2] Furthermore, Hoegner routinely makes public appearances and statements on behalf of the B/T Defendants, often attesting to USDT's backing.[3] Hoegner's internal documents—including any personal notes, draft statements, or discussions regarding the B/T

---

[1] iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Limited, DigFinex Inc., Tether Operations Limited, Tether International Limited, Ludovicus Jan van der Velde, and Giancarlo Devasini.

[2] New York State Office of the Attorney General, *In the Matter of Investigation by Letitia James, Attorney General of the State of New York, of iFinex Inc. et al.* ("NYAG Settlement Agreement"), https://ag.ny.gov/sites/default/files/2021.02.17_-_settlement_agreement_-_execution_version.b-t_signed-c2_oag_signed.pdf.

[3] *CNBC TechCheck with Tether's CTO and General Counsel* (July 21, 2021) https://www.youtube.com/watch?v=ZBEqyiO35cQ&ab_channel=CNBCTelevision; *see also* Zeke Faux, *Anyone Seen Tether's Billions?* (Oct. 7, 2021) https://www.bloomberg.com/news/features/2021-10-07/crypto-mystery-where-s-the-69-billion-backing-the-stablecoin-tether.

Defendants' business activities—are centrally relevant to this case. The B/T Defendants have never asserted that Hoegner's communications with non-custodians are less likely to be relevant than his communications with other custodians.

It is particularly concerning that the B/T Defendants refuse to define how they would implement their proposal. The B/T Defendants' proposal seeks to exclude communications between Hoegner and "the B/T Defendants and their respective officers, directors, agents, attorneys, employees, partners, predecessors, subsidiaries and affiliates." Ex. 5 at 2. But the B/T Defendants have refused to explain how they would apply that definition. Ex. 7 at 4. They could thus unilaterally decide that Hoegner's communications with another individual or entity were "internal," and Plaintiffs would have no way of assessing the basis for that decision.

The B/T Defendants cannot withhold these documents by asserting that "most of [Hoegner's] communications are privileged." Ex. 3 at 2. While he has the title of general counsel, Hoegner was substantially involved in the B/T Defendants' business as one of its ███████ ███ and as a company spokesman. Hoegner's internal title as general counsel does not shield the B/T Defendants from their obligation to review and produce relevant documents unrelated to Hoegner's legal role. *See Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019) ("[I]n light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel, though subject to the attorney-client privilege, must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice."). And there is no reason to believe that Hoegner's communications with non-custodians are any more likely to be privileged than his communications with other custodians, which the B/T Defendants have already agreed to review.

Nor can the B/T Defendants withhold the documents on burden grounds because they refused Plaintiffs' request to quantify the incremental burden of collecting and reviewing Hoegner's internal communications with non-custodians, Ex. 6 at 3, thus waiving any burden objection. *See Zhulinska v. Niyazov L. Grp., P.C.*, 2021 WL 5281115, at *4 (E.D.N.Y. Nov. 12, 2021) (where party has not "performed a search to generate a 'hit report' that reflects the number of [documents] that would have to be reviewed," their "cries of undue burden are purely speculative"); *Fritz v. LVNV Funding, LLC*, 2022 WL 610585, at *3 (E.D.N.Y. Feb. 28, 2022) (compelling production where defendants "failed to offer sufficient specific evidence of their burden to produce" the requested documents); *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 54 (S.D.N.Y. 1994) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence."). And the B/T Defendants cannot complain about any substantial burden from logging Hoegner's truly privileged documents, as the Local Rules allow them to do so categorically in the first instance. *See* Local Civil Rule 26.2(c).

## II.    The B/T Defendants Must Produce Documents From the Relevant Period

The Court should compel the B/T Defendants to produce (1) documents responsive to all requests from a period of February 17, 2015, to June 5, 2020 (when Plaintiffs filed their CAC); and (2) a subset of documents concerning the USDT reserves and the B/T Defendants' transfers of USDT from February 17, 2015, to the present[4]. After four months of extensive discussion and

---

[4] Specifically, Plaintiffs seek through the present documents establishing the amount and contents of the USDT reserve, establishing all direct transfers of USDT from the B/T Defendants to other entities, or concerning relationships in which the B/T Defendants received any asset that is or has been included in the USDT reserve.

numerous attempts by Plaintiffs to reach compromise, the B/T Defendants refuse to produce any documents from after October 6, 2019. Ex. 4 at 3, Ex. 2 at 20, Ex. 5 at 1–2, Ex. 6 at 2, Ex. 7 at 3.

The B/T Defendants' documents from October 6, 2019, to June 5, 2020, are plainly relevant. Plaintiffs allege that the B/T Defendants participated in an ongoing conspiracy to issue debased USDT and use it to manipulate the cryptocommodities market. Among other things, Plaintiffs allege that, after October 6, 2019, (1) Tether issued unbacked USDT, CAC ¶¶ 372–75 (alleging Tether's unbacked issuances continue to the present); (2) the Revised Griffin Article, which presented updated data about the unbacked nature of USDT, was published, *id.* ¶¶ 293–99 (October 28, 2019); and (3) the B/T Defendants and their employees made several public statements about USDT's backing, *id.* ¶ 134 (November 2019); *id.* ¶¶ 493–94 (April 2020). Plaintiffs need relevant documents relating to these allegations, including records of the B/T Defendants' activities and public statements, and their reaction to the Revised Griffin Report—whose authors the B/T Defendants have subpoenaed (Exs. 9, 10), effectively conceding its relevance.

The B/T Defendants' documents regarding USDT reserves and the B/T Defendants' USDT transfers from October 6, 2019, to the present are also clearly relevant. Plaintiffs allege that Tether continues to issue debased USDT. CAC ¶ 375. Since the filing of the Amended Complaint, the B/T Defendants have, by their own public admission, issued tens of billions more USDT than they had at the filing of the CAC.[5] Plaintiffs further allege that USDT remains unbacked, *id.*,[6] and propose a Class Period that runs through the present, *id.* ¶ 17. Documents concerning the USDT reserves and the B/T Defendants USDT transfers go to the heart of these allegations. There is nothing unusual in requesting relevant documents up to the present—the B/T Defendants asked Plaintiffs to produce documents through the present in this very case. Ex. 1 at 3. And courts in the Second Circuit routinely grant requests for discovery that post-date the class period. *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 108 (S.D.N.Y. 2013) (collecting cases noting relevance of post-class period discovery); *In re Allergan PLC Sec. Litig.*, 2020 WL 4034751, at *2 (S.D.N.Y. Mar. 30, 2020) (requiring review of documents seven months after class period, noting "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues").

The B/T Defendants cannot withhold these documents based on burden. They bear the burden of proving that reviewing these documents would be unduly burdensome, *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017), yet they fail to quantify how many additional documents they would need to collect or review. It seems unlikely that they could show burden. Burden is determined in light of the amount in controversy, Fed. R. Civ. P. 26(b)(1), so the substantial potential damages here urge broader discovery. Moreover, the B/T Defendants have agreed to produce over four years' worth of documents, Ex. 7 at 3, and have not explained why producing an additional eight months of such documents, plus a small amount of additional material, would be onerous.

---

[5] *Compare* CAC ¶ 137 (alleging $9.1 billion USDT issued) *with* Tether, *USD₮ – The Blueprint for Private Stablecoins* (June 16, 2022) https://tether.to/en/usdt-the-blueprint-for-private-stablecoins (acknowledging that Tether has issued over $71.5 billion USDT, and thus issued over $50 billion between the filing of the CAC and June 16, 2022).
[6] Since the filing of the CAC, numerous public articles have similarly questioned the backing of USDT. *See, e.g.*, Yaffe-Ballany, David, "The Coin That Could Wreck Crypto" N.Y. TIMES, Jun. 17, 2022 *available at* https://www.nytimes.com/2022/06/17/technology/tether-stablecoin-cryptocurrency.html (noting that Tether's "financial statements show that a significant portion of its reserves are tied up in unsecured corporate debt known as commercial paper" and describing the potential impact of a lack of backing on crypto-asset prices).

Plaintiffs respectfully request a pre-motion conference to discuss these issues.

Respectfully submitted,

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rochefreedman.com
tnormand@rochefreedman.com
vel@rochefreedman.com
jdelich@rochefreedman.com

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com
kbates@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*