

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 2, 2022

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We write on behalf of Defendants iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Limited, DigFinex Inc., Tether Operations Limited, Tether International Limited, Ludovicus Jan van der Velde and Giancarlo Devasini (the "B/T Defendants") in response to Plaintiffs' request for a pre-motion conference regarding two discovery disputes.

The B/T Defendants have made reasonable proposals with respect to both issues: (*i*) offering a reasonable compromise with respect to the review of the documents of Stuart Hoegner, the General Counsel of Tether and Bitfinex, and (*ii*) agreeing to produce documents created on or before the filing of this lawsuit on October 6, 2019 – a cut-off date that is months, if not years, after the alleged misconduct at issue.

Plaintiffs' letter also highlights the fact that it is no longer possible for document production to be substantially completed by the August 22, 2022 deadline set by the Court in its November 22, 2021 Scheduling Order.  We address this issue below as well.

> **I.    The B/T Defendants Offered a Reasonable Compromise for General Counsel Stuart Hoegner's Documents.**

Seeking to include a company's general counsel, who routinely engages in privileged communications, as a document custodian necessarily imposes the substantial burden of reviewing the lawyer's documents, making privilege determinations and describing those documents on a privilege log.  For this reason, courts often reject requests to add general counsels and other in-house lawyers as document custodians.  *See*, *e.g.*, *SEC v. Ripple Labs, Inc.*, 20 Civ. 10832, Dkt. No. 249 at 2 (S.D.N.Y. June 15, 2021) (rejecting the SEC's request to include in-house lawyers as document custodians as "highly burdensome, likely to be mostly privileged communications, and unreasonably cumulative or duplicative of searches already performed"); *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 813481, at *5 (S.D.N.Y. Feb. 28, 2011) (finding that, notwithstanding "potential relevance," the inclusion of in-house lawyers as custodians would be "tremendously burdensome" because "many of the communications" are "likely to need to be listed in a privilege log rather than be produced").

When Plaintiffs insisted that Stuart Hoegner, the General Counsel of Bitfinex and Tether, be included as a document custodian, the B/T Defendants offered a reasonable compromise

The Honorable Katherine Polk Failla    2    August 2, 2022

designed to provide Plaintiffs with the overwhelming majority of Mr. Hoegner's non-privileged communications, without unnecessarily imposing the burden of reviewing and logging a substantial number of privileged communications. Specifically, the B/T Defendants agreed to include Mr. Hoegner as a document custodian to the extent that his communications involved a third party – *i.e.*, a person or entity other than the B/T Defendants and their respective officers, directors, agents, employees, partners, predecessors, subsidiaries and affiliates. That is in addition to the production of (*i*) communications involving Mr. Hoegner that are already included in the review of documents from the *fourteen* other custodians to which the B/T Defendants agreed, which include the companies' senior executives, and (*ii*) *thousands* of communications involving Mr. Hoegner that were previously produced to government regulators. (Dkt. Nos. 220-5 at 2-4, 220-7 at 4.) *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (party seeking additional custodians "must demonstrate that the additional requested custodians would provide *unique* relevant information not already obtained") (emphasis in original).

Plaintiffs' expression of concern, made for the first time in their pre-motion letter, regarding the vagueness of the phrase "the B/T Defendants and their respective officers, directors, agents, attorneys, employees, partners, predecessors, subsidiaries and affiliates" is surprising given that Plaintiffs themselves drafted that language to define "Bitfinex" and "Tether" in their document requests. If it would alleviate Plaintiffs' purported concern, the B/T Defendants would be happy to remove the terms "agents" and "partners."

Nor can Plaintiffs justify their request on the basis that Mr. Hoegner occasionally makes public statements or enters into transactions on behalf of the B/T Defendants, or that he holds an equity interest in certain of the B/T Defendants. (Dkt. 219 at 1-2.) Those activities are not unusual for a company's general counsel and, more importantly, do not suggest that Mr. Hoegner's internal communications with non-custodians contain unique, relevant, non-privileged information that is not already contained in the documents that the B/T Defendants have agreed to review.

## II.    The B/T Defendants Offered a Reasonable Time Period.

The B/T Defendants have agreed to produce documents for the time period of February 17, 2015 through October 6, 2019, the date on which this action was commenced. This proposal is more than generous, as it includes a period of more than 4.5 years and extends months, if not years, beyond the alleged misconduct. As the Court summarized, the "crux" of the CAC is that the B/T Defendants allegedly created USDT that was "completely unbacked," transferred to cryptocurrency exchanges, and used to create a "cryptocommodity bubble" that "crashed" in 2018. (Opinion & Order, Dkt. No. 182 at 15-17.)

Plaintiffs seek to extend the end date for document production to June 5, 2020 and, for certain broad categories of documents, "to the present." (Dkt. 219 at 2.) Plaintiffs are unable to provide any factual basis for that request, which violates the cardinal principle that "discovery may not be used as a fishing expedition to discover additional instances of wrongdoing beyond those already alleged." *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 2015 WL 13649823, at *2 (S.D.N.Y. July 29, 2015).

The Honorable Katherine Polk Failla                 3                           August 2, 2022

The allegations cited by Plaintiffs do not include any facts suggesting that the alleged misconduct underlying their claims is ongoing.  Paragraphs 372-374 of the CAC allege only that Tether continues to issue USDT, that Tether stated that the growth of USDT was in response to an "opportunity for big institutions and funds to make money," and that Tether surpassed a market capitalization of $5 billion.  Plaintiffs also note that the "Griffin Article," which forms the basis of their market manipulation claims, was revised in late October 2019, but that article analyzed trading that occurred between March 2017 and March 2018.  (CAC ¶¶ 282, 293.)  Plaintiffs' other cited allegations are purely conclusory, lack any supporting factual allegations and do not justify continuing discovery beyond the filing of this lawsuit.  (CAC ¶¶ 134, 375, 493-94.)  *See Novartis*, 2015 WL 13649823, at *3 (rejecting request to extend time period for discovery in the absence of "specific allegations of illegal conduct").

Although the B/T Defendants, in the interest of compromise, have repeatedly expressed their willingness to consider a request for the production of a limited category of documents post-dating the commencement of litigation, Plaintiffs' request for all documents to the present – another 2.5 years – regarding USDT reserves, transfers of USDT, and "relationships in which the B/T Defendants received any asset that is or has been included in the USDT reserve" is wholly unwarranted. (Dkt. No. 219 at 2 n.4)  The current reserves backing USDT are not relevant to Plaintiffs' claims, and the requested category of documents is not limited, as issuing and transferring USDT comprise a large part of the B/T Defendants' business.

### III. Status of Discovery.

As noted above, the issues Plaintiffs raise regarding the scope of document collection and review highlight the fact that document production cannot be substantially completed by the current deadline of August 22, 2022.  We have reached out to Plaintiffs' counsel to discuss the schedule, with the goal of submitting a joint proposal to extend this deadline without impacting the overall case schedule.

Although the parties have yet to reach complete agreement on the relevant time period, custodians and search terms, they have reached agreement on other important issues, such as the scope of production of documents previously produced to certain government regulators.  The production of those documents has begun, will be substantially completed by the August 22, 2022 deadline and is estimated to include approximately 150,000 documents.

We will continue to work with Plaintiffs to complete document discovery as soon as practicable.

Respectfully submitted,

/s/ Elliot Greenfield


cc:  Counsel of record (via ECF)