# Exhibit 3

ROCHE FREEDMAN

March 22, 2022

**Via Email**

Mr. Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
aceresney@debevoise.com

Ms. Sunjina K. Ahuja
DILLON MILLER AHUJA & BOSS LLP
5872 Owens Ave., Suite 200
Carlsbad, California 92008
sahuja@dmablaw.com

Mr. Michael Jason Lee
LAW OFFICES OF MICHAEL JASON LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
michael@mjllaw.com

**Re: *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-CV-09236**

Dear Counsel:

Plaintiffs write to meet and confer with Defendants regarding Defendants' Responses and Objections to Plaintiffs' First Requests for Production of Documents ("Plaintiffs' RFPs") and Plaintiffs' Responses and Objections to B/T Defendants' First Set of Requests for Production of Documents to Plaintiffs ("Defendants' RFPs"). Please advise of your availability this week for a telephonic meet and confer.

For purposes of this letter, "B/T Defendants" are Defendants iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Limited, DigFinex Inc., Tether Operations Limited, Tether International Limited, Ludovicus Jan van der Velde, and Giancarlo Devasini; "Poloniex" is Defendant Poloniex LLC; "Bittrex" is Defendant Bittrex, Inc.; "Potter" is Defendant Philip G. Potter.

**A. Plaintiffs' Discovery Requests**

The B/T Defendants' Responses and Objections to Plaintiffs' discovery requests are incomplete, inappropriate, and unavailing in terms of their ability to survive a discovery dispute should Plaintiffs be forced to seek court intervention. Plaintiffs wish to meet and confer to resolve these disputes amicably with priority given to the issues described below. As a threshold matter, the B/T Defendants have failed to indicate in their responses when they will make their

productions, as required under Federal Rule of Civil Procedure 34(b)(2)(B).[1] Please let us know when we can expect the B/T Defendants to begin their productions.

**1. Time Period**

Plaintiffs' discovery requests concern the time period beginning on July 1, 2014, through the present date. The B/T Defendants refuse to produce any documents dated before February 17, 2015 and refuse to produce documents created after the "close" of the Class Period. The B/T Defendants' attempt to artificially impose an end-date on discovery by refusing to produce documents created after the Class Period is improper because Plaintiffs allege that the B/T Defendants' wrongdoing is ongoing. *See* Complaint ("CAC"), ECF No. 114 (identifying the Class Period as "February 17, 2015 to the present").

Courts in this District routinely interpret similar language to indicate that the close of a Class Period will take place at some later date, often the grant of class certification in the class action context. *See Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 9227, 2018 U.S. Dist. LEXIS 131870, at *7 (S.D.N.Y. Aug. 6, 2018) (discussing mechanisms and timing for closing open-ended Class Periods).

Likewise, the B/T Defendants' attempt to limit discovery to documents created before the Class Period is improper. Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *See In re Allergan PLC Sec. Litig*., No. 18 Civ. 12089, 2020 U.S. Dist. LEXIS 56164 (S.D.N.Y. Mar. 30, 2020); *see generally In re Scholastic Corp. Sec. Litig*., 252 F.3d 63, 72 (2d Cir. 2001) (pre- and post-class period information is relevant in assessing what a defendant did or should have known during the class period).

An earlier time period for document production than the start of the Class Period is warranted here because Plaintiffs allege that the B/T Defendants have issued USDT, or "tether" cryptocurrency, since October 6, 2014, and may compare these early USDT issuances to later periods. ECF No. 114 at ¶¶ 123-24.

**2. Defendants' "Undue Burden" Objections**

The B/T Defendants assert numerous overbreadth and burden objections to Plaintiffs' RFPs. For example, the B/T Defendants have agreed to produce "documents sufficient to show any inquiry [they have] received from a governmental entity about USDT, Tether, or Bitfinex to the extent permissible by law and regulation." Plaintiffs agree that this is the subject matter covered by RFP No. 1 and wish to discuss the applicable "law and regulation," if any, with the B/T Defendants. To the extent that any documents were produced to any governmental entity, there can be no claim of burden as those documents have already been reviewed and determined to be non-privileged. These requests were designed to enable straightforward productions of previously produced documents without the need for additional review. Indeed, the ESI Protocol, agreed to

[1] "[R]esponses to discovery requests must: [1] State grounds for objections with specificity; [2] An objection must state whether any responsive materials are being withheld on the basis of that objection; and [3] Specify the time for production and, if a rolling production, when production will begin and when it will be concluded." *CBF Industria De Gusa S/A v. AMCI, Holdings*, No. 13 Civ. 2581, 2019 U.S. Dist. LEXIS 124326, at *30 (S.D.N.Y. July 15, 2019).

at the B/T Defendants' request, contains a provision specifically allowing such documents to "be produced in the same format in which they originally were produced or prepared for production" in a previous litigation or investigation. *See* ECF No. 198 ¶ V.A.

The B/T Defendants fail to substantiate their "undue burden" objections with details showing either that Plaintiffs' RFPs are overbroad, or that the B/T Defendants would be unduly burdened. "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 07888, 2003 U.S. Dist. LEXIS 19084, at *4 (S.D.N.Y. Oct. 22, 2003). "[W]here a party resists discovery of certain information, the burden is on that party to clarify and explain precisely why its objections are proper." *Id.*[2] The party objecting to a discovery request must describe the burden of responding to the request by "submitting affidavits or offering evidence revealing the nature of the burden." *Fritz v. LVNV Funding, LLC*, 19 Civ. 05255, 2022 U.S. Dist. LEXIS 36669, at *6 (E.D.N.Y. Feb. 28, 2022) (citing *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014)). "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether [they are] kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003).

Plaintiffs are entitled to discovery of documents in the "possession, custody or control" of the B/T Defendants when the documents are "relevant to any party's claim or defense and proportional to the needs of the case." *See Precision Med. Grp., LLC v. Blue Matter, LLC*, No. 20 Civ. 2974, 2020 U.S. Dist. LEXIS 235407, at *2-*3 (S.D.N.Y. Dec. 15, 2020). Proportionality is generally determined with respect to the amount at issue in the litigation and its complexity; the substantial asset bubble created here and the complexity of issues in this antitrust litigation both weigh in favor of proportionality. *See* Fed. R. Civ. P. 26(b)(1).

Likewise, courts have held that an objection that does not appropriately explain its grounds is forfeited. *See, e.g.*, *Fischer v. Forrest*, No. 14 Civ. 01304, 2017 U.S. Dist. LEXIS 28102, at *5-*9 (S.D.N.Y. Feb. 28, 2017) ("[A]ny discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)."); *see also Wesley Corp. v. Zoom T.V. Prods., LLC*, No. 17 Civ. 10021, 2018 U.S. Dist. LEXIS 5068, at *4 (E.D. Mich. Jan. 11, 2018).

**3. Defendants' "Vague and Ambiguous" Objections**

The B/T Defendants raise numerous objections to Plaintiffs' Requests on the basis of ambiguity and vagueness. Objections on these bases are insufficient to justify the B/T Defendants' withholding of relevant documents, particularly where the objecting party has an opportunity to alleviate the alleged ambiguity through communication with opposing counsel. *See Wang v. Omni Hotels Mgmt. Corp.*, No. 18 Civ. 2000, 2021 U.S. Dist. LEXIS 238424, at *26 (D. Conn. Dec. 14,

---

[2] *See also Winfield v. City of New York*, No. 15 Civ. 05236, 2018 U.S. Dist. LEXIS 16807, at *4 (S.D.N.Y. Feb. 1, 2018) ("The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive.").

2021) (overruling defendants' vagueness and ambiguity objections, and noting discovery is not the place for overly nuanced, metaphysical distinctions).

A party that objects to discovery as vague or ambiguous bears the burden to show such vagueness or ambiguity. *See Mollica v. Cty. of Sacramento*, No. 19 Civ. 2017, 2021 U.S. Dist. LEXIS 111271, at *3 (E.D. Cal. June 14, 2021) (citations omitted). "The responding party should exercise common sense and attribute ordinary definitions to the terms in discovery requests." *Id.* (citations and quotations omitted). As a threshold matter, the B/T Defendants do not explain what is vague or ambiguous about these discovery requests, as they fail to explain how, despite any good faith efforts, this causes them difficulty in framing an intelligent response. Accordingly, the B/T Defendants have not carried their burden. *See Montgomery v. Wal-Mart Stores, Inc.*, No. 12 Civ. 3057, 2015 U.S. Dist. LEXIS 191953, at *9 n.1 (S.D. Cal. Sept. 4, 2015) (noting that a vagueness objection will be overruled where the interrogatory is not so vague and ambiguous as to preclude the responding party from providing an "intelligent response.").

Plaintiffs are willing to meet and confer to the extent the B/T Defendants contend they do not understand terms or certain requests.

**4. Defendants' Relevance Objections**

As to relevance, the B/T Defendants' objections are particularly improper. As the B/T Defendants are undoubtedly aware, relevance for the purposes of discovery is an "an extremely broad concept." *Zanowic v. Reno*, No. 97 Civ. 5292, 2000 U.S. Dist. LEXIS 13845, at *2 (S.D.N.Y. Sept. 25, 2000) (collecting cases). Plaintiffs want to know, for example, whether the B/T Defendants participated in any investigation concerning Tether, Bitfinex, or USDT. Such documents would relate, for example, to the B/T Defendants' state of mind, which is an element of the antitrust claims alleged against the B/T Defendants.

Subject to the ESI collection and preservation questions below, Plaintiffs propose that the B/T Defendants run searches of ESI based on search terms identified by Plaintiffs. Any undue burden or overbreadth concerns are better addressed after this process is complete, when the B/T Defendants have a concrete and particularized number of documents to be produced, as well as a basis for a cost estimate for production.

Many of Plaintiffs' requests relate to discrete topics, such as various persons and subjects of interest among crypto asset investors, as well discussion of markets for crypto assets. These requests are especially appropriate for custodial ESI searches. Plaintiffs will provide a complete list of search terms and the Requests to which they pertain.

**5. Defendants' Assertions of Confidentiality and Privilege**

To the extent the B/T Defendants intend to withhold documents relevant and responsive to Plaintiffs' requests, the B/T Defendants must identify and describe the nature of those documents in a privilege log to enable Plaintiffs to assess the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5); *see also FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700, 2005 U.S. Dist. LEXIS 3523, at *14-*15 (S.D.N.Y. Mar. 7, 2005) (holding that "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege").

To the extent Defendants seek to withhold responsive internal reports, investigative and analytical materials on the basis on privilege, Plaintiffs note that "[i]nvestigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc*., 331 F.R.D. 218, 230 (E.D.N.Y. 2019); *see also OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 U.S. Dist. LEXIS 90970, at *12-*15 (S.D.N.Y. Dec. 15, 2006).

**6. Search Terms and ESI Protocol**

For the RFPs that will include the production of ESI, Plaintiffs would like to discuss with Defendants the following questions:

a. What time periods did Defendants use for the collection of ESI?

b. When did Defendants first begin to preserve ESI, and for what time periods?

c. What measures did Defendants take to preserve ESI?

d. What custodians did Defendants use in collecting ESI?

e. What sources did Defendants search in their collection of ESI, including:

   i. Computer servers;

   ii. Devices (such as computers, smart phones, tablets); and

   iii. "Back up" media

f. Was any source of ESI inaccessible? If so, please explain.

g. Are Defendants aware of any source of ESI that has been destroyed? If so, when was such destruction?

h. What volume of ESI was collected for each Defendant?

**7. The B/T Defendants' Specific Objections to Requests for Production**

**a. Requests Concerning the B/T Defendants' Collateral, Reserves, Financing Efforts and Holdings of Crypto Assets**. Plaintiffs have made multiple requests focused on the core allegation that USDT is "backed 1-to-1" by reserves such as "traditional currency." CAC ¶¶ 131-32, 147-49, 166. The B/T Defendants have refused to produce any documents concerning their liquid reserves sought by RFP Nos. 7, 11, 14, 29, 69-71.

To that end, RFP Nos. 7, 11, and 14 directly seek this information, "including bank balances for fiat currency reserves backing USDT."[3] This information is unquestionably relevant,

[3] The B/T Defendants have agreed to produce "USDT reserves" in response to RFP Nos. 31 and 32. Plaintiffs seek to understand what assets and accounts will be included within the scope of the B/T Defendants' production to these requests.

and the documents requested by these RFPs should be readily available without the need to conduct an extensive search.

With respect to the B/T Defendants' objections to RFP Nos. 70 and 71, concerning financing and loans, Plaintiffs seek information regarding any representations made by the B/T Defendants regarding their holdings of currency (or similarly liquid assets) in any such actual or contemplated transaction.[4] The B/T Defendants' financial statements (sought by RFP No. 29) are also directly relevant to the question of whether the B/T Defendants had the requisite cash reserves they claimed.

In the event the B/T Defendants will claim in this litigation that USDT is backed by some asset other than "traditional" currency reserve, Plaintiffs made requests concerning these assets in RFP No. 69. It is Plaintiffs' position that nothing but the type of liquid reserves the B/T Defendants claimed they had counts for purposes of the claim Tether was "1 to 1 backed." Should the B/T Defendants stipulate that these alterative holdings are irrelevant, Plaintiffs will withdraw RFP No. 69.

**b. Requests Concerning Historical Exchange Volume, Fees, and Profits**. Plaintiffs have requested historic data concerning trading on exchanges relevant to provide context to Plaintiffs' allegations that the B/T Defendants' USDT transactions are manipulative. B/T Defendants have objected to these requests. *See* B/T Defendants' Resp. & Obj'ns to Plaintiffs' RFP Nos. 24-26. These requests are fundamental to Plaintiffs' understanding of the B/T Defendants' transactions made through private arrangement platforms or through exchanges and are necessary to provide context to the manipulative trading Plaintiffs allege took place here.

**c. Requests for Information Related to Owners of Specified Accounts and Their Trading Activity**. The B/T Defendants object to the production of any documents or information related to certain named individuals and corporate entities alleged to have been involved in the challenged manipulation scheme. *See* B/T Defendants' Resp. & Obj'ns to Plaintiffs' RFP Nos. 36, 38-51. In support of these objections, the B/T Defendants, without specification, raise prior general objections to relevance, proportionality, and burden. Documents relating to transactions and communications between the B/T Defendants and the identified entities are central to Plaintiffs' claims as they relate to the identity of sources, recipients, and actors involved in the trading activity Plaintiffs allege to be manipulative.

**d. Requests Concerning Accounts Defendants Own or Control and Investment Activity**. The B/T Defendants have largely refused to produce documents concerning their own trading activity, including identification of accounts that would show whether they were profiting from or contributing investments into the very manipulation scheme that injured Plaintiffs. *See* B/T Defendants' Resp. & Obj'ns to Plaintiffs' RFP Nos. 21-26, 69-71, 72, 74.

Plaintiffs allege that the B/T Defendants, "[k]eeping their identities secret, … made massive, carefully timed purchases of cryptocommodities to signal to the market that there was enormous demand and thus cause the price of those commodities to spike." CAC ¶ 3. The B/T Defendants issued USDT through Bitfinex to accounts they controlled. *Id.* at ¶ 194. The requested

[4] These materials likely also concern relevant markets, as well as the B/T Defendants' market share.

discovery is relevant to and reasonably calculated to lead to relevant information regarding the identification of accounts involved in USDT trading, investments made into other crypto-asset companies, and additional information supporting Plaintiffs' allegations of manipulation. The identification of accounts and transactional history are thus directly relevant to Plaintiffs' allegations that the B/T Defendants used USDT issuances to manipulate crypto asset prices.

**e. Requests Related to Relevant Articles and Studies Conducted**. The B/T Defendants refuse to produce documents in response to RFP Nos. 52-57, seeking all documents related to various market studies, and the B/T Defendants' analyses or assessments thereof. These documents are pertinent to the B/T Defendants' operations which Plaintiffs allege fostered an environment ripe for abuse and provide necessary context for conduct exhibited by the B/T Defendants that reflected or referenced the type of fraudulent activity reported and/or analyzed in the identified studies and articles. Accordingly, withholding responsive documents on the bases asserted is improper.

**f. Plaintiffs' RFP No. 3**. The B/T Defendants specifically object to RFP No. 3, which seeks documents obtained from any application made under 28 U.S.C. § 1782 on the basis that the racketeering allegations related to Defendant Crypto Capital and Defendant Fowler have been dismissed. Notwithstanding the dismissal of the racketeering claim, the requested documentation is relevant to the remaining allegations and thus, discoverable. *See Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009) ("Relevance under Federal Rule of Civil Procedure 26(b)(1) has been construed broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").

Further, the Court acknowledged that the facts underlying the racketeering allegations arose from the same conduct alleged in the Complaint, and bear on the subject matter at issue in this case. *See* Opinion and Order, ECF No. 182 at 97 ("The Court pauses briefly to note that all of the predicate racketeering acts alleged here — wire fraud, money laundering, bank fraud, unlawful money transactions, and operation of unlicensed money transmitting businesses — arise out of essentially the same related conduct: covering up the unbacked nature of USDT by circumventing U.S. banking regulations (bank fraud and operation of unlicensed money transmitting businesses), and then using that unbacked USDT to purchase crypto commodities (money laundering, wire fraud, and unlawful money transactions"). Accordingly, the B/T Defendants must produce documents responsive to RFP No. 3 as they are relevant to the subject matter at issue in the case.

**g. Plaintiffs' RFP No. 11**. Documents related to any audits of the B/T Defendants, USDT, or USDT reserves and any giveaways or burning of USDT are central to the veracity of the B/T Defendants' assertions that, at all relevant times, USDT was backed 1-to-1 by traditional currency and Plaintiffs' allegations that the B/T Defendants engaged in conduct to manipulate the cryptocurrency market. The B/T Defendants must articulate with specificity the basis of its objections, or otherwise produce responsive documents.

**h. Plaintiffs' RFP No. 20.** Documents responsive to RFP No. 20 must also be produced as the requested information relates to information pertaining to the B/T Defendants' publicly available statements regarding USDT and USDT reserves, *inter alia*, upon which Plaintiffs and other consumers detrimentally relied. If the B/T Defendants have a substantiated

basis to withhold responsive information, please state so, and if not, produce responsive documents.

i. **Plaintiffs' RFP No. 28.** The B/T Defendants refuse to produce documents "relating to the Specified Blockchain Addresses or the Owners" as defined in Plaintiffs' RFPs at ¶ 17. In addition to their general relevance objections, the B/T Defendants cite the public availability of the information sought as their basis to withhold production. Plaintiffs, however, are entitled to the production of all relevant and responsive documents in the custody, control, and possession of the B/T Defendants irrespective of potential alternative sources for acquiring the information. *See Land Ocean Logistics, Inc. v. Aqua Gulf Corp*., 181 F.R.D. 229, 240 (W.D.N.Y. 1998) (finding that the "requested party must provide relevant discovery regardless of whether it is already available to the requesting party"). To the extent the B/T Defendants are in possession of responsive documents, they must be produced.

j. **Plaintiffs' RFP No. 34.** Documents responsive to RFP No. 34 are indisputably relevant, as they bear on the B/T Defendants' operational diligence in identifying, resolving, and/or failing to identify or resolve any conflict of interests relating to any other Defendants. RFP No. 34 is sufficiently particularized; Plaintiffs are not obligated to identify a specific conflict of interest to trigger the B/T Defendants' reasonable search for and production of relevant and responsive documents.

k. **Plaintiffs' RFP No. 35.** Documents relating to the August 2016 Bitfinex hack are also subject to discovery as they relate to the B/T Defendants' conduct and operations during the relevant class period, the B/T Defendants' assets, and are reasonably calculated to lead to documents relevant to the manipulation scheme alleged by Plaintiffs. The B/T Defendants must produce documents responsive to RFP No. 35.

## B. Defendants' Forthcoming Production of Documents

The B/T Defendants have agreed to produce documents in response to Plaintiffs' RFP Nos. 4, 5, 6, 10, 12, 13, 14, 15, 16, 17, 18, 19, 21, 27, 30, 31, 32, 33, 59, 60, 61, 62, 64, 65, 66, 67, and 68. Again, please confirm a date when Plaintiffs may expect to receive this production.

## C. Plaintiffs' Productions in Response to the B/T Defendants' RFPs

Plaintiffs are happy to discuss their objections to the B/T Defendants' RFPs. Plaintiffs have been collecting electronically stored information ("ESI") and other documents in response to the B/T Defendants' RFPs. As the amount of ESI Plaintiffs have collected is voluminous, and not all of the ESI collected will be responsive to any of the B/T Defendants' RFPs, Plaintiffs propose that the Parties agree to a set of search terms to be applied to the ESI collected by Plaintiffs. Use of search terms is widely accepted in litigation as a way of streamlining discovery and lessening burdens on both the producing and requesting party.[5]

[5] "Courts expect that counsel will endeavor to cooperate and reach agreements early in litigation regarding the scope of preservation; the scope of search efforts (custodians, date ranges, sources); the method of search (keyword, TAR, combination); the form (or forms) of production (including what metadata will be produced and how ESI from structured databases may be

**D. Reservation of Other Issues**

Plaintiffs have identified the foregoing issues that they wish to discuss with the B/T Defendants, without prejudice to their ability to raise additional issues regarding the B/T Defendants' Responses and Objections or other discovery requested by Plaintiffs.

Please let us know your availability this week to discuss these issues. The Parties should reserve two (2) hours to accommodate discussion of the issues raised here. Thank you for your immediate attention to this matter.

Regards,

*<u>/s/ Kyle W. Roche</u>*
Kyle W. Roche
Edward Normand
Velvel Freedman
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rochefreedman.com
tnormand@rochefreedman.com
vel@rochefreedman.com
jdelich@rochefreedman.com

Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBER PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

Todd M. Schneider
Jason H. Kim
Matthew S. Weiler
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608

---

produced." *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. LLC*, No. 16 Civ. 81180, 2017 U.S. Dist. LEXIS 174454, at *13 (S.D. Fla. Oct. 20, 2017) (quoting The Federal Judges' Guide to Discovery, Edition 3.0, The Electronic Discovery Institute (2017), at 50).

tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

Cc: All counsel for the B/T Defendants