# Exhibit 6

RF **ROCHE FREEDMAN**

May 6, 2022

<u>Via Email</u>
Mr. Elliot Greenfield
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
egreenfield@debevoise.com

Ms. Sunjina K. Ahuja
DILLON MILLER & AHUJA LLP
5872 Owens Ave., Suite 200
Carlsbad, California 92008
sahuja@dmablaw.com

Mr. Michael Jason Lee
LAW OFFICES OF MICHAEL
JASON LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
michael@mjllaw.com

Re:     *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-CV-09236

Dear Elliot:

        Plaintiffs write in response to B/T Defendants' April 28, 2022 letter outlining their positions on certain discovery topics raised during the parties' March 31 and April 8 meet and confers. Plaintiffs address each of B/T Defendants' topics as well as several others in preparation for a third meet and confer with B/T Defendants on May 11, 2022.  Plaintiffs reserve all rights to raise any additional discovery issues prior to the close of discovery.

        As a threshold matter, Plaintiffs note that the scope of discovery in the Southern District of New York is broad. *See generally Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 620 (2d Cir. 2018) (recognizing the "extremely broad" discovery permitted by the Federal Rules of Civil Procedure). Under Federal Rule of Civil Procedure 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for the purpose of discovery, is an extremely broad concept." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488, 2017 U.S. Dist. LEXIS 173403, at *2 (S.D.N.Y. Oct. 19, 2017) (internal quotation and citation omitted).

**I.      B/T Defendants' Custodians and Search Terms**

        Plaintiffs have reviewed B/T Defendants' proposal and agree that the individuals identified are appropriate custodians, subject to further discussions, but disagree to the extent B/T Defendants attempt to limit the number of custodians to eight (8) unilaterally selected individuals.  Plaintiffs

will not, at this stage, agree to limit the number of custodians, given that the allegations concern at least a seven-year period. Plaintiffs request that B/T Defendants produce their organizational charts so that Plaintiffs may review and identify individuals likely to have relevant information, including lower-level employees. In addition, please answer the following questions:

(1) How long has Amy Churchill been Director of Finance?

(2) Who was the Director of Finance before Ms. Churchill?

(3) Is the Director of Finance the chief financial officer for the B/T Defendants?

(4) How long has Salvano Di Stefano been CIO?

(5) Who was CIO before Mr. Di Stefano?

(6) What are the employment dates for each custodian proposed by B/T Defendants?

Additionally, until Plaintiffs receive organizational charts, we propose the following two additional custodians based on information alleged in the Amended Class Action Complaint: Paolo Ardoino and Stuart Hoegner (in his capacity as shareholder of Digfinex).

A set of search terms Plaintiffs propose to be run by B/T Defendants on the data collected by the above custodians will follow prior to the May 11 meet and confer. These terms are narrowly tailored to the relevant subject matter and the underlying claims and defenses alleged in the Amended Class Action Complaint and Answer.

## II.     ESI

Prior to production, Plaintiffs request that B/T Defendants identify its document collection protocol. Plaintiffs also request that B/T Defendants provide an overview of the categories of sources from which documents and other responsive materials will be collected so that Plaintiffs may ensure B/T Defendants' production is comprehensive and fulsome. Should B/T Defendants object to a discussion of its review protocol, Plaintiffs may be forced to notice a Federal Rule 30(b)(6) deposition on ESI for the B/T Defendants.

## III.    B/T Defendants' Responses to Certain Requests for Production

### a.   RFP Nos. 1-2

At this time, Plaintiffs cannot agree to limit RFP No. 1 requesting all documents related to investigations conducted by government entities against B/T Defendants as proposed in B/T Defendants' letter. However, Plaintiffs are open to considering an amendment to RFP No. 1 after receipt of B/T Defendants' response to Plaintiffs' Interrogatory No. 13, served on B/T Defendants on May 6, 2022.

With respect to RFP No. 2, Plaintiffs agree to B/T Defendants' proposal in part. Plaintiffs will agree to revise RFP No. 2 as follows:

All Documents You provided to the U.S. Commodity Futures Trading Commission (CFTC), the U.S. Department of Justice (DOJ), the NY State Office of the Attorney General (NYAG), and the U.S. Securities Exchange Committee (SEC) relating to the subject matter of the Amended Class Action Complaint, including but not limited to, reserves, collateral, and backing (fiat or otherwise) of USDT; accounts/financial institutions in which USDT reserves were deposited or held; the issuance, authorization, redemption, loaning, gifting, and destruction of USDT by You, including the amount of USDT issued, authorized, redeemed, loaned, gifted, and destroyed; accounts, wallets, and blockchain addresses owned by B/T Defendants, including records of all transaction, including withdrawals and deposits; loans, lines of credit, or agreements for future payment in exchange for USDT involving B/T Defendants; internal and external audits and reports relating to the use of USDT and USDT reserves and backing; document retention policies and guidelines; and documents and communications relating to other Defendants, Specified Blockchain Addresses[1], Specified Individuals/Entities[2], and the Anonymous Trader.

### b.   RFP Nos. 8-10

Plaintiffs agree that any outstanding dispute regarding the scope of RFP Nos. 8-10 can be addressed during the parties' negotiation over Plaintiffs' proposed search terms, but do not agree to limit the scope of the requests to B/T Defendants' listed topics. Plaintiffs have crafted tailored search terms to reach relevant communications related to the subject matter of this action. If after review of Plaintiffs' proposed search terms, dispute remains regarding the scope of RFP Nos. 8-10, Plaintiffs are open to further discussion regarding B/T Defendants' position.

Plaintiffs will agree to B/T Defendants' revised definition of "Individual Defendant" to exclude Ludovicus Jan ver der Velde and Giancarlo Devasini for the purpose of RFP No. 8.

### c.   RFP Nos. 3, 4, 11, 20, 35, and 59

Plaintiffs agree to B/T Defendants' proposals regarding RFP Nos. 3, 4, 11, 35, and 59.

### d.   RFP Nos. 29 and 31

Plaintiffs maintain their position as articulated during the parties' meet and confer regarding the financial records of B/T Defendants. These financial records, including documents sufficient to show B/T Defendants' profits and losses and cash flow during the relevant time period, are relevant to the alleged scheme of market manipulation for personal gain, and USDT's alleged "1-to-1" backing. Plaintiffs are willing to review a sample production responsive to RFP Nos. 29 and 31 to determine whether any dispute remains regarding the scope of these requests.

---

[1] The term "Specified Blockchain Addresses" shall have the same meaning as defined in ¶17 of the Definitions in Plaintiffs' First Set of Requests for Production of Documents on the B/T Defendants.

[2] The terms "Specified Individuals/Entities" and "Specified Individual/Entity" refer to the individuals and entities identified in Plaintiffs' RFP Nos. 27, 36, and 38-51.

### e.   RFP No. 34

Plaintiffs do not agree to limit RFP No. 34 to documents relating to conflicts of interest between Bitfinex and Tether. Based on the representations of defense counsel during the parties' meet and confers, little to no burden is associated with the use of tailored search terms to reach documents related to any conflict of interest identified by B/T Defendants in correspondence to or in communication with any Defendant. Plaintiffs, having clarified the meaning of "conflict of interest," have not been presented with any justification for the limitation proposed by B/T Defendants. Further, conflicts of interest with all Defendants are relevant to Plaintiffs' allegations that B/T Defendants failed to operate their business with the appropriate oversights.

### f.   RFP No. 37

While Plaintiffs will not agree to narrow the scope of RFP No. 37 to loan agreements, letters of credit, lines of credits or advancements between Bitfinex and Tether, Plaintiffs will agree to the following revised request: "Documents relating to all loans of USDT by You, including the amount of USDT loaned, the identity of the recipient of the loan, and the amount and type of collateral received in exchange for the loan, to any Defendant, Specified Individual/Entity, and Anonymous Trader.

### IV.   Plaintiffs' Revised RFP Nos. 7, 58, 61, 62, 63, and 64

In response to information provided by B/T Defendants and in furtherance of Plaintiffs' continued effort to resolve outstanding disputes, Plaintiffs propose the following revisions to certain RFPs:

a. **Revised RFP No. 7**: Documents sufficient to show the collateral or backing received for each issuance of USDT.

b. **Revised RFP No. 58**: All Documents relating to any posts from any social media account registered to You or Your executives relating to the transfer, issuance, backing, and sale of USDT.

c. **Revised RFP No. 61:** All Documents relating to Your use of the cryptocommodity exchanges or accounts of any U.S. Exchange Defendant for the transfer of newly issued USDT, either directly or indirectly, from Bitfinex to any U.S. Exchange Defendant.

d. **Revised RFP No. 62:** All Documents relating to any agreement or arrangement entered into between You and any U.S. Exchange Defendant relating to the issuance or transfer of new USDT using any cryptocommodity exchanges or accounts owned by any U.S. Exchange Defendant.

e. **Revised RFP No. 63**: All Documents relating to any business strategy, plan, or directive relating to the timing of issuance or transfer of USDT to any U.S. Exchange Defendant for the purchase of cryptocommodities.

    **f.   Revised RFP No. 64**: All Documents relating to Your communications with U.S. Exchange Defendants, and Bitcoin, Ethereum, BNB, XRP, ADA, SOL, and LUNA cryptocommodities exchanges related to the issuance or transfer of USDT.

## V.   Plaintiffs' Disputes Regarding Time Period and Other Responses and Objections

### a.   Discovery Time Period

The discovery time period remains in dispute. During the parties' meet and confer, B/T Defendants maintained their position which seeks to artificially cabin their review to documents produced after January 6, 2016 and before October 6, 2019, while simultaneously seeking documents from Plaintiffs through the present. As counsel for Plaintiffs articulated during earlier discussions and by written letter, Plaintiffs have alleged in the Amended Class Action Complaint acts conducted by B/T Defendants in furtherance of the alleged scheme of manipulation that pre-date the filing of the original complaint, and which remained on-going after October 6, 2019. Further, Plaintiffs have defined the Class Period as one that runs through the "present"—a term that courts routinely interpret as some date following the close of discovery or the grant of class certification.

As a compromise, Plaintiffs are willing to narrow the time period applicable to the parties' discovery production to February 1, 2015 (the approximate start of USDT trading under the new entity Tether) through the date of document collection for this litigation.[3]

### b.   RFP Nos. 60, 65, and 71[4]

Plaintiffs maintain their position with respect to RFP Nos. 60, 65, and 71. As asserted during the meet and confer discussions, contracts by and between B/T Defendants and any other Defendant are relevant to understanding the relationship and agreements for services, use, holdings, or transfer of USDT or other cryptocommodities held by B/T Defendants in furtherance of the scheme of manipulation.

As a compromise, Plaintiffs are willing to narrow RFP No. 60 as follows: All Documents relating to any agreement, contract, understanding, undertaking, or any other relationship, formal or informal, between You and any other Defendant relating to the use of cryptoexchange services or platforms, accounts and holdings owned by B/T Defendants, and transfers or transactions involving USDT or other cryptocommodities.

Relatedly, with respect to RFP No. 65, Plaintiffs continue to assert that their request for information related to communication between B/T Defendants and other cryptocommodities is

---

[3] Should additional information become available during the course of discovery relating to Realcoin's involvement in the conduct alleged by Plaintiffs, we reserve the right to seek discovery from B/T Defendants related to Realcoin during the period pre-dating February 1, 2015.

[4] We understand B/T Defendants are still reviewing RFP Nos. 28, 36, and 38-51. We will be prepared to address any outstanding issues related to these requests during the May 11 meet and confer.

necessary to understand the scope of B/T Defendants' arrangements with other cryptoexchange platforms to hold or transfer of USDT or other cryptocommodities as collateral for USDT. In an effort to resolve remaining discovery disputes, Plaintiffs are willing to revise RFP No. 65 as follows: All Documents relating to Your communications with U.S. Exchange Defendants, and Bitcoin, Ethereum, BNB, XRP, ADA, SOL, and LUNA cryptocommodities exchanges related to the accounts and holdings owned by B/T Defendants, and transfers, collateral, backing, or reserves of USDT.

Last, RFP No. 71 remains at issue. Plaintiffs contend that efforts made by B/T Defendants to obtain funding through loans from private investors are relevant to one of the central issues of the Amended Class Complaint – USDT reserves. Documents and communications issued by B/T Defendants as requests, campaigns, or solicitations for loans or investments during periods in which B/T claimed certain levels of USDT backing or reserve are highly relevant. Plaintiffs therefore cannot agree to limit the scope of this request.

## VI.    Reservation of Other Issues

We have identified the foregoing issues that we wish to discuss during the May 11 meet and confer, without prejudice to our ability to raise additional issues regarding the B/T Defendants' Responses and Objections or other discovery requested by Plaintiffs.  We reserve all rights, and look forward to a productive discussion.

Regards,

*/s/ Kyle W. Roche*
Kyle W. Roche
Edward Normand
Velvel Freedman
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rochefreedman.com
tnormand@rochefreedman.com
vel@rochefreedman.com
jdelich@rochefreedman.com

Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBER PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

Todd M. Schneider
Jason H. Kim
Matthew S. Weiler
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys*
*for Plaintiffs and the Proposed Class*