# Exhibit 15

  

**Via Email**
Mr. Elliot Greenfield
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
egreenfield@debevoise.com

Ms. Sunjina K. Ahuja
DILLON MILLER & AHUJA LLP
5872 Owens Ave., Suite 200
Carlsbad, California 92008
sahuja@dmablaw.com

Mr. Michael Jason Lee
LAW OFFICES OF MICHAEL
JASON LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
michael@mjllaw.com

> Re:    *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-CV-09326.

Dear Counsel:

Plaintiffs write in response to your June 30, 2022 letter (the "Letter") outlining the status of the parties' negotiations over the past three (3) months.

## I.    Time Frame

Plaintiffs requested documents through the present for the simple reason that Plaintiffs' claims and the Class Period both extend through the present. *See* Consolidated Amended Complaint ("CAC") ¶ 17. Plaintiffs have alleged that USDT remains unbacked. *Id.* ¶ 375. And in the time since the filing of that complaint, numerous public articles have similarly called the backing of USDT into question. *See, e.g.*, https://www.nytimes.com/2022/06/17/technology/tether-stable-coin-cryptocurrency.html (noting that Tether's "financial statements show that a significant portion of its reserves are tied up in unsecured corporate debt known as commercial paper" and describing the potential impact of a lack of backing on crypto-asset prices).

Despite this, you have not only declined to produce documents through the present, but have not even agreed to produce documents through June 5, 2020, the date of the filing of the CAC. When we have met to discuss this issue, we have repeatedly identified factual allegations in the CAC that concern events postdating the filing of the original complaint. *See, e.g.*, CAC ¶¶ 76 (presenting data on cryptocommodities extending into 2020); *id.* ¶¶ 372–374 (describing issuances of USDT postdating the original complaint). Your only response appears to be the *ipse dixit* assertion that "Plaintiffs' assertion of ongoing misconduct beyond the initiation of this lawsuit is not supported by facts alleged in the Amended Complaint." Letter at 2. This response ignores the

Court's express reference to those facts in denying your motion to dismiss. *In re Tether & Bitfinex Crypto Asset Litig.*, 2021 WL 4452181, at *6 (S.D.N.Y. Sept. 28, 2021) (noting allegations extending into 2020).

Throughout our discussions, Plaintiffs have already made multiple compromise offers. Plaintiffs have offered (i) to narrow the start date of discovery initially sought from July 1, 2014, to February 1, 2015—the approximate date the B/T Defendants began issuing USDT to the public; and (ii) to limit the end date for general document production from "the present" to the date of filing of the CAC for all except a narrow subset of documents that specifically address the backing of USDT. But the B/T Defendants ignore these offers and seek to characterize Plaintiffs' request for documents through the present on this key issue as "extremely broad."

In the interest of avoiding motion practice, here is Plaintiffs' best and final offer:

- The B/T Defendants will produce documents through the filing of the Consolidated Amended Complaint for all requests.

- On the following issues, the B/T Defendants will produce documents through the present:

  o Documents establishing the amount and contents of the USDT reserve.

  o Documents establishing all direct transfers of USDT from the B/T Defendants to other entities.

  o Documents concerning any contract, loan, or other relationship in which the B/T Defendants received any asset that is or has been included in the USDT reserve.

This offer reflects Plaintiffs' attempts to narrow the need to produce documents post-dating the CAC while remaining consistent with their obligations to the Class to pursue documents on the backing of USDT throughout the entire Class Period. If you cannot agree to this proposal or present some alternative subset of documents that you agree to produce through the present, we are at impasse.

## II. Custodians

The B/T Defendants fail to justify their proposal to treat Stuart Hoegner differently than other fact witnesses. On June 3, 2022, Plaintiffs explained via letter that Mr. Hoegner is not situated differently simply because his title is "General Counsel." And we explained at length—based on readily available public records—that Mr. Hoegner has significant, non-legal, business responsibilities at Bitfinex and Tether. The B/T Defendants do not (and cannot) dispute that Mr. Hoegner is a central fact witness and that he is a custodian of relevant, non-privileged documents.

The B/T Defendants therefore have the burden to justify their refusal to add Mr. Hoegner as a full custodian. It is not enough to assert that "most of [Mr. Hoegner's] communications are privileged." B/T Defendants' May 17, 2022 Letter at 2. As shown by the authority cited in our letter dated June 3, 2022, such preemptive, blanket assertions of privilege are invalid. Nor is it

2

enough merely to assert that reviewing Mr. Hoegner's communications would impose a "substantial burden." Letter at 2. Parties asserting burden as an objection must explain and quantify the alleged burden. *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018) (rejecting objection to new custodians where objecting party did not "provide any information regarding the incremental cost or burden of expanding discovery"); *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive."); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery."). The B/T Defendants have failed to do so. In addition, the B/T Defendants' failure to substantiate their burden objection makes it impossible for Plaintiffs to evaluate the B/T Defendants' proposed limits on their review of Mr. Hoegner's communications.

Please identify the process by which you would determine which documents you would exclude from review, given your preexisting commitment, and obligation, to review Mr. Hoegner's communications with other custodians and third parties. In accordance with the foregoing authority, please quantify the volume of documents that would be excluded under that process. Finally, please explain the basis for your representation that the B/T Defendants' proposed approach "will provide Plaintiffs with most, if not all, responsive, non-privileged documents" involving Mr. Hoegner. Letter at 2. Had B/T Defendants provided information on their collection of ESI, as originally (and repeatedly) requested by Plaintiffs at the outset of these meet and confer discussions, much of this information would already have been exchanged.

## III.   Requests for Production

Plaintiffs outline below our disagreement about the B/T Defendants' description of the parties' discussions with respect to certain Plaintiffs' RFPs.

### RFP Nos. 8-10

For RFP Nos. 8, 9, and 10, which concern the B/T Defendants' communications with other Defendants, the Letter states that the parties agree that the B/T Defendants will produce communications with Defendant Phil Potter "for the period after Mr. Potter left Bitfinex/Tether." *Id* at 4 n.2. Plaintiffs did not (and indeed do not agree) to limit the time-period for the production of responsive documents.  Please confirm whether the B/T Defendants intend to remove this temporal limit concerning RFP Nos. 8-10.

### RFP No. 37

For RFP No. 37, the B/T Defendants' Letter states that you "agreed to produce documents sufficient to show loans of USDT, including the amount of USDT loaned, the identity of the recipient of the loan, and the amount and type of collateral received in exchange for the loan, either (*i*) between Bitfinex and Tether or (*ii*) by the B/T Defendants to any U.S. Exchange Defendant or the Anonymous Trader." *Id.* at 5.

In Plaintiffs' May 6, 2022 letter, we revised RFP No. 37 to request as follows:

> Documents relating to all loans of USDT by You, including the amount of USDT loaned, the identity of the recipient of the loan, and the amount and type of collateral received in exchange for the loan, to any Defendant, Specified Individual/Entity, and Anonymous Trader.

In response, on May 9, 2022, the B/T Defendants stated they were reviewing the Specified Individuals/Entities and would get back to us on that aspect of the RFP. Your Letter does not indicate whether you reviewed the Specified Individuals/Entities and agree to produce documents responsive to this request.

**RFP No. 41**

The Letter states that Plaintiffs agree not to pursue RFP No. 41, while reserving all rights. *Id.* This is incorrect. During the March 31, 2022 Meet and Confer, Plaintiffs explained that we are pursuing documents related to Paycase Financial because Tether retained Paycase Financial to assist with Anti-Money Laundering concerns, and Tether's Anti-Money Laundering policies are relevant to Plaintiffs' claims. Please confirm whether the B/T Defendants intend to produce documents responsive to this request.

**RFP Nos. 52 and 56**

The B/T Defendants' Letter states that you do not agree to produce documents responsive to RFP Nos. 52 and 56, which concern documents related to Paradise Papers and Mt. Gox crypto-exchange. *Id.* However, during the April 8, 2022 Meet and Confer, you indicated that issues related to these requests may be resolved through search terms. Please confirm that the B/T Defendants will search for and produce documents responsive to these requests.

**IV.    Conclusion**

We hope that we can reach a resolution on these issues in the very near future to ensure that the B/T Defendants meet their discovery obligations pursuant to the Court's Case Management Order.

Regards,

> */s/ Kyle W. Roche*
> Kyle W. Roche
> Edward Normand
> Velvel Freedman (*pro hac vice*)
> Joseph M. Delich
> ROCHE FREEDMAN LLP
> 99 Park Avenue, 19th Floor
> New York, NY 10016

4

kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs
and the Proposed Class*