# Exhibit 18

  

<u>Via Email</u>
Mr. Elliot Greenfield
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
egreenfield@debevoise.com

Ms. Sunjina K. Ahuja
DILLON MILLER & AHUJA LLP
5872 Owens Ave., Suite 200
Carlsbad, California 92008
sahuja@dmablaw.com

Mr. Michael Jason Lee
LAW OFFICES OF MICHAEL
JASON LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
michael@mjllaw.com

August 8, 2022

   **Re:** *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-CV-09326

Dear Counsel:

  Plaintiffs write in response to your July 14, 2022, letter (the "Letter"), regarding the negotiations over the past three months of search terms for the B/T Defendants.

**I. The B/T Defendants' Unwillingness to Compromise on Search Terms Has Threatened Delay of the Court's Case Management Schedule**

  Plaintiffs' continued engagement in search term negotiations with the B/T Defendants has been motivated by a desire to avoid burdening the Court with unnecessary motion practice and enabling productive discovery productions. The obligation to produce discovery, however, remains with the B/T Defendants. *See Attard v. City of New York*, 2008 WL 3334028, at *5 n.10 (E.D.N.Y. Aug. 8, 2008) ("The Federal Rules of Civil Procedure place the burden of providing complete and accurate discovery production on the party producing the documents."). The current substantial production deadline is now less than three weeks away, on August 22, 2022. As a result of the B/T Defendants' meager production to date, opposition to good faith negotiations regarding the scope of review, and unwillingness to even *run hit reports* to date, Plaintiffs find themselves without significant discovery at this late stage of the discovery process. The B/T Defendants now acknowledge that they will not be able to meet their current production obligations under the Case Management Order, ECF No. 194, and request a two-month extension.

The B/T Defendants' intransigent approach to discovery is illustrated most clearly by the dispute over one of the most fundamental sets of documents in this litigation: the B/T Defendants' reserves and banking records. Plaintiffs requested all bank records relating to the B/T Defendants funds or reserves, including from an enumerated list of banks, to which the B/T Defendants responded that they would "produce documents . . . sufficient to establish USDT reserves." Response to RFP 31. In an effort to avoid an impasse on this RFP, Plaintiffs proposed two different solutions: first, in Plaintiffs' May 6 Letter, Plaintiffs asked the B/T Defendants to make a "sample production [of documents] responsive to RFP 29 and 31" for Plaintiffs to review; and second, Plaintiffs asked the B/T Defendants to run each of the bank accounts as a search term to determine the burden associated with reviewing the full document set. *See* May 6, 2022 Letter. The B/T Defendants have refused both requests and made no effort to advance negotiations further. These records are fundamental to this litigation and should have been readily available for production; the B/T Defendants' unwillingness to produce them illustrates a strategy of deliberate delay.

Search term negotiations have seen the same dilatory patterns by the B/T Defendants: Plaintiffs have made every effort to ensure that the discovery disputes that must be raised with the Court are material. Plaintiffs began with an initial set of search terms; when the B/T Defendants balked at that initial approach, Plaintiffs agreed to substantially narrow the list of terms in the spirit of compromise, to which the B/T Defendants indicated their receptiveness. *See* May 17, 2022 Letter. But when Plaintiffs responded with a refined set of search terms in advance of the parties' next meet and confer, the B/T Defendants demanded Plaintiffs spend additional time and resources to link each proposed search term to a specific RFP—including those search terms that the B/T Defendants had already indicated that they would run.

Notwithstanding the fact that Plaintiffs are in no way obligated to link proposed search terms to specific RFPs—and that the B/T Defendants should have run the refined list of terms for hit counts *at least three months ago*—Plaintiffs agreed to link each search term to a specific RFP in the spirit of achieving consensus.

The B/T Defendants responded to this courtesy by moving the goal posts yet again. First, the B/T Defendants complained that the terms were not derived from allegations in the Complaint, thus evidencing their lack of relevance—an assertion by the B/T Defendants that Plaintiffs have repeatedly rebutted. The B/T Defendants then *backtracked*, removing search terms they already agreed to. Representative examples include:

| May 17, 2022 Search Terms Accepted by BT Defendants: | July 14, 2022 Search Terms Deleted by BT Defendants: |
|---|---|
| "Authorized Tokens" | "Authorized Tokens" |
| (Investigat* OR inquir* OR Finding* OR report* OR case* OR audit*) w/15 ("New Y AG" OR "New York Attorney General" OR NYAG OR "NY AG" OR "NY Attorney General" OR "Commodities Futures Trading Commission" OR CFTC OR "Departmen Justice" OR DOJ OR "Exchange Commission" OR SEC) | (Investigat* OR inquir* OR Finding* OR report* OR case* OR audit*) w/15 ("New York AG" OR "New York Attorney General" OR "NY Attorney General" OR NYAG OR "NY AG" OR "Commodities Futures Trading Commission" OR CFTC OR (Dep* w/2 Justice) OR DOJ or "Exchange Commission" OR SEC) |
| ("1:1" OR "one to one") w/15 (Stablecoin OR "Stable coin" OR token OR "USDT" OR Tether) | ("1:1" OR "one to one") w/15 (Stablecoin OR "Stable coin" OR token OR "USDT" OR Tether) |

The B/T Defendants' belated attempt to reopen negotiations at this late stage over terms that the parties have previously agreed were appropriate indicates disorganization at best and an attempt to delay and run down the clock at worst. Consistent with this uncoordinated approach, the B/T Defendants' July 14, 2022 search terms proposal scrubs terms *they* initially proposed for Plaintiffs on May 9, as well as search terms narrower than those they initially proposed. *See e.g.*, May 9, 2022 Letter (B/T proposing "Fowler" but now rejecting "Fowler*") (B/T proposing ["1:1" OR "one to one" OR "one-to-one"] but now rejecting [("1:1" OR "one to one") w/15 (Stablecoin OR "Stable coin" OR token OR "USDT" OR Tether))].

The B/T Defendants have made other search term exclusions without apparent justification. As Plaintiffs have explained on numerous occasions, while search term negotiations and requests for production are linked, these exercises do not map to each other one-to-one. For example, Plaintiffs requested documents sufficient to show Defendants' processes and procedures for tracking USDT reserves, all documents and communications with Crypto Capital Defendants, and documents sufficient to show the B/T Defendants' AML and KYC procedures (RFPs 10, 12, and 66). As part of generating search terms that could cover these requests, Plaintiffs suggested the search term "cat and mouse" because, as outlined in the complaint, the B/T Defendants described their own bank procedures as "playing cat-and-mouse with correspondent banks." SAC ¶¶ 344–56; despite this clear link to Plaintiffs' allegations, the B/T Defendants have resisted this search term. As another example, the B/T Defendants struck the search term proposed to capture correspondence related to "Bitfinex'ed"— a twitter account and blog started in 2017 which reported on potentially fraudulent activity within Bitfinex and Tether. Numerous chat messages referencing "bitfinexed" and the B/T Defendants' response to the public accusations, involving Defendant Potter and other Defendants, demonstrate the relevance of this term. These and other search terms were appropriately tailored and grounded to Plaintiffs' allegations and document requests, yet the B/T Defendants objected to them without any attempt to come to a good faith compromise that will narrow the areas of dispute.

In their July 14, 2022 Letter, the B/T Defendants assert that "RFPs for which the B/T Defendants agreed to produce "documents sufficient to show," including but not limited to RFPs 4–7, 12-15, 21, 66–68, 77. . . do[] not require the use of search terms." The B/T Defendants appear to have lost track of which RFPs they have already agreed to use search terms for, as the B/T Defendants have already agreed to use search terms and provide a hit report for documents responsive to the following RFPs:

- RFPs 1-3, 7, 17–23, and 25–26 (May 9, 2022 Letter from E. Greenfield to K. Roche); and
- RFPs 39–40, 43–50, 52–57 and 65 (April 28, 2022 Letter from E. Greenfield to K. Roche and June 30, 2022 Letter from E. Greenfield to K. Roche)

The B/T Defendants go on to state that "no agreement to produce documents has been reached, including but not limited to RFPs 1, 22–25, 31, 36, 43–44, 46, 51–52, 69–71," but they *have* agreed to use search terms in connection with RFPs 1, 22–23, 25, 43–44, 46, and 52, and  must comply with the parties' agreement to run search terms related to these requests.

## II.      The B/T Defendants Have Refused to Search For Responsive Documents

The B/T Defendants' positions with respect to the production of certain responsive documents remains unjustified. Plaintiffs have participated in numerous meet-and-confers and provided detailed explanations of relevance for each RFP when requested to address concerns by B/T Defendants regarding relevancy. Yet, the B/T Defendants maintain their decision to withhold swaths of relevant discovery. *See e.g.,* POTTER-00000092 (discussing OTC transaction with Kraken to "front them against say btc, eth or whatever" in exchange for funds to issue new tether; relevant to RFP 24). As reflected in the B/T Defendants' July 14, 2022 Letter, Plaintiffs understand the B/T Defendants to oppose any search, through search terms or otherwise, of documents responsive to RFPs 24, 31, 36, 51, and 69–71 ("Disputed RFPs"). *See* July 14, 2022 Letter from E. Greenfield to K. Roche.[1]

Upon review of documents produced by other Defendants in this matter, Plaintiffs now provide additional context for the relevancy of the Disputed RFPs to demonstrate the impropriety of the B/T Defendants' refusal to produce, or even search for responsive document.[2] It is a reflection of the B/T Defendants unreasonably obstructive approach to discovery negotiations that Plaintiffs can now demonstrate the significance of these requests based on documents that have already been produced by other Defendants who produced as per the Court-ordered schedule. The B/T Defendants must expand their production to include documents responsive to these requests.

*Specific Entities/Individuals*

RFP 51: All Documents relating to Jump Trading LLC. First, the productions from co-defendants (*i.e.*, Defendant Potter) demonstrate that the B/T Defendants had a close relationship with Jump Trading, including through regular trading activity and extending a line of credit. *See* Ex. A (POTTER-00033714). Yet the B/T Defendants have unjustifiably refused to produce any documents relating to Jump Trading. *See* B/T Defendants' Response to RFP No. 51; June 30, 2022, letter from E. Greenfield to K. Roche. This position is untenable given the B/T Defendants' close relationship with Jump Trading, which included providing a credit line to Jump Trading during the relevant period. Therefore, Plaintiffs have reinserted a search term related to Jump Trading and insist that the B/T Defendants produce documents related to Jump Trading.[3] Moreover, the B/T Defendants offer no justification for their refusal to produce these documents.

---

[1] Plaintiffs addressed the status of the parties' negotiations with respect to RFP 31 above and invite the B/T Defendants to respond to the May 6, 2022 request for a sample production. Should the B/T Defendants agree to search for documents responsive to RFP 24, the parties can discuss whether use of search terms is appropriate to capture all relevant documents related to RFP 24.

[2] Plaintiffs reserve all rights to seek discovery, through additional search terms or otherwise, before the close of discovery should the review of discovery illuminate other relevant information not addressed by Plaintiffs' August proposed terms.

[3] Plaintiffs served a document subpoena on Jump Trading, who instructed Plaintiffs to obtain the information from the B/T Defendants first. Plaintiffs are entitled to the documents from both parties, and the B/T Defendants are required to produce them first, as they are a party to this litigation. *Universitas, Educ., LLC v. Benistar*, 2021 U.S. Dist. LEXIS 255256, at *25 (D. Conn. Dec. 22, 2021) (plaintiff should request documents directly from parties before burdening non-party).

RFP 36: All Documents relating to Michael Novogratz, Galaxy Digital Trading Cayman LLC, Galaxy Digital LP, and/or Galaxy Benchmark Crypto Index Master Fund LP. The record reflects that B/T Defendants have a close relationship with the Galaxy Digital entities ("Galaxy"), as evidenced by the fact that the B/T Defendants entered into a specific trade pool with Galaxy. *See* Ex. B (POTTER-00030362). The B/T Defendants have also refused to produce any documents relating to Galaxy. *See* B/T Defendants' Response to RFP No. 36; June 30, 2022, letter from E. Greenfield to K. Roche. The B/T Defendants again offer no tenable excuse for their refusal to produce such documents. This position is untenable given the B/T Defendants' close relationship to Galaxy, reflected in numerous correspondence referencing various transactions during the relevant period. Therefore, Plaintiffs now reinsert search terms related to Galaxy and Mike Novogratz and insist that the B/T Defendants produce documents before the August 22 deadline.

RFP No. 46: All Documents relating to Smart Property Solutions, AG, Data Nest SA, Hamid Reza Khoyi, Aron Camponovo, and/or Oliver Camponovo. Notwithstanding the B/T Defendants' agreement to use search terms to locate documents responsive to RFP No. 46, Defendant Potter's production provides further justification for the inclusion of relevant search terms. With regards to Smart Property Solutions, documents produced by co-defendants demonstrate that Tether in fact owns 100% of that entity (POTTER-00045004). It is therefore unreasonable for the B/T Defendants to flatly refuse to produce any documents related to one of their fully owned subsidiaries. *See* B/T Defendants' Response to RFP No. 46; June 30, 2022, letter from E. Greenfield to K. Roche. The B/T Defendants offer no justification, other than boilerplate objections and their unilateral determinations regarding relevance, for their refusal to produce these documents. Therefore, Plaintiffs have reinserted search terms relating to Smart Property Solutions and insist that the B/T Defendants produce these documents on or before the August 22 deadline.

*Document related to investments and loans*

Other Defendants' productions reveal myriad communications made by and between the B/T Defendants and various crypto-asset companies relating to, *inter alia*, opportunities for investment, significant deposits made by and between crypto-asset funds and other companies and the B/T Defendants. These documents contain relevant information relating to the B/T Defendants' reserves, and arrangements with third party entities to engage in transactions in furtherance of the alleged scheme of manipulation and fraud.

RFP No. 69: All Documents relating to Your investments in crypto-asset companies, including CelsiusNetwork, including all communications with third parties relating to these investments. The B/T Defendants refuse to search for or produce any documents related to Celsius, or any other crypto-asset company in which they have invested. *See* B/T Defendants' Response to RFP No. 69.

With respect to Celsius, it is common knowledge that Celsius received a loan of approximately $1 billion USDT secured by Bitcoin. *See* Financial Times, *Tether's recovery of an $840mn loan scrutinised in Celsius bankruptcy*, July 26, 2022, available at https://www.ft.com/content/3e19e36e-b3c7-44ca-8afe-af7e43d7c7e4.

This loan suggests that Tether issued Celsius a large amount of USDT without receiving a commensurate amount of U.S. Dollars, but rather received Bitcoin as collateral instead. Such a loan would be evidence that the B/T Defendants continue to inject unbacked USDT into the crypto-commodity market in order to maintain price support.

Other Defendants' productions contain documents reflecting similar investment records and communications related to investments between B/T Defendants and other crypto-asset companies, such as Smart Property Solutions (POTTER-00043764) (reflecting 1MM investment made by B/T Defendants into Smart Property Solutions), Cumberland Global (POTTER-00079856) (reflecting 3 deposits of over 1M to Cumberland in a two-and-a-half-week period), Alameda Research, Circle Internet Financial, and others. *See also,* BITFINEX_TETHER_0012048); *see also* (POTTER-00058236;   POTTER-00055999,   -00056004; BITFINEX_TETHER_0010927, -0016032). Publicly available reports further support inclusion of search terms related to these entities and evidence significant involvement with the B/T Defendants. *See e.g.,* Protos, *Tether minted most USDT to just 2 firms – Alameda and Cumberland,* August 12, 2021, https://protos.com/tether-minted-usdt-stablecoin-crypto-two-alameda-cumberland/.

Reserving all rights to seek additional discovery related to RFP No. 69, Plaintiffs propose inclusion of search terms related to the following entities, in addition to Smart Property Solutions, based on the documentary evidence of investment relationships with these companies: Vukota Capital Management, Digital Currency Group, Genesis Trading, Cumberland Global, Circle Internet Financial, and Alameda Research.

RFPs 70 & 71: All Documents relating to Your efforts to raise equity, including any prospectuses, private placement memoranda, or solicitations sent to investors; All Documents relating to Your efforts to obtain loans, including any prospectuses, private placement memoranda, or solicitations sent to investors. The record reflects communications between the B/T Defendants and various third parties related to investment opportunities, including equity offers, and loans of money and crypto-assets. *See e.g.,* Pythagoras Investment Management (BITFINEX_TETHER_0010954) (loan to iFinex for $559,727.10); Fangorn (POTTER-00058236) (deposit of $30mm to Fangorn from iFinex); Vukota Capital Management (POTTER-00029317). Plaintiffs propose reinserting search terms related to investors and loans and insist that the B/T Defendants produce documents responsive to RFPs 70-71.

In an effort to expedite a resolution, Plaintiffs have reinserted the search terms the B/T Defendants had previously marked as "green" and had agreed to run, those related to RFPs the parties already agreed to use search terms for, and those related to relevant entities identified in Defendants' production; for convenience, Plaintiffs have included columns linking these search terms to RFPs and providing non-exhaustive descriptions of their relevance. *See* Appendix A, Plaintiffs' August 8, 2022 Proposed Search Terms.

Please let us know if the B/T Defendants agree to search for and produce these documents. Should the B/T Defendants refuse, Plaintiffs reserve all rights to seek court intervention, as this issue is now ripe for motion practice.

**III.     The B/T Defendants' Requested Extension**

As this letter details, the B/T Defendants have taken advantage of Plaintiffs' attempts to reach consensus by altering their positions while refusing to produce the hit counts that would substantiate the B/T Defendants' assertions of burden. This delay has rendered the B/T Defendants uniquely unable to comply with the Court's case management schedule; all other parties currently anticipate substantial completion of production by the agreed upon deadline.

That said, given the importance of receiving full production in this matter, Plaintiffs are willing to consider stipulating to a revised schedule. However, Plaintiffs will not spend that extension in similarly circular negotiations. Therefore, as a precondition to any stipulated extension to the Case Management Plan, Plaintiffs demand that the B/T Defendants provide a hit report on the search terms accompanying this letter. Plaintiffs further demand that the B/T Defendants identify any search terms they have run in service of their previous productions, as well as the volumes of documents that hit on those search terms. Without this foundational information about the volume of documents at issue—which should have been conducted months ago as per Plaintiffs' repeated requests—Plaintiffs have no way to assess whether a two-month extension will in fact enable the B/T Defendants to make material progress towards production.

In addition, the B/T Defendants agreed to produce documents in response to Plaintiffs' Requests 12–15, 21, 22, 32, 33, and 66–68. These requests ask the B/T Defendants to produce documents "sufficient to show" the subjects of their requests. Given Defendants' argument that responding to these requests does not require the use of search terms, *see* July 14, 2022 Letter at 2, there is no reason why the negotiation of search terms should have delayed the collection of documents responsive to these requests. Plaintiffs thus believe that the B/T Defendants should be able to produce in response to these requests by the original deadline of August 22.

**IV.     Conclusion**

Given the amount of time wasted through the B/T Defendants criticism of proposed search terms without even a *hit report* being produced, as well as the impending August 22 production deadline, Plaintiffs now demand that the B/T Defendants run the search terms attached to this letter, which reflect both the terms that the B/T Defendants agreed to (in either the May 17, 2022, or July 14, 2022 letters) as well as search terms justified by the exhibits to this letter, and produce that hit report within 5 business days. This demand is without prejudice to Plaintiffs' request for additional search terms and reflects an attempt by Plaintiffs to advance this process.

Regards,

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor New
York, NY 10016 kyle@rcfllp.com
tnormand@rcfllp.comvel@rcfllp.c
om jdelich@rcfllp.com

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290  Sixth  Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs
and the Proposed Class*

Appendix A – Plaintiffs' August 8, 2022 Search Term Proposal

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 1 | audit w/10 Tether | 11 | Audits of Tether are relevant to Plaintiffs' claim that USDT is debased. |
| 2 | Tether w/10 transparency | 26 | Tether's transparency page purports to demonstrate that USDT is backed |
| 3 | "conflict of interest" or "conflicts of interest" | 34 | The NYAG found that Bitfinex did not have sufficient conflict of interest policies to prevent employees from trading. *See* Amended Complaint ¶ 145 |
| 4 | (2016 w/15 hack* OR theft* OR unauthorize* OR transfer* OR stolen) and (reserve* OR redem* OR redeem*) | 35 | Relevant to how the hack of Bitfinex made it impossible for Bitfinex to have the cash it claimed to transfer to Tether. *See* Amended Complaint ¶ 327 |
| 5 | "Authorized Tokens" | 7 | This term is relevant to understanding how Tether authorizes USDT and its backing |
| 6 | "Bitcoin Management Solutions" | 47 | Crypto asset entity affiliated with Defendant Potter, later named Fangorn. Relevant to transfers and transactions made by and between B/T Defendants to related entities and sources of USDT reserves |
| 7 | "Celsius Network" or Celsius w/5 (invest* or investment*) | 25, 69 | Relevant to understanding how Tether invests its reserves and how this impacts USDT backing.  Celsius's receipt of a USDT loan from Tether has now become public |
| 8 | "Crypto Capital" OR "Crypto SP. Z.O.O." or "Crypto SP ZOO" OR "Global Trading Solutions" | 10, 25, 27, 30 | Relevant to understanding how Defendants accessed banking services and their relationship with Defendant Crypto Capital |
| 9 | "don't have enough" w/5 (Tether OR USDT) | 15 | Documents hitting on this search term are likely to be relevant to Plaintiffs' claim that USDT is unbacked |
| 10 | "Flash Crash" | 18, 19, 56, 63 | Relevant to Plaintiffs' claim that Defendants conspired to manipulate cryptocommodity pricing because the Flash Crash is a prominent example of the vulnerability of crypto markets to manipulation |
| 11 | "Friedman LLP" | 11, 48 | Relevant to audits of USDT |
| 12 | "Mt. Gox" | 56 | Relevant to studies analyzing how cryptocommodity prices can be manipulated and Defendants' awareness thereof. *See* Amended Complaint ¶¶ 85–86 |
| 13 | Noble* | 25, 40 | Relevant to understanding how B/T Defendants accessed banking services |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 14 | "not enough" w/5 (tether or USDT) | 7, 14, 15 | Documents hitting on this search term are likely to be relevant to Plaintiffs' claim that USDT is unbacked because they concern the assertion that there is not enough backing for USDT |
| 15 | "not tethered" OR un-tethered | 7, 14, 15 | Documents hitting on this search term are likely to be relevant to Plaintiffs' claim that USDT is unbacked |
| 16 | "Potter Ventures" | 25, 47 | Relevant to communications and transactions records related to Defendant Potter's business ventures |
| 17 | "Paradise Papers" | 52 | Related to Defendants' corporate structure and alleged collusion to manipulate the market |
| 18 | "Quantifying the Effect of Tether" | 53, 18 | This is the formal name of the Tether Report, described in Amended Complaint ¶¶212-15, which provides evidence that USDT was unbacked. |
| 19 | Shyft Network | 25, 43, 65 | Related to investments and other transactions made between B/T Defendants and third-party entities for the transfer of USDT or other crypto assets |
| 20 | ("Tether Authorizer" OR Tether) w/5 authorization | 5, 7, 13 | This term is relevant to understanding how B/T Defendants authorize USDT and reserve backing |
| 21 | "Tether Report" OR tetherreport* | 53, 18 | Relevant to The Tether Report, described in Amended Complaint ¶¶212–15, and communications made and studies conducted in response to allegations regarding USDT reserves and USDT issuances |
| 22 | ("USDT" w/5 (equal* OR equat*)) w/15 (USD OR dollar*) | 7, 14, 15 | Documents hitting on this search term are likely to be relevant to Plaintiffs' claim that USDT is unbacked because they discuss whether USDT is in fact equal to a dollar |
| 23 | ("USDT/USD" w/5 "trading pair") | 11, 12, 13,16, 17, 18, 19 | Relevant to Defendants' representation of unbacked USDT as a trading pair with other crypto-assets. *See* Amended Complaint  ¶¶149, 165 |
| 24 | ("White paper" w/15 ("USDT" OR Tether OR token*)) w/15 (equat* OR back* OR equal* OR hold OR dollar* OR bank* OR account* OR fiat OR currenc* OR reserve* OR cash) | 3, 5, 14, 31, 32 | Documents hitting on this search term address the Tether whitepaper and are thus likely to be relevant to Plaintiffs' claim that USDT is unbacked |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 25 | "Willy Report" OR "WillyBot" | 56 | Relevant to showing how cryptocommodity prices can be manipulated |
| 26 | "Bitcoin Really Un-Tethered" | 54 | Relevant to communications and documents referencing the report of Professor J. Griffin and A. Shams relating to unbacked issuances of USDT |
| 27 | "Crypto Capital" OR "CryptoCapital" | 10, 25, 27, 30 | Relevant to understanding how Defendants accessed banking services through Defendant Crypto Capital and its related entities |
| 28 | "cat and mouse" | 10, 12, 31, 47, 66, | Relevant to B/T Defendants' banking practices and reserve funding. *See* Amended Complaint ¶¶ 344–56 |
| 29 | "fully back*" and "fully-back*" | 7, 14, 15 | Relevant to Plaintiffs' claim that Tether is unbacked |
| 30 | "Global Trade Solutions" or GTS* | 27, 60 | Amended Complaint ¶ 495 describes Global Trading's role in fraudulently obtaining correspondent banking |
| 31 | "not backed" | 7, 14, 15 | Relevant to Plaintiffs' claim that USDT is unbacked |
| 32 | "price floor" | 18, 19, 56 | This term is targeted at documents relevant to Plaintiffs' claim that Defendants conspired to manipulate cryptocommodity pricing |
| 33 | ("1:1" OR "one to one") w/15 (Stablecoin OR "Stable coin" OR token OR "USDT" OR Tether) | 7, 14, 15 | Documents hitting on this search term are likely to concern the assertion that USDT is backed 1:1 by dollars |
| 34 | ((Account* w/15 ("USDT" OR Tether OR Bitfinex OR iFinex)) w/15 reserve* OR redeem* OR balance* | 12, 14,15 | This search term seeks documents discussing the accounts containing the alleged reserve backing USDT |
| 35 | (Agreement* OR contract*) w/25 (Bittrex OR Polo*) | 60 | Contracts with the Exchange Defendants are relevant to Plaintiffs' claim that Defendants conspired to manipulate cryptocommodity pricing |
| 36 | Urriola OR (Ana w/2 Pan) | 10, 27 | Relevant to Defendants' involvement with Crypto Capital and collusion with Crypto Capital relating to banking and reserves |
| 37 | ((Bolivar w/2 Jose) w/2 Gonzalez) OR (Bolivar w/2 Gonzalez) | 10, 27 | Relevant to Defendants' involvement with Crypto Capital and collusion with Crypto Capital relating to banking and reserves |
| 38 | (Bump* OR Crash* OR Drop* OR Short OR Jump* OR Spike* OR Floor) w/15 (price OR value OR Bitcoin OR BTC) | 18, 19, 56, 63 | Documents discussing burns or destruction of USDT are relevant to the backing of USDT and Defendants' statements about backing, including burns preceding audits |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 39 | (Burn* OR giv* OR destroy*) w/15 ("USDT" OR Tether OR token) | 6, 11 | Documents discussing burns or destruction of USDT are relevant to the backing of USDT and Defendants' statements about backing, including burns preceding audits |
| 40 | (Document OR email) w/5 (retain or retention) w/15 (polic* OR procedur* OR complian* OR train* OR Manual) | 77 | Documents on this search term are relevant to Defendants' document retention policy |
| 41 | (Investigat* OR inquir* OR Finding* OR report* OR case* OR audit*) w/15 ("New York AG" OR "New York Attorney General" OR "NY Attorney General" OR NYAG OR "NY AG" OR "Commodities Futures Trading Commission" OR CFTC OR (Dep* w/2 Justice) OR DOJ or "Exchange Commission" OR SEC | 1, 2 | Discussions of governmental investigations into the backing of USDT are relevant to Plaintiffs' claim that Defendants conspired to manipulate cryptocommodity pricing |
| 42 | (Guarant* OR promis* OR assur*) w/15 ("1:1" OR "one to one" OR "1-1" OR tethered OR redeem* OR exchang*) | 7, 14, 15 | Discussions of the Tether's promise of being 1:1 backed are relevant to Plaintiffs' claim that Tether is unbacked |
| 43 | (Inflat* OR spik* OR manipulat* OR stabiliz* OR floor OR return* OR Solven*) w/15 (bitcoin OR demand* OR market* OR customer* OR price* OR valu*) | 18 | Documents discussing spikes, floors, and stabilization of bitcoin are relevant to Plaintiffs' claim that Defendants conspired to manipulate cryptocommodity pricing through the creation of artificial price floors |
| 44 | (Ivan w/2 (Manuel OR Molina OR Lee) | 10, 25, 27 | Relevant to Defendants' involvement with Crypto Capital and collusion with Crypto Capital relating to banking and reserves |
| 45 | (mov* OR manipulat*) w/10 (price OR Market) | 18 | Documents discussing moving the market are relevant to Plaintiffs' claim that Defendants conspired to manipulate cryptocommodity pricing |
| 46 | (Print* OR issu* OR creat*) w/15 ("USDT" OR Tether OR token) | 4, 5, 59, 61, 62 | Documents concerning the creation of USDT are relevant to Plaintiffs' claim that the B/T Defendants created USDT without sufficient backing |
| 47 | (Redeem* OR redempt*) w/10 ("USDT" or Tether token) | 6 | Documents concerning the redemption of USDT are relevant to Plaintiffs' claim that the B/T Defendants could not in fact redeem all the USDT they had issued |
| 48 | (Stablecoin OR "Stable coin" OR token OR "USDT" OR Tether) w/15 (equat* OR back* OR equal*) w/25 (dollar* OR fiat OR currenc* OR reserve*) | 16, 17, 18 | Documents discussing the backing of USDT with dollars are relevant to Plaintiffs' claim that USDT was not actually backed with dollars |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 49 | (support w/3 price) w/3 (bitcoin OR BTC) | 63 | This search term targets documents recognizing that USDT supports the price of bitcoin |
| 50 | ((Tether OR Bitfinex OR Digfinex) w/15 ("Crypto Capital" OR "Global Trade Solutions")) w/25 reserve* OR operat* OR manag*) | 27 | Relevant to understanding how Defendants accessed banking services with Defendants Crypto Capital |
| 51 | (time OR Coordinat*) w/10 (mint* OR issu* OR Poloniex OR Bittrex OR Reggie OR Fowler) | 63, 9 | Documents discussing coordination of issuances and coordination with other defendants are relevant to conspiratorial intent to manipulate markets through carefully timed issuances |
| 52 | (USDT OR Tether) w/5 address* w/15 (Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 21 | Relevant to transactions conducted by Defendants related to stablecoin or USDT addresses |
| 53 | "1-to-1" OR "1:1" OR "One-for-one" | 7, 14, 15 | Documents hitting on this search term are likely to concern the assertion that USDT is backed 1:1 by dollars |
| 54 | 12cgpFdJViXbwHbhrA3TuW1EGnL25Zqc3P | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 55 | 13vHWR3iLsHeYwT42RnuKYNBoVPrKKZgRv | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 56 | 15ovrfyRTbhqeUkgAqAwtscXDASmietmcJ | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 57 | 16tg2RJuEPtZooy18Wxn2me2RhUdC94N7r | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 58 | 17A16QmavnUfCW11DAApiJxp7ARnxN5pGX | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 69 | 17sHnqeQcwvfPneJkmaTBAQEnQN82yi7ye | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 60 | 1A6yDZj1241qtGzEeQWRaptxVEhzz5owLP | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 61 | 1A9AUhKv6aLrKGAdwMM9aHXECZM9uQivZK | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 62 | 1AA6 | 28 | This shorthand cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 63 | 1AA6iP6hrZfYiacfzb3VS5JoyKeZZBEYRW | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 64 | 1AanEM2PU6GS7krwxaysKP3scwb3fdioyE | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 65 | 1CEZ4sjk7MUt3LSJi7bRvvbMZvGLWKCa1G | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 66 | 1Co1dhYDeF76DQyEyj4B5JdXF9J7TtfWWE | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 67 | 1DEcTtkrbdXxS1wbrMvzub5X4VpByYmAwo | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 68 | 1DUb2YYbQA1jjaNYzVXLZ7ZioEhLXtbUru | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 69 | 1F6nNgCTLcR4abWuMs1CHUWYNcnJ47tvbc | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 70 | 1Fdz3iQDDA6mJVoAV4ZcqgVFe1MX97EZoD | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |

|   | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 71 | 1G6jMfQotd6rV8VkMFNx4hPXYHioeBdquf | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 72 | 1H48Bp7EGELgnGSVYKdiCuSo6n822mVmHg | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 73 | 1Hi1hyJpUeETGBTQ8aPZ69GBL8xBVV53XP | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 74 | 1J1d | 28 | This short-hand cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 75 | 1J1dCYzS5EerUuJCJ6iJYVPytCMVLXrgM9 | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 76 | 1J8fgfPwn4dsxLiA5BnUkzHoubPJ6q5q8g | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 77 | 1KBXtTQnEgU34xXchwvmAoX7o5qZAp3xF | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 78 | 1LJjvsEN9ZzeBVPB4XbhS7mxg99gBAPoMB | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 79 | 1LSgEKji3ZoGdvzBgkcJMej74iBd38fySb | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 80 | 1MZAayfFJ9Kki2csoYjFVRKHFFSkdoMLtX | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 81 | 1N52wHoVR79PMDishab2XmRHsbekCdGquK | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 82 | 1NUyryQe1cQYmqg5bjwWNFXA8T1M6htSQ | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 83 | 1PCwER7f57fkPq2kuR9rYV7Wpr1LYvFWsA | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 84 | 1Po1oWkD2LmodfkBYiAktwh76vkF93LKnh | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 85 | 3D2oetdNuZUqQHPJmcMDDHYoqkyNVsFk9r | 28 | This cryptographic address is referenced in the Griffin Report/Amended Complaint as part of a possible conspiracy to manipulate crypto-asset prices |
| 86 | Arbitrage | 61, 63 | Relevant to Defendants' investment strategies and alleged scheme to manipulate the market and gain profit from manipulated price differentials |
| 87 | Artific* /15 (Bitcoin OR Bitcoin Cash OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol* OR Tether! OR USDT OR drop! OR crash!) | 4, 5, 19, 21, 59, 61, 62 | Discussions of artificial cryptocommodity prices are relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 88 | Back* w/5 (tether or USDT) | 7, 11, 14, 15 | Discussions of the backing of USDT is relevant to whether USDT is sufficiently backed |
| 89 | [Name of "Anonymous Trader] | 25, 28 | Relevant to transactions with third-party investors involving substantial crypto transfers |
| 90 | Betts | 25, 31, 40 | CEO & Founder of Noble Markets. Relevant to Defendants' investment practices and reserve funding |
| 91 | (Bitfinex w/5 print*) w/5 Tether OR USDT | 4, 61, 62, 64 | Discussions of printing USDT are relevant to B/T Defendants' practices regarding USDT issuances and printing |
| 92 | Bittrex | 9, 61, 62, 63, 64, 65 | Relevant to B/T Defendants' communications with Defendant Bittrex and Defendants' collusion to use USDT to artificially inflate the prices of cryptocommodities through transactions on the Bittrex and Poloniex exchanges. *See* Amended Complaint ¶ 456 |
| 93 | Bitfinexed OR bitfinex'ed OR "@bitfinexed_ | 18, 20, 35, 48 | Relevant to USDT reserves and B/T Defendants' banking relationships and communications by and between B/T Defendants regarding public messaging related to reserves |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 94 | Brock w/2 Pierce | 50 | Brock Pierce is the CEO of Realcoin. Documents discussing him are relevant to B/T Defendants' transition from Realcoin to Tether. *See* Amended Complaint ¶120. |
| 95 | Bubble w/15 (bitcoin OR market OR price) | 19, 63 | Relevant to Plaintiffs' allegations regarding market manipulation and creation of asset bubble. *See* Amended Complaint ¶ 186 |
| 96 | Catastroph* w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol* OR Tether* OR USDT OR drop* OR crash*) | 19, 21 | Discussions of catastrophic crashes of crypto-commodities are relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 97 | (Chris w/2 Ellis) AND (Tweet or twitter OR warrant OR subpoena) | 49 | Relevant to USDT reserves and B/T Defendants' banking relationships and communications by and between B/T Defendants regarding public messaging related to reserves |
| 98 | Conspir* and (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 21 | Discussions of a conspiracy related to cryptocommodities is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 99 | Control* w/15 (pric* OR BTC OR bitcoin OR flow OR Demand OR Market) | 21, 23, 25, 72, 74 | Discussion of controlling the price or flow of crypto-commodities is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 100 | Crash* /15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 19, 63 | Discussion of a potential crash in the price of crypto-commodities is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 101 | Crypto* w/15 future* | 12, 17 | Discussion of crypto futures are relevant to Plaintiffs' alleged scheme of market manipulation affecting crypto futures. *See* Amended Complaint ¶437 |
| 102 | Debas* w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol* OR USDT OR Tether) | 19, 21, 63 | Discussion of whether USDT is debased is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 103 | Deceit* w/15 (executive* OR CEO OR director* OR CFO OR Velde OR Ardoino OR Devasini OR Warrack OR Bitfinex* OR Potter) | 8 | Discussion of deceit by Tether and Bitfinex executives is relevant to their participation in and knowledge of scheme of market manipulation |
| 104 | Declin* w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 19, 21, 63 | Discussion of a potential decline in the price of crypto-commodities is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 105 | Demand* w/10 (Tether* OR USDT) | 21, 63 | Relevant to communications or report related to consumer demand for USDT and USDT issuances |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 106 | Demand* w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR artificial or appearance) | 19, 21, 63 | Discussion of artificial demand for crypto-commodities is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 107 | Disconnect* w/15 (Supply OR Demand) | 18, 19, 56, 63 | Discussions of a disconnect between the supply and demand for crypto-commodities or Tether is relevant to the alleged market manipulation. *See* Amended Complaint ¶437 |
| 108 | disrupt* w/10 (Tether* OR USDT) | 18, 19, 56, 63 | Discussions of disruptions caused by USDR are relevant to Plaintiffs' allegations that a lack of USDT backing would disrupt the crypto-commodity market. *See* Amended Complaint ¶437 |
| 109 | disrupt* w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 19, 21, 63 | Relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 110 | Downturn* w/15 (Price OR Demand OR Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 21, 63 | Relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 111 | Downturn* OR drop* w/10 (Tether* OR USDT) | 18, 19, 56, 63 | Relevant to B/T Defendants' knowledge of financial precarity and alleged acts in furtherance of market manipulation |
| 112 | Drop* /15 (Price OR Demand OR Bitcoin OR Bitcoin Cash OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol*) | 21, 63 | Discussion of a potential decline in the price of crypto-commodities is relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 113 | Epay* /15 (Bitcoin OR Bitcoin Cash OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol* OR Tether! OR USDT OR drop! OR crash!) | 21, 63 | Relevant to Plaintiffs' alleged scheme of market manipulation. *See* Amended Complaint ¶437 |
| 114 | Fals* w/15 (supply OR demand OR signal) | 18, 19, 56, 63 | Relevant to Defendants' alleged misrepresentation of USDT reserve backing |
| 115 | Fangorn | 25, 47 | Fangorn is related to Potter's investments and other transactions made between B/T Defendants and third-party entities for the transfer of USDT or other crypto assets |
| 116 | Fowler* | 9, 10 | Relevant to Defendants' transactions with Defendant Fowler and related entities to Fowler conduct customer transactions. *See* Amended Complaint ¶¶471, 481 |

|  | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 117 | Fraud* AND USDT | 7, 9, 11, 14, 15 | Relevant to Plaintiffs' claims that transferred that fraudulent USDT to Bittrex and Poloniex, where Bitfinex and Tether used it to purchase cryptocommodities. *See* Amended Complaint ¶¶ 189-90 |
| 118 | Freeh w/2 Sporkin | 11, 57 | Relevant to USDT reserve audits |
| 119 | Griffin | 54 | Relevant to communications and documents referencing the report of Professor J. Griffin and A. Shams relating to unbacked issuances of USDT |
| 120 | Illegal* AND (trad* OR manipul* OR inflat*) | 18, 63 | Relevant to Plaintiffs' claim that Defendants conspired to manipulate the cryptocommodity market to inflate the price of cryptocommodities |
| 121 | Indict* AND USDT | 1, 10 | Relevant to communications related to criminal investigation or charges or indictment of individual engaged in transactions or relationship with Defendants |
| 122 | Inflat* AND (Bitcoin OR ether OR crypto*) | 7, 11, 14, 15 | Relevant to Plaintiffs' claim that Defendants conspired to manipulate the cryptocommodity market to inflate the price of cryptocommodities, including Bitcoin and Ether |
| 123 | Insufficient w/5 (Tether OR USDT) | 7, 11, 14, 15 | Relevant to Plaintiffs' claim that there is insufficient backing for USDT |
| 124 | Invest* w/15 (Tether or Bitfinex) | 69 | Relevant to understanding how BT Defendants invest their reserves and how this impacts USDT's backing |
| 125 | Loan* OR "IOU" w/10 (token OR "USDT" OR Tether OR USD) | 7, 25, 51, 37, 71 | Relevant to investments made to Defendants and any impact on reserves and USDT backing |
| 126 | Manipulat* AND (bitcoin OR ether*) AND USDT | 18, 63 | Relevant to Plaintiffs' alleged scheme of market manipulation |
| 127 | Mint* w/15 ("USDT" OR Tether OR token) | 4, 5, 59, 61, 62 | Relevant to B/T Defendants' communication, public statements, and representation regarding USDT backing |
| 128 | Misrepresent* /15 (asset* OR backing OR reserve OR liquid*) | 11, 12, 14, 15, 32, 65 | Relevant to B/T Defendants' communication, public statements, and representation regarding USDT backing |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 129 | Monopol* | 67 | Relevant to Plaintiffs' allegations of collusion with third-party crypto entities to monopolize on bitcoin and other crypto markets |
| 130 | New w/5 (Tether OR USDT) | 7, 11, 14, 15, 59 | Relevant to B/T Defendants' practices related to the issuance and transfer of USDT |
| 131 | Oz w/2 Yosef | 10, 45 | Relevant to understanding how Defendants accessed banking services and their relationship with Crypto Capital. *See* Amended Complaint ¶ 362. |
| 132 | Peg* w/5 (Tether OR USDT) | 4, 5, 59, 61, 62 | Relevant to Plaintiffs' claims regarding the issuance of unbacked USDT and the representation that the backing pegged USDT to the dollar. |
| 133 | Poloniex | 9, 61 | Relevant to communications between B/T Defendants and Exchange Defendants |
| 134 | Print* OR purchas* OR buy* w/5 (Tether or USDT) | 4, 5, 59, 61, 62 | Relevant to B/T Defendants' practices relating their "printing" and purchasing of USDT and other crypto |
| 135 | Realcoin w/15 (equat* OR back* OR equal*) w/25 (dollar* OR fiat OR currenc* OR reserve* OR cash) | 7, 14, 31 | Realcoin was rebranded as Tether. *See* Amended Complaint ¶ 122. Relevant to Plaintiffs' claims that Tether, formerly Realcoin, misrepresented to the market that USDT was fully backed by U.S. dollars. |
| 136 | Reserv* w/15 (cash or liquid* or currency or sufficient or insufficient or paper or illiquid) | 7, 11, 14, 15 | Relevant to Plaintiffs' allegations regarding deficient reserves and USDT backing |
| 137 | Reserv* w/5 (Tether or USDT) | 7, 11, 14, 15 | Relevant to Plaintiffs' allegations regarding deficient reserves and USDT backing |
| 138 | (Spike* w/15 (demand or trad* OR price)) w/10 (Tether* OR USDT) | 63 | Discussions of spikes in the demand for USDT are relevant to the B/T Defendants ability to issue USDT and the large amounts of issued USDT reflecting suspicious activity |
| 139 | (Spike* w/15 (demand or trad* OR price)) w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol* OR Drop* OR Crash*) | 63 | Relevant to fluctuations in B/T Defendants' bank accounts and USDT reserves and large amounts of issued USDT reflect suspicious activity |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 140 | Suspicious* w/10 (Tether* OR USDT) | 63 | Relevant to fluctuations in B/T Defendants' bank accounts and USDT reserves and large amounts of issued USDT reflect suspicious activity |
| 141 | Suspicious* w/15 (Bitcoin OR BTC OR Omni OR Eth* OR Tron OR EOS OR Liquid* OR Algo* OR SLP OR Sol* OR spike or increase) | 63 | Relevant to Plaintiffs' allegations regarding a concerted scheme to manipulate crypto pricing using USDT issuances |
| 142 | Trade* w/5 (Strateg* OR Pattern) | 4, 5, 25, 59, 61, 62 | Relevant to B/T Defendants' crypto transactions related to USDT and the existence of strategies to profit from those transactions using unbacked USDT. |
| 143 | Transfer* w/10 ("USDT" OR Tether OR token) | 26, 59, 63 | Relevant to B/T Defendants' crypto transactions related to USDT |
| 144 | Unback* | 7, 11, 14, 15 | Relevant to communications, including those by and between Defendants, regarding USDT backing |
| 145 | Unfund* | 7, 11, 14, 15 | Relevant to B/T Defendants lack of US bank funding |
| 146 | Untether* OR Un-tether* | 54 | Relevant to provide context for conduct exhibited by the BT Defendants that reflected or referenced the type of fraudulent activity reported and/or analyzed in the Tether Report. *See* Amended Complaint ¶¶ 281-302. |
| 147 | "Jump Trading" OR Jumptrading | 25, 26, 69 | Third-party crypto trading partner of B/T Defendants; Relevant to banking and Plaintiffs' alleged scheme of manipulation regarding crypto transactions for USD |
| 148 | "Galaxy Benchmark" OR "Galaxy Digital" | 25, 26, 69 | Third-party crypto trading partner of B/T Defendants; relevant to banking and crypto transactions for USD |
| 149 | "Michael w/2 Novogratz" | 25, 26, 69 | CEO of Galaxy Digital; Relevant to third-party crypto trading pool  relationship with B/T Defendants and Noble Bank |
| 150 | "Digital Currency Group" OR "DCG" | 25, 26, 69, 71 | Investor and Parent company of trading pool partner, Genesis. Relevant to investments, and third-party crypto-currency transactions |
| 151 | "Smart Property Solutions" OR SPS* | 25, 26, 46, 69 | Borrower/Lender and entity owned by G. Devasini; Relevant to B/T Defendants' banking and transfer of USDT to third-party entities |

| | Search Term | Responsive RFP | Relevance |
|---|---|---|---|
| 152 | (Hamid w/2 Reza) OR (Hamid w/2 Khoyi) | 46 | Affiliates of Smart Property Solutions; Relevant to B/T Defendants' banking practices and reserve sources |
| 153 | Camponovo | 46 | Affiliates of Smart Property Solutions; Relevant to B/T Defendants' banking practices and reserve sources |
| 154 | Cumberland* | 25, 26, 69 | Relevant to investor relationships with the B/T Defendants involving transfer of crypto-assets for USD |
| 155 | Alameda* | 25, 26, 69 | Relevant to investor relationships with the B/T Defendants involving transfer of crypto-assets for USD |
| 156 | Genesis* | 25, 26, 69 | Relevant to trading relationships between third-party crypto entities and the B/T Defendants and Noble Bank |
| 157 | "Vukota Capital" OR Vukota* | 25, 26, 71 | Relevant to loan and lending relationships with the B/T Defendants involving transfer of crypto-assets for USD |
| 158 | Circle Internet | 69 | Relevant to loan and lending relationships with the B/T Defendants |
| 159 | Global Transaction Services | 27 | Identified as a company owned by Crypto Capital and used by the B/T Defendants; Relevant to show communications and transactions between B/T Defendants' and Crypto Capital, Global Transactions Services, and/or Reginald Fowler regarding banking on behalf of crypto-exchanges |