

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

September 19, 2022

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

We write on behalf of the B/T Defendants in response to Plaintiffs' letter requesting a pre-motion conference in connection with certain of Plaintiffs' Requests for Production ("RFPs") to the B/T Defendants (Dkt. No. 239).

Plaintiffs' letter further demonstrates their failure to actively prosecute their case, as well as their unwillingness to tailor their patently overbroad requests to documents that are relevant to their claims.

First, with respect to most of the requests for which Plaintiffs now seek an order compelling production, RFPs 22-25 and 72, the B/T Defendants served objections in January and Plaintiffs *never* raised those RFPs in any of the parties' discussions until August, after the Court granted a brief extension of the document production deadline.  As to RFPs 29 and 31, Plaintiffs could have raised any dispute with the Court months ago.  There is no excuse for Plaintiffs' delay.

Second, the RFPs that Plaintiffs belatedly raise with the Court are overbroad in the extreme, seeking *all* of the B/T Defendants' financial records as well as transaction records for essentially *all* trades or transfers of any stablecoins or other cryptocurrencies.  That is the B/T Defendants' *entire* business:  Tether is the issuer of the USDT stablecoin and Bitfinex is a cryptocurrency exchange.  Plaintiffs do not provide any basis for demanding such an unbounded production, particularly in light of the broad categories of documents the B/T Defendants have already agreed to produce in response to other RFPs.

Unable to justify their RFPs – or their failure to pursue them in a timely manner – Plaintiffs resort to mischaracterizing the record and misstating their own allegations in the Amended Complaint.  The Court should reject Plaintiffs' untimely and unreasonable requests.

Plaintiffs' request to compel production also implicitly includes a request to further extend the discovery schedule, as it was made with just five weeks left until the revised deadline for substantial completion of document production.  Plaintiffs have shown no good cause for such a request.  As the Court has admonished, "if a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks, let alone more time for discovery."  Indiv. Rules of Prac. § 3(C).

The Honorable Katherine Polk Failla        2                    September 19, 2022

### I.    The Court Should Deny Plaintiffs' Request With Respect to RFPs 29 and 31.

RFP 29 seeks any and all "general ledgers, balance sheets, income statements, cash-flow statements, and profit and loss statements" – a broad request that is neither tailored to Plaintiffs' claims nor necessary in light of the production that the B/T Defendants have agreed to make in response to other RFPs. (Dkt. No. 239-1 at 5.) Although Plaintiffs attempt to justify this request by claiming it will help them to "resolve whether and to what extent USDT was backed by U.S. dollars" (Dkt. No. 239 at 1), they do not dispute that the B/T Defendants have already agreed to produce documents sufficient to establish USDT reserves, as well as documents sufficient to show the collateral or backing received for each issuance of USDT.

Contrary to Plaintiffs' assertion, the B/T Defendants have explained to Plaintiffs that their production of documents sufficient to establish USDT reserves will not be limited to "a ledger" and will include the underlying bank statements and other records. Indeed, Plaintiffs cite to findings by the CFTC and the New York Attorney General regarding USDT reserves, but they ignore that the B/T Defendants have agreed to produce all of the documents regarding reserves that they previously produced to those government regulators. The vast majority of those documents have already been produced. If those documents were sufficient for the CFTC and the New York Attorney General, they are sufficient for Plaintiffs.

RFP 31 seeks "[d]ocuments sufficient to establish USDT Reserves, including account statements of all banks or other institutions related to Your funds or reserves." (Dkt. No. 239-1 at 5.) As noted above, the B/T Defendants have agreed to produce documents sufficient to establish USDT reserves. The B/T Defendants object to RFP 31 to the extent that it also seeks production of "account statements" relating to the B/T Defendants' other "funds." Plaintiffs offer no reason why "funds" that do not constitute USDT reserves are relevant to their claims.

Notably, in connection with RFPs 29 and 31, Plaintiffs misstate their own allegations. As the Court explained, the "crux" of Plaintiffs' allegations is that the B/T Defendants issued USDT that was "completely unbacked and printed out of thin air," and that this "unbacked USDT" was then transferred to the Exchange Defendants and used to inflate the price of bitcoin. (Dkt. No. 182 at 16.) Perhaps recognizing that the evidence does not support those allegations, Plaintiffs now assert – incorrectly – that their claims relate to whether USDT was "fully backed by U.S. dollars" as opposed to "other assets." (Dkt. No. 239 at 1-2.) That is not the basis of Plaintiffs' claims, as the Court correctly concluded.

### II.   The Court Should Deny Plaintiffs' Request With Respect to RFPs 22-25 and 72.

Plaintiffs' request to compel the production of transaction records for essentially all trades or transfers of any stablecoins or other cryptocurrencies and related information pursuant to RFPs 22-25 and 72 should be rejected because Plaintiffs failed to timely raise this dispute.

Although the B/T Defendants served objections to RFPs 22-25 and 72 in January 2022, Plaintiffs *never* raised those RFPs during any of the parties' discussions over the subsequent *seven months*. Plaintiffs' representation to the Court that these RFPs were "discussed in meet and confers" is false and misleading. As Plaintiffs' August 24 letter reflects, these RFPs were

The Honorable Katherine Polk Failla        3                    September 19, 2022

"discussed" only insofar as Plaintiffs noted on the parties' first call on March 31 that they planned to raise the RFPs on the parties' next call. (Dkt. No. 239-1 at 3, 7.) But Plaintiffs never did so. Plaintiffs raised RFP 24 for the first time on August 8 and RFPs 22, 23, 25 and 72 for the first time on August 24, only *after* the Court granted a brief extension of the document production deadline. That is far too late. *See Iacovacci v. Brevet Holdings, LLC*, 2022 WL 540658, at *3-4 (S.D.N.Y. Feb. 23, 2022) (denying motion to compel in light of plaintiff's "dilatory conduct" in failing to raise dispute with the court for nearly two months).

Plaintiffs' motion to compel production in response to RFPs 22-25 and 72 should also be denied because they are incredibly overbroad, unduly burdensome and untailored to the parties' claims and defenses in this action, as required by Rule 26. These RFPs seek *all* transaction records for essentially *all* trades or transfers of any stablecoins or other cryptocurrencies by the B/T Defendants, as well as *all* cryptocommodity addresses owned or controlled by the B/T Defendants, *all* cryptocommodities purchased through those addresses, *all* wallets or deposit accounts owned or controlled by the B/T Defendants, and *all* purchases of crypto assets from each such wallet or account. (Dkt. No. 239-1 at 4, 7.)

These requests are overbroad and unduly burdensome on their face, considering that Tether is the issuer of a stablecoin and Bitfinex is a cryptocurrency exchange. Transactions involving stablecoins and other crypto assets span the B/T Defendants' entire business. *See FragranceNet.com, Inc. v. FragranceX.com Inc.*, 2008 WL 11415939, at *3 (E.D.N.Y. Sept. 30, 2008) (rejecting request for "far-reaching financial discovery" involving defendant's "entire business").

Plaintiffs offer no justification for such extraordinary requests, merely stating that they must "assess" if the B/T Defendants' transactions in cryptocommodities and stablecoins "were strategically timed to inflate the market." (Dkt. No. 239-1 at 2.) As the Court explained, however, Plaintiffs' claims are limited to the alleged transfer of "unbacked USDT" to "accounts maintained by Bitfinex on two crypto-exchanges operated by the Exchange Defendants, Poloniex and Bittrex." (Dkt. No. 182 at 16.) In response to other RFPs, the B/T Defendants have agreed to produce: (*i*) documents relating to "the B/T Defendants' use of the crypto-commodity exchanges or accounts of any U.S. Exchange Defendant for the transfer of newly issued USDT"; (*ii*) "final written contracts or agreements" between the B/T Defendants and the Exchange Defendants; (*iii*) documents relating to "any agreement or arrangement" with any U.S. Exchange Defendant regarding "the issuance or transfer of new USDT using any crypto-commodity exchanges or accounts owned by any U.S. Exchange Defendant"; (*iv*) documents relating to "any business strategy, plan, or directive" relating to "the timing of issuance or transfer of USDT to any U.S. Exchange Defendant for the purchase of crypto-commodities"; and (*v*) communications with the U.S. Exchange Defendants relating to "the issuance or transfer of USDT," to "transfers, collateral, backing, or reserves of USDT," and to a broad set of other topics. Plaintiffs do not – and cannot – explain why these documents are insufficient.

Respectfully submitted,

/s/ Elliot Greenfield