O'Melveny

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

Abby F. Rudzin
D: +1 212 326 2033
arudzin@omm.com

December 5, 2022



**VIA ECF AND E-MAIL**

The Honorable Katherine Polk Failla
U.S. District Court for the Southern District of New York
40 Foley Square, Courtroom 618
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, No. 1:19-cv-09236-KPF

Dear Judge Failla:

      We represent Defendant Bittrex, Inc., and write in response to Plaintiffs' November 30, 2022 letter motion seeking a pre-motion conference to discuss a discovery dispute between Plaintiffs and Bittrex.  (ECF No. 264.)

      Plaintiffs' letter comes after months of Bittrex negotiating in good faith, repeatedly giving in to Plaintiffs' demands to avoid burdening the court with a dispute.  Bittrex has agreed to nearly 180 search strings run over Plaintiffs' lengthy proposed time period, for eleven custodians—four of whom Plaintiffs requested only in October, after the parties had been negotiating search terms for months.  Those search parameters yield more than 20,000 documents (639,710 pages) for Bittrex to review, including hundreds of "Slack" transcripts in different discussion forums.  Each such transcript contains 24 hours of messages between numerous people and are often dozens of pages long.

      All of this Bittrex has already agreed to.  The Plaintiffs' only complaint is whether a lengthy search string Bittrex has agreed to run to collect documents for review should also require the document to contain the terms "Tether" or "USDT."  Excluding that limiter increases the number of documents Bittrex attorneys would need to review by nearly 20%,[1] and Bittrex believes that Plaintiffs cannot justify the search without the limiter.

      Plaintiffs' insistence that the broad search string will pick up "relevant" documents, and that Bittrex therefore bears the burden of showing undue burden and expense, is not consistent with the law after the 2015 amendment to Rule 26.  "Since the 2015 amendments to the federal rules, the scope of discovery permitted has narrowed," and now discovery "must be cabined so that it is proportional to the needs of this case."  *Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552, at *2, *4 (S.D.N.Y. Apr. 8, 2019); *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) ("[T]he amended rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production.").  The question for the Court is whether

---

[1] Exclusive of family members, the search terms to which Bittrex has already agreed return 8,818 documents.  The 1,653 additional documents Plaintiffs seek here would impose an 18.7% increase.

including the USDT limitation is going to miss so many relevant documents that it justifies increasing Bittrex's review burden by almost 20%.

There is no doubt that excluding the USDT limiter will cause the search to pick up many irrelevant documents.  Bittrex attorneys would be required to review, for example, documents containing only the terms "print*" and Bitfinex (within 15 words of each other).  That means reviewing emails from someone who has the standard phrase "please consider the environment before printing this email" in her signature block just because those emails contain the word "Bitfinex."  But this case is not about Bitfinex in a vacuum: It is about a supposed scheme by Bitfinex to manipulate the crypto market with USDT.  (*See, e.g.,* Am. Compl. ¶ 10 ("With the willing assistance of Bittrex . . . Bitfinex and Tether *used fraudulently issued USDT* to make strategically timed, massive purchases of cryptocommodities just when the price of those commodities was falling." (emphasis added)).)

Plaintiffs cannot explain why this broad search should not be tethered—no pun intended—to Tether.  And Plaintiffs' own letter shows that it should.  Plaintiffs say Bittrex's proposed modification would "improperly narrow Bittrex's search for relevant documents responsive to Plaintiffs' RFPs Nos. 19 and 20."  (ECF No. 264 at 2.)  Tellingly, Plaintiffs do not tell the Court what those requests actually say:

- Request No. 19: All Documents relating to Your understanding, analysis, or assessment of the reasons or explanation for the timing of any Bitfinex Defendant's *use of USDT* in any Bittrex account, or in any address controlled by Bittrex, to purchase cryptocommodities.

- Request No. 20: All Documents relating to Your understanding, analysis, or assessment of the reasons or explanation for the timing of any Tether Defendant's *use of USDT* in any Bittrex account, or to any address controlled by Bittrex, to purchase cryptocommodities.

(emphases added).  Bittrex's proposed modification limiting the search to documents that mention USDT gives Plaintiffs exactly what they requested.

Plaintiffs also claim that the modification would improperly narrow the search for documents responsive to Plaintiffs' RFP No. 2.  (ECF No. 264 at 1, 2.)  But RFP No. 2 requests only "[d]ocuments sufficient to show any agreement between You and any Bitfinex Defendant."  As is common with requests for documents "sufficient to show," Bittrex will conduct a targeted search of its files and produce only documents necessary to show any agreement.  Once again, Plaintiffs' own letter proves this point.  Plaintiffs say that the unrestricted search is necessary because "[i]t is very likely that if Bittrex personnel discussed agreements with Bitfinex, they did so . . . without mentioning Tether or USDT."  (ECF No. 264 at 2.)  But Plaintiffs' RFP No. 2 does not request all documents "discussing" potential agreements, only documents sufficient to show an actual agreement.  And Bittrex has agreed to run a different search string on this topic:

- ("Bittrex w/15 ((Agreement* OR contract* OR relation* OR trad* OR transaction*) w/15 (Bitfinex OR Tether OR Digfinex))")

This string will pick up documents discussing an agreement, trade, or transaction with Bitfinex even without "Tether" or "USDT." Plaintiffs cannot explain why this search is not enough.

Plaintiffs' two examples of documents that would be "excluded" are likewise unavailing as justification for the broad unlimited search they propose. (*See* ECF No. 264 at 2.) To address Plaintiffs' stated concern, Bittrex has offered to add "OR Bitfinex" to the following searches it is already running:

- ((Account* OR Track* OR monitor* OR maintain*) w/5 ((USDT OR Tether OR Bitfinex) w/15 (issu* OR redeem* OR redemption* OR dollar* OR fiat OR currenc* OR valu* OR reserve* OR balance)))

- ((agree w/15 (flow OR USDT OR Tether OR mint* OR issu* OR Poloniex OR Bittrex OR Reggie OR Fowler)) w/15 (Tether OR USDT OR Bitfinex))

- ((Tether OR USDT OR Bitfinex) w/7 (back* OR debase* OR fals* OR fraud* OR mint* OR burn* OR manip* or pump*))

- ("not backed" w/5 (Tether OR USDT OR Bitfinex))

All of these searches would thus pick up documents that contain Bitfinex but not Tether or USDT, though in a more tailored and less burdensome way. Plaintiffs did not accept this offer.

Because Plaintiffs cannot justify their search term without a USDT limiter, they have not shifted the burden to Bittrex to prove undue burden. *See Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (burden does not shift to withholding party until party seeking discovery meets its burden). Regardless, Plaintiffs' burden arguments are also unavailing.

First, Plaintiffs misrepresent the burden of the unmodified search string. Bittrex told Plaintiffs that the unlimited search string would require Bittrex to review 1,536 additional unique documents and 117 additional Slack transcripts, plus family members. (Pls.' Ex. A at 2.) Simple math shows that this is greater than Plaintiffs' claim of "less [sic] than 1,600 additional documents." (ECF No. 264 at 3.) And it does not account for family members or the fact that each Slack transcript requires line-by-line review of dozens of pages. (*See* Pls.' Ex. A at 2.)

Second, Plaintiffs' cases in fact support Bittrex's limitation. While the court in *Moss* recognized that a review of 1,800 documents "is not *necessarily* overbroad," it still limited the requested discovery. *See Moss v. Blue Cross and Blue Shield of Kansas*, 241 F.R.D. 683, 690 (D. Kan. 2007) (emphasis added). Nor was there any indication of how many documents the party was *already* reviewing—here, more than 20,000. The court in *Malzberg* also ordered more limited discovery than the plaintiff sought. *See Malzberg v. New York Univ.*, 2020 WL 3618962, at *4 (S.D.N.Y. July 2, 2020) (limiting discovery to particular department at issue). As in those cases, discovery here should be limited to the relevant issues. The USDT limiter does so.

We are available to discuss these issues with the Court at the Court's convenience.

O'Melveny

                                                                 Respectfully submitted,

                                                                 */s/ Abby F. Rudzin*

                                                                 Abby F. Rudzin
                                                                 *of* O'Melveny & Myers LLP

                                                                 *Counsel for Defendant Bittrex, Inc.*

cc:   All Counsel of Record via ECF

The Court is in receipt of Plaintiffs' pre-letter motion concerning a discovery dispute with Defendant Bittrex (Dkt. #264), as well as Bittrex's above response (Dkt. #266). Following the submission of Bittrex's response, Plaintiffs filed a brief reply letter, noting that Bittrex made a counter-proposal to include certain additional search terms in various searches just hours before Bittrex's submission of its letter, but that Bittrex still refuses to provide hit reports for the modified searches. (Dkt. #267). It is this Court's practice to not allow such reply letters, so it disregards Plaintiffs' reply arguments and considers only the new information about the proposed modified searches. As the docket in this case reflects, this dispute is the latest instantiation of the various parties' disagreements over relevance and burden as discovery progresses in this case.

This dispute appears simple on its face: whether Bittrex must run a search string with or without the limiter "AND (Tether OR USDT)" to identify and produce documents responsive to several of Plaintiffs' requests for production ("RFPs"). (*See* Dkt. #264 at 1; Dkt. #266 at 1). The parties, however, are at an impasse over inclusion of these words in the relevant search string.

The Court begins with relevance. Plaintiffs argue that the inclusion of this limiter will improperly cabin their RFPs and will result in Bittrex's search missing highly relevant documents. (Dkt. #264 at 2). Plaintiffs note that they have alleged that Bittrex facilitated manipulative trading on its exchange. (*Id.*). Because Bitfinex and Tether are under common control, Plaintiffs argue that it is possible that Bittrex's employees "discussed trades and transactions on Bitfinex without mentioning 'Tether' or 'USDT' specifically." (*Id.*). As such, Plaintiffs argue that use of the limiter would miss relevant documents that do not explicitly mention Tether or USDT, but that nonetheless substantiate their claims of market manipulation. (*Id.*). Plaintiffs also argue that these documents are relevant to their RFP regarding agreements between Bittrex and the B/T Defendants. (*Id.*).

Bittrex, for its part, argues that Plaintiffs' proposed search will pick up irrelevant documents and is not proportional to Plaintiffs' allegations. (Dkt. #266 at 1-2). Bittrex notes that the search without use of a limiter will pick up wholly inconsequential documents (*id.* at 2), and is also not tied to the RFPs or Plaintiffs' allegations (*id.*). For example, Bittrex argues that this case is about using "fraudulently issued USDT" to buy cyptocommodities, and Plaintiffs' RFPs reflect the same (*see id.* (noting that RFPs 19 and 20 are related to "use of USDT")). Further, Bittrex has proposed including "Bitfinex" in certain searches to allay Plaintiffs' concerns that documents not explicitly referring to Tether or USDT would be missed. (*Id.* at 3).

The Court has little difficulty deciding that the documents that Plaintiffs seek that could be possibly missed through inclusion of the limiter are relevant to their core theory of manipulation in this case. (Dkt. #264 at 2). Although that core theory is tied to use of unbacked Tether or USDT, Plaintiffs plainly explain why there is a small, but important, potential universe of documents that would nonetheless touch on this theory without explicitly mentioning Tether or USDT. (*Id.*). This scenario is not as stark as that presented by Bittrex's cited cases, in which a discovery request was found over-broad in part because the plaintiffs did not bring certain claims. *See, e.g.*, *Michael Kors, L.L.C.* v. *Su Yan Ye*, No. 18 Civ. 2684 (KHP), 2019 WL 1517552, at *4 (S.D.N.Y. Apr. 8, 2019) ("This Court finds that some discovery concerning the MK Trademark is warranted, but that such discovery must be cabined so that it is proportional to the needs of this case and takes into account that there is no separate claim of trademark infringement."). Instead, Bittrex's main response is that running the disputed search without the limiter will pick up some inconsequential documents and may also bring in documents that do not purport to show any market manipulation through the use of Tether or USDT. (Dkt. #266 at 2-3). But the mere fact that some irrelevant documents may be picked up by the search in addition to possibly relevant documents does not mean that the limiter must be used. *See, e.g.*, *Fed. Hous. Fin. Agency* v. *Royal Bank of Scotland Grp. PLC*, No. 11 Civ. 1383 (AWT), 2014 WL 10988157, at *4 (D. Conn. May 13, 2014) ("The ... [d]efendants provide no quantification of any type as to the number of false hits that is likely to result from running the ... [s]earch [t]erms and whether the number of false hits that can be projected to result from running the ... [s]earch [t]erms is disproportionate to the number of false hits that resulted from running other searches that the parties have deemed to not be unduly burdensome."); *Bagley* v. *Yale Univ.*, 307 F.R.D. 59, 66 (D. Conn. 2015) ("The sense of irritated resignation conveyed by the familiar aphorism — 'it's like looking for a needle in a haystack' — does not exclude the possibility that there may actually be a needle (or two or three) somewhere in the haystack, and sharp needles at that."). As such, the Court indeed finds that "[t]he party seeking discovery [has borne] the initial burden of proving the discovery is relevant[,]" *Citizens Union of City of New York* v. *Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017), and considers whether Bittrex has justified curtailing Plaintiffs' request.

Bittrex maintains that a curtailed search is necessary because the requested search is unnecessarily burdensome and a modified search will resolve Plaintiffs' concerns.  Taking the latter first, the Court is not inclined to credit Bittrex's last-minute maneuvering in response to Plaintiffs' pre-motion letter.  (Dkt. #267 Exhibit A).  Although the Court of course appreciates attempts at compromise, and as usual implores the parties to work through their disputes without Court intervention, Bittrex's proposal misses certain terms that Plaintiffs contend are relevant, and was not accompanied by hit reports.  (*Id.; see also* Dkt. #266 at 3 (outlining proposed modified searches, which do not include all of the terms that Plaintiffs wish to include)).  Had the parties worked through Bittrex's proposal before December 5, 2022, it is possible there would be no need for Court involvement.  But because Plaintiffs bore their burden of explaining the relevance of their search without a limiter, the Court is not in a position to delete or otherwise modify certain search terms without more information.

On burden, the search without the limiter would require Bittrex to review 1,536 additional documents and 117 additional Slack transcripts, as well as family members.  (Dkt. #266 at 3; *see also* Dkt. #264 at 1).  The parties do not appear to disagree on this fact (*see, e.g.,* Dkt. #264 at 3 ("Bittrex ... would need to review less than 1,600 additional documents and their associated families."), but do disagree as to how difficult review would be (*id.; see also* Dkt. #266 at 3 ("each Slack transcript requires line-by-line review of dozens of pages")).  The number of additional documents alone does not resolve this issue.  Instead, burden must be considered in light of relevance, discussed above, and the needs of the case.  *See, e.g., Malzberg v. New York Univ.*, No. 19 Civ. 10048 (LJL), 2020 WL 3618962, at *4 (S.D.N.Y. July 2, 2020) (considering burden in the context of proportionality of plaintiffs' request).  Although the Court is of course cognizant that any request for production comes with attendant costs, the Court does not believe that Bittrex needing to review 18.7% more documents (Dkt. #266 at 1 n.1) is disproportionate or unduly burdensome in light of the substantial discovery in this case, the fact that discovery is electronic, and the allegations in the consolidated class action complaint (Dkt. #264 at 1).  Moreover, the Court has rejected Bittrex's arguments on relevance, and believes that any incremental burden would be far outweighed by the potential relevance of the documents.

Accordingly, the Court **ORDERS** Bittrex to run the search proposed in Plaintiffs' letter motion without use of the limiter.  As is standard, the Court hopes that the parties can continue to work through discovery disputes without the Court's intervention.

The Clerk of Court is directed to terminate the pending motion at docket entry 264.

SO ORDERED.

Dated:     December 7, 2022
           New York, New York

*Katherine Polk Failla*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE