

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537  

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com  

**Abby F. Rudzin**  
D: +1 212 326 2033  
arudzin@omm.com  

February 28, 2023

**VIA ECF AND E-MAIL**

The Honorable Katherine Polk Failla  
U.S. District Court for the Southern District of New York  
40 Foley Square, Courtroom 618  
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, No. 1:19-cv-09236-KPF

Dear Judge Failla:

    We represent Defendant Bittrex, Inc., and write in response to Plaintiffs' February 23 letter motion seeking leave to serve an interrogatory on Bittrex asking it to identify "all accounts on its exchange owned or controlled by the B/T Defendants."  (ECF No. 302.)  Plaintiffs' request should be denied for the simple reason that Bittrex has already given Plaintiffs responsive information and is unable to give them more.  Plaintiffs' request should also be denied because they have failed to show why the account numbers would be useful to them, much less the good cause required to serve discovery after the February 8, 2023 deadline for written discovery.  (*See* ECF No. 298, ¶ 5(e).)

*Background*

    On November 22, 2021, the Court entered a Case Management Plan and Scheduling Order (the "Order") setting time periods for Local Rule 33.3(a) interrogatories (equivalent to initial disclosures) and Rule 33.3(c) interrogatories (contention interrogatories).  (ECF No. 194, ¶ 7(b)–(c).)  The Order prohibited Plaintiffs from serving any other interrogatories on Bittrex: "No other interrogatories are permitted except upon prior express permission of the Court." (ECF No. 194, ¶ 7(c).)  Despite this clear language, on December 7 Plaintiffs served Bittrex with another set of interrogatories without Court permission (after serving Bittrex with ten separate interrogatories under Rule 33.3(a)).  (Ex. A (December 7, 2022 A. Arcoleo Email).)  On December 23, we informed Plaintiffs that their interrogatories violated the Order and Bittrex would not respond to them.  (Ex. B (December 23, 2022 G. Hollon Email).)

    On February 8, the Court told Plaintiffs that they were not permitted to serve more discovery requests.  (Ex. C at 46:14–17 (Transcript of February 8, 2023 Hearing) ("THE COURT:  I think plaintiffs are done with their sending out requests, I think they're really limited at this point to following up on deficiencies and asking for . . . clarifications of things.").)  That prohibition was memorialized in the Amended Case Management Plan and Scheduling Order (the "Amended Order") entered by the Court on February 17. (ECF No. 298, ¶ 5(e) (setting February 8, 2023 end date on written discovery).)  Without even acknowledging this deadline, Plaintiffs are now asking the Court to permit them to serve an interrogatory on Bittrex.

Bittrex has given Plaintiffs responsive information and told them that Bittrex is unable to give more. Specifically, Bittrex has represented to Plaintiffs that it has searched its records and has identified no accounts in the name of any of the B/T Defendants or any of the other entities Plaintiffs claim to be "affiliated" with them. (ECF No. 301-4 at 3; ECF No. 301-2 at 2–4.) For the 83 human names Plaintiffs provided with the claim that they too are "affiliated" with the B/T Defendants, Bittrex has represented to Plaintiffs that none of the names yields an account with know-your-customer ("KYC") information suggesting that the account holder had any connection to Bitfinex or Tether. (*Id.*)

We told Plaintiffs that Bittrex would consider searching for an account if Plaintiffs provided additional identifying information, such as a date of birth or email address, so Bittrex could confirm that it is looking for the correct individual's records. (ECF No. 301-4 at 3.) Plaintiffs did not provide that information and instead filed their motion.

*Argument*

Plaintiffs' request should be denied for two independent reasons. First, Bittrex has already given Plaintiffs the responsive information it has. Plaintiffs seek account numbers "owned or controlled" by any of the B/T Defendants without explaining what they consider to be an account "controlled" by the B/T Defendants. Bittrex knows only what its KYC records show as the owner of an account, and those records do not reflect any account owned by any of the B/T Defendants. Bittrex has no way to determine if a third party is "controlling" the account (and Bittrex's policies and procedures do not allow any account to be "controlled" by anyone other than the identified account holder). Not only is this information unavailable to Bittrex, but it involves a legal conclusion on which the parties will presumably disagree. Bittrex simply cannot say whether any account is, in Plaintiffs' view, "controlled" by the B/T Defendants.

The list of names Plaintiffs provided on February 2—nearly two months after improperly serving the interrogatory on Bittrex—does not cure this problem. As an initial matter, Plaintiffs say only that the names provided are of people with allegedly some "[a]ffiliation with B/T Defendants." (ECF No. 301-2 at 2.) Plaintiffs do not represent that they have a good-faith basis to believe that the B/T Defendants control any of the accounts, much less explain that basis to Bittrex despite repeated requests to do so. Plaintiffs identify employees and shareholders of the B/T Defendants—and shareholders and employees of those shareholders—but those characteristics do not mean that the B/T Defendants "control" their accounts. Firms obviously do not control the personal bank accounts of their shareholders and employees in the normal course. Plaintiffs even identify several people as mere participants in a Telegram chat. (*Id.*) Bittrex is at a loss as to how this provides a basis to assert that the B/T Defendants control their crypto accounts.

More important, as Bittrex has explained to Plaintiffs, Bittrex needs more identifying information than just a name. Searching "Chris Ellis" on LinkedIn, for example, yields about 3,000 people, while searching "Chris Lee" yields about 14,000 people. Even a much less common name like Amy Churchill yields 259 LinkedIn results. Bittrex obviously is not going to give Plaintiffs information about a customer without confirming it is at least the right customer (with some relationship to the B/T Defendants), and Plaintiffs presumably do not want

information about the wrong person.  Bittrex simply cannot give Plaintiffs what they want from names alone.

Second, Plaintiffs fail to acknowledge the Amended Order prohibiting Plaintiffs from serving written discovery on Bittrex after February 8 and therefore cannot show good cause for relief from that provision.  *See Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019) ("A court-ordered discovery schedule may be modified with the court's consent, for good cause shown."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  Plaintiffs note that this interrogatory was part of a larger set they sent to Bittrex in early December, but that cannot constitute "service" because Plaintiffs were prohibited by the Order from serving those interrogatories in the first place.

Putting aside Plaintiffs' delay, Plaintiffs offer no theory on how the information they seek would help them prove their case.  Plaintiffs ask only for the account numbers, not the trading in the accounts.[1]  Plaintiffs have not explained how merely knowing account numbers has relevance, and it is too late for Plaintiffs to issue any further discovery requests about the accounts.  Plaintiffs' request should be denied.

*       *       *

We are available to discuss these issues with the Court at the Court's convenience.

Respectfully submitted,

/s/ Abby F. Rudzin

Abby F. Rudzin
*of* O'Melveny & Myers LLP

*Counsel for Defendant Bittrex, Inc.*

cc:   All Counsel of Record via ECF

---

[1] In December Plaintiffs also served a request for trading records for the accounts identified in response to the improper interrogatories.  Because Bittrex identified no accounts in response to those interrogatories, Bittrex has no trading records to produce in response to those requests.