

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

Abby F. Rudzin  
D: +1 212 326 2033  
arudzin@omm.com

March 14, 2023

**VIA ECF AND E-MAIL**

The Honorable Katherine Polk Failla  
U.S. District Court for the Southern District of New York  
40 Foley Square, Courtroom 618  
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, **No. 1:19-cv-09236-KPF**

Dear Judge Failla:

We represent Defendant Bittrex, Inc., and write in response to Plaintiffs' March 9 letter requesting a pre-motion conference about Plaintiffs' demand that Bittrex conduct additional diligence and provide further information about messaging platforms that might have been used by Bittrex's document custodians. Plaintiffs' request for additional relief should be denied because, notwithstanding Plaintiffs' rhetoric, Bittrex has already made more-than-reasonable efforts to locate, review, and produce responsive documents to Plaintiffs. The Federal Rules contemplate reasonable and proportionate discovery; they do not require a litigant to venture down every rabbit hole on the off-chance an additional responsive document might be found.

*Background*.  In January 2022, Bittrex told Plaintiffs that it had provided email, Slack, Zendesk, and IRC to its employees for work-related communications. (ECF No. 318-4 at 9–10.) Bittrex also identified those same platforms as the only platforms likely to contain relevant information. (*See id.* at 9.)  Bittrex searched the data it had from those platforms in accordance with the agreed search terms and other parameters, reviewed the resulting documents, and produced the documents it said it would produce in response to Plaintiffs' requests.

In October 2022, Plaintiffs asked Bittrex whether it had used Telegram to communicate because a document produced by another Defendant shows that one of Bittrex's founders, Bill Shihara, had participated in a Telegram chat. (*See* Ex. 1 (October 12, 2022 G. Hollon Email).) We responded that Bittrex did not use Telegram for company communications and had no Telegram data—Mr. Shihara's involvement in the chat Plaintiffs cited was personal and did not involve the conducting of Bittrex business. (*See id.*)  We nonetheless agreed to ask Mr. Shihara to send us the Telegram data he was able to collect in his personal account, ran the agreed search terms on that data, and—using the most expansive interpretation of responsiveness—found three documents to produce. (Ex. 2 (February 17, 2023 M. Monkress Email).)  As with the document Plaintiffs had previously cited to us, the documents reflect Mr. Shihara's personal communications about the cryptocurrency industry generally rather than Bittrex business.

On January 30, Plaintiffs sent us a letter citing eleven documents that Plaintiffs claim show that Bittrex employees used platforms other than email, Slack, Zendesk, and IRC to communicate about business. (*See* ECF No. 318-11.)  The cited documents show that—of the

agreed-upon document custodians—only Richie Lai and Mr. Shihara might have on occasion used Telegram and Skype chats.[1]  We thereafter confirmed with Mr. Shihara that he had no Skype data in his personal account (having already obtained his personal Telegram data).  We requested that Mr. Lai log into his personal Skype account and send us all the data he could retrieve, which he did.  We reviewed that data, ran the agreed search terms, and did not identify any responsive documents.  (Ex. 3 (March 13, 2023 E. Campbell Email).)  We also confirmed with Mr. Lai that he could not access any data in other messaging platforms.  Bittrex's other document custodians are no longer employed by Bittrex.[2]

The parties have exchanged multiple letters on this topic.  We have explained repeatedly that Bittrex does not consider itself to have control over current employees' personal email or social media accounts, much less those of its former employees.  We told Plaintiffs that our decision to ask Messrs. Shihara and Lai to give us access to their personal accounts was our attempt to resolve the issue in good faith.  Those efforts, and a generous view of relevance, yielded exactly three documents to be produced.

In every letter we have sent to Plaintiffs on this topic, we have said we are available to meet and confer.  Plaintiffs have never taken us up on that offer.

*Argument.*  Rule 26 requires that discovery be "cabined so that it is proportional to the needs of this case." *Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552, at *2, *4 (S.D.N.Y. Apr. 8, 2019); *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) ("[T]he amended rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." (internal quotation marks omitted)).  Plaintiffs' insistence that Bittrex do more and more—despite evidence that Bittrex expending additional resources is unlikely to bear fruit—should be rejected.

To repeat, Bittrex has searched all the ESI in its possession or custody.  Bittrex has now also searched the Skype and Telegram data from the personal accounts of its two most senior executives during the relevant period—i.e., the necessary participants in the conspiracy Plaintiffs allege.  The question Plaintiffs present is how broadly Bittrex needs to look for more employee personal data that it might "control."  The answer is that Bittrex need not do more, for at least two reasons.

First, there is no reason to believe that collecting and reviewing employees' personal data would yield additional responsive documents, and certainly not enough additional responsive documents to justify the burden it imposes on Bittrex.  As stated, the collection of data from two additional platforms from two senior Bittrex executives yielded only three documents to produce.  Plaintiffs have offered no reason to think that searching additional platforms (such as Facebook or Gmail) for additional custodians would be fruitful: Plaintiffs' "evidence" that other platforms were used pertains only to Skype and Telegram.  And much of that evidence shows

---

[1] One document shows that former employee Ryan Hentz used Skype video conferencing for customer verification.  (*See* ECF No. 318-5 at 4–5.)  Bittrex does not maintain those videos.

[2] The exception is Daniel Cohen, who is on an extended medical leave and unreachable.

only that *other* Defendants might have used those platforms to conduct business; it does not show that Bittrex did. Even if lower-level Bittrex employees did occasionally use their personal accounts for work purposes, such use would not generate documents relevant to the core claims (i.e., that the Exchange Defendants conspired with the B/T Defendants to manipulate the cryptocommodity markets). Instead, any documents probative of the alleged conspiracy—to the extent they existed—would be found in the communications of Bittrex's high-level custodians (e.g., Mr. Shihara and Mr. Lai). As explained above, Bittrex searched and produced communications on other platforms from those individuals.

Second, the cases Plaintiffs cite do not establish that Bittrex should be required to dig for personal data from employees. For example, *In re Flag Telecom Holdings, Ltd. Securities Litigation* concerns an *individual defendant's* refusal to turn over *corporate materials* that were available to him—the opposite of requiring an employer to pry into the personal accounts of its non-party employees. *See* 236 F.R.D. 177, 181–82 (S.D.N.Y. 2006). *Chevron Corp. v. Salazar* concerns the personal Gmail account of an individual who "did not maintain a dedicated work email address" and thus "sent and received e-mails related to the . . . litigation from her Gmail account." 275 F.R.D. 437, 448 (S.D.N.Y. 2011). *Chevron*'s holding and the cases it cites stand for the proposition that employers have custody or control over employee *work-related* documents. They do not suggest that Bittrex has control over its employees' personal materials.

Case law in fact shows that before imposing an obligation on Bittrex to demand its employees' information, there must be "some justification for [Plaintiffs'] suspicion that relevant emails may be contained in [an employee's] personal email accounts." *Precision Medicine Group, LLC v. Blue Matter, LLC*, 2020 WL 7352509, at *3 (S.D.N.Y. Dec. 15, 2020) (internal quotation marks omitted) (denying discovery of employee's personal email account even after presuming employer had control over account). Where Plaintiffs have shown at least *some* justification for their suspicion that there might be responsive documents in a custodian's personal accounts—e.g. Messrs. Lai's and Shihara's personal Skype and Telegram accounts—Bittrex produced them. Plaintiffs' attempts to make a broader showing are unavailing.

As for the custodians who are former employees, Bittrex conducted a reasonable search and did not locate any separation agreements with any of the former employees, so there is no basis for Bittrex to demand their compliance with discovery. As for Plaintiffs' request for the employees' contact information, Bittrex does not provide such information without a compelling reason to do so. And as we told Plaintiffs, we do not understand their need for the information because it is too late to issue document subpoenas, and any deposition request should be addressed to us in the first instance. Plaintiffs have never responded to these points.

\* \* \*

We are available to discuss these issues with the Court at the Court's convenience.

O'Melveny

                                          Respectfully submitted,

                                          */s/ Abby F. Rudzin*

                                          Abby F. Rudzin
                                          *of* O'Melveny & Myers LLP

                                          *Counsel for Defendant Bittrex, Inc.*

cc:   All Counsel of Record via ECF