

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

April 20, 2023

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We write on behalf of Defendants iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Limited, DigFinex Inc., Tether Operations Limited, Tether International Limited, Ludovicus Jan van der Velde and Giancarlo Devasini (the "B/T Defendants") to request a Local Rule 37.2 conference in connection with Plaintiffs' third-party subpoena to the cryptocurrency exchange Payward Ventures, Inc. (d/b/a "Kraken").  The B/T Defendants seek a protective order limiting Plaintiffs' requests for production to records relating to accounts owned or controlled by the B/T Defendants themselves.  As the Court already concluded in its order dated March 1, 2023, Plaintiffs have failed to establish that additional records are relevant, and their production would needlessly impinge upon the privacy interests of third parties.  (Dkt. No. 310, the "March 1 Order.")

On January 27, 2023, Plaintiffs served Kraken with a subpoena that sought, among other things, all documents relating to account activity "conducted by Kraken accounts associated with any of the B/T Defendants or any of their respective current and former officers, directors, agents, employees, partners, predecessors, parents, subsidiaries and affiliates."  (Ex. A, Plaintiffs' Subpoena to Kraken, Request No. 2.)  Plaintiffs defined the term "B/T Defendants" to include not only the B/T Defendants but also the "officers, directors, agents, employees, partners, predecessors, subsidiaries and affiliates of those entities and all other persons . . . presently or formerly acting or purporting to act on behalf of any those entities or who are subject to the direction or control of any of those entities."  (Ex. A, Definitions 7, 8, and 16.)

On April 14, Kraken notified certain individuals who are not parties to this action, including the General Counsel of Bitfinex and Tether, that it would produce their account records unless they lodged an objection with the Court by April 21.  (Ex. B.)  The B/T Defendants wrote to Plaintiffs the following business day and asked them to confirm that they had limited their requests for discovery consistent with the Court's order and are not seeking any account records pursuant to Request No. 2 beyond those that are "owned or controlled by the B/T Defendants

The Honorable Katherine Polk Failla　　　　2　　　　April 20, 2023

themselves." (Ex. C.)  Plaintiffs responded that "[n]othing about the Court's March 1 order . . . retroactively altered the subpoena that Plaintiffs served on [Kraken]," and stated that they were available to meet and confer. (*Id.*)  The B/T Defendants then sought to schedule a meet and confer on April 19 insofar as Plaintiffs were willing to consider limiting their subpoena in line with the reasoning in the Court's March 1 order. (*Id.*)  Plaintiffs responded that they were "discussing internally" and would respond "promptly." (*Id.*)  On April 20, having received no response from Plaintiffs and in light of the April 21 deadline set by Kraken, the B/T Defendants notified Plaintiffs that they would seek the Court's intervention if Plaintiffs did not indicate by 5:00 p.m. that they were willing to limit the Kraken subpoena. (*Id.*)  Plaintiffs responded that they "see no reason to request that Kraken limit its production." (*Id.*)

The B/T Defendants respectfully request that the Court issue a protective order limiting Plaintiffs' Request No. 2 to records for accounts owned or controlled by the B/T Defendants themselves, consistent with the reasoning of the March 1 Order. *See* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery" where the proposed discovery "is outside the scope permitted by Rule 26(b)(1)."); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (holding that a "district court has wide latitude to determine the scope of discovery").[1]

In the March 1 Order, the Court denied Plaintiffs' request to serve an interrogatory on Bittrex that sought wallet addresses and account numbers "owned or controlled by any of the B/T Defendants, including but not limited to their officers, directors, agents, employees, partners, predecessors, subsidiaries, or affiliates." (March 1 Order at 1, 3.)  Considering both "privacy interests and Defendants' concerns regarding overbreadth," the Court permitted Plaintiffs to serve only interrogatories that were limited to addresses and account numbers "owned or controlled by the B/T Defendants themselves." (*Id.* at 3.)  The Court explained that it "will not entertain the notion that any account or address owned or controlled by any individual or entity at all associated with the B/T Defendants is *de facto* owned or controlled by the B/T Defendants themselves," and "does not fully comprehend the relevance of such information, given the named Defendants in this case." (*Id.* at 4.)  The Court also noted that the "onus does not simply fall on Defendants" to sort out whether certain individuals' accounts are owned or controlled by the B/T Defendants. (*Id.*)  Although Poloniex had not opposed service of the interrogatory, the Court imposed the same limit on the interrogatory to Poloniex "because the same issues are implicated." (*Id.* at 3 n.1)

The Court's reasoning applies with equal, if not greater, force to Plaintiffs' subpoena to non-party Kraken.  Plaintiffs' request that Kraken produce account records implicates the same privacy interests for the account holders who are not party to this litigation.  Moreover, the Court has already held that Plaintiffs have not established the relevance of non-parties' wallet addresses and account numbers on Bittrex and Poloniex.  There certainly is no reason to think

---

[1] In the alternative, the B/T Defendants move to quash the subpoena insofar as it seeks broader discovery and seeks sensitive financial information from persons and entities associated with the B/T Defendants. *See Gresch v. United Parcel Serv.*, 2022 WL 1125621, at *1 (S.D.N.Y. Apr. 15, 2022); *Solow v. Conseco, Inc.*, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008).

The Honorable Katherine Polk Failla  3  April 20, 2023

that those non-parties' account records on Kraken – which, unlike Bittrex and Poloniex, is not mentioned in the operative complaint – is relevant and subject to discovery. Furthermore, Plaintiffs seek to place the onus on Kraken to determine whether a non-party falls within the ambit of Plaintiffs' request because that non-party is "presently or formerly acting or purporting to act on behalf of [certain of the B/T Defendants] or . . . [is] subject to the direction or control of any of those entities." (Ex. A, Definitions 7, 8, and 16.) There is no reason that Kraken should be burdened with broader discovery requests than Poloniex and Bittrex. *See Trellian Pty, Ltd. v. adMarketplace, Inc.*, 2021 WL 363965, at *2 (S.D.N.Y. Feb. 3, 2021) (explaining that courts "afford special weight to the burden on non-parties of producing documents to parties involved in litigation," and "must be particularly sensitive to weighing the probative value of the information sought against the burden of production on a nonparty") (alterations and quotations omitted).

To the extent that Plaintiffs assert the B/T Defendants should already "have produced the relevant trading records" (Ex. C), that assertion is incorrect because the B/T Defendants are obligated to produce only their own trading records.[2] To be clear, the B/T Defendants do not oppose Kraken's production of records for any accounts held by the B/T Defendants themselves.

The B/T Defendants therefore respectfully request that the Court enter a protective order permitting Plaintiffs to seek account records under Request No. 2 for the named B/T Defendants only.

Respectfully submitted,

/s/ Elliot Greenfield

---

[2] Plaintiffs moved to compel the production of "records relating to the B/T Defendants' transactions in cryptocommodities," explaining that Revised RFPs 23-25 "seek records of Defendants' transactions in crypto-commodities and stablecoins." (Dkt. No. 239 at 1-2.) Plaintiffs argued that "[t]o analyze if and how the B/T Defendants used debased USDT to manipulate cryptocommodity prices, Plaintiffs must know what trades the B/T Defendants made, and when . . . ." (*Id.* at 2.) In granting Plaintiffs' motion to compel, the Court accepted their argument that "[t]he documents sought in the transactions RFPs appear to go to one of Plaintiffs' core allegations: that the B/T Defendants engaged in cryptocommodities transactions using unbacked USDT and that those transactions were 'strategically timed to inflate the market.'" (Dkt. No. 247 at 4.) The Court did not order production of transaction records for a much broader, ill-defined group of persons and entities affiliated with the B/T Defendants.