# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

TETHER AND BITFINEX CRYPTO ASSET
LITIGATION

No. 19 Civ. 9236 (KPF)

**NOTICE OF SUBPOENA TO
PAYWARD VENTURES, INC. (*d/b/a*
KRAKEN)**


PLEASE TAKE NOTICE that pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Matthew Script, Benjamin Leibowitz, Jason Leibowitz, Aaron Leibowitz, and Pinchas Goldstein (together, "Plaintiffs"), individually and on behalf of all other similarly situated, by and through their undersigned counsel, intends to serve the enclosed subpoena upon Payward Ventures, Inc. (*d/b/a* Kraken) ("Recipient"). The subpoena directs Recipient to produce the documents requested therein.

Dated:   January 27, 2023
          New York, N.Y.

SELENDY GAY ELSBERG PLLC

By:   */s/ Andrew R. Dunlap*
      Philippe Z. Selendy
      Caitlin Halligan
      Andrew R. Dunlap
      1290 Avenue of the Americas
      New York, N.Y.  10104
      Tel: 212-390-9000
      pselendy@selendygay.com
      challigan@selendygay.com
      adunlap@selendygay.com

      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Andrew Dunlap, hereby certify that on the 27th day of January, 2023, I caused to be served of the foregoing document upon counsel for Defendants at the following e-mail addresses:

Elliot Greenfield
Andrew J. Ceresney
Maeve L. O'Connor
Michael Schaper
Natascha Born
DEBEVOISE & PLIMPTON LLP
919 Third Avenue, 3rd Floor
New York, NY 10022
egreenfield@debevoise.com
aceresney@debevoise.com
moconnor@debevoise.com
mschaper@debevoise.com
nborn@debevoise.com

Stephan Jacob Schlegelmilch
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Ave. N.W.
Washington, DC 20004
sjschlegelmilch@debevoise.com

Michael Jason Lee, Esq.
LAW OFFICES OF MICHAEL JASON
LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
michael@mjllaw.com

Sunjina K. Ahuja, Esq.
Christopher J. Beal
DILLON MILLER AHUJA & BOSS, LLP
5872 Owens Ave., Suite 200
San Diego, CA 92008
sahuja@dmablaw.com
cbeal@dmablaw.com

*Attorneys for the B/T Defendants*

Charles D. Cording
WILLKIE FARR & GALLAPHER LLP
787 Seventh Avenue
New York, NY 10019-6099
ccording@willkie.com

*Attorney for Defendant Philip G. Potter*

Abby F. Rudzin
William K. Pao
Eamonn Wesley Campbell
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10026
arudzin@omm.com
wpao@omm.com
ecampbell@omm.com

Greg J. Hollon (*pro hac vice*)
Timothy B. Fitzgerald
Charles Spencer Wittman-Todd
Claire Martirosian
MCNAUL EBEL NAWROT & HELGREN
PLLC
600 University Street, Suite 2700
Seattle, WA 98101
ghollon@mcnaul.com
tfitzgerald@mcnaul.com
cwittmanntodd@mcnaul.com
cmartirosian@mcnaul.com

*Attorneys for Bittrex, Inc.*

2

Matthew G. Lindenbaum (*pro hac vice*)
NELSON MULLINS RILEY & SCAR-
BOROUGH
LLP
One Financial Center, Suite 3500
Boston, MA 02111
matthew.lindenbaum@nelsonmullins.com

Robert L. Lindholm
NELSON MULLINS RILEY & SCAR-
BOROUGH
LLP
280 Park Avenue
15th Floor, West
New York, New York 10017
robert.lindholm@nelsonmullins.com

*Attorneys for Poloniex, LLC*

Dated:   New York, N.Y.
         January 27, 2023

/s/              *Andrew R. Dunlap*
_____
                 Andrew R. Dunlap

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   19 Civ. 9236 (KPF) |
| | ) |
| | ) |
| _Defendant_ | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Payward Ventures, Inc. (d/b/a Kraken)
c/o Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Schedule A, attached.

| Place: Schneider Wallace Cottrell Konecky LLP<br>2000 Powell St., Suite 1400<br>Emeryville, CA 94608 | Date and Time:<br><br>02/10/2023 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/27/2023

_CLERK OF COURT_

OR

_____                    /s/ Andrew R. Dunlap
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_    Plaintiffs
_____ , who issues or requests this subpoena, are:

Andrew R. Dunlap, 1290 Ave. of the Americas, New York, NY 10103; adunlap@selendygay.com; 212-390-9005

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   19 Civ. 9236 (KPF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

TETHER AND BITFINEX CRYPTO ASSET
LITIGATION

Case No. 19 Civ. 9236 (KPF)

## **SCHEDULE A**

Pursuant to Federal Rules of Civil Procedure 26 and 45, Matthew Script, Benjamin Leibowitz, Jason Leibowitz, Aaron Leibowitz, and Pinchas Goldstein (together, "Plaintiffs"), individually and on behalf of all other similarly situated, by and through their undersigned attorneys, hereby request that Payward Ventures, Inc. (*d/b/a* "Kraken") produce Documents responsive to the below requests for production.

## **DEFINITIONS**

The rules of construction set forth in Rule 26.3(d) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York are incorporated by reference into these Requests. In addition, the following rules and definitions apply:

1.      Any tense of a verb includes all tenses.

2.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

3.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

4.     These Requests cover the time period from and including July 1, 2014 through the present (the "Relevant Time Period").

5.     "Action" means the above-captioned case, pending in the United States District Court for the Southern District of New York.

6.     "Amended Complaint" means the Amended Consolidated Class Action Complaint filed in this Action as ECF No. 114.

7.     The term "B/T Defendants" refers to DigFinex Inc., the Tether Defendants, the Bitfinex Defendants, Ludovicus Jan van der Velde, and Giancarlo Devasini.

8.     The terms "Bitfinex" or "Bitfinex Defendants" mean iFinex Inc., BFXNA Inc., and BFXWW Inc. and include the officers, directors, agents, employees, partners, predecessors, subsidiaries and affiliates of those entities and all other persons (as defined herein) presently or formerly acting or purporting to act on behalf of any those entities or who are subject to the direction or control of any of those entities.

9.     The terms "crypto-asset" and "cryptocommodity" shall have the meaning of those terms as used in the Amended Complaint.

10.     "ESI Order" means the Stipulation and Order Governing the Exchange of Electronically Stored Information (Dkt. 198) filed in this Action and attached hereto as **Exhibit 1**.

11.     "Exchange Activity" shall include any transaction conducted by an accountholder on a crypto-asset exchange, including deposits, withdrawals, transfers, and trades, regardless of whether the transaction takes place on or off the blockchain.

12.     "Including" means including but not limited to.

13.     "Protective Order" means the Stipulation and Order for the Production and Exchange of Confidential Materials (Dkt. 151) filed in this Action and attached hereto as **Exhibit 2**.

14.     "Relating to," "relating to," "referring or relating to," and "related to" include, in addition to their customary and usual meanings, the following: pertaining to, making reference to, concerning, comprising, evidencing, alluding to, responding to, connected with, commenting on, with respect to, about, regarding, resulting from, embodying, explaining, supporting, discussing, showing, describing, reflecting, analyzing, constituting, setting forth, in respect of, or having any logical or factual connection with the subject matter in question.

15.     "Requests" or "Requests for Production" means Requests for Production served on Defendants by Plaintiffs in this Action.

16.     The terms "Tether" and "Tether Defendants" mean Tether Holdings Limited, Tether Operations Limited, Tether Limited, and Tether International Limited and includes the officers, directors, agents, employees, partners, predecessors, subsidiaries and affiliates of those entities and all other persons (as defined herein) presently or formerly acting or purporting to act on behalf of any those entities or who are subject to the direction or control of any of those entities.

17.     "USD" refers to United States Dollars.

18.     "USDT" refers to the crypto-asset created by Tether and commonly referred to as "United States Dollar Tether," "USDT," or "tether."

19.     "You," "Your," and "Kraken" mean Payward Ventures, Inc., as well as its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

## <u>INSTRUCTIONS</u>

1.      These Requests seek production of material in Your possession, custody, or control.

2.      These Requests seek production of nonprivileged material.

3.      For each Request, either state that You will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons.

4.      If You object to all or part of a Request, state whether You are withholding any responsive material based on that objection.

5.      If You object to part of a Request, specify the part and state that You will produce documents responsive to the rest.

6.      If You withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable Plaintiffs to assess the claim.  For each Document You withhold as privileged, provide in writing (a) the type of document (e.g., letter or memorandum); (b) the general subject matter of the Document; (c) the date of the document; (d) the author, addresses, and any other recipients of the Document; (e) where not apparent, the relationships of the author, addressees, and recipients to each other; (f) the nature of the privilege being claimed.

7.      Produce Documents and electronically stored information in accordance with the specifications set forth in the ESI Order.

8.      You may designate Documents and electronically stored information "Confidential" or "Attorneys' Eyes Only" in accordance with the terms of the Protective Order.

9.      If after responding to any Request You learn that Your response is in some material respect incomplete or incorrect, supplement or correct Your response in a timely manner.

4

## REQUESTS

1.      All Documents and Communications relating to and including the Signal group chat entitled "Exchange coordination" as reported in the Wall Street Journal article titled "Rivals Worried Sam Bankman-Fried Tried to Destabilize Crypto on Eve of FTX Collapse," attached hereto as **Exhibit 3**.

2.      All Documents relating to any Exchange Activity conducted by Kraken accounts associated with any of the B/T Defendants or any of their respective current and former officers, directors, agents, employees, partners, predecessors, parents, subsidiaries and affiliates.

3.      All Documents and Communications related to Tether's USD reserves.

4.      All Documents and Communications related to the backing of USDT by USD.

5.      All Documents and Communications related to actual, potential, or suspected manipulation of cryptocommodity markets (whether operated by Kraken or any other entity).

6.      All Documents relating to any Exchange Activity on Kraken by the owner or owners of the following crypto-asset wallets:

     a.      1J1dCYzS5EerUuJCJ6iJYVPytCMVLXrgM91J1d

     b.      1AA6iP6hrZfYiacfzb3VS5JoyKeZZBEYRW

     c.      1LSgEKji3ZoGdvzBgkcJMej74iBd38fySb

     d.      1MZAayfFJ9Kki2csoYjFVRKHFFSkdoMLtX

     e.      1DEcTtkrbdXxS1wbrMvzub5X4VpByYmAwo

     f.      1Kd6zLb9iAjcrgq8HzWnoWNVLYYWjp3swA

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

*In re:*
TETHER AND BITFINEX
CRYPTO ASSET LITIGATION

19 Civ. 9236 (KPF)

STIPULATION AND ORDER
GOVERNING THE EXCHANGE
OF ELECTRONICALLY STORED
INFORMATION

## STIPULATION AND ORDER
## GOVERNING THE EXCHANGE OF ELECTRONICALLY STORED INFORMATION

Upon agreement of the Parties for entry of an order establishing a protocol for the exchange and production of documents in hard-copy format ("Documents") and electronically stored information ("ESI"), as those terms are used in the Federal Rules of Civil Procedure, plaintiffs Matthew Script, Benjamin Leibowitz, Jason Leibowitz, Aaron Leibowitz, and Pinchas Goldshtein ("Plaintiffs") and defendants iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Operations Limited, Tether Limited, Tether International Limited, DigFinex Inc., Philip G. Potter, Giancarlo Devasini, Ludovicus Jan van der Velde, Reginald Fowler, Crypto Capital Corp., Bittrex, Inc., and Poloniex, LLC  ("Defendants") (each a "Party" and, collectively, the "Parties") hereby stipulate ("ESI Stipulation") and the Courts orders as follows:

## I.      GENERAL PROVISIONS

A.      The Parties and non-parties producing Documents and ESI (each a "<u>Producing Party</u>") shall prepare their Documents and ESI for production to the Parties receiving the production (each a "<u>Receiving Party</u>") in accordance with this ESI Stipulation.

B.      If a provision of this agreement conflicts with the terms of the Stipulation and Order for the Production and Exchange of Confidential Materials (Dkt. No. 151) ("<u>Confidentiality Stipulation</u>") previously entered in this action,[1] the Confidentiality Stipulation will control absent further order of the Court.

## II.     PRODUCTION OF DOCUMENTS

A.      <u>TIFFs</u>. Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

B.      <u>OCR Text Files</u>. Producing Parties shall provide Optical Character Recognition ("<u>OCR</u>") text files as a single text file for each Document, not one text file per page. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

C.      <u>Database Load Files/Cross-Reference Files</u>. Unless otherwise agreed by the Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load

---

[1] Defined terms in the Confidentiality Stipulation not otherwise defined herein are incorporated.

files (*i.e.,* .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files (*i.e.,* .OPT and DAT files) in a self-identified "Data" folder.

D.     <u>Coding Fields</u>. Producing Parties shall produce Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Custodians; (6) OCRTextPath; and (7) Confidentiality.. When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table I, the Producing Party shall produce those Documents with the practicable metadata fields. Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon.  For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall  use the relevant entity name(s) in the "Custodian" field.

E.     <u>Bates Numbering</u>. Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a slip sheet within a production, cover letter, or production log accompanying the production.

F.     <u>Parent-Child Relationships</u>. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent Document), to the extent

3

they exist in the manner in which the Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G. <u>Color</u>. Producing Parties need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request that the Producing Party consent to production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Consent to produce in color shall not be unreasonably withheld.

H. <u>Unitizing of Documents</u>. A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (*i.e.*, Documents should be logically unitized).

## III. PRODUCTION OF ESI

A. <u>TIFFs</u>. Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

B. <u>System Files</u>. Producing Parties need not process, review, or produce common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production).

C. <u>De-Duplication</u>. Producing Parties need produce only a single copy of responsive ESI, and may, but need not, de-duplicate responsive ESI across custodians with MD5 or SHA-1 hash values at the parent level. However, a Producing Party:

  1. shall not eliminate attachments from their parent emails;

2.      shall list in the "Custodians" field the identity of other custodians of de-duplicated items of the copy of the single record that is produced; and

3.      shall identify custodians as set forth in Section III.E ("Metadata Fields and Processing")

If a Producing Party identifies additional duplicate ESI, the Producing Party may use a custom de-duplication protocol; provided, however, that the Producing Party shall agree to the terms of that protocol with the other Parties before implementing it. To the extent feasible, Producing Parties shall provide overlays to allow custodian information to be updated with rolling ESI and Document collections so that every custodian who possessed particular ESI or Documents, irrespective of deduplication, is reflected in that ESI's or Document's metadata.

D.      Parent-Child Relationships. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent file).

E.      Metadata Fields and Processing. Producing Parties shall produce each of the metadata and coding fields set forth in Table I that can be extracted from ESI for that ESI. They are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted from the ESI, except for the following: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Custodians; (6) NativeLink; (7) Confidentiality; and (8) Parent ID fields (which the Producing Party or its vendor may populate). They shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular custodian and separate multiple custodians by a semicolon in the "Custodians" field. For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall use the relevant entity name(s) in the "Custodian" field.

5

F. <u>Extracted Text Files</u>. For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

G. <u>Database Load Files/Cross-Reference Files</u>. Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters; and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files).

H. <u>Native Files</u>. The following governs the production of native files.

   1. Producing Parties shall produce PowerPoint presentations, source code, large diagrams, Excel files and/or .csv files in native format ("<u>Native Files</u>"), unless they have redactions.

   2. Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

   3. Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs III.E and III.F. Producing Parties may produce redacted files with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file or may produce redacted Excel and/or .csv files in native format

6

with redactions applied to the native files. Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

4.     Each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable (for example, column widths should be formatted so that numbers do not appear as "########").

I.     <u>Structured Data</u>. To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

J.     <u>Audio and Video Files</u>. Producing Parties shall produce audio and video files in a reasonably usable format as may be agreed upon by the Parties.

K.     <u>Requests for Other Native Files</u>. Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request production in native format by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format. The Producing Party shall produce in response to such request, or refuse such request to the extent that it is overbroad or unduly burdensome (or for any other good cause grounds that may exist), each native file with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each native file on the production media, all extracted

text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table

I.

## Table I-ESI Metadata Fields

| FIELD NAME | DESCRIPTION |
|---|---|
| Author | Author of document, if identified in metadata |
| Begin Bates | Unique document identifier and starting page of a document (*e.g.*, ABC00000001) |
| Bates End | End number of a document (*e.g.*, ABC0000099) |
| Bates Beg Attach | Starting number of a group or family of documents (*e.g.*, ABC0000001) |
| Bates End Attach | End number of a group or family of the document (*e.g.*, ABC0000099) |
| Custodian | Owner of a document |
| All Custodians | List of all custodians who had custody of the document, separated by semicolon |
| Filename | Original name of the file |
| File Extension | File extension of document (*e.g.*, .msg, .docx, .xlsx) |
| File Size | Size of the file |
| Document Type | Type of document (*e.g.*, email, e-document, attachment, hard-copy) |
| Date Created | Date document was created (*e.g.*, 01/01/2001) |
| Time Created | Time document was created (*e.g.*, 17:00) |
| Date Last Modified | Date document was last modified (*e.g.*, 01/01/2001) |
| Time Last Modified | Time document was last modified (*e.g.*, 17:00) |
|  |  |
|  |  |
| Date Sent | Date email was sent (*e.g.*, 01/01/2001) |
| Time Sent | Time email was sent (*e.g.*, 17:00) |
| Date Received | Date email was received (*e.g.*, 01/01/2001) |

| FIELD NAME | DESCRIPTION |
|---|---|
| Time Received | Time email was received (*e.g.*, 17:00) |
| Email From | Sender of email |
| Email Subject | Subject line of email |
| Email To | Recipient(s) of email |
| Email BCC | Blind-copied recipients of email |
| Email CC | Copied recipients of email |
| MD5 Hash or SHA-1 Hash | MD5 Hash or SHA-1 Hash Value of file |
| Native Link | Relative file path of native file |
| File Path | Original file path where file was kept (by the custodian) |
| Confidentiality | Confidential or Attorneys' Eyes Only |
| Redactions | Yes/No |

L.     Confidentiality Designations. If a Producing Party reduces native files or other ESI designated "Confidential Material" or "Attorneys' Eyes Only Material," as defined by the Confidentiality Stipulation, to Document form, it shall mark the Document with the appropriate designation. The failure of a Producing Party to mark such Document with the appropriate designation shall not affect such Document's designation as "Confidential Material" or "Attorneys' Eyes Only Material." Producing Parties shall produce all ESI designated as "Confidential" or "Attorneys' Eyes Only" with the designation in the metadata field pursuant to Table I and in the ESI itself.

M.     Time Zone. Producing Parties shall produce all ESI normalized to Eastern Time (ET).

## IV.     PROCESSING OF THIRD-PARTY DOCUMENTS

A.     A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Stipulation with the subpoena and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein. If an Issuing Party issued a non-party subpoena prior to the execution of this ESI Stipulation, that Issuing Party shall promptly forward a copy of this ESI Stipulation to the non-party and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein.

B.     The Issuing Party is responsible for producing to all other Parties any Documents and/or ESI obtained pursuant to a subpoena. If a non-party refuses to produce Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

C.     Nothing in this ESI Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## V.     MISCELLANEOUS PROVISIONS

A.     The production specifications in this ESI Stipulation apply to documents that are produced in the first instance in this Litigation, by a party to this Litigation.  To the extent any party is required or agrees to re-produce documents in this Litigation that originally were produced or prepared for production in other cases or government investigations, or by a non-party, such documents may be produced in the same format in which they originally were produced or prepared for production. If the receiving party requests the additional information called for in the ESI Stipulation, the producing party and the receiving party agree to meet and confer in good faith on that request.

B.      This ESI Stipulation is intended solely to address the format of Document and ESI productions. Nothing in this ESI Stipulation is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the Individual Practices of Judge Katherine Polk Failla, or any other applicable law, rule, or order.

C.      Nothing in this ESI Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Nothing in this ESI Stipulation shall be interpreted to prohibit or limit the ability of a party to use, or oppose the other party's use of, technology-assisted review to facilitate the review and production of documents. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

D.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Stipulation or if compliance with such material aspect would be unreasonable, such Producing Party shall inform the Receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.

E.      Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

F.      Any application to the Court under or regarding this ESI Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and the Individual Practices of Judge Katherine Polk Failla.

[*Signatures on following page*]

Dated: New York, New York
      October 18, 2021

      Counsel for the Parties:

_____

/s/   Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

/s/   Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for the*

_____

/s/ Jim Walden
Jim Walden
Daniel J. Chirlin
Walden Macht & Haran
One Battery Park Plaza 34th Floor New
York, New York 10004
jwalden@wmhlaw.com
dchirlin@wmhlaw.com

/s/ Michael Jason Lee, Esq.
Michael Jason Lee, Esq.
Law Offices of Michael Jason Lee, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
michael@mjllaw.com

/s/ Sunjina K. Ahuja, Esq.
Sunjina K. Ahuja, Esq.
Dillon Miller & Ahuja, LLP
5872 Owens Ave., Suite 200
sahuja@dmalaw.com

*Attorneys for Defendants iFinex Inc.,*
*DigFinex Inc., BFXNA Inc., BFXWW Inc.,*
*Tether International Limited, Tether*
*Operations Limited, Tether Holdings Limited,*
*Tether Limited, Giancarlo Devasini, and*
*Ludovicus Jan van der Velde*

/s/ Charles D. Cording
Charles D. Cording
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY  10019-6099
ccording@willkie.com

*Attorney for Defendant Philip G. Potter*

13

*Plaintiffs and the Proposed Class*

/s/ Abby F. Rudzin
Abby F. Rudzin
William K. Pao
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10026
arudzin@omm.com
wpao@omm.com

/s/ Greg J. Hollon
Greg J. Hollon (*pro hac vice*)
Timothy B. Fitzgerald
600 University Street, Suite 2700
Seattle, WA 98101
ghollon@mcnaul.com
tfitzgerald@mcnaul.com

*Attorneys for Bittrex, Inc.*

/s/ Matthew G. Lindenbaum
Matthew G. Lindenbaum (*pro hac vice*)
One Financial Center, Suite 3500
Boston, MA 02111
Telephone
matthew.lindenbaum@nelsonmullins.com

/s/ Robert L. Lindholm
Robert L. Lindholm
280 Park Avenue
15th Floor, West
New York, New York 10017
robert.lindholm@nelsonmullins.com

*Attorneys for Poloniex, LLC*

This agreement does not bind the Court or any of its personnel.  The Court can modify this stipulation at any time.  The Court will retain jurisdiction over the terms and conditions of this agreement only for the pendency of this litigation.  Any party wishing to make redacted or sealed submissions shall comply with Rule 9 of this Court's Individual Rules of Civil Procedure.

Date:     December 20, 2021          SO ORDERED.
          New York, New York


HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | No. 19 Civ. 9236 (KPF) |

## STIPULATION AND ORDER FOR THE PRODUCTION AND
## EXCHANGE OF CONFIDENTIAL MATERIALS

**WHEREAS**, plaintiffs Matthew Script, Jason Leibowitz, Benjamin Leibowitz, Aaron Leibowitz, and Pinchas Goldshtein and defendants iFinex, Inc., DigFinex Inc., BFXNA Inc., BFXWW Inc., Tether International Limited, Tether Operations Limited, Tether Holdings Limited, Tether Limited, Ludovicus Jan van der Velde, Giancarlo Devasini, Reginald Fowler, Bittrex, Inc., Poloniex, LLC, and Philip G. Potter (each a "Party" and collectively, the "Parties"), having agreed to the following terms for the production and exchange of confidential materials in the above-captioned litigation (the "Litigation"); and

**WHEREAS**, the Court having found that good cause exists for the issuance of an appropriately tailored protective order (this "Protective Order") pursuant to Rule 26(c) of the Federal Rules of Civil Procedure;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Parties, and **SO ORDERED** by the Court, as follows:

1.     This Protective Order applies to the Parties, their respective officers, representatives, agents, employees, affiliates, experts, attorneys, and consultants, as well as to all third parties providing discovery in the Litigation, and all other interested persons with actual or constructive notice of this Protective Order who may produce or receive information ("Discovery Material") pursuant to and in the course of discovery in the Litigation.  Discovery Material includes all oral,

written, recorded, or graphic material in any form or medium, and any information or data contained therein (including, without limitation, all produced documents, responses to requests for information, responses to requests for admissions, and deposition testimony, transcripts, and exhibits).

2. **Designations Available for Discovery Material**

   a.  A person or Party producing Discovery Material (a "Producing Party") may designate as "Confidential" any Discovery Material or portion thereof that contains nonpublic business, commercial, financial, or personal information, the disclosure of which would, in the good-faith judgment of the Producing Party, seriously harm the Producing Party's business, commercial, financial, or personal interests ("Confidential Material").

   b.  A Producing Party may designate as "Attorneys' Eyes Only" any Discovery Material or portion thereof that contains nonpublic business, commercial, financial, or personal information, the disclosure of which is either restricted by law or would cause the Producing Party to violate its privacy or confidentiality obligations to others, and such Discovery Material would not otherwise be adequately protected under the procedures set forth herein for Confidential Information ("Attorneys' Eyes Only Material").

   c.  A Party receiving Discovery Material (a "Receiving Party") shall treat all Discovery Material in accordance with the terms of this Protective Order, including advising anyone to whom the Receiving Party furnishes, shows, discloses, summarizes, describes, characterizes, or otherwise communicates or makes available in whole or in part any Discovery Material under the terms of this Protective Order that the information is being disclosed pursuant and subject to the terms of this Protective Order and may not be disclosed or used for purposes other than those permitted hereunder.

2

d.    Any Party issuing a subpoena to a non-Party shall enclose a copy of this Protective Order and notify the non-Party that the protections of this Protective Order are available to such non-Party.

3.    **Process for Designating Discovery Material**

a.    A Producing Party may designate any portion of Discovery Material other than deposition transcripts or exhibits as Confidential Material or Attorneys' Eyes Only Material by conspicuously notating that designation in a manner that will not interfere with legibility or audibility.

b.    A Producing Party may designate any portion of a deposition transcript or exhibit as Confidential Material or Attorneys' Eyes Only Material by (a) a statement on the record of the deposition; or (b) notifying the court reporter and all counsel of record, in writing, within 30 days after a deposition has concluded. Absent such a designation, during the 30-day period following the conclusion of a deposition, the entire deposition transcript will be treated as if it had been designated Attorneys' Eyes Only.

c.    If at any time prior to the trial of this Litigation a Producing Party realizes that some portion(s) of Discovery Material that it previously produced should be designated as Confidential or Attorneys' Eyes Only, the Producing Party may so designate that Discovery Material by apprising each Receiving Party in writing; thereafter such designated portion(s) of the Discovery Material will thereafter be deemed to be and treated as Confidential or Attorneys' Eyes Only, as applicable, under the terms of this Protective Order. Upon request by the Producing Party for the return of Confidential Material or Attorneys' Eyes Only Material that has been inadvertently produced without the appropriate designation and the Producing Party's production of a replacement version(s) with a corrected designation, the Receiving Party shall promptly return the version(s) that was inadvertently

3

produced or, at the Receiving Party's option, destroy all copies of inadvert-ently produced Discovery Material and confirm in writing to the Producing Party that it has done so. Nothing in this Paragraph shall waive the right of the Receiving Party to challenge the appropriateness of any Producing Party's designation.

d.    A Producing Party shall, upon request from a Receiving Party, produce a redacted version of any document containing Attorneys' Eyes Only Mate-rial that removes the Attorneys' Eyes Only Material so that the redacted version can be designated as Confidential. The redacted version shall be subject to all restrictions set forth in this Protective Order that are applicable to Confidential Material.

4.    **Restrictions on Use of Discovery Material**

a.    A Receiving Party shall use Discovery Material only in connection with the Litigation, including preparation for trial, settlement, hearings, appeals, and enforcement of any judgment, and shall not use any Discovery Material for any other purpose, including without limitation any commercial, business, or publicity purpose or any other litigation or proceeding. This Protective Order does not in any way restrict the use or disclosure by a party or other person of its own Discovery Material or of Discovery Material that has be-come part of the public record.

b.    A Receiving Party who receives Confidential Material or Attorneys' Eyes Only Material shall not reveal or discuss such information to or with any person not entitled to receive such information under the terms hereof and shall use reasonable measures to store and maintain the Confidential Mate-rial or Attorneys' Eyes Only Material so as to prevent unauthorized disclo-sure.

4

c.      Except with the prior written consent of the Producing Party or by Order of
the Court, Confidential Material shall not be furnished, shown, disclosed,
summarized, described, characterized, or otherwise communicated or made
available in whole or in part to any person or entity except:

    i.      Counsel for the Parties to this action and their associated attorneys,
paralegals, and other professional and non-professional personnel
(including support staff and outside copying services) who are di-
rectly assisting such counsel in the preparation of this Litigation for
trial or other proceeding, are under the supervision or control of such
counsel, and who have been advised by such counsel of their obli-
gations hereunder;

    ii.     The Parties and directors, officers, agents, and employees of the Par-
ties, and any such subsidiaries or affiliates thereof, to the extent rea-
sonably necessary to assist in the Litigation.  Any such director, of-
ficer, agent, or employee of the named Parties to whom counsel for
the parties makes a disclosure shall be provided with a copy of, and
become subject to, this Protective Order.

    iii.    Expert witnesses or consultants retained by the Parties or their coun-
sel in connection with this Litigation and other professional and non-
professional personnel (including support staff and outside copying
services) who are directly assisting such expert or consultant and
have been advised by such expert or consultant of their obligations
hereunder; provided, however, that such Confidential Material is
furnished, shown, or disclosed in accordance with Paragraph 4(e)
herein;

    iv.     The Court and court personnel, subject to paragraph 6 herein;

5

v.     An officer before whom a deposition is taken, including steno-graphic reporters and any necessary secretarial, clerical, or other personnel of such officer;

vi.     Trial and deposition witnesses, provided that, prior to the witness's testimony, the disclosing party advises the witness that, pursuant to this Protective Order, the witness may not disclose any Confidential Discovery Material to any other individual, except in accordance with this Protective Order, and provided that the witness executes a copy of Exhibit A hereto.  If, prior to the witness's testimony, the witness does not sign a copy of Exhibit A, the witness may be shown Confidential Discovery Material only after, on the record stating such refusal, the disclosing party advises the witness on the record as follows: "By order of the Court in this litigation, you may not disclose in any manner any Confidential Discovery Material to any person or entity except in strict compliance with the provisions of this Protective Order, and if you fail to comply with this Protective Order, you may be subject to sanction by the Court.";

vii.     Any person indicated on the face of a document or accompanying cover letter, email, or other communication to be the author, ad-dressee, or an actual or intended recipient of the document; and

viii.     Any other person agreed to by the Producing Party.

d.     Except with the prior written consent of the Producing Party or by Order of the Court, Attorneys' Eyes Only Material shall not be furnished, shown, disclosed, summarized, described, characterized, or otherwise communi-cated or made available in whole or in part to any person or entity except:

i.     Counsel for the Parties to this action and their associated attorneys, paralegals, and other professional and non-professional personnel

6

(including support staff and outside copying services) who are di-
rectly assisting such counsel in the preparation of this Litigation for
trial or other proceeding, are under the supervision or control of such
counsel, and who have been advised by such counsel of their obli-
gations hereunder;

ii.     Expert witnesses or consultants retained by the Parties in connection
with this Litigation and other professional and non-professional per-
sonnel (including support staff and outside copying services) who
are directly assisting such expert or consultant and have been ad-
vised by such expert or consultant of their obligations hereunder;
provided, however, that such Attorneys' Eyes Only Material is fur-
nished, shown, or disclosed in accordance with paragraph 4(e)
herein;

iii.    The Court and court personnel, subject to paragraph 6 herein;

iv.    An officer before whom a deposition is taken, including steno-
graphic reporters and any necessary secretarial, clerical, or other
personnel of such officer;

v.    Trial and deposition witnesses, provided that, prior to the witness's
testimony, the disclosing party advises the witness that, pursuant to
this Protective Order, the witness may not disclose any Attorneys'
Eyes Only Material to any other individual, except in accordance
with this Protective Order, and provided that the witness executes a
copy of Exhibit A hereto. If, prior to the witness's testimony, the
witness does not sign a copy of Exhibit A, the witness may be shown
Attorneys' Eyes Only Material only after, on the record stating such
refusal, the examining attorney advises the witness on the record as

7

follows: "By order of the Court in this litigation, you may not dis-close in any manner any Attorneys' Eyes Only Material to any per-son or entity except in strict compliance with the provisions of this Protective Order, and if you fail to comply with this Protective Or-der, you may be subject to sanction by the Court.";

vi.     Any person indicated on the face of a document or accompanying cover letter, email, or other communication to be the author, ad-dressee, or an actual or intended recipient of the document; and

vii.    Any other person agreed to by the Producing Party.

e.      Before furnishing, showing, or disclosing Confidential Material or Attor-neys' Eyes Only Material to an expert or consultant pursuant to Paragraphs 4(c)(iii) and 4(d)(ii) herein, counsel for the Receiving Party shall provide to the expert or consultant a copy of this Protective Order and obtain from the expert or consultant written agreement, in the form of Exhibit A hereto, to comply with and be bound by the terms of the Protective Order.

5.      **Procedure for Challenging Designations of Discovery Material**.  A Receiving Party may, at any time, notify the Producing Party that the Receiving Party does not concur in the designation of Discovery Material as Confidential Material or Attorneys' Eyes Only Material.  If the Producing Party does not agree to declassify such material within seven (7) days of the written request, the Receiving Party may move the Court for an order declassifying or reclassifying that Discovery Material.  If no such motion is filed, such Discovery Material shall continue to be treated as Confidential Materials or Attorneys' Eyes Only Materials.  If such motion is filed, the docu-ments or other materials shall be deemed Confidential Material or Attorneys' Eyes Only Material unless and until the Court rules otherwise.  The Producing Party bears the burden of establishing the propriety of its designation of documents or information as Confidential Material or Attorneys' Eyes Only Material.

8

6.      **Procedure for Disclosing Discovery Material to the Court**

a.      Any Receiving Party seeking to file any pleading, motion, or other docu-
ment with the Court that quotes or otherwise divulges Confidential Material
or Attorneys' Eyes Only Material shall take appropriate steps, pursuant to
Rule 9 of the Court's Individual Rules of Practice in Civil Cases, to give the
Producing Party an opportunity to seek sealing or other appropriate relief.

b.      If the need arises for any Party to disclose Confidential Material or Attor-
neys' Eyes Only Material during any hearing or trial before the Court, in-
cluding through argument or the presentation of evidence, such Party may
do so only after giving the Producing Party notice and taking such steps as
the Court, upon motion of the Producing Party, shall deem necessary to pre-
serve the confidentiality of such Confidential Material or Attorneys' Eyes
Only Material.

7.      **Procedure for Clawback of Privileged Discovery Material**

a.      If a Producing Party inadvertently produces Discovery Material subject to
a claim of attorney-client privilege, attorney work product, or any other legally recognized
privilege or immunity from discovery, such production shall not prejudice or otherwise
constitute a waiver of, or estoppel as to, any claim of privilege, work product, or other
ground for withholding production to which the Producing Party otherwise would be enti-
tled.

b.      If a Producing Party determines that it has inadvertently disclosed privi-
leged material, it shall promptly send all Receiving Parties a notice notifying them of the
inadvertent production (a "<u>Clawback Notice</u>").  After receiving a Clawback Notice, and
subject to Paragraph 7(c), if applicable, a Receiving Party shall make all reasonable efforts
to (i) return the relevant Discovery Material and all copies thereof promptly to the Produc-
ing Party; or, (ii) at the option of the Receiving Party, to destroy the relevant Discovery

9

Material and all copies thereof, as well as all materials reflecting the content of that Discovery Material, and notify the Producing Party that it has done so.  Inadvertently disclosed material cannot be used in a dispute over privilege.

      c.     A Receiving Party who receives a Clawback Notice may notify the Producing Party that it objects to the Producing Party's claim that any communication or information is privileged or otherwise protected from discovery.  A Receiving Party shall make any such objection to a Clawback Notice within three business days of the Receiving Party's receipt of any Clawback Notice.  Following the receipt of any objection to a Clawback Notice, the parties shall meet and confer in an effort to resolve any disagreement regarding the Producing Party's designation of the material as privileged or protected from discovery.  If the parties cannot resolve their disagreement within five business days of their meet and confer, the Receiving Party may, on an expedited basis, move for an order compelling disclosure of the material.  While any such motion is pending, the material subject to that application will be treated as privileged or protected from disclosure until the Court rules.  If the Court determines that such material is privileged or protected from disclosure, the Receiving Party shall immediately return or destroy such inadvertently disclosed material in accordance with Paragraph 7(b).  If the Receiving Party does not move for an order compelling disclosure within fifteen calendar days from the receipt of the Clawback Notice from the Producing Party (regardless of whether the Parties met and conferred), or such later date as the Producing Party and the Receiving Party may agree, the material in question shall be deemed privileged or protected, in which case the Receiving Party shall immediately return or destroy such inadvertently disclosed material in accordance with Paragraph 7(b).

8.      **Effect of Termination of the Litigation**

      a.     Within ninety (90) days after the final termination of this Litigation by settlement or exhaustion of all appeals, all Confidential Material or Attorneys' Eyes Only Material produced or designated, and all reproductions thereof,

10

shall be returned to the Producing Party or, at the Receiving Party's option, shall be destroyed.  In the event that any Receiving Party chooses to destroy physical objects and documents, such Party shall certify in writing within sixty (90) days of the final termination of this Litigation that it has undertaken its best efforts to destroy such physical objects and documents, and that such physical objects and documents have been destroyed to the best of its knowledge.  Notwithstanding anything to the contrary, counsel of record for the Parties may retain copies of documents constituting work product, pleadings, motion papers, discovery responses, deposition transcripts, and deposition and trial exhibits.

b.      This Protective Order shall not be interpreted in a manner that would violate any applicable rules of professional conduct or other applicable law or regulation.  Nothing in this Protective Order shall prohibit the ability of counsel for any Receiving Party, or of experts specially retained for this case, to represent any individual, corporation or other entity adverse to any Party or non-party or their affiliate(s) in connection with any other matter, as long as such counsel or expert continues to comply with the terms of this Protective Order.  Copies of electronic materials containing Confidential Material or Attorneys' Eyes Only Material that are retained for disaster recovery purposes or pursuant to regulatory requirements do not need to be destroyed or returned.

c.      This Protective Order shall survive the final conclusion of the Litigation, and this Court retains jurisdiction of the Parties hereto, and of any person who executes a copy of Exhibit A, indefinitely as to any dispute between any of them regarding improper use of information disclosed pursuant to this Protective Order.

11

9.      If a Receiving Party is called upon to produce Confidential Material or Attorneys'
Eyes Only Material in order to comply with a court order, subpoena, or other direction by a court,
administrative agency, or legislative body, the Receiving Party from which the Confidential Ma-
terial or Attorneys' Eyes Only Material is sought shall (a) give reasonably prompt written notice
by overnight mail and either email or facsimile to the counsel for the Producing Party; and (b) give
the Producing Party reasonable time to object to the production of such Confidential Material or
Attorneys' Eyes Only Material, if the Producing Party so desires.  Notwithstanding the foregoing,
nothing in this Paragraph shall be construed as requiring any Party to subject itself to any penalties
for noncompliance with any court order, subpoena, or other direction by a court, administrative
agency, or legislative body.

10.      This Protective Order shall not be construed to apply to any information that: (a) is
available to the public other than through a breach of this Protective Order or other duty of confi-
dentiality; (b) was already known to a Receiving Party at the time of disclosure and was not subject
to conditions of confidentiality; or (c) was developed by a Receiving Party independently of any
disclosure by the Disclosing Party.

11.      This Protective Order may be changed by further order of this Court and is without
prejudice to the right of a Party to move for relief from any of its provisions, or to seek or agree to
different or additional protection for any particular material or information.

12.      Nothing in this Protective Order constitutes an admission by any Party that Discov-
ery Material is relevant or admissible at trial.  Each Party reserves the right to object to the use or
admissibility of Discovery Material.

13.      This Protective Order may be signed in counterparts, which, when fully executed,
shall constitute a single original, and electronic signatures shall be deemed original signatures.

Dated: October 27, 2020

Kyle W. Roche
Edward Normand
Velvel Freedman (*pro hac vice*)
Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

Caitlin Halligan
Philippe Z. Selendy
Maria Ginzburg
Andrew R. Dunlap
SELENDY & GAY PLLC
1290 Sixth Avenue
New York, NY 10104
challigan@selendygay.com
pselendy@selendygay.com
mginzburg@selendygay.com
adunlap@selendygay.com

Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice* forthcoming)
Kyle G. Bates (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com
kbates@schneiderwallace.com

*Attorneys for Lead Plaintiffs and the Proposed Class*

Jim Walden
Daniel I. Chirlin
Walden Macht & Haran
One Battery Park Plaza 34th Floor New York, New York 10004
jwalden@wmhlaw.com
dchirlin@wmhlaw.com

Michael Jason Lee, Esq.
Law Offices of Michael Jason Lee, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
michael@mjllaw.com

Sunjina K. Ahuja, Esq.
Dillon Miller & Ahuja, LLP
5872 Owens Ave., Suite 200
sahuja@dmalaw.com

*Attorneys for Defendants iFinex Inc., DigFinex Inc., BFXNA Inc., BFXWW Inc., Tether International Limited, Tether Operations Limited, Tether Holdings Limited, Tether Limited, Giancarlo Devasini, and Ludovicus Jan van der Velde*

Michael C. Hefter
Samuel Rackear
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
michael.hefter@hoganlovells.com
samuel.rackear@hoganlovells.com

*Attorneys for Defendant Reginald Fowler*

13

Charles D. Cording
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
ccording@willkie.com

*Attorney for Defendant Philip G. Potter*

Abby F. Rudzin
William K. Pao
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10026
arudzin@omm.com
wpao@omm.com

Greg J. Hollon (*pro hac vice*)
Timothy B. Fitzgerald
600 University Street, Suite 2700
Seattle, WA 98101
ghollon@mcnaul.com
tfitzgerald@mcnaul.com

*Attorneys for Bittrex, Inc.*

Matthew G. Lindenbaum (*pro hac vice*)
One Post Office Square 30th Floor
Boston, MA 02109
Telephone
matthew.lindenbaum@nelsonmullins.com

Robert L. Lindholm
280 Park Avenue
15th Floor, West
New York, New York 10017
robert.lindholm@nelsonmullins.com

*Attorneys for Poloniex, LLC*

14

This confidentiality agreement does not bind the Court or any of its personnel.  The Court can modify this stipulation at any time.  The Court will retain jurisdiction over the terms and conditions of this agreement only for the pendency of this litigation.  Any party wishing to make redacted or sealed submissions shall comply with Rule 6(A) of this Court's Individual Rules of Civil Procedure.

Dated:     October 27, 2020                SO ORDERED.
           New York, New York


                                           HON. KATHERINE POLK FAILLA
                                           UNITED STATES DISTRICT JUDGE

# Exhibit 3

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

https://www.wsj.com/articles/rivals-worried-sam-bankman-fried-tried-to-destabilize-crypto-on-eve-of-ftx-collapse-11670597311

MARKETSCURRENCIESCRYPTOCURRENCY

# Rivals Worried Sam Bankman-Fried Tried to Destabilize Crypto on Eve of FTX Collapse

'Stop trying to depeg stablecoins,' Binance's Changpeng Zhao wrote in a chat to the FTX founder

*By Patricia Kowsmann* [Follow] *, Alexander Osipovich* [Follow] *and Caitlin Ostroff* [Follow]

Dec. 9, 2022 9:48 am ET

A Tether official and the head of the world's largest crypto exchange grew alarmed that Sam Bankman-Fried was trying to destabilize the stablecoin and with it the broader crypto market last month in a last-ditch attempt to save FTX, according to messages seen by The Wall Street Journal and people familiar with the situation.

In a Signal group chat called "Exchange coordination," Changpeng Zhao, the chief executive of crypto exchange giant Binance, confronted Mr. Bankman-Fried on Nov. 10.

"Stop trying to depeg stablecoins. And stop doing anything. Stop now, don't cause more damage," Mr. Zhao told Mr. Bankman-Fried, according to the messages seen by the Journal.

Mr. Bankman-Fried denied the claims in the Signal messages and in a statement to the Journal.

The confrontation stemmed from trades by Mr. Bankman-Fried's trading firm, Alameda Research, that the Binance CEO and others feared were aimed at destabilizing tether—a stablecoin pegged to the dollar. Because of tether's importance in crypto markets, a drop in its price could have pushed down other cryptocurrencies.

Other members of the Signal group included Paolo Ardoino, chief technology officer of the stablecoin's issuer Tether Holdings Ltd.; Justin Sun, founder of the crypto network Tron; and Kraken co-founder Jesse Powell, among others, according to people familiar with the chats.

The confrontation shows the scale of the jitters in the crypto market as FTX was fighting for survival and investors worried about potential contagion. It also underscores the unconventional business practices in the crypto market. Such a chat group would be

unthinkable in the world of traditional exchanges, due to concerns about collusion and potential antitrust violations. The New York Times reported on the confrontation between Messrs. Zhao and Bankman-Fried earlier Friday.

On Nov. 10, Mr. Ardoino had already expressed concerns that Alameda was trying to push down the price of tether and drag other cryptocurrencies with it, according to one of the people.



Changpeng Zhao, the head of crypto exchange giant Binance, confronted the FTX founder over a large Tether transaction.

PHOTO: JULIANA TAN FOR THE WALL STREET JOURNAL

The industry players believed Alameda was trying to lower its liabilities, much of which are denominated in volatile tokens whose value would have shrunk in the event of a broad market collapse.

Tether had begun to buckle the day of Mr. Zhao's rebuke, falling more than 2 cents from its usual $1 level. FTX, meanwhile, was teetering on the brink of bankruptcy, with Mr. Bankman-Fried calling potential rescuers in search of loans to cover a multibillion-dollar hole. Binance had scrapped a potential rescue package a day earlier. FTX and Alameda filed for bankruptcy on Nov. 11.

Public blockchain data show Alameda borrowed more than 1 million tether, also known as USDT, from crypto lending platform Aave across several transactions on Nov. 10, including one transaction for 250,000 tether that caught traders' attention on social media. The hedge fund appeared to swap some of that tether for rival stablecoin USDC, sparking concerns that Alameda was trying to drive down tether's value.

Stablecoins such as tether have become integral to cryptocurrency trading over the past two years. Traders prefer to buy and sell coins such as bitcoin using stablecoins, rather than using more volatile digital tokens or waiting days for trades made with government-issued currencies to settle.

Mr. Bankman-Fried denied that Alameda attempted to knock tether off its peg, calling Mr. Zhao's worries unfounded. "The claims are absurd," Mr. Bankman-Fried told the Journal.

"Trades of that size would not make a material impact on tether's pricing, and to my knowledge neither myself nor Alameda has ever attempted to intentionally depeg tether or any other stablecoins. I have made a number of mistakes over the past year, but this is not one of them."

A person close to Alameda said the tether trades were aimed at closing down positions and returning money to lenders.

A Binance spokesman said it would be inappropriate for the exchange to comment.

In the Signal messages reviewed by the Journal, Mr. Bankman-Fried expressed incredulity at the accusations: "Are you claiming that you think that $250,000 of USDT trading would depeg it?"

Mr. Zhao countered that the issue wasn't the size of the trades but rather the frequency of transactions that, even if small in size, could overwhelm market makers whose trading activity helps keep tether priced at $1. If too many orders to sell a token come in at the same time, market makers could struggle to respond with buying, ultimately resulting in a price drop.

"My honest advice: stop doing everything. Put on a suit, and go back to DC, and start to answer questions," Mr. Zhao told Mr. Bankman-Fried.

"Thanks for the advice!" Mr. Bankman-Fried replied, asking Mr. Zhao to clarify: "Did you attempt to accuse me of trying to depeg a stablecoin by doing a $250,000 trade?"

Mr. Ardoino eventually jumped in: "Just to be clear, we'll redeem whatever amount of money comes to us. We're solid."

Tether has a market cap of about $66 billion, according to data provider Messari. It has long been dogged by allegations that it isn't fully backed and concerns that its issuer, Tether

Holdings, doesn't publish audited financial statements or a complete balance sheet. The company says tether is 100% backed by liquid assets.

Messrs. Bankman-Fried and Zhao are longtime rivals who intermittently sniped at each other on Twitter in the year before FTX's collapse. Mr. Zhao's early November announcement that Binance would sell its holdings of FTT—a cryptocurrency launched by FTX—unleashed a wave of financial pressure on Mr. Bankman-Fried's businesses that ended in their unraveling.

Write to Patricia Kowsmann at patricia.kowsmann@wsj.com, Alexander Osipovich at alexo@wsj.com and Caitlin Ostroff at caitlin.ostroff@wsj.com

---

## The Effects of FTX

Coverage of the crypto exchange's bankruptcy, selected by the editors

SIGN UP FOR THE WSJ CRYPTO NEWSLETTER

**Your Guide to FTX and the Crypto Crash**

**SEC Scrutiny Blocks Some Crypto Firms From Going Public**

**Crypto Lender Genesis Files for Bankruptcy**

**New FTX Chief Says Crypto Exchange Could Restart**

**In Africa, FTX Posed as Inflation Haven**

**A Crypto Magnate Saw the Risks and Still Was Hammered**

**Inside Bankman-Fried's $1 Billion Bitcoin Mining Bet**

**Alameda Troubles Began Before Crypto Crash**