


April 24, 2023

**Via ECF and E-mail**
The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

**Re:**    *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

Per Local Civil Rule 37.2 and Individual Rule 3.C, Plaintiffs seek a pre-motion conference on B/T Defendants' failure to fully comply with the Court's September 20, 2022 order ("September 20 Order") to produce trading records in response to Plaintiffs' Revised Document Request Nos. 23-25 ("Transaction RFPs"). *See* ECF No. 247 at 5. These records are "undoubtedly important" because they "go to one of Plaintiffs' core allegations: that the B/T Defendants engaged in cryptocommodities transactions using unbacked USDT, and that those transactions 'were strategically timed to inflate the market.'" ECF No. 247 at 4; *see also* ECF No. 240 at 1-2 (discussing relevance of the records). The parties met and conferred via correspondence but are at impasse.

B/T Defendants began producing trading records in October 2022, inconsistently labeled and generally without identifying information beyond account numbers. In November 2022, Plaintiffs requested, via interrogatories, all accounts and wallets owned or controlled by B/T Defendants and their officers and employees—a process B/T Defendants dragged out for months before answering (partially and incompletely) on April 5, 2023. *See* Ex. 1. In March 2023, Plaintiffs found a document in Defendant Philip Potter's production showing that a list of 66 account numbers ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ On March 23, 2023, Plaintiffs asked B/T Defendants to identify all records produced in response to the Transaction RFPs, *see* Ex. 4 (Ltr, L. King to E. Greenfield (March 23, 2023)), including accounts ▇▇▇▇▇▇▇▇▇▇▇▇ identified in B/T Defendants' internal communications. *Id*. B/T Defendants did not do so, saying instead that they "plan[ned] to complete their production of transaction data in response to RFPs 23-25 by April 14." Ex. 5, at 6 (Email, N. Born to L. King (April 3, 2023)). Now purportedly complete, B/T Defendants' production is seriously deficient.

*First*, B/T Defendants did not produce records for at least eight internal accounts under their ownership or control: a Bitfinex reserve account (▇▇), a Digfinex equity account (▇▇▇), a Bitfinex-OTC account (▇▇▇), a Tether account (▇▇), and Philip Potter's accounts (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). *See* Ex. 6 (Ltr., L. King to E. Greenfield (April 5, 2023)); Ex. 7 (Ltr. L. King to E. Greenfield (April 17, 2023). B/T Defendants provided wallet addresses for some of these accounts but no trading records—not even for the Tether account, which was ▇▇▇▇

[1] B/T Defendants also failed to produce records corresponding to many accounts on the ▮▮▮▮▮, or to explain what records they withheld and why. *See* Exs. 5-6.

*Second*, B/T Defendants' produced records for one of the most critical accounts—the Bitfinex-owned reserve account (▮▮▮)—with significant gaps. They show trades only from October to December 2017 plus one day in February 2020—even though documents show trading in that account at other times, *e.g.*, Exs. 4 (Ltr. L. King to E. Greenfield (March 23, 2023)), 7 (Ltr. L. King to E. Greenfield (April 17, 2023)) (); Ex. 9 (▮▮▮▮▮). The records for this account also fail to capture any trades involving USDT before 2019.

*Third*, only late last week, in a footnote in a letter to the Court, B/T Defendants revealed that they are withholding trading records of their officers and employees. *See* ECF No. 325 at 3 n.2. This violates the Court's September 20 Order. The Transaction RFPs requested records for accounts belonging to the B/T Defendants, defined to include officers and employees, among others. *See* Ex. 10. In their general responses to Plaintiffs' RFPs, B/T Defendants agreed to produce documents from "the named entity and its past and present employees, officers and directors." *See* Ex. 11 at 2. Plaintiffs moved to compel compliance with the Transaction RFPs as written and, in opposing, B/T Defendants never contested that definition. The Court ordered B/T Defendants to produce documents in response to the Transaction RFPs without changing the definition. B/T Defendants have no basis to withhold these records.[2]

Discovery confirms 

---

[1] Ex. 8 (discussing the Tether account (▮▮▮)).

[2] B/T Defendants also tried to use the Court's subsequent orders to end run the Court's September 20 Order. Revised RFP No. 25 sought records of trades by B/T Defendants—or any entity that they control—on other exchanges. ECF 240-1 at 6–7. B/T Defendants said they did not know of any external transaction records other than documents Poloniex produced in response to Plaintiffs' RFPs, Ex. 5 (Email, N. Born to L. King (April 14, 2023)), even though Poloniex's production—unlike the Court's September 20 Order—was limited to accounts of the named B/T Defendants by this Court's order of March 1, 2023, ECF No. 310.

2

███████ B/T Defendants cannot withhold records of officer and employee accounts used to conduct relevant trading.

*Finally*, B/T Defendants have not produced any records for accounts they own on external exchanges—that is, accounts on exchanges other than Bitfinex. They failed to do so despite months ago ████████████████████████████████████████████████████████████████

B/T Defendants' attempts to justify their conduct are baseless. Ex. 19 (Ltr. B/T Defendants to Plaintiffs (Apr. 24, 2023)). *First*, they say the September 20 Order excluded accounts of B/T Defendants' officers and employees because, in moving to compel, Plaintiffs defined "B/T Defendants" as the named defendants. *Id.* at 2. But Plaintiffs did so only to identify the parties against which they were moving, not to limit the scope of the records those parties had to produce. *Second*, they say that the September 20 Order excluded transactions that B/T Defendants did not "initiate[,]" including those on Bitfinex's OTC platform. *Id.* at 3. But the Transaction RFPs are not limited to B/T-initiated trades, B/T Defendants did not argue for such a limitation, and the Court did not impose one. *Third*, they justify withholding records of transactions denominated in "USD" because the Transaction RFPs called for stablecoin and cryptocommodity transactions. *Id.* at 3. But B/T Defendants internally used "USD" and "USDT" interchangeably, *see* Ex. 20 ████████████████████████████████████; Ex. 21 at ¶ 13 (████████████████████████████████), through 2018, *see* Ex. 22 ("Any Tether deposits initiated before 14:30:00 UTC on the 27th of November will be credited to the user's fiat wallet balances, whereas Tether deposits initiated after this cutoff time will be credited as Tether (USDT).") (available at http://web.archive.org/web/20181129122555/). B/T Defendants cannot withhold relevant records because they choose to denominate USDT trades as "USD."[4]

Plaintiffs ask the Court to compel B/T Defendants to, within seven days, produce all trading records responsive to the Transaction RFPs. Plaintiffs also ask the Court to compel them to produce, within seven days, a witness to testify, pursuant to Rule 30(b)(6), regarding (1) the accounts in which B/T Defendants (as defined in the Transaction RFPs) traded in crypto-assets; (2) the records of those trades; (3) the B/T Defendants' investigation to identify and produce those records; and (4) if any such records are missing or were destroyed, the timing and circumstances of their loss or destruction. This deposition should not count against Plaintiffs' deposition limit or limit their ability to notice or take Rule 30(b)(6) depositions of B/T Defendants on other topics.

---

[3] ████████████████████████████████████████

[4] B/T Defendants' productions to date show no trades denominated as "USDT" until the end of 2018. This is consistent with B/T Defendants denominating USDT trades as "USD" until then. B/T Defendants do not (and could not) contend that they did not trade in USDT before then; numerous documents show that they did. Ex. 7; Ex. 23 ("████████████████████████████████████████████████████").

Respectfully submitted,

| /s/ Andrew R. Dunlap | /s/ Todd M. Schneider |
|---|---|
| Philippe Z. Selendy | Todd M. Schneider (*pro hac vice*) |
| Andrew R. Dunlap | Jason H. Kim (*pro hac vice*) |
| Oscar Shine | Matthew S. Weiler (*pro hac vice*) |
| SELENDY GAY ELSBERG PLLC | SCHNEIDER WALLACE COTTRELL |
| 1290 Sixth Avenue | KONECKY LLP |
| New York, NY 10104 | 2000 Powell Street, Suite 1400 |
| pselendy@selendygay.com | Emeryville, CA 94608 |
| adunlap@selendygay.com | tschneider@schneiderwallace.com |
| oshine@selendygay.com | jkim@schneiderwallace.com |
| | mweiler@schneiderwallace.com |

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*