



April 25, 2023

**<u>Via ECF and E-mail</u>**
The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

**Re:**   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

Plaintiffs write in opposition to B/T Defendants' April 20, 2023 request for a pre-motion conference regarding Plaintiffs' January 27, 2023 subpoena (the "Subpoena," and each request therein a "Request") to the crypto-asset exchange Payward Ventures, Inc. (*d/b/a* "Kraken"). *See* ECF No. 325. The Subpoena seeks relevant, important discovery that Kraken has agreed to produce. Now, on the eve of Kraken's production, B/T Defendants ask the Court to retroactively narrow the Subpoena. Their procedurally improper request should be denied.

On September 20, 2022, the Court compelled B/T Defendants to produce complete transaction records for accounts owned or controlled by B/T Defendants, including their past and present employees, officers, and directors, as requested by Plaintiffs' Revised Document Request Nos. 23-25 (the "Transaction RFPs"). *See* ECF No. 247 (the "September 20 Order"). Most relevant here, Revised RFP No. 25 sought records of trades by B/T Defendants—or any entity that they control—on exchanges other than Bitfinex. ECF No. 240-1 at 6-7. As the Court recognized in the September 20 Order, those records are "undoubtedly important" because they "go to one of Plaintiffs' core allegations: that the B/T Defendants engaged in cryptocommodities transactions using unbacked USDT, and that those transactions 'were strategically timed to inflate the market.'" ECF No. 247 at 4; *see also* ECF No. 240 at 3 (discussing relevance of B/T Defendants' transaction records). After the Court's ruling, B/T Defendants began producing trading records, but did not identify which records went with which accounts or even identify all the accounts they controlled.

To ensure that they received records of B/T Defendants' trades on other exchanges in a timely way, Plaintiffs served a subpoena on Kraken pursuant to Fed. R. Civ. P. 45 on January 9, 2023; they re-served it, at Kraken's request, on January 27. Plaintiffs and Kraken met and conferred and reached an agreement to fully discharge the Subpoena, which included producing a limited set of transaction records for up to fourteen Kraken accountholders, all either named B/T Defendants or their officers, employees, or agents. Despite having notice of Plaintiffs' requests since early January, B/T Defendants did not object to the Subpoena or its definitions until after close of business on April 17, 2023. ECF No. 325-3, at 5. B/T Defendants now move the Court to limit Kraken to producing the trading records of the named B/T Defendants but preventing it from producing the records of officers and employees. Their request is meritless.

*First*, contrary to B/T Defendants' assertions (ECF No. 325 at 2-3), the documents at issue are centrally relevant. The Kraken users whose records are to be produced are "*de facto* owned or controlled by the B/T Defendants," ECF No. 310 at 4, ████████████████████████████



B/T Defendants frequently traded on other exchanges pseudonymously.[1] B/T Defendants' officer and employee trading records are highly likely to contain evidence of relevant trades made on behalf of the B/T Defendants, and B/T Defendants have no basis to withhold them.

*Second*, B/T Defendants lack standing to modify or quash the Subpoena. Their motion is properly one to quash under Rule 45, under which a party "lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (collecting cases).[2] As "the weight of authority in this Circuit dictates," "a party must claim a personal right or privilege in the subpoenaed documents in order to have standing to challenge a subpoena served on a third party." *Somaxon Pharms., Inc. v. Actavis Elizabeth LLC*, 2022 WL 3577904, at *2 (S.D.N.Y. Aug. 18, 2022) (Failla, J.). B/T Defendants cite the privacy interests of "account holders who are not party to this litigation" and the supposed burden on Kraken itself. ECF No. 325, at 2-3. But Kraken has agreed to produce the documents at issue, no account holder has moved to quash that production even though Kraken notified them of its intent to produce, and named B/T Defendants expressly disclaim their own privacy rights by agreeing that Kraken can produce their records. *Id.* at 2.[3] B/T Defendants would also lack standing to move under Rule 26(c), which may be invoked only by "[a] party or any person from whom discovery is sought," Fed. R. Civ. P. 26(c)(1).[4] B/T

---

[1] This was a matter of course for B/T Defendants and their agents, who frequently operated using intermediaries, shell companies, and false names. *See* Ex. 5 (Ben Foldy & Ada Hui, *Crypto Companies Behind Tether Used Falsified Documents and Shell Companies to Get Bank Accounts*, Wall St. J. (Mar. 3, 2023)) (discussing Chakrit Sakunkrit, *a/k/a* Christopher Harborne, using Bitfinex funds to trade on Kraken).

[2] While this Court has jurisdiction over the above-captioned matter, standing must be demonstrated "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

[3] In any event, B/T Defendants cannot "move to quash the subpoena," ECF No. 325, at 2 n.1, because only "the court for the district where compliance is required" may hear such a motion. Fed. R. Civ. P. 45(d)(3)(A). The Subpoena requires compliance in the Northern District of California, so any motion to quash must be initiated there. ECF No. 325-1, at 5.

[4] "Under conventional rules of grammar," a modifier at the end of a list (*from whom discovery is sought*) "normally applies to the entire series" (both *a party* and *any person*). *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021).

Defendants here are not a "party … from whom discovery is sought" and thus cannot object to the Subpoena in this Court.

*Third*, B/T Defendants' motion is all the more inappropriate because they seek to prevent Kraken from producing trading records that this Court ordered B/T Defendants themselves to produce months ago. In three Requests for Production, Plaintiffs asked for trading records of not just the named B/T Defendants but also of their officers, employees, and agents. ECF No. 328, at 2; Ex. 6, at 2-3 (defining "Defendants" to include their "officers, directors, agents, [and] employees"). As Plaintiffs explained in their letter of April 25, ECF No. 328, the Court's September 20 Order compelled B/T Defendants to produce trading records in response to those requests without limiting the scope of the entities at issue. ECF No. 328, at 2. In a footnote in their letter to the Court last week, B/T Defendants disclosed for the first time that they are withholding trading records of their officers and employees, producing records only for named B/T Defendants. *See* ECF No. 325 at 3 n.2. This flatly violated the Court's September 20 Order. The Court should not let B/T Defendants prevent Kraken from producing the records that B/T Defendants were ordered—but failed—to disclose.

*Finally*, to the extent that B/T Defendants now claim that the Court's March 1 Order, ECF No. 310, retroactively limited the Subpoena to Kraken accounts owned by "the named B/T Defendants only," ECF No. 325 at 3, they are flatly wrong. The March 1 Order did not limit the scope of any third-party subpoenas and, until now, no Defendant moved to impose such a limit. The Court's March 1 Order rather held that Bittrex—which opposed service of an interrogatory seeking identification of wallets and accounts on its exchange owned or controlled by B/T Defendants— was not required to "sort through" whether particular wallets or accounts were owned or controlled by B/T Defendants, "particularly where [Bittrex and Poloniex] may not actually know whether the B/T Defendants have any influence over third-party accounts." ECF No. 310 at 4. The Court reasoned that "[p]resumably, some, if not all of the information Plaintiffs seek has already been produced to them by Defendants (including the B/T Defendants)." *Id.* Here, in contrast, discovery confirms that B/D Defendants routinely directed or coordinated trading via accounts of their officers, employees, and agents and B/T Defendants have not already produced their records.

Plaintiffs respectfully request that B/T Defendants' request be denied.

Respectfully submitted,

/s/ Andrew R. Dunlap                          /s/ Todd M. Schneider
Philippe Z. Selendy                           Todd M. Schneider (*pro hac vice*)
Andrew R. Dunlap                              Matthew S. Weiler (*pro hac vice*)
Oscar Shine                                   Mahzad K. Hite (*pro hac vice*)
SELENDY GAY ELSBERG PLLC                      SCHNEIDER WALLACE COTTRELL
1290 Sixth Avenue                             KONECKY LLP
New York, NY 10104                            2000 Powell Street, Suite 1400
pselendy@selendygay.com                       Emeryville, CA 94608
adunlap@selendygay.com                        tschneider@schneiderwallace.com
oshine@selendygay.com                         mweiler@schneiderwallace.com
                                              mhite@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*