

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

April 28, 2023

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We write on behalf of the B/T Defendants in response to Plaintiffs' April 25 motion to compel production of trading records, which relies on the incorrect and unsupported claim that the B/T Defendants' production of those records is "seriously deficient."  (Dkt. No. 328, "Mot.")

As background, Plaintiffs wrote to the B/T Defendants on April 17, 2023 claiming that they had identified production deficiencies and subsequently demanded a response by 5 p.m. on April 24.  (Mot. Exs. 5, 7.)  The B/T Defendants responded by that time, and explained why each document Plaintiffs cited did not indicate a deficiency.  (Mot. Ex. 19.)  Plaintiffs ignored the B/T Defendants' explanation and filed this motion to compel several hours later.

Plaintiffs' assertion that the B/T Defendants' production is "seriously deficient" is based on the false premise that the B/T Defendants are obligated to produce *all* transaction records; to the contrary, Revised RFPs 23-25 are expressly limited to transactions involving only a specific set of crypto-assets, blockchains, and platforms.[1]  Plaintiffs' claim of deficiency also assumes, incorrectly, that the B/T Defendants are obligated to produce not just their own transaction records, but also those of their officers, directors, employees and a broad, ill-defined set of additional persons and entities.  (Mot. Ex. 19 at 2.)

Accordingly, the mere identification of accounts for which transactions records were not produced, or were produced only for certain time periods, does *not* demonstrate a deficiency.  (Mot. 1-2.)

- Accounts ▇▇▇ and ▇▇▇▇▇:  As the B/T Defendants already explained to Plaintiffs, the B/T Defendants assessed the transaction records for these accounts and are not aware of any transactions that fall within the scope of the Revised RFPs.  (Mot. Ex. 19 at 2-3.)  Plaintiffs identify no basis to conclude that there is a production deficiency.

---

[1] Revised RFP No. 23 (transactions in which Bitcoin, Bitcoin Cash, Ethereum, Ethereum Classic, Litecoin, Monero, Dash, or ZCash was exchanged for stablecoins or any other cryptocommodity); Revised RFP No. 24 (trades and transfers involving stablecoins, Bitcoin, Bitcoin Cash, Ethereum, Ethereum Classic, Litecoin, Monero, Dash, and ZCash that were "made through private arrangements or over-the-counter ('OTC') platforms"); Revised RFP No. 25 (trades and transfers made on or through Gemini, Coinbase, Bitstamp, Genesis, itBit, LedgerX, Bittrex, Poloniex, Circle, Bitgo, Gate.io, KuCoin, Kraken or Binance).  (Mot. Ex. 19 at 1-2.)

The Honorable Katherine Polk Failla				2						April 28, 2023

- Account ▮▮▮▮: Plaintiffs' observation that the transaction data produced for this account is largely limited to a three-month date range does not indicate a deficiency. As the B/T Defendants explained to Plaintiffs, the document that Plaintiffs cite showing trading over a somewhat broader time period consisted almost entirely of trades involving U.S. dollars that are not responsive to Revised RFP 23. (Mot. Ex. 19 at 3.) Although Plaintiffs failed to identify any specific trades suggesting a production deficiency, the B/T Defendants have thoroughly reviewed the roughly 100,000 transactions reflected in that document and have identified only 10 transactions that are responsive to Revised RFP 24. Those records will be produced promptly.

- Account ▮▮▮▮: Bitfinex's operation of its *own* OTC platform and its transactions in response to customer demand on that OTC platform are not responsive to Revised RFP 24, which seeks records for certain transactions initiated by the B/T Defendants, not by Bitfinex customers. (Mot. 1.) Plaintiffs make no attempt to explain how Bitfinex's servicing of customer demand by acting as a counterparty is relevant to their claims. (Mot. at 1, 3.)

- Account ▮▮▮▮: For the same reason, the B/T Defendants' automatic fulfillment of customer requests to convert bitcoin to USDT and vice versa are not responsive to RFPs regarding the B/T Defendants' trades. In any event, the B/T Defendants produced records of those conversions at BITFINEX_TETHER_0313882, a document the B/T Defendants previously identified for Plaintiffs.

- Philip Potter Accounts: Mr. Potter is not a B/T Defendant, and the B/T Defendants understand that accounts ▮▮▮, ▮▮▮, ▮▮▮▮▮, and ▮▮▮▮▮ were his personal accounts.

Plaintiffs' contention that the B/T Defendants are obligated to produce U.S. dollar ("USD") transaction records in response to Revised RFP 23 is meritless. (Mot. at 3.) Plaintiffs provide no support for their assertion that the B/T Defendants denominated USDT trades as "USD." (*Id.*) Instead, as the November 27, 2018 Bitfinex article Plaintiffs cite explains, Bitfinex did not support account balances or trades involving USDT on its platform prior to that date; instead, deposits of USDT were credited in account balances as U.S. dollars. (Mot. Ex. 22.) None of the other documents that Plaintiffs cite suggest that USDT trades were recorded as USD trades.[2]

With respect to Revised RFP 25, which relates to transactions on certain third-party exchanges, Plaintiffs have identified accounts on three such exchanges. As the B/T Defendants have informed Plaintiffs, they no longer have access to the Poloniex account records, which Poloniex has already produced. (Mot. Ex. 5 at 4-5.) The B/T Defendants have not located records for the Bitstamp and Kraken accounts, but they were able to reestablish access to the Kraken account and are seeking to obtain and produce account records. (Mot. Ex. 19 at 4.)

Plaintiffs' claim that the B/T Defendants are required to produce transaction records for accounts held by their "officers and employees, among others" is contrary to the record. (Mot. at 2.)

---

[2] See Mot. Ex. 20 at 3-4 (explaining that an account "had 20.3 USD credited as a result of a Tether deposit"); Ex. 21 ¶ 13 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 23 at 2 (referring to a redemption, not a trade on the Bitfinex exchange, of USDT from a Tether account).

The Honorable Katherine Polk Failla     3     April 28, 2023

Plaintiffs moved to compel production of "records relating to the B/T Defendants' transactions in cryptocommodities," explaining that Revised RFPs 23-25 "seek records of Defendants' transactions" and arguing that they "must know what trades the B/T Defendants made." (Dkt. No. 239 at 1-2.) In that motion, Plaintiffs expressly defined "the B/T Defendants" as the named B/T Defendants *only*, and not any broader set of individuals. (*Id.* at 1 n.1.) Contrary to Plaintiffs' current assertions, nowhere in their motion did they suggest that their definition of "B/T Defendants" applied only to "identify the parties against which they were moving." (Mot. 3.) Nor did Plaintiffs submit the initial RFPs they now cite or any other broader definition of "B/T Defendants" to the Court. (Mot. Ex. 10.) In granting Plaintiffs' motion, the Court accepted their argument that "[t]he documents sought in the transactions RFPs appear to go to one of Plaintiffs' core allegations: that the B/T Defendants engaged in cryptocommodities transactions using unbacked USDT . . . ." (Dkt. No. 247 at 4.) Neither Plaintiffs' motion nor the Court's Order includes any mention of transaction records other than those of the B/T Defendants themselves.

Plaintiffs' belated attempt to suggest that the B/T Defendants "used officer and employee accounts for relevant trading in USDT and cryptocommodities" is not supported by the documents Plaintiffs cite (none of which were raised with the B/T Defendants prior to Plaintiffs' motion to compel). (Mot. 2; Mot. Exs. 4-7, 18, 12-15.) Although Plaintiffs claim that the "B/T Defendants used ▮▮▮▮▮▮▮▮ accounts to create and redeem USDT," the creation and redemption of USDT in exchange for USD falls outside the scope of Revised RFP 23 (which does not include transactions involving USD), Revised RFP 24 (which seeks transactions on OTC platforms and through private arrangements), and Revised RFP 25 (which seeks transactions on certain third-party exchanges). The "other examples" that Plaintiffs cite are similarly meritless. (Mot. Ex. 13 (making no reference to the use of a private account), Ex. 14 (saying "bitfinex would have an account on poloniex" to be used "for Tether proper"), Ex. 15 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3]).)

As the B/T Defendants explained to Plaintiffs by letter, they reject any suggestion that they delayed the production of transaction records. (Mot. Ex. 19 at 4.)

Because Plaintiffs have failed to demonstrate a deficiency in the B/T Defendants' production of transaction records, there is no basis for an order compelling production of any documents or a Rule 30(b)(6) deposition, much less one that does not count against Plaintiffs' deposition limit.

Respectfully submitted,

/s/ Elliot Greenfield

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮