UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re:*

TETHER AND BITFINEX CRYPTO ASSET LITIGATION

19 Civ. 9236 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

The Court is in receipt of two interrelated letter motions pertaining to discovery disputes in this case: one from the B/T Defendants regarding a subpoena served on nonparty Payward Ventures, Inc. ("Kraken") (Dkt. #325), and another from Plaintiffs regarding purported deficiencies in the B/T Defendants' productions (Dkt. #328). Both sides have also filed responses to the letters. (Dkt. #336, 341, 344). This Order resolves both disputes.

The Court notes at the outset that it resolves discovery disputes on an individualized basis; that is, the Court cannot freely opine on the needs and burdens of discovery writ large, and instead has functionally played whack-a-mole with the parties over the course of an unprecedented number of discovery disputes. The Court has attempted to be consistent and to consider a variety of factors in resolving disputes as they arise. To the extent that there is disagreement over what the Court intended reaching back to disputes from September 2022, such outcome appears inevitable given the parties' continued stalemates.

Turning first to the Kraken subpoena, the Court largely disagrees with the B/T Defendants' position, and will not impose a protective order or otherwise quash or modify the subpoena. As the B/T Defendants note, the

Kraken subpoena implicates many of the same issues that arose when the Court resolved a prior discovery dispute involving Poloniex and Bittrex. (*See* Dkt. #310 (March 1, 2023 Order limiting interrogatories served on Poloniex and Bittrex to "wallet addresses and account numbers owned or controlled by the B/T Defendants themselves")). However, there are notable differences with respect to the Kraken subpoena. First and foremost, Kraken itself has not opposed the subpoena, and appears willing to respond to it. (Dkt. #325). While Poloniex did not oppose service of the interrogatory at issue in the March 1, 2023 Order (Dkt. #310 at 3 n.1), Bittrex did oppose the scope of the interrogatory, and the Court's Order pertained to Poloniex with equal force to avoid disparate results. Second, the timing of the B/T Defendants' motion matters. The thrust of the B/T Defendants' motion is that the Court's March 1, 2023 Order pertaining to a different discovery dispute with different parties should effectively be retroactive to a subpoena originally served on Kraken in January 2023. (Dkt. #325 at 1-2). Thus, the B/T Defendants knew of the Kraken subpoena at the time the parties were briefing issues related to the Poloniex and Bittrex interrogatories; in fact, the B/T Defendants chimed in on those interrogatories. (Dkt. #305). The B/T Defendants have not offered any excuse for failing to raise the Kraken issue earlier, and now merely seek to take advantage of a ruling from the Court pertaining to a different dispute. The Court will not countenance this type of behavior.

Further, the Court finds the Kraken subpoena more relevant and limited to the needs of this case than the Poloniex and Bittrex interrogatories.

Plaintiffs note that the subpoena has been limited to "fourteen Kraken accountholders, all either named B/T Defendants or their officers, employees, or agents." (Dkt. #336 at 1).[1]  The B/T Defendants protest that Plaintiffs have not identified those account holders to the B/T Defendants and that Plaintiffs did not previously submit documentary evidence to the B/T Defendants that there are indicia of control between the named Defendants and certain individuals.  (*See* Dkt. #336, Exs. 1-4).  But the B/T Defendants have not explained why Plaintiffs were so obliged.  The Court was principally concerned with the *breadth* of the interrogatories served on Poloniex and Bittrex; indeed, Plaintiffs "offered only tenuous connections between a whole swath of individuals and entities purportedly affiliated with the B/T Defendants[.]"  (Dkt. #310).  Here, the Court has no such concern; Plaintiffs have submitted documentary evidence to establish the relevance of the information sought, and have agreed to limit the subpoena.  (Dkt. #336 at 1).  Though Plaintiffs could have been clearer with regards to the more limited scope of the subpoena, the Court nonetheless accepts counsel's representation that the subpoena seeks relevant information from a more circumscribed group.  The Court thus denies Defendants' requested relief.

---

[1]  The Court allowed the B/T Defendants to submit a short reply to Plaintiffs' opposition to the Kraken letter motion. (Dkt. #341). In that letter, the B/T Defendants did not rebut Plaintiffs' argument that the B/T Defendants lack standing to modify or quash the subpoena served on Kraken. (Dkt. #336 at 2). As such, the Court assumes that the B/T Defendants have waived this argument. In any event, the Court does not believe that the B/T Defendants have made the requisite showing under Rule 45. Further, as Plaintiffs point out, the subpoena requires compliance in the Northern District of California, not in this District. (Dkt. #336 at 2 n.3).

The second dispute before the Court — Plaintiffs' motion to compel — presents more complicated issues.  In essence, Plaintiffs argue that the B/T Defendants have failed to comply with the Court's September 20, 2022 Order, requiring the B/T Defendants to produce trading records in response to RFPs 23-25 (delineated as the "Transaction RFPs" in the September 20, 2022 Order).  Specifically, Plaintiffs contend that the B/T Defendants have (i) not produced records for eight accounts under their control; (ii) not fully produced records for a Bitfinex-owned account; (iii) withheld trading records for their officers and employees; and (iv) not produced record for accounts held on external exchanges.  (Dkt. #328 at 1-3).  The B/T Defendants argue that their productions are not in any way deficient.  (Dkt. #344).

Again, the interaction of the Court's various Orders has engendered controversy with respect to the instant dispute.  The B/T Defendants claim, apparently invoking the logic of the March 1, 2023 Order, that "neither Plaintiffs' [September 2022] motion nor the Court's [September 2022] Order includes any mention of transaction records other than those of the B/T Defendants themselves."  (Dkt. #344).  This is true, but it is largely beside the point.  In September 2022, the Court was resolving a much broader discovery dispute among the parties, concerning whether the B/T Defendants had to produce documents related to certain RFPs at all.  (Dkt. #240).  Indeed, the B/T Defendants never objected to the RFPs on the bases they now invoke.  (Dkt. #245).  As above, the Court does not appreciate apparent gamesmanship; it is entirely unclear why the B/T Defendants are pressing new theories to

4

withhold documents nearly eight months after the Court's September 2022 Order.

To the extent the B/T Defendants now seek to retroactively apply the March 1, 2023 Order to RFPs served *last year*, the Court disagrees. A core assumption of that Order was that "[p]resumably, some, if not all of the information Plaintiffs seek has already been produced to them by Defendants (including the B/T Defendants)." (Dkt. #310 at 4). The Court has now learned for the first time that this is not the case, and sees no reason why the B/T Defendants should not comply with the RFPs as written, especially at a point when Plaintiffs have at least raised the possibility that certain accounts were used for relevant trading purposes. (Dkt. #344 at 3 (contesting documentary evidence submitted by Plaintiffs)). The B/T Defendants' arguments are best made with regard to possible future dispositive motion practice, not in the context of discovery disputes.

Turning to the actual details of the dispute, the Court finds the B/T Defendants' arguments largely meritless. Starting with the scope of the RFPs, the Court does not read them as narrowly as the B/T Defendants. There is no limit on the RFPs to "B/T-initiated trades" as Plaintiffs point out (Dkt. #328 at 3), and to the extent the B/T Defendants seek to impose such a limit, the time has long since passed. As it relates to production of documents delineated in "USD" versus "USDT", the Court finds the issue a close call, but one that favors Plaintiffs at this late stage. The Court has reviewed the documentary evidence submitted by Plaintiffs, and though confusing at times, the evidence suggests

5

at least some equivocation in the use of these terms.  The Court's task is not to stymie a party's efforts to obtain relevant discovery once that party has made the requisite showing, even if such discovery may uncover somewhat irrelevant documents.  Though perhaps implicit in the B/T Defendants' response, the B/T Defendants have not objected on the grounds of burden; instead, they contest relevance and responsiveness.  The Court is satisfied that Plaintiffs have made this requisite threshold showing.  Finally, the Court notes that the B/T Defendants have represented to Plaintiffs that certain deficiencies are not deficiencies at all; the documents simply do not exist, or the B/T Defendants do not have access to them.  (Dkt. #344 at 1-2).  The Court trusts that the B/T Defendants' representations to opposing counsel and this Court are truthful with regard to certain personal accounts and lack of access to certain requested discovery.  Thus, to the extent the B/T Defendants have not produced documents on these grounds, Plaintiffs must be satisfied that the discovery is outside of the B/T Defendants' reach.

In conclusion, the Court **DENIES** in whole the B/T Defendants' letter motion pertaining to Kraken.  (Dkt. #325).  The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' letter motion to compel.  (Dkt. #328-329).  Specifically, the Court will not grant Plaintiffs' request to compel a Rule 30(b)(6) deposition on the topics discussed in their letter.  Rather, the Court believes (and hopes) that the parties can work through identifying relevant accountholders and deficiencies through meeting and conferring in good faith.  This means more than just broadly-phrased demands; instead, Plaintiffs

should make a concerted effort to identify specific accounts and individuals for which they believe productions are deficient, as well as why the discovery from those accounts and individuals is relevant, much like they did in their letter motion to the Court. The Court expects the B/T Defendants to comply with the Court's September 20, 2022 Order and to redress any identified deficiencies in their productions within three weeks of the date of this Order — *i.e.* by **May 22, 2023.**

The Clerk of Court is directed to terminate the pending motions at docket entries 325, 328, and 329.

SO ORDERED.

Dated: May 1, 2023
New York, New York

*Katherine Polk Failla*
_____
KATHERINE POLK FAILLA
United States District Judge