

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

May 24, 2023

By ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re:  In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We write on behalf of the B/T Defendants to seek clarification regarding the scope of the Court's May 1, 2023 discovery order (Dkt. No. 347, "May 1 Order").  The parties have largely reached agreement regarding the implementation of the May 1 Order, following a series of meetings and correspondence, and the B/T Defendants believe they have fully complied with it.  However, there remains a single issue on which the parties have been unable to reach agreement:  whether the B/T Defendants are required to produce trading records for personal accounts of seven individuals – Messrs. Hoegner, Brindise, Ardoino, Sellars, de Wolf, Chamely, and Kloosterman – who (*i*) are not named defendants, (*ii*) have represented to us that the accounts were used purely for personal transactions and not for trading on behalf of the B/T Defendants (and are prepared to sign affidavits to that effect) and (*iii*) object to their personal financial information being produced to Plaintiffs in this litigation.

In compliance with the Court's May 1 Order, the B/T Defendants have produced responsive trading records for transactions in which the B/T Defendants were a counterparty but did not initiate the transaction, as well as trading records that would have been responsive if the trade at issue had involved USDT rather than USD from February 17, 2015 through the end of 2018.  (May 1 Order at 5-6.)  The B/T Defendants have also produced trading records from the Kraken and Bitstamp exchanges.

With respect to the personal accounts of the B/T Defendants' officers, employees, and agents, the B/T Defendants have followed the Court's direction that the parties meet and confer to identify relevant accounts.  (May 1 Order at 6-7 (instructing parties to "work through identifying relevant accountholders and deficiencies through meeting and conferring in good faith" and directing Plaintiffs to "make a concerted effort to identify specific accounts and individuals for which they believe productions are deficient, as well as why the discovery from those accounts and individuals is relevant").)  Specifically, the parties met and conferred on May 3 and have exchanged correspondence before and after that meeting.  (Ex. 1, May 2 Ltr.; Ex. 2, Email Exchange; Ex. 3, May 22 Ltr.)  On May 3, the B/T Defendants asked Plaintiffs whether it was their position that "the B/T Defendants are obligated to produce *all* trading records for *all* accounts for *all* officers, employees or agents of the B/T Defendants."  (Ex. 2, at 14.)  Plaintiffs responded the same day that, with respect to trading records of "B/T Defendants' officers, employees, and agents," Plaintiffs only "seek records of trades that such individuals made in

The Honorable Katherine Polk Failla     2     May 24, 2023

connection with the B/T Defendants' business" and "do not seek records of trades that they made for purely personal reasons." (Ex. 2, at 13.) The limitation articulated by Plaintiffs was consistent with the B/T Defendants' understanding of the May 1 Order, which appears to distinguish between "personal accounts" and accounts "used for relevant trading purposes." (May 1 Order at 5-6.) The B/T Defendants proceeded on that basis by seeking to identify any personal accounts that were used to conduct trades on behalf of the B/T Defendants.

The B/T Defendants took the following steps:

- Interviewed senior management, who stated that they did not direct any officers, employees, or agents to trade on behalf of the B/T Defendants using a personal account during the Relevant Period, and were not aware of any personal accounts being used for such trades during that time.

- Met with Messrs. Hoegner, Brindise, Ardoino, de Wolf, Chamely, and Kloosterman – individuals who were identified in Plaintiffs' May 2 letter and/or their motion to compel – and discussed with them the documents cited by Plaintiffs[1] as purportedly suggesting trading in personal accounts on behalf of the B/T Defendants; each of whom stated that they had not used personal accounts to trade on behalf of the B/T Defendants.[2]

- Communicated through counsel with Mr. Sellars, who is no longer an officer or employee of the B/T Defendants and likewise stated that he had not used any personal accounts to trade on behalf of the B/T Defendants.

- Produced responsive transaction records for Philip Potter and Josh Rossi on the basis that Mr. Potter is a named defendant and the B/T Defendants were unable to reach Mr. Rossi to discuss the documents cited by Plaintiffs.

- Investigated the dozens of accounts identified in two lists that the B/T Defendants had provided to the CFTC (Dkt. 328, at 1) and produced relevant and responsive trading data in the manner that they had previewed for the Plaintiffs (Ex. 2, at 9; Ex. 3 at 5-6).[3]

The B/T Defendants provided Plaintiffs with a detailed summary of their discussions with Messrs. Hoegner, Brindise, Ardoino, Sellars, de Wolf, Chamely, and Kloosterman, including their explanations of the documents cited by Plaintiffs and why those documents do not relate to

---

[1] In addition to the documents cited by Plaintiffs in their motion to compel (Dkt. No. 328, Exs. 12-15), Plaintiffs provided additional documents by email (Ex. 4, Bitfinex_Tether_0470471; Ex. 5, Bitfinex_Tether_0470505; Ex. 6, Bitfinex_Tether_0548103; Ex. 7, Bitfinex_Tether_0079558).

[2] Mr. de Wolf and Mr. Chamely noted that they occasionally used their personal accounts for *de minimis* trades to test whether new features on the Bitfinex exchange (such as the introduction of new trading pairs) were working properly for customer accounts. Such *de minimis* test transactions are not relevant to Plaintiffs' claims. There was no reference to Mr. Brindise in the documents Plaintiffs cited in their motion to compel, yet the B/T Defendants nonetheless spoke with Mr. Brindise, and discussed with him a document that Plaintiffs later identified and that referred to his management of Bitfinex's Over the Counter platform, for which the B/T Defendants have already produced responsive documents. (Ex. 3 at 4.)

[3] The production of these account records, as well as those of Mr. Potter and Mr. Rossi, was subject to the clarification that such production is not an admission or representation that those accounts were used in connection with the B/T Defendants' business.

The Honorable Katherine Polk Failla         3         May 24, 2023

their personal accounts.  (Ex. 3 at 2-3.)  For example, both Mr. Hoegner and Mr. Kloosterman explained that the reference to "Stu's account" in Bitfinex_Tether_0568642 refers to trust accounts for fiat currency that he held on behalf of Bitfinex and Tether with the Bank of Montreal, and not a crypto account that might generate responsive trading records.

It is important to note that, for the most part, the documents that Plaintiffs cite as purportedly suggesting trading in personal accounts on behalf of the B/T Defendants *do not specify particular accounts*, much less crypto accounts that belonged to the specified individuals.  Accordingly, the only way that the B/T Defendants could identify any relevant accounts and comply with the Court's May 1 Order was to conduct such an investigation.

On May 19, just one business day before the Court-ordered deadline, Plaintiffs appeared to reverse course and take a new position regarding these seven individuals, asserting that the B/T Defendants are required to produce records of their accounts without regard to the "purpose of those accounts."  (Ex. 2, at 5.)  In their May 22 letter, the B/T Defendants noted that this new position was contrary to Plaintiffs' May 3 statement that they only "seek records of trades that such individuals made in connection with the B/T Defendants' business" and "do not seek records of trades that they made for purely personal reasons."  (Ex. 3, at 1.)  In response, Plaintiffs stated that this "limiting principle" does not apply to the individuals mentioned in Plaintiffs' May 2 letter – *i.e.*, Messrs. Hoegner, Brindise, Ardoino, Sellars, de Wolf, Chamely, and Kloosterman.  Plaintiffs dispute that they have changed their position.  (Ex. 2, at 3-4.)

Put simply, Plaintiffs demand the production of personal account records for those seven individuals, regardless of whether those accounts were used "for purely personal reasons" and not "in connection with the B/T Defendants' business."  (Ex. 2, at 13.)  Plaintiffs do not – and cannot – offer any basis to believe that such records are relevant to their claims.  The B/T Defendants do not understand the Court's May 1 Order as requiring the production of those records, and the individual accountholders object to the production of their personal financial information.

The parties met and conferred again on May 24, 2023 and were unable to reach agreement on this remaining issue.

The B/T Defendants respectfully request clarification on whether the Court's May 1 Order requires the production of trading records for the personal accounts of these seven individuals regardless of whether they were used only for personal transactions and not on behalf of the B/T Defendants.[4]

Respectfully submitted,

/s/ Elliot Greenfield

---

[4] The B/T Defendants reject Plaintiffs' suggestion that they are trying to "relitigat[e] the Court's decision." (Ex. 2, at 7.) The B/T Defendants accept the Court's order and have worked diligently to fully comply with it.