

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

June 5, 2023

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We write on behalf of the B/T Defendants in response to Plaintiffs' request for an additional three-month extension to the case schedule.  (Dkt. No. 373.)

Plaintiffs have not established good cause for any further extension to the schedule.  The Court already gave Plaintiffs two extra months in February based solely on the Defendants' professional courtesy and despite the Court's own conclusion that *no extension* was warranted.  (Dkt. 295 at 44.)  Notwithstanding the Court's clear direction to Plaintiffs that they "complete what they should have completed all along" and "not to come to me in two months and ask for additional time" (*id.* at 45), Plaintiffs continue to drag their feet, cause unnecessary delays and now seek another, even longer extension.

To be clear, it is Plaintiffs' own failure to move this case forward that led to their extension request – not any conduct by Defendants.  Despite the fact that this case is now more than *1.5 years* into fact discovery, Plaintiffs have not taken a *single* deposition and refuse even to *schedule* any depositions.  The B/T Defendants sent proposed dates for all six of the B/T Defendant witnesses Plaintiffs have noticed (as well as defendant J.L. van der Velde) a week ago, and Plaintiffs have yet to respond.

Plaintiffs' position that they are unable to take even a single deposition before receiving the personal trading records of the seven individuals they requested is meritless, and Plaintiffs offer no support for their assertion that those documents are "critical evidence" for their claims.  (Dkt. No. 373 at 2.)  In any event, the B/T Defendants have now produced those personal trading records, and there is ample time left in the current schedule for the parties to complete depositions.  The Court should deny Plaintiffs' request for a further extension.

    I.    **Plaintiffs Have Unnecessarily Delayed Depositions.**

Plaintiffs have no excuse for refusing to schedule a single deposition.  Indeed, there is no reason for Plaintiffs to have waited until May 15 to notice their first deposition.  Nor is there any reason for Plaintiffs to have delayed until April 10 before raising their supposed need to exceed the ten-deposition limit; those discussions could have begun several months earlier.  Moreover, Plaintiffs could have begun noticing and taking the ten depositions they were sure to seek long before this Court's order expanding the deposition limit.  Even now, Plaintiffs have noticed only

nine of the fifteen depositions that the Court permitted.  The Court's scheduling order remains in force, and Plaintiffs should not be permitted to secure more time through unilateral delays.

Plaintiffs' assertion that they cannot begin taking *any* depositions before *all* documents have been produced – and they then have an opportunity for their experts to "analyze" those documents and "gain a full understanding of Defendants' scheme" – is unsupported by any authority and runs counter to the Court's scheduling order.  (Dkt. No. 373 at 2.)  The scheduling order does *not* call for the full completion of document production prior to depositions:  it provides for the parties to *substantially complete* fact discovery by March 22 and to then *fully complete* fact discovery – both document production and fact depositions – by July 24.  (Dkt. No. 298, ¶¶ 5(g)-(h), 6(d).)  The Court's schedule is consistent with precedent recognizing that there is no "hard and fast rule" that "document discovery is completed prior to depositions." *Century Jets Aviation LLC v. Alchemist Jet Air LLC*, 2011 WL 724734, at *2 (S.D.N.Y. Feb. 8, 2011) (denying extension request and noting that "[i]t is unclear why [defendant] believed it needed to wait until the completion of document discovery to depose witnesses").

The B/T Defendants substantially completed their document production in October 2022 – more than 6 months ago – and have produced over a million pages of documents.  As Plaintiffs identified purported deficiencies in the B/T Defendants' productions or moved to compel the production of additional documents, the B/T Defendants have responded promptly and produced additional documents.  The B/T Defendants have also produced additional documents as they completed their privilege review.  That is standard practice in complex litigation such as this one, and it does not justify another extension of the schedule.

## II.     Plaintiffs' Attempt to Blame the B/T Defendants Is Meritless.

As with their prior request for an extension, Plaintiffs attempt to blame the B/T Defendants for their own lack of diligence.  The facts do not support Plaintiffs' accusations.

The B/T Defendants substantially completed their production of documents by both the October 24, 2022 deadline under the Court's prior scheduling order (Dkt. No. 194), and by the March 22, 2023 deadline in the amended scheduling order (Dkt. No. 298).  The B/T Defendants have produced over 213,000 documents to date, including over 80% by October 24 and 90% by March 22.  While Plaintiffs misleadingly claim that the B/T Defendants have produced "over 20,000 additional documents" after March 22 (Dkt. No. 373 at 2), over 40% of those so-called "documents" are merely slipsheets indicating a document was withheld as privileged.  Accounting for these slipsheets, the B/T Defendants produced 94% of their documents by March 22, which constitutes substantial completion by any standard.

Plaintiffs' false accusation that the B/T Defendants misrepresented the status of their document production to the Court is directly contradicted by the transcript.  (Dkt. No. 373 at 1.)  Counsel for the B/T Defendants was addressing *bank statements* for accounts holding USDT reserves – not *crypto transaction records* – and accurately stated the B/T Defendants' production of those bank statements was substantially complete.  (Dkt. No. 295 at 19-21.)

It was not until March 23 – six weeks *after* the scheduling conference – that Plaintiffs first raised any concern about the B/T Defendants' production of crypto transaction records.  The

The Honorable Katherine Polk Failla                3                              June 5, 2023

B/T Defendants responded promptly, producing transaction records on April 5 and responding to Plaintiffs' concerns in the following weeks. Plaintiffs subsequently raised the issue of accounts held by certain non-party officers, employees, and agents, which, as the Court is aware, resulted in discovery motions and orders dated May 1 and May 30. The B/T Defendants complied with the Court's May 1 order by the deadline of May 22,[1] and they produced responsive trading records for the seven individuals at issue in the May 30 order on June 5. (Ex. 1, B/T Defs.' June 5, 2023 Letter.)

Plaintiffs' contention that an extension is warranted based on the production of these seven individuals' personal trading records is baseless. *First*, although we acknowledge the Court's finding that Plaintiffs had raised the "possibility" that those accounts "were used for relevant trading purposes" (Dkt. No. 347 at 5), there is no reason to believe that these seven individuals' personal trading records are, in fact, "critical evidence" (Dkt. No. 373 at 2) or actually relate to any alleged scheme to manipulate the multi-billion-dollar market for bitcoin and cause "the largest bubble in human history" (Dkt. No. 114 ¶ 1). Plaintiffs' claim that they cannot take a single deposition before receiving these personal trading records is simply a delay tactic. *Second*, Plaintiffs now have those documents and ample time remains to conduct 15 depositions before July 24, if they would simply respond to the B/T Defendants' proposed dates and start scheduling depositions. Indeed, Plaintiffs have refused to schedule Mr. Devasini's and Mr. van der Velde's depositions even though their transaction records were fully produced weeks ago. *Third*, as noted above, Plaintiffs offer no basis to demand full expert analysis of those trading records or a "full understanding" of the purported "scheme" before they can depose even a single witness. (Dkt. No. 373 at 2.) Gaining a full understanding of the facts is the central purpose of fact depositions.

### III.     The Court Should Reject Plaintiffs' Delay Tactics.

A further extension of the schedule would seriously prejudice the B/T Defendants, who have already expended enormous time and resources responding to Plaintiffs' extraordinarily broad discovery demands, and will be forced to do so as long as fact discovery is ongoing. By contrast, Plaintiffs would suffer no prejudice from being required to comply with the existing scheduling order, particularly as they already received an unwarranted two-month extension.

Rather than causing additional delay, Plaintiffs should respond to the B/T Defendants' proposed depositions dates, take their 15 depositions (including any questions about witnesses' personal accounts) and allow this case to finally move beyond fact discovery.

Respectfully submitted,

/s/ Elliot Greenfield

---

[1]    By letter dated June 1, the B/T Defendants notified Plaintiffs that they (*i*) made a small additional production on May 31 in response to Plaintiffs' May 25 letter, and (*ii*) were continuing to search for any responsive transaction records in one automated system account that requires substantial time and computing resources to query. (Dkt. Nos. 373-4, 373-5 at 2.) There is no reason to believe that transactions involving this account are at all relevant to Plaintiffs' claims.