

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

June 28, 2023

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.) (KPF)

Dear Judge Failla:

We write on behalf of the B/T Defendants to request a Local Rule 37.2 conference regarding Plaintiffs' refusal to produce the specific portions of their tax returns that itemize their crypto transactions and reflect any calculation of gains or losses derived from those transactions. These records are critically important because Plaintiffs' contemporaneous calculations of their gains and losses are not readily available from another source, and Plaintiffs have refused to represent that they have produced complete records of all of their crypto trades and holdings.

The B/T Defendants' request easily satisfies the requirements of Rule 26(b)(1) because the information sought is relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs claim that they purchased crypto at artificially inflated prices and were injured as a result. Information about Plaintiffs' crypto transactions – and their reported gains or losses from those transactions – is undeniably relevant to their claims and critical to assessing any purported injury. *See Taylor v. City of N.Y.*, 2020 WL 6559412, at *5 (S.D.N.Y. Nov. 9, 2020) (granting motion to compel tax returns because "information about Plaintiff's past income is clearly relevant to refuting Plaintiff's claims regarding the extent of any alleged damages due to lost income"). Plaintiffs put their gains and losses from crypto transactions at issue by filing this lawsuit, and they should not be permitted to withhold information regarding those transactions.

Because requests for tax returns often implicate privacy interests – *e.g.*, by seeking information regarding non-relevant sources of income or the filers' spouses or dependents – courts weigh those interests against the needs of the case and commonly apply a heightened standard for production, requiring "a compelling need for the documents" in light of the facts and circumstances. *SEC v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 670 (S.D.N.Y. 2020). The B/T Defendants' request does not implicate any privacy interests because it is narrowly tailored to the relevant portions of Plaintiffs' returns, and there is a compelling need for the documents: Plaintiffs' calculations of crypto gains and losses are not available from any other source, and Plaintiffs are unable to represent that they have produced complete records.

Since the B/T Defendants requested these records in September 2022,[1] the parties have met and

---

[1]  Ex. A, B/T Defs.' Second Set of Requests for Production of Documents, Req. No. 35.

conferred on multiple occasions and exchanged numerous letters, but are at an impasse.[2] Accordingly, the B/T Defendants respectfully request that the Court compel their production.

### I. The B/T Defendants' Request Is Narrowly Tailored.

The B/T Defendants' document request is strictly limited to the information relevant to this litigation: (*i*) the portions of Plaintiffs' tax returns itemizing their crypto transactions and (*ii*) any calculation of resulting gains or losses. Such a production would not reveal any personal or private financial matters beyond what Plaintiffs have squarely put at issue by filing this case.

Courts often consider the limited scope of the request in deciding motions to compel portions of tax returns. *See*, *e.g.*, *Toussie v. Allstate Ins. Co.*, 2019 WL 2435852, at *20-21 (E.D.N.Y. Feb. 6, 2019) (granting motion to compel relevant portions of tax returns and noting that defendant does not seek plaintiff's "entire tax return"); *Wells Fargo Bank, N.A. Tr. v. Konover*, 2010 WL 11561491, at *15-16 (D. Conn. June 22, 2010) (granting motion to compel portions of tax returns related to the transactions at issue); *Rubin v. Hirschfeld*, 2001 WL 34152407, at *1 (D. Conn. Nov. 8, 2001) (granting motion to compel portions of tax returns relevant to the issue of domicile); *Sunrise Grp., Ltd. v. Kent King Sec. Co.*, 1995 WL 322187, at *2 (S.D.N.Y. May 26, 1995) (granting motion to compel relevant portions of tax returns and emphasizing that plaintiff did not seek "a blunderbuss production" of defendant's "entire tax returns").

### II. The Requested Portions of Plaintiffs' Returns Are Relevant to Plaintiffs' Claims.

The portions of the four named Plaintiffs' tax returns that the B/T Defendants seek are plainly relevant because Plaintiffs were required to list their crypto transactions and calculate their gains or losses.[3] Plaintiffs' crypto transactions are the basis of their claims in this lawsuit, and it is crucial that the B/T Defendants have a full opportunity to understand those transactions and assess Plaintiffs' claims of "economic losses and actual damages." (Dkt. No. 114, ¶¶ 18-22.)

Plaintiffs' contemporaneous statements to the IRS will either support or contradict their claimed damages in this case, which is relevant to Plaintiffs' ability to prove injury and to quantify purported damages. *See Nypl v. JP Morgan Chase & Co.*, 2022 WL 819771, at *4 (S.D.N.Y. Mar. 18, 2022) ("[P]laintiffs in an antitrust action may recover only for their net injury . . . .") (citations omitted); *In re LIBOR-Based Fin. Insts. Antitrust Litig.*, 299 F. Supp. 3d 430, 543-44 (S.D.N.Y. 2018) (In Commodities Exchange Act cases, damages "will almost always be a function of the specific transactions undertaken by each class member and the prices and quantities involved," requiring proof of "all of the . . . trades [members] undertook").

### III. There Is a Compelling Need for the Requested Portions of Plaintiffs' Tax Returns.

There is a compelling need for the specified portions of Plaintiffs' tax returns. *First*, there are no other documents that provide contemporaneous sworn statements of Plaintiffs' gains and losses

---

[2] By letter dated May 30, 2023, Plaintiffs reiterated their position that they "will not agree to produce tax records, in whole or in part." (Ex. B at 3.) Following the June 7 conference with the Court, during which the issue was raised, Plaintiffs promised to "promptly" provide a response but failed to do so. (Ex. C at Pls.' June 8, 2023 Email.) During a June 21 telephone call, Plaintiffs promised to respond within 1-2 days but again failed to do so.

[3] *See* IRS Notice 2014-21 § 4, A-1 ("For federal tax purposes, virtual currency is treated as property.").

from crypto transactions – the same transactions that form the basis of their lawsuit. *See Toussie*, 2019 WL 2435852, at *20 (compelling need where tax returns provided contemporaneous documentation of alleged losses and plaintiffs "failed to demonstrate that there are alternative sources for the information contained in the tax returns"); *Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.*, 240 F.R.D. 78, 84 (S.D.N.Y. 2006) (ordering production of tax returns in the absence of showing that information was "otherwise readily obtainable").

*Second*, despite months of back and forth,[4] Plaintiffs refuse to affirmatively state that they have produced a complete set of records of all of their crypto holdings, transfers, and investments. Plaintiffs have repeatedly hedged, confirming only that they have produced those records that are currently "*in their custody and control*" – as opposed to records of *all* of their crypto trades and holdings.[5] Indeed, Plaintiffs have indicated that they do *not* have possession, custody, or control of all relevant records. For example, Plaintiffs stated in September 2022 that they had been "working . . . to collect [trading] records wherever possible," but "have been unable to access their histories on [certain] exchanges."[6] Thereafter, Plaintiffs first asserted that they were "in the process of filling in any gaps in Plaintiffs' trading history through RFPs to . . . third parties," then claimed the B/T Defendants should have issued subpoenas seeking Plaintiffs' records, and now appear to take the position, without explanation, that no records are missing after all.[7] In addition, Plaintiffs recently objected that an interrogatory about their crypto wallets "calls for information that is no longer in [their] possession, custody, and/or control," while refusing to identify what information is now missing or when it disappeared.[8] It is deeply troubling that Plaintiffs failed to collect and preserve all of their crypto transaction records *four years ago* when they decided to file this lawsuit.

Furthermore, even if Plaintiffs now claim to have made a complete production of transaction records, in light of these circumstances the B/T Defendants should be permitted to verify whether Plaintiffs have actually done so. *See Patrick Carter Assoc., Inc. v. Rent Stab. Ass'n*, 1992 WL 167387, at *3 (S.D.N.Y. June 26, 1992) (finding compelling need where "a review of defendants' tax returns is the only reliable way to discover any undisclosed bank accounts"). The B/T Defendants are also entitled to Plaintiffs' contemporaneous sworn statements regarding crypto gains or losses that may or may not contradict their claim for damages.

Respectfully submitted,

/s/ Elliot Greenfield

---

[4] Ex. D, B/T Defs.' Mar. 27, 2023 Ltr.; Ex. E, Pls.' Apr. 20, 2023 Ltr.; Ex. F, B/T Defs.' May 11, 2023 Ltr.; Ex. G, Pls.' May 15, 2023 Ltr.; Ex. B, Pls.' May 30, 2023 Ltr.

[5] Ex. B, Pls.' May 30, 2023 Ltr. at 3 (emphasis added); *see also* Ex. G, Pls.' May 15, 2023 Ltr. at 1 (stating that Plaintiffs had made "a diligent effort to address several of the issues raised in B/T Defendants' May 11 Ltr to the best of our current understanding based on a reasonable investigation").

[6] Ex. H, Pls.' Sept. 9, 2022 Email.

[7] Ex. I, at Pls.' Jan. 4, 2023 Email, B/T Defs.' Jan. 19 2023 Email, Pls.' Feb. 1, 2023 Email; Ex. B, Pls.' May 30, 2023 Ltr. at 2-3.

[8] Ex. J, Dkt. No. 312-1, B/T Defs.' Second Set of Interrogatories; Ex. K, Pls.' First Am. Resps. and Objs. to B/T Defs.' Second Set of Interrogatories.