

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

September 6, 2023

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.) (KPF)

Dear Judge Failla:

Plaintiffs' motion is meritless and disregards the limits that apply to Rule 30(b)(6) depositions. Although many of Plaintiffs' twenty-four noticed topics are irrelevant, unduly burdensome, and/or fail to "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6), the B/T Defendants nonetheless agreed to provide testimony on almost all of them. Plaintiffs fail to justify the additional testimony they seek.

**Topic 4**:  There is zero basis for Plaintiffs' accusation that the B/T Defendants "lost or destroyed key documents."  The B/T Defendants have produced over 200,000 documents and over 670,000 transaction records.  Unable to find evidence supporting their misguided claims, Plaintiffs resort to accusations that the B/T Defendants must have deleted the evidence.

Although Plaintiffs acknowledge that courts impose a heightened standard to seek discovery regarding a party's discovery efforts, cautioning that such requests should be "closely scrutinized" and requiring a "factual basis" indicating that the party failed to preserve or deleted evidence, Plaintiffs utterly fail to satisfy this standard.  *Mortg. Resol. Serv., LLC v. JPMorgan Chase Bank*, 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016).

Topic 4 seeks testimony regarding any "destruction or loss of emails, chat or messaging logs, transaction records, or banking records" over an eight-year period.  (Dkt. No. 425-2 at 3.) Plaintiffs' motion refers only to transaction records, as to which the B/T Defendants have conducted a reasonable search and are not aware of any lost or deleted records.  Plaintiffs rely primarily on an email that discusses deletion of certain items *from a spreadsheet* because those items were not relevant to the purpose for which the spreadsheet was being compiled.  (Dkt. No. 425-3 at 2-3.)  Nothing in that email suggests the deletion of any *underlying transaction data*.[1]

Plaintiffs also fail to identify any "unexplained gaps" in the B/T Defendants' production. Although Plaintiffs point to certain accounts for which they apparently expected to see a greater number of transactions, they ignore the crucial fact that Revised RFPs 23-25 were *expressly limited in scope* to only certain crypto-assets and platforms.  (Dkt. No. 344 at 1 & n.1.)  That

---

[1]   Contrary to Plaintiffs' assertion, the reference to "3,669" transactions was not limited to bitcoin "conversion transactions," and so the production of fewer such transaction records does not imply that any were destroyed.

transaction records were not produced for certain accounts or time periods, therefore, does not imply that any records were lost or destroyed.

For example, Plaintiffs cite Account 6, which had responsive records for a few dates in summer 2017, but they provide no factual basis to believe that any responsive transactions occurred outside of that time period.  Plaintiffs rely on two chats:  the first is a request to "resync" Account 6 (and others) and the second merely refers to a "pre-trading risk check."  (Dkt. Nos. 396-8, 425-5.)  Similarly, Plaintiffs' assertion that "user_id 3" was "repeatedly" referred to by "Bitfinex employees" does not show any transactions responsive to Revised RFPs 23-25.  Nor does the cited chat, as a transfer of assets between wallets is not responsive to Revised RFPs 23-25.  (Dkt. No. 425-7.)  The B/T Defendants confirmed that the activity in that account does not fall within the scope of Revised RFPs 23-25, and Plaintiffs offer no facts to the contrary.

Plaintiffs' speculation and conclusory assertions fall far short of establishing a factual basis to believe that the B/T Defendants lost or destroyed trading records.  *See Freedman v. Weatherford Int'l Ltd.*, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) (plaintiffs' "conclusory" assertions did not demonstrate a "factual basis" that production was "deficient").  Although Plaintiffs can ask questions regarding the documents they cite during their scheduled depositions of the individuals copied on those documents, they do not justify the burden of Rule 30(b)(6) testimony on this topic.  *See Sahu v. Union Carbide Corp.*, 2010 WL 5158645, at *4 (S.D.N.Y. Dec. 20, 2010) (noting "the heavy burden and expense of Rule 30(b)(6) depositions").  Notably, neither of the cases Plaintiffs cite as allowing such discovery involved a Rule 30(b)(6) deposition, and the *Johnson* order is not even an opinion by the court.

**Topic 16**:  Plaintiffs' request for testimony regarding the "Bitfinex Defendants' policies for making loans" is based entirely on their incorrect assertion – with no explanation or citation – that any USDT loaned by Bitfinex is necessarily "unbacked."  As Plaintiffs are well aware, *Tether* – not *Bitfinex* – issues USDT, and therefore whether USDT issued by Tether to Bitfinex is subsequently loaned has no bearing on whether it was backed.  Plaintiffs' conclusory and nonsensical assertion that any USDT loaned by Bitfinex was unbacked does not justify the burden of preparing a Rule 30(b)(6) witness on this wholly irrelevant topic.  Moreover, the Bitfinex Defendants have agreed to testify regarding "the circumstances under which USDT was issued to Bitfinex from Tether" and "how Bitfinex paid for USDT."  (Dkt. No. 425-2 at 5.)

**Topic 17**:  It is not reasonable to require a Rule 30(b)(6) witness to memorize detailed information regarding the assets held in *eleven* accounts over a more than five-year period, including the operative dates.  *See Blackrock Allocation Target Shares v. Wells Fargo Bank*, 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017) (Rule 30(b)(6) deposition "should not be a 'memory contest' of topics better suited to a written response").  Plaintiffs' motion proves the point, suggesting that the B/T Defendants would need to prepare a "document for the deponent's reference."  (Mot. at 2.)  Plaintiffs did not seek this information by interrogatory, and they cannot remedy that failure by requiring a Rule 30(b)(6) witness to draft a written summary.  Plaintiffs' interrogatory was limited to "accounts holding Reserves."  (Dkt. No. 308-11 at 6.)  Contrary to Plaintiffs' assertion, the B/T Defendants do not claim that Bitfinex accounts "held USDT reserves."  Instead, Tether counted as reserves *receivables* for amounts owed by Bitfinex – not the *funds* that Bitfinex later used to repay those amounts.

The Honorable Katherine Polk Failla	3	September 6, 2023

**Topic 18**:  The Bitfinex Defendants offered to provide a high-level overview of the purpose of the six accounts owned by the Bitfinex Defendants for which the B/T Defendants have produced responsive transaction records.  (Dkt. No. 425-14 at 4.)  Although Plaintiffs also seek testimony regarding *personal* accounts of "Bitfinex *executives*," that is beyond the knowledge of the Bitfinex Defendants and should be posed to the relevant individuals.  Plaintiffs also appear to draw a distinction between the six Bitfinex Defendants' accounts that the B/T Defendants have listed and "all accounts held in the names of Bitfinex."  It is not clear what additional accounts Plaintiffs seek testimony on, but the Bitfinex Defendants can only speak to their own accounts.

**Topic 22**:  Jump Trading LLC ("Jump") is wholly irrelevant to Plaintiffs' claims.  Plaintiffs do not claim that Jump played any role in the alleged market manipulation.  The "bespoke agreement" that Plaintiffs refer to was simply an arrangement that Bitfinex had with a number of large customers, such as Jump, that allowed them to quickly deposit or withdraw fiat currency on the Bitfinex exchange.  With respect to "Tether's reserves," as explained above, Bitfinex accounts were not counted as reserves, and therefore whether certain Bitfinex accounts also included customer funds is not directly relevant to the sufficiency of USDT reserves.  And, even if the assets within Bitfinex accounts have some tangential relevance to Tether's reserves, it is "outweighed by the burden" of preparing the deponent and insufficient to justify a Rule 30(b)(6) topic.  *City of New York v. FedEx Ground Package Sys., Inc.*, 2017 WL 4155410, at *3 (S.D.N.Y. Sept. 19, 2017).  Nor do Plaintiffs articulate any valid basis to single out Jump – as opposed to any other large customer – and demand testimony on any "trading arrangements."

**Topic 23**:  Testimony regarding "the reason or cause for any differences in the list price of crypto-assets" on Bitfinex and other crypto-exchanges plainly falls within the province of experts, not fact witnesses.  (Dkt. No. 425-2 at 8.)  To begin with, Plaintiffs' only support for a purported "persistent[]" bitcoin price premium on *Bitfinex* – which is inconsistent with Plaintiffs' claims that the Defendants artificially inflated the price of bitcoin on *Bittrex* and *Poloniex* – is a single article referring to trading "[o]ver the past few days."  (Mot. at 3 n.4.)  In any event, regardless of the existence or relevance of such price differences, Plaintiffs do not – and cannot – demonstrate the relevance of "the Bitfinex Defendants' understanding" of that topic.  Plaintiffs' passing, unexplained reference to "the intent element of Plaintiffs' CEA claims" does not justify Rule 30(b)(6) testimony on highly complex questions of economics and causation.

Separate from the merits of Plaintiffs' motion, the B/T Defendants are concerned by Plaintiffs' continued pattern of delay.  A full three months after this Court granted Plaintiffs a three-month extension, *Plaintiffs have yet to take a single deposition*.  (Dkt. No. 374.)  Indeed, after claiming to need *forty-six* depositions and being allowed *fifteen* by the Court, Plaintiffs have scheduled only *nine*.  (Dkt. No. 351.)  Plaintiffs waited until July 18 to serve the Notice, and have dragged their feet in negotiating the topics, most recently taking ten days to respond to the B/T Defendants' August 18 letter, culminating in this motion.  As a result, the first Bitfinex designee's deposition, scheduled for less than a week from today, now has to be postponed.  And Plaintiffs still have not served a Rule 30(b)(6) notice to the *Tether Defendants*, despite saying in July that they would do so "soon."  The B/T Defendants will oppose any further extension.

Respectfully submitted,

/s/ Elliot Greenfield