# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

TETHER AND BITFINEX CRYPTO ASSET LITIGATION

No. 19 Civ. 9236 (KPF)

**PLAINTIFFS' NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANTS TETHER HOLDINGS LIMITED, TETHER LIMITED, TETHER OPERATIONS LIMITED, AND TETHER INTERNATIONAL LIMITED**

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiffs in the above-captioned action, by and through their undersigned counsel, will take the deposition upon oral examination, under oath, of one or more Designees of Defendants Tether Holdings Limited, Tether Limited, Tether Operations Limited, and Tether International Limited (collectively, "Tether Defendants"). The deposition will commence at 9:00 A.M. Eastern Standard Time on October 10, 2023, at the offices of Selendy Gay Elsberg PLLC, 1290 Avenue of the Americas, New York, N.Y. 10104, or at some other time or place agreed upon by the parties.

The deposition will concern the topics set forth in **Schedule A** attached hereto. Tether Defendants must designate and make available for the purpose of giving testimony on their behalf at the deposition one or more of their officers, directors, corporate representatives, or other persons who are most knowledgeable and consent to testify about each of the subjects identified in Schedule A ("Designees"). The Designees shall testify as to matters known or reasonably available to Tether Defendants. Plaintiffs request that Tether Defendants provide, in advance of the deposition, the names and titles of their Designees, along with a summary of the areas about which each Designee will testify.

The deposition will be taken before an officer authorized to administer oaths under the laws of the United States, recorded by stenographic means, and videotaped. All counsel of record are invited to attend and participate.

Dated:  September 7, 2023
        New York, N.Y.

By:  *Andrew R. Dunlap*
     Philippe Z. Selendy
     Andrew R. Dunlap
     Oscar Shine
     SELENDY GAY ELSBERG PLLC
     1290 Avenue of the Americas
     New York, NY 10104
     pselendy@selendygay.com
     adunlap@selendygay.com
     oshine@selendygay.com

     Todd M. Schneider (*pro hac vice*)
     Matthew S. Weiler (*pro hac vice*)
     Mahzad K. Hite (*pro hac vice*)
     SCHNEIDER WALLACE COTTRELL
     KONECKY LLP
     2000 Powell Street, Suite 1400
     Emeryville, CA 94608
     tschneider@schneiderwallace.com
     mweiler@schneiderwallace.com
     mhite@schneiderwallace.com

     *Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

## SCHEDULE A

### Definitions

All definitions apply throughout without regard to capitalization. All topics, unless otherwise indicated, shall be understood to be limited to the Relevant Time Period. The rules of construction set forth in Rule 26.3(d) of the Local Civil Rules of The United States District Courts for the Southern and Eastern Districts of New York are incorporated herein by reference. In addition, the following rules and definitions apply:

1. Any tense of a verb includes all tenses.

2. Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

3. Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

4. "Action" shall mean any and all proceedings and litigation efforts initiated by and relating to the Complaint.

5. The term "Anonymous Trader" refers to the purported owner of the 1J1D and 1AA6 wallet addresses identified in the Complaint and referenced in the Court's order at ECF No. 288.

6. The term "B/T Defendants" refers to DigFinex Inc., Tether Defendants, Bitfinex Defendants, Ludovicus Jan van der Velde, and Giancarlo Devasini.

7. The terms "Bitfinex" or "Bitfinex Defendants" mean iFinex Inc., BFXNA Inc., and BFXWW Inc. and include the officers, directors, agents, employees, partners, predecessors,

subsidiaries and affiliates of those entities and all other persons (as defined herein) presently or formerly acting or purporting to act on behalf of any those entities or who are subject to the direction or control of any of those entities.

8. "Complaint" shall refer to the Amended Consolidated Class Action Complaint filed in this Action as ECF No. 114.

9. "Including" means including but not limited to.

10. "Relating to," "relating to," "referring or relating to," and "related to" include, in addition to their customary and usual meanings, the following: pertaining to, making reference to, concerning, comprising, evidencing, alluding to, responding to, connected with, commenting on, with respect to, about, regarding, resulting from, embodying, explaining, supporting, discussing, showing, describing, reflecting, analyzing, constituting, setting forth, in respect of, or having any logical or factual connection with the subject matter in question.

11. "Reserves" means the cash or other assets that B/T Defendants purport to back or to have backed USDT, as used by Tether Defendants on their website, "[a]ll Tether tokens […] are backed 100% by Tether's reserves." https://archive.ph/SYlgg.

12. The terms "Tether" and "Tether Defendants" mean Tether Holdings Limited, Tether Operations Limited, Tether Limited, and Tether International Limited and include the officers, directors, agents, employees, partners, predecessors, subsidiaries and affiliates of those entities and all other persons (as defined herein) presently or formerly acting or purporting to act on behalf of any those entities or who are subject to the direction or control of any of those entities.

13. "USD" refers to United States Dollars or U.S. Dollars.

14. "USDT" refers to the crypto-asset created by Tether and commonly referred to as "United States Dollar Tether," "USDT," or "tether."

15. "You" and "Your" shall mean Tether Holdings Limited, Tether Limited, Tether Operations Limited, and Tether International Limited and each of their current or former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, funds, any Persons acting on their behalf or under their control, and each of the foregoing's respective advisors, attorneys, agents, directors, employees, members, partners, representatives, and staff.

**Relevant Time Period**

16. Unless otherwise specified, these Topics cover the time period from and including February 17, 2015, through June 5, 2020.

**Deposition Topics**

1. The corporate structure and any responsibility of each Tether Defendant.

2. The roles, responsibilities, and tenures of: Adam Chamely, Amy Churchill, Bill Brindise, Bjorn de Wolf, Chakrit Sakunkrit, Chrise Lee (San-Ting Lee), Claudia Lagorio, Craig Sellers, Drew Samsen, Giancarlo Devasini, Grzegorz Opalinski, Ingo Christian Fiedler, John Kloosterman, Josh Rossi, Julian Arriagada, Karolis Juskys, Leonardo Real, Ludovicus Jan Van Der Velde, Marian Wang, Matthew Tremblay, Michael Abruzzese, Michael Hilliard, Paolo Ardoino, Peter Warrack, Philip Potter, Sarah Compani, Shann Lu, Silvano Di Stefano, Stephen Moore, Stuart Hoegner, and Will Harborne.

3. Tether Defendants' policies, practices, and procedures for the maintenance and retention of documents, communications, and records, from February 17, 2015 through the present.

4. Tether Defendants' destruction or loss of emails, chat or messaging logs, transaction records, or banking records, and the circumstances of that destruction, from February 17, 2015 through the present.

5. The mechanics and operation of USDT as a stablecoin, including the process of creating and destroying USDT, the blockchain(s) on which USDT is issued.

6. The process and mechanics of enabling USDT use on other crypto-asset exchanges, including loans of USDT, the use of algorithm bots, and Tether Defendants' policies, practices, and procedures for increasing, decreasing, or maintaining the price, exchange rate, or value of USDT.

7. Tether Defendants' public representations regarding USDT, including regarding USDT's backing and Reserves, the issuance and redemption of USDT, and the criteria governing new issuances.

8. Tether Defendants' policies, practices, and procedures governing the Tether Transparency Page.

9. Tether Defendants' policies, practices, and procedures governing authorization, issuance, and redemption of USDT and any associated transfers or conversions of fiat currency, crypto-assets, or other assets, including during the periods where the issuance and redemption of USDT occurred through Bitfinex.

10. Tether Defendants' policies, practices, and procedures for financial recordkeeping and accounting, and tracking USDT Reserves against outstanding USDT in circulation, including the use of accountants or accounting software.

11. The Reserves that Tether Defendants contend back the issuance of USDT and the form of such Reserves, including fiat currency, investment products, and crypto-assets.

12. Tether Defendants' relationship with banks, exchanges, and financial institutions holding such Reserves and access to associated accounts and correspondent banking, including:

    a. Tether Defendants' loss of access to correspondent banking in 2017;

    b. Tether Defendants' relationship and arrangement with Noble Bank, including any investment in Noble Bank, services offered, and the termination of that relationship; and

    c. Tether Defendants' relationship and arrangement with Deltec Bank, including any investment in Deltec Bank;

      d.      Tether Defendants' relationship with Crypto Capital, the services provided by Crypto Capital, the associated accounts holding USDT Reserves, Tether Defendants' access to those accounts, any documentation governing the handling of those accounts, and Tether Defendants' knowledge of the seizure of funds held by Crypto Capital and ability to withdraw funds.

13.    Tether Defendants' policies, practices, and procedures for storing customer assets (including crypto-assets and fiat currency), including any accounts or wallets used to hold those assets, and the segregation of customer assets from assets owned by Bitfinex and Tether Defendants.

14.    Third-party entities, including third-party payment processors, that are related to Tether Defendants or held USDT or USDT Reserves, including any documentation, internal records, or account statements governing the agreement to hold assets.

15.    Tether Defendants' policies, practices, and procedures for sending USDT to Bitfinex Defendants, or receiving USDT from Bitfinex Defendants, including any associated transfers of fiat currency, crypto-assets, or other assets.

16.    Circumstances related to all loans or transfers of fiat currency, USDT, or other assets between Tether Defendants on the one hand, and Bitfinex Defendants on the other, including pursuant to the Facility Agreement dated March 19, 2019.

17.    Tether Defendants' assessment of the crypto-commodity and stablecoin markets, including Tether Defendants' competitors, market share, and any barriers to entry in the markets.

18.    Any Government or regulatory investigations, subpoenas, or settlements, whether formal or informal, involving Tether Defendants, including in relation to the sufficiency of USDT Reserves and Tether Defendants' misrepresentation thereof.

19.    Any communications or agreements between or among the Tether Defendants on the one hand, and Bittrex Inc. or Poloniex LLC on the other.

20. Any benefits, offers, accommodations, commissions, arrangements, or agreements between or among Tether Defendants on the one hand, and the Anonymous Trader, or Ingo Fielder on the other.

21. Any Government or regulatory investigations or subpoenas, whether formal or informal, involving the Anonymous Trader, including the nature and conduct of those investigations, materials produced in connection with those investigations, and the resolution of those investigations.

22. Any audit or third-party assessment undertaken or conducted on behalf of Tether Defendants, including for the purpose of assessing the sufficiency of the Reserves backing USDT and if not completed, the reasons for not completing the audit or assessment.

23. Tether Defendants' policies, practices, and procedures for loaning USDT and crypto-assets to customers, employees, agents, or any other entities, including any associated transfers of fiat currency, crypto-assets, or other assets.

24. Transactions for the purchase, sale, or trade of an asset (including crypto-assets and fiat currency) in exchange for U.S. Dollars, USDT, or other crypto-assets conducted by Tether Defendants as contemplated by Revised RFPs 23-25 and the corresponding accounts.

25. The definitions, variables, and inputs used in the following transaction records:

Bitfinex_Tether_0148398, Bitfinex_Tether_0148406, Bitfinex_Tether_0580332, Bitfinex_Tether_0580338, Bitfinex_Tether_0588499, Bitfinex_Tether_0588440, Bitfinex_Tether_0588744; Bitfinex_Tether_0580325, Bitfinex_Tether_0580333, Bitfinex_Tether_0588411, Bitfinex_Tether_0588498, Bitfinex_Tether_0588700, Bitfinex_Tether_0148393, Bitfinex_Tether_0148399, Bitfinex_Tether_1043484

**CERTIFICATE OF SERVICE**

    I, Andrew Dunlap, hereby certify that on the 7 day of September, 2023, I caused to be served of the foregoing document upon counsel for B/T Defendants, Philip G. Potter, Bittrex Inc., and Poloniex, LLC by electronic mail.

Dated:  New York, N.Y.
           September 7, 2023

                                                /s/        *Andrew R. Dunlap*
                                                              Andrew R. Dunlap