

**Debevoise & Plimpton LLP**
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

October 6, 2023

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.) (KPF)

Dear Judge Failla:

We write on behalf of the B/T Defendants in opposition to Plaintiffs' motion to compel.  (Dkt. No. 462.)  With less than three weeks until the October 23, 2023 fact discovery deadline, Plaintiffs' motion is a transparent attempt to add an entirely new document request and delay the close of fact discovery yet again.  The "deposit and withdrawal" data that Plaintiffs now demand is clearly outside of the scope of their RFPs, and it is six months too late for new document requests. (Dkt. No. 298, ¶ 5(c).)  Furthermore, Plaintiffs received the B/T Defendants' transaction data in *June*, if not earlier, and the B/T Defendants clearly explained to Plaintiffs in a *July* letter that deposit and withdrawal records are not responsive to Plaintiffs' RFPs.

Plaintiffs make no attempt to tie their new request for "full deposit and withdrawal data" to the actual language of their RFPs, which they relegate to a footnote.  The reason is clear:  there is no colorable argument that those RFPs include the information that they now demand.

Plaintiffs apparently hope that the Court will likewise ignore the language of their RFPs and grant this motion based on their belief that the "deposit and withdrawal data" would be helpful to them.  But that is not how discovery works.  The B/T Defendants' obligation to collect and produce documents is limited to the scope of Plaintiffs' actual RFPs, and Plaintiffs cannot seek to expand the scope of those RFPs in the guise of a motion to compel.  *See Marsteller v. Butterfield 8 Stamford LLC*, 2017 WL 5769903, at *4 (D. Conn. Nov. 27, 2017) (rejecting party's attempt to "modify the requests for production actually served" and to "expand or amend these requests" through a motion to compel).

Revised RFPs 22-25 and 72 plainly do not call for production of "full deposit and withdrawal data for all accounts and wallet addresses for which [the B/T Defendants] produced trading data," which Plaintiffs now request (Dkt. No. 462 at 2):

- Revised RFP 22 does not seek any transaction records, only "cryptocommodity addresses."  (Dkt. No. 240-1 at 4, 5.)

- Revised RFP 23 is limited to transactions in which the B/T Defendants "*sent or received* [certain cryptocommodities] *for* stablecoins, or any other cryptocommodity[.]"  (*Id.* at 5 (emphasis added).)  In other words, this RFP sought data regarding the exchange of one asset for another; a mere deposit or withdrawal plainly is *not* an exchange of assets.

> Plaintiffs themselves concede that "deposit/withdrawal data . . . reflects when an asset is transferred between accounts, *rather than exchanged*." (Dkt. No. 462 at 2 (emphasis added).)

- Revised RFP 24 is expressly limited to "trades and transfer[s]" involving certain crypto-assets "made through private arrangements or over-the-counter ('OTC') platforms[.]" (Dkt. No. 240-1 at 5.) The B/T Defendants are not aware of any deposits or withdrawals made through private arrangements or OTC platforms. There is nothing to produce.

- Revised RFP 25 relates to "trades and transfers" made on certain third-party exchanges. (*Id.* at 5-6.) The B/T Defendants' production in response to Revised RFP 25 already includes all deposit and withdrawal information. There is nothing more to produce.

- Revised RFP 72 does not seek any transaction records, as Plaintiffs expressly stated that a list of wallet or deposit addresses "would satisfy this request." (*Id.* at 8.)

Plaintiffs do not dispute any of this and simply avoid any discussion of the text of their RFPs.

Instead, Plaintiffs offer a handful of dubious and ultimately meritless arguments in support of their position that the B/T Defendants should be compelled to produce deposit and withdrawal records notwithstanding the clear scope of the RFPs. *First*, there is no basis for Plaintiffs' suggestion that the B/T Defendants' broad characterization of RFPs 22-25 in September 2022 somehow supersedes the actual text of the RFPs. (Dkt. No. 462 at 2; Dkt. No. 245 at 1, 3.) Moreover, the reference to "transfers" in the quoted sentence was to Revised RFPs 24 and 25, for which, as discussed above, there is nothing more to produce.

*Second*, Plaintiffs assert that the term "transaction" – as used in other contexts – might include a deposit or withdrawal. While that is certainly true, as Adam Chamely testified,[1] the B/T Defendants' discovery obligations in this case are governed by the actual language of Plaintiffs' RFPs, which do not include that information.

*Third*, although Plaintiffs note that the B/T Defendants produced deposit and withdrawal data for the Anonymous Trader, that data was produced in response to a *different RFP*, which called for *all documents* related to the Anonymous Trader. Similarly, Poloniex and Bittrex produced deposit and withdrawal data in response to RFPs that specifically included requests for "[a]ll Documents relating to any activity – including *deposits, withdrawals*, transfers, or trading activity" for certain accounts and "[a]ll account, trading, and transaction records" for any Poloniex or Bittrex accounts owned by the B/T Defendants. If Plaintiffs had sought deposit and withdrawal records from the B/T Defendants, they would have used that same language.

---

[1] Mr. Chamely testified that the term "transaction" could have different meanings depending on the context. *See* Dkt. No. 462-4 at 138:15-17 ("The term is a bit broad and it can refer to different things, and so that's why I'm getting a little hung up at the moment."); *id.* 139:14-20 ("So the term 'transaction record' is very – it's bridging multiple fields, multiple topics, and multiple things in ways that doesn't quite come together, I think the way you're trying to ask. So I'm not quite sure what it is you're looking for in this respect."); *id.* 140:11-14 ("So 'transaction' is a multifaceted field that refers to many different things. So saying something is a transaction record doesn't quite make sense in that respect.").

The Honorable Katherine Polk Failla         3         October 6, 2023

Plaintiffs then fall back on the argument that the Court should compel production of deposit and withdrawal data simply because Plaintiffs believe it would be helpful in interpreting the B/T Defendants' trading records.  (Dkt. No. 462 at 2.)  Again, that is not how discovery works under the Federal Rules.  Discovery in this case began two years ago, and the deadline for new document requests has long passed.  Plaintiffs cannot retrospectively amend their RFPs, even if they belatedly decide that additional documents would be helpful, or even necessary, to their case.  Discovery is not an endlessly iterative process.  Furthermore, Plaintiffs' explanation for why this additional information is purportedly "necessary" is incoherent and ignores their own acknowledgment elsewhere in their letter that for the Anonymous Trader's accounts on Bitfinex, Bittrex and Poloniex – the accounts at the core of Plaintiffs' claims – Plaintiffs have received all deposit and withdrawal information.  (*Id.*)

Separately, there is no excuse for Plaintiffs to have waited until now to file this motion.  The B/T Defendants produced transaction records for virtually every account by early June.[2]  Plaintiffs have had four full months to analyze that data and raise any concerns with it.  Indeed, in their June 1, 2023 motion for a three-month extension, Plaintiffs sought additional time precisely because they purportedly needed "to parse these transaction records."  (Dkt. No. 373 at 2.)  Even a cursory review of those records would reveal whether they contain deposit and withdrawal data.

Nor can Plaintiffs claim surprise about the B/T Defendants' position on these RFPs:  the B/T Defendants clearly told Plaintiffs in a July 14, 2023 letter that a deposit or withdrawal is not responsive because "it is a one-way transfer, not an *exchange* of one of the listed crypto assets" for another specified asset.  (Dkt. No. 425-13 at 3.)  Plaintiffs never responded to that letter.

The B/T Defendants have gone to great lengths to collect responsive data in accordance with this Court's orders, and they have produced over 670,000 transaction records.  Contrary to Plaintiffs' assertion, it would be burdensome for the B/T Defendants to collect "full deposit and withdrawal data," and that task likely could not be completed by the October 23 fact discovery deadline.

Plaintiffs' baseless request, on the eve of the discovery deadline, for records that they did not seek in their RFPs and have known for months were not produced, appears to be a prelude to further discovery requests, attempts to reopen depositions, or other tactics aimed at delaying the close of fact discovery.  Plaintiffs should not be permitted to leverage a belated request for documents into yet another extension.  In granting Plaintiffs' most recent extension request, the Court clearly instructed them "to plan for all eventualities, to plan for the unknown unknowns," because "this is it."  (Dkt. No. 384 at 32-33.)

Respectfully submitted,

/s/ Elliot Greenfield

---

[2] Plaintiffs misleadingly claim that the "B/T Defendants continued to produce trading data through September 2023."  (Dkt. No. 462 at 1.)  In response to an August 29, 2023 letter from Plaintiffs, the B/T Defendants promptly produced records for a relatively small number of trades on one additional account the following week.