**Debevoise & Plimpton**

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

October 16, 2023

**MEMO ENDORSED**

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.) (KPF)

Dear Judge Failla:

We write on behalf of the B/T Defendants in opposition to Plaintiffs' October 11, 2023 motion to compel.  (Dkt. No. 468.)  Plaintiffs have filed yet another last-minute, meritless discovery motion, this time demanding a second day of deposition testimony from Giancarlo Devasini, the CFO of Bitfinex and Tether.  Plaintiffs utterly fail to demonstrate the requisite "good cause" to extend Mr. Devasini's deposition beyond the seven hours provided by the Federal Rules.  Plaintiffs elicited substantial testimony on each and every one of the topics they cite in their motion – from Mr. Devasini himself, other individual witnesses, and the Bitfinex and Tether Rule 30(b)(6) designees.  Plaintiffs' motion is further undermined by the fact that they wasted substantial portions of Mr. Devasini's deposition questioning him on topics that have no relevance to their claims.

Plaintiffs' motion should also be rejected because it effectively seeks – yet again – an extension of the October 23, 2023 fact discovery deadline.  Plaintiffs chose to wait until October 5 to depose Mr. Devasini and then delayed filing the instant motion for another week, despite having been notified in August that Mr. Devasini is not available between October 13 and 23.

As an initial matter, there is no merit to Plaintiffs' assertion that Mr. Devasini has "unique knowledge" of the six topics identified in their motion, or that he and other witnesses have not already provided substantial testimony on those topics.  (Dkt. No. 468 at 1-2.)  *See Jibowu v. Target Corp.*, 2018 WL 5624145, at *2 (E.D.N.Y. Oct. 30, 2018) (no "good cause" where party had deposed a witness "for seven hours and questioned her about each of the areas it now wishes to re-examine").  In fact, each of these topics has been thoroughly covered in multiple depositions.[1]  Notably, the payables that Bitfinex owed to Tether in connection with USDT

---

[1]  *See, e.g.*, Payables (Dkt. No. 468-7, Devasini Tr. at 73-82; Ex. 1, Ardoino Bitfinex 30(b)(6) Tr. at 37-66; Dkt. No. 468-1, Potter Tr. at 241-42; Dkt. No. 468-6, Hoegner Bitfinex 30(b)(6) Tr. at 94-102), Assets accepted by Tether for USDT (Ex. 2, Ardoino Tether 30(b)(6) Tr. at 45-55, 165-75; Ex. 1, Ardoino Bitfinex 30(b)(6) Tr. at 18, 37-41), Public representations (Ex. 3, Hoegner Tether 30(b)(6) Tr. at 11-36, 67-128; Dkt. No. 468-1, Potter Tr. at 92-96, 103-57, 182-203, 215-40; Dkt. No. 468-5, Hoegner Tr. at 286-93), USDT reserve investments (Ex. 3, Hoegner Tether 30(b)(6) Tr. at 37-66), Loans and credit lines (Dkt. No. 468-7, Devasini Tr. at 113-32; Ex. 2, Ardoino Tether 30(b)(6) Tr. at 162-76, 194-97; Ex. 1, Ardoino Bitfinex 30(b)(6) Tr. at 115-22, 252-54), Crypto Capital (Dkt. No. 468-7, Devasini Tr. at 203-87; Ex. 3, Hoegner Tether 30(b)(6) Tr. at 109, 155-66; Dkt. No. 468-5, Hoegner Tr. at 182-204).

issuances was the topic of the Court's September 27, 2023 Order, with which the B/T Defendants complied in writing on October 13. (*See* Ex. 4, Oct. 13, 2023 Ltr.) All of the remaining topics were Rule 30(b)(6) topics for Bitfinex and/or Tether, as applicable, and their corporate designees were deposed for a combined *28 hours*. The B/T Defendants also provided detailed information regarding investments held by Tether as part of its USDT Reserves in response to Interrogatory No. 13. Plaintiffs make no attempt to explain what additional testimony they could possibly need from Mr. Devasini on any of these topics.[2]

Any claim that Plaintiffs need more deposition time from Mr. Devasini is further undermined by their decision to spend substantial portions of his deposition on topics that are peripheral, if not wholly irrelevant, to their claims. For example, Plaintiffs spent 45 minutes questioning Mr. Devasini about Sam Bankman-Fried, even though the Court observed in February that "the Bankman-Fried stuff is at the frontier of what I would consider relevant to this case." (Dkt. No. 468-7 at 173-98; Dkt. No. 295 at 46.) Likewise, Plaintiffs devoted significant time during their Rule 30(b)(6) depositions of Bitfinex and Tether to topics that were plainly outside the scope of the agreed topics and, in several instances, directly contrary to the Court's September 11, 2023 Order. (Dkt. No. 445 at 4-5.) Among other things, Plaintiffs questioned the Bitfinex designees about purported document destruction and Bitfinex's loans of USDT despite the Court's express disallowance of Topics 4 and 16, and about numerous Bitfinex accounts beyond the seven allowed by the Court for Topic 18. (*Id.*; Dkt. No. 468-6 at 252, 260; Ex. 1, Ardoino Bitfinex 30(b)(6) Tr. at 191-200, 212-15, 235-37, 268-70.) Any misgivings Plaintiffs might now have about how they allocated their deposition time is a result of their own strategic decisions.

Plaintiffs point specifically to two areas on which they purportedly need additional testimony, neither of which is supported by the record. In fact, Plaintiffs have already obtained a mountain of evidence on both topics, including from Mr. Devasini himself.

*First*, Plaintiffs cannot identify any information regarding "Bitfinex's finances, including its solvency and ability to pay amounts owed to Tether's reserves," that they have not already elicited from Mr. Devasini. (Dkt. No. 468 at 2.) Plaintiffs' own motion cites extensively to Mr. Devasini's testimony on that topic, and Mr. Devasini already testified that he personally confirmed that Bitfinex's balances, net of customer assets, were always sufficient to pay the amounts that it owed to Tether for USDT issuances. (Dkt. No. 468-7, at 73-82.) Paolo Ardoino and Phil Potter fully corroborated that testimony. (Ex. 1, Ardoino Bitfinex 30(b)(6) Tr. at 66; Dkt. No. 468-1, Potter Tr. at 241-42.) To the extent Plaintiffs seek specific testimony as to Bitfinex's "total assets and liabilities," those figures are obviously not something Mr. Devasini can recall today. Contrary to Plaintiffs' assertions, the B/T Defendants have consistently

---

[2] Plaintiffs' implication that numerous witnesses pointed to Mr. Devasini as having "unique knowledge" also seriously mischaracterizes the cited testimony. In fact, most witnesses expressed uncertainty as to whether Mr. Devasini in fact has that knowledge, or named Mr. Devasini along with other witnesses. *See, e.g.*, Payables (Dkt. No. 468-5 at 161-62 ("I might start with Giancarlo Devasini," but "I'm not sure that's the ultimate person that would be able to answer.")), Assets accepted by Tether for USDT (Dkt. No. 468-8 at 45-47 ("I would think Giancarlo Devasini and -- but not sure. Potentially Phil Potter.")), USDT reserve investments (Dkt. No. 468-5 at 271 (testifying "I might speak to Sylvano DeStefano, the former CIO of Tether," and upon further questioning "I'd probably make JL my first stop" and "Possibly Mr. Devasini, but Sylvano would be my first stop.")), Credit lines and loans (Dkt. No. 468-3 at 114-15 ("I would ask . . . Giancarlo Devasini, Paolo Ardoino or Phil Potter.")).

explained that Bitfinex did not generate formal financial statements such as balance sheets and instead recorded financial data in spreadsheets on an as-needed basis; the B/T Defendants have searched for and produced any spreadsheets akin to balance sheets that they were able to locate by a reasonable search. (Ex. 5, Oct. 4, 2023 Ltr. at 3-4; Ex. 4, Oct. 13, 2023 Ltr. at 2-3.) Plaintiffs' suggestion that this information was recorded in Mr. Devasini's notebook is incorrect, as the B/T Defendants informed Plaintiffs before they filed the instant motion. (Ex. 6, Oct. 11, 2023 Ltr. at 1.)

*Second*, Plaintiffs' assertion that they did not have sufficient time to question Mr. Devasini about the Anonymous Trader is absurd: If Plaintiffs had enough time to spend 45 minutes questioning Mr. Devasini about Sam Bankman-Fried, they had plenty of time to ask about the Anonymous Trader, the individual supposedly at the core of Plaintiffs' claims. In any event, Plaintiffs did question Mr. Devasini about the Anonymous Trader, and they have elicited enormous amounts of testimony regarding the Anonymous Trader, from the Anonymous Trader himself and from numerous other witnesses. (Dkt. No. 468-7, Devasini Tr. at 168-72, 301-18; Dkt. No. 468-3, de Wolf Tr. at 18-171; Dkt. No. 468-8, Ardoino Tr. at 146-59, 168-98, 206-08, 235-36; Ex. 2, Ardoino Tether 30(b)(6) Tr. 193-94, 230-34; Ex. 1, Ardoino Bitfinex 30(b)(6) Tr. 98-180, 220; Ex. 3, Hoegner Tether 30(b)(6) Tr. 188-92; Dkt. No. 468-6, Hoegner Bitfinex 30(b)(6) Tr. 220-31.) Plaintiffs' complaint that the Anonymous Trader's counsel did not permit them to question the Anonymous Trader for more than four hours, in breach of two Court orders and the parties' agreement with the Anonymous Trader (Dkt. Nos. 420, 438, 451), is meritless and has no bearing on this motion. Contrary to Plaintiffs' assertion, the B/T Defendants did not "maneuver[] to limit Plaintiffs' time." (Dkt. No. 468 at 2.) As the B/T Defendants explained during the deposition, they "anticipated going longer" and "streamlined" their questioning "as a courtesy to the witness given the time difference." (Ex. 7, Anonymous Trader Tr. at 239-40.)

Separately, by waiting until October 11 to file this motion, Plaintiffs effectively seek an extension of the fact discovery deadline. Back in July, Plaintiffs made the decision to wait until October to depose Mr. Devasini. (Ex. 8, July 24, 2023 Ltr. at 2.) After deposing Mr. Devasini on October 5, Plaintiffs waited another week to file this motion, even though the parties had met and conferred on the record at the close of the deposition and have not exchanged any subsequent correspondence. (Dkt. No. 468-7, at 324-29.) Moreover, the B/T Defendants notified Plaintiffs in August that senior leadership, including Mr. Devasini, would not be available between October 13 and 23. (Dkt. No. 425-14, at 6.) Mr. Devasini is currently traveling internationally for business meetings, and he will be in Lugano, Switzerland starting Thursday for the Plan B Forum, a major industry conference that is sponsored by Tether as part of a larger collaboration with the city of Lugano, and meetings with shareholders following the conference.[3]

Respectfully submitted,

/s/ Elliot Greenfield

---

[3] https://planb.lugano.ch/planb-forum/; https://tether.to/en/tether-city-of-lugano-announce-second-plan-b-forum-in-2023/ ("Tether . . . and the Swiss city of Lugano announced today that the second annual Plan B forum has been scheduled and will be held on Friday, October 20 through Saturday, October 21, 2023.").

The Court is in receipt of Plaintiffs' request for a pre-motion conference (Dkt. #468), as well as the B/T Defendants' above response in opposition (Dkt. #473). For the reasons that follow, Plaintiffs' request is DENIED.

"[L]ike most discovery disputes, the availability of a second deposition is left to the discretion of the trial court." *Innomed Labs, LLC* v. *Alza Corp.*, 211 F.R.D. 237, 239 (S.D.N.Y. 2002) (citation omitted); *see also* Fed. R. Civ. P. 30(a)(2)(ii) (requiring "leave of the court" to take a deposition where "the deponent has already been deposed in the case"). Plaintiffs, as the movants, "[are] expected to show good cause to justify such an order." *Pierre* v. *City of New York*, No. 20 Civ. 5116 (ALC) (VF), 2022 WL 2384150, at *1 (S.D.N.Y. July 1, 2022) (quotation and citation omitted). "Whether good cause exists to extend a deposition beyond the presumptive time limit of seven hours is a fact-specific determination." *Id.* (citation omitted). To that end, the Court finds that the facts demonstrate that Plaintiffs have not established good cause to merit such an extension.

First, and as the B/T Defendants note, Plaintiffs waited almost a week from the October 5, 2023 deposition date before filing the current request, despite Plaintiffs' counsel having specifically gone through the process of meeting and conferring with counsel for the B/T Defendants regarding the parties' positions on such a request at the close of the Devasini deposition. (*See* Dkt. #468-7 at 326-329). This delay is inexcusable, especially in light of the imminent close of fact discovery and the Court's repeated admonitions that the parties are expected to act promptly to raise such discovery disputes. *Cf. Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party."). (*See, e.g.*, Dkt. #446 ("The Court reminds the parties of its concerns regarding the timelines within which discovery disputes have been handled by the parties.")).

Moreover, Plaintiffs provide the Court with no specific no basis to discredit the B/T Defendants' representations that Devasini has proffered sufficiently detailed testimony in response to Plaintiffs' questioning, nor do Plaintiffs argue that Devasini otherwise prevented the deposition from being conducted in an appropriate manner. (*See* Dkt. #473 at 1-2). To the extent that Plaintiffs suggest that prior witness testimony establishes that Devasini possesses unique knowledge, it was Plaintiffs' responsibility to structure their allotted deposition time to focus on these topics, and not other topics that this Court has previously noted to be of marginal relevance. Nor is the parties' apparent disagreement regarding the deposition of the Anonymous Trader relevant to the Court's consideration of the Devasini deposition and Plaintiffs' management of their allotted time.

Finally, to the extent that Plaintiffs had notice in August that Devasini would not be available for depositions in late October (Dkt. #473 at 3), the Court assigns no value to Plaintiffs' representation that reopening his deposition would not implicate an extension of the discovery deadline (Dkt. #468 at 2).

Accordingly, Plaintiffs' request to reopen Devasini's deposition is DENIED. The Court expects the parties to be judicious with the remaining time before the **October 23, 2023** close of fact discovery, and reminds the parties of the post-fact discovery conference set for **October 31, 2023**, at **3:00 p.m.** in Courtroom 618 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

The Clerk of Court is directed to maintain docket entries 468 and 473 under seal, viewable to the Court and the parties only.  The Clerk of Court is further directed to terminate the pending motions at docket numbers 467, 468, 469, and 472.

Dated:    October 17, 2023          SO ORDERED.
          New York, New York

*Katherine Polk Failla*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE