NAVCtetC

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    IN RE TETHER AND BITFINEX
      CRYPTO ASSET LITIGATION
 4                                       19 Civ. 9236 (KPF)
      ------------------------------x
 5                                       New York, N.Y.
                                         October 31, 2023
 6                                       3:45 p.m.

 7    Before:

 8                   HON. KATHERINE POLK FAILLA,

 9                                          District Judge

10                        APPEARANCES

11    SELENDY GAY ELSBERG PLLC
           Attorneys for David Leibowitz
12    BY:  ANDREW R. DUNLAP
           LAURA M. KING
13         OSCAR SHINE
           -and-
14    SCHNEIDER WALLACE COTTRELL KONECKY LLP
      BY:  SUNNY S. SARKIS
15
      DEBEVOISE & PLIMPTON LLP
16         Attorneys for iFinex Inc.
      BY:  ELLIOT GREENFIELD
17         NATASCHA BORN

18    WILLKIE FARR & GALLAGHER LLP
           Attorneys for Philip G. Potter
19    BY:  ANDREW N. SHINDI

20

21

22

23

24

25
```

NAVCtetC

1              (Case called; appearances noted)

2              THE COURT:  Thank you.

3              Let me begin by thanking all of you for your patience.

4    Just in case you were wondering what's been occupying my time

5    these past couple of days, I have a Hague Convention parental

6    kidnapping hearing.  That's what you walked in on where my

7    petitioner is in Poland and, for various reasons, cannot enter

8    this country, and as a result, we have very difficult virtual

9    hearings in part.  So I appreciate your patience through all of

10   those.

11             This is, in theory, our post fact discovery

12   conference.  I have read a number of things in connection with

13   this, including the joint status update of October 27th.  What

14   you might understand is sort of operating beneath the surface

15   and making me think is, what to do with this request for leave

16   to file a second amended complaint.  When I saw it, I knew

17   Mr. Greenfield enough — and I say this with all the respect I

18   have for him — to know that he'd object and he wasn't going to

19   consent and let this happen.  That led me to wonder why we're

20   doing this.  I thought before I had actually really read the

21   proposed amended complaint or the prior two, that this was

22   really designed to ease the parties when it came to the class

23   certification motion.  But in looking at the red line, it

24   looked to me as though it was a much more, a much different, a

25   much more substantively altered amended complaint.

NAVCtetC

1          And so, I'm trying to figure out, and I mean this very

2     sincerely, because if I had my decision already made, I

3     wouldn't be asking these questions, but I guess I really do

4     want to understand why we need to file this amendment.  Why,

5     for example, we couldn't proceed to the certification motion on

6     the pleading as it now exists or to summary judgment on the

7     pleading with the record we now have, and what is really gained

8     with the amendment.  And then I'll hear, with greater

9     specificity than one paragraph in a joint letter, why the

10    defendants do not agree.

11         So perhaps, Mr. Dunlap, I'll begin with you.

12         MR. DUNLAP:  Yes.  Thank you, your Honor.

13         So, to be clear, we believe that the revised claims

14    that we're putting forward in the proposed amended complaint

15    fall within the claims that we pled in the current operative

16    complaint.  They allege a debasement of USDT, they involve a

17    funneling of that USDT to two crypto accounts on Bittrex and

18    Poloniex exchanges, the trading of that USDT for crypto

19    commodities, and a resulting inflation of crypto commodity

20    prices, especially Bitcoin prices.

21         What we attempted do in the amended complaint is lay

22    out the particulars we learned in discovery of how the USDT was

23    debased, how the USDT was funneled to those two accounts, and

24    then put an expert analysis for how the inflation occurred.  We

25    believe that we could proceed to class certification within the

NAVCtetC

current pleadings because our current operative theory is a

subset of what we're putting forward.

      We thought it made sense to come now to move to

conform the pleadings to the evidence that's in discovery so

that we could streamline the case.  There are certain parties

that we want to drop, there are certain claims that we want to

drop, there's a more modest class period that we want to

pursue, and we wanted to give you and the other side as much

notice as possible of where we see the state of the pleadings

following discovery, so we moved to amend as promptly as we

could following the close of discovery so that we could make

sure that everything learned in discovery was on the table now.

      We're happy to proceed however you would like.  We

thought this would actually be a benefit to the Court and to

the other side.

      THE COURT:  Sir, if we were proceeding to summary

judgment rather than class certification motion, would you

still feel the need to have a proposed amended complaint of

this type?  I would imagine at that point we would just go to

the record and I'd have 56.1 statements that tell me what

happened in discovery or what didn't happen in discovery.  So I

guess I'm asking, I appreciate the extent to which you believe

it's going to help me and to help defense counsel, but is the

animating principle of the amended complaint the upcoming

certification motion or something else?

NAVCtetC

```
1          MR. DUNLAP:  It's a couple of things.  One is the
2     upcoming certification motion, because we wanted to be
3     absolutely clear where we view the pleadings right now.  And
4     when we move for certification on the 20th, we will be moving
5     on the theories that are in our proposed amended complaint,
6     which, as I said, are a subset of what are already in the
7     current operative complaint.  But we also, following discovery,
8     now wanted to drop some parties, drop some claims, and
9     streamline the case, and we thought the amended complaint was a
10    good vehicle for doing that.
11         We also wanted to avoid any confusion that might occur
12    in the class certification briefing about exactly what we're
13    moving on.  And as you pointed out, the other side had said in
14    their letter that they have some issues with the new theories,
15    as they call them, that we're putting forward.  So we wanted to
16    make sure that was all on the table as far in advance of class
17    certification as possible.
18         THE COURT:  You're actually anticipating my next
19    question, which is this:  I appreciate that you believe that
20    the next step in this case is a class certification motion that
21    I fear some poor associates or core of associates have been
22    working on.  The issue for me is, I'm understanding from
23    Mr. Greenfield that he wants to basically jump the line on that
24    motion and to file perhaps a motion to dismiss.  If he doesn't
25    consent, I don't believe -- I perhaps could grant, over his
```

NAVCtetC

1  objection, but I don't think I'd do it without having more

2  detailed or robust briefing from him in opposition.  So I fear

3  where we're headed is a motion for leave to amend that is

4  contested with sort of a cross motion or suggestion that the

5  claims, as you propose to plead them, are futile.  I don't see

6  how I can do that with the certification motion, and that's

7  also why I'm asking whether it is still your wish to file an

8  amended complaint.

9       You said to me, and you were very kind to say to me

10  earlier whatever the Court wants, basically.  I want to be sure

11  that I'm hearing from everybody if it is your wish to file the

12  amended complaint, I do think it there has to be motion

13  practice preliminary to that.  I do think that would result in

14  us having to adjourn for some period of time the class

15  certification motion and then — I want to breathe deeply as I

16  say this — I'd hear from the parties as to whether I need to

17  adjourn expert discovery while we work out what is the pleading

18  in this case.

19       None of these things are what I want to do, but that

20  might be what fairness dictate.  I'll hear from you on this,

21  then I'll hear from the folks it at the back table.

22       MR. DUNLAP:  Your Honor, I want to make absolutely

23  clear it was not our intent by filing the motion for leave to

24  amend to push out the schedule in any way.  That's why I wanted

25  to make clear that we thought we could move for class

NAVCtetC

```
 1   certification independent of whatever the Court does on the

 2   motion for leave to amend.  We think they could proceed in

 3   parallel because you could both look at our current motion or

 4   our upcoming motion for class certification as a subset of what

 5   the current pleadings allow, but then you could also allow,

 6   them if they wanted to opposes on futility grounds, the

 7   restated claims that we put into the proposed amended

 8   complaint.

 9           But we're not trying to slow things down --

10           THE COURT:  I'm not suggesting you are.  I just wonder

11   if that's where things are going to shake out.

12           What I'm saying and what I'm exploring at this point

13   is it wouldn't shock me for someone to say, look, Failla, until

14   we know what the operative pleadings are, we shouldn't do a

15   certification motion, although I do think you might be able to.

16   And then related to that, I would think someone may say —

17   although I'm fine if no one says this — we really should wait

18   on experts until we know what the claims in the case are.

19           MR. DUNLAP:  I can understand that point of view.

20           One thing I've learned very deeply, I think all the

21   lawyers here in this case, is if delay can be avoided, we

22   should avoid delay.

23           THE COURT:  I'm not disagreeing with that.

24           MR. DUNLAP:  We are open, I think, to whatever

25   arrangement the Court would think best, and I'm sure you want
```

NAVCtetC

1    to hear from the other side on this, but --

2            THE COURT:  Your proposal is running the two motions

3    in tandem?

4            MR. DUNLAP:  Correct.

5            THE COURT:  Thank you.

6            Mr. Greenfield, are you speaking for the back table or

7    is someone else?

8            MR. GREENFIELD:  Yes, I can take the lead here.

9            THE COURT:  Have I misperceived your argument, sir?

10           MR. GREENFIELD:  No, I think you have our arguments

11   generally correct.  I think the red line that plaintiff

12   submitted yesterday speaks for itself in large part, this is

13   not a motion to amend to conform to the evidence, this is an

14   entirely new theory.

15           I'm happy to walk through that in some detail if

16   you're interested or I can save it for the briefing.

17           THE COURT:  You can hum a few bars now, sir.  That's

18   okay.

19           MR. GREENFIELD:  I think the best summary of their

20   existing complaint is in your decision on the motion to

21   dismiss.  And so, I'll just point you to page 16 of your

22   decision granting in part, denying in part the motion to

23   dismiss where you state the crux of plaintiff's amended

24   complaint is that the DigFinex defendants, now known as the DT

25   defendants, who control Tether and Bitfinex fraudulently issued

NAVCtetC

between one and three billion dollars worth of crypto asset

USDT, which asset defendants claim was backed at all times by

an equivalent amount of U.S. dollars reserves, but was in fact

completely unbacked and printed out of thin air.

Plaintiffs allege that the unbacked USDT was

transferred from Tether to Bitfinex and then further

transferred to accounts maintained by Bitfinex on two crypto

exchanges operated by the exchange defendants Poloniex and

Bittrex.

Once the unbacked USDT was transferred to Poloniex and

Bittrex, defendants used it to make carefully timed purchases

of crypto commodities when prices threatened to fall, thereby

fraudulently given the appearance of price floors in the

market, artificially simulating organic demand and creating a

colossal bubble in the crypto commodity market and they go on

to say that plaintiffs allege that we conspired with the crypto

capital defendant and the exchange defendants.

And really, none of that is in their new theory.

There's no more conspiracy with Poloniex, no conspiracy with

Bittrex, no conspiracy with Crypto Capital.  It's now alleged

to be a conspiracy with the anonymous trader.  There's no more

Bitfinex or Tether owned or controlled accounts at Poloniex or

Bittrex.  Plaintiffs finally admit that those accounts were

owned by the anonymous trader as he told them in a sworn

declaration three years ago.  There's no more allegation that

NAVCtetC

```
 1   USDT was printed out of thin air.  There's no allegation
 2   anymore that any USDT was traded for Bitcoin or otherwise that
 3   had not been purchased for a dollar.  So there's no way that
 4   there is artificial demand or simulating artificial --
 5   artificially simulating organic demand.  All of the USDT was
 6   purchased for dollars, no allegation otherwise.  There's no
 7   more carefully timed purchases of crypto commodity.  There's no
 8   trading by the BT defendants at all.  They rely on simply the
 9   anonymous traders cross exchange arbitrage.
10           So it really, in every way, it's a new theory.  I
11   think at the highest, not even 30,000-foot level, but looking
12   from outer space, they're alleging there's an issue with USDT
13   reserves, and they're alleging price inflation, but really,
14   everything in between is entirely new.  And in my view, and
15   just my view as the defense lawyer here, this new theory is
16   weaker than the existing theory.  I think it does not plausibly
17   state a claim.
18           THE COURT:  This is what distresses me, sir, because
19   Mr. Dunlap says to me that it is as though there were -- that
20   the theory as originally alleged had multiple components and we
21   are now at a subset.  I know you disagree with it, but that is
22   what I was just told, that, as he said, claims of the proposed
23   amended complaint fall within the claims in the -- presumably
24   the initial complaint and the post motion to dismiss amended
25   complaint.
```

NAVCtetC

1          I appreciate, under Rule 15 and Rule 16, that you

2     would oppose amendment this late in the day.  You've already

3     heard me discuss with Mr. Dunlap whether there are

4     circumstances in which we wouldn't even need to amend the

5     complaint, as for example proceeding to summary judgment.

6          I think what concerns me though is your -- you oppose,

7     but you would also move to dismiss.  So presumably, the way

8     that that would be resolved would be for you responding to the

9     existing motion for leave to file a proposed amended complaint

10    with an opposition that includes a long discussion of futility.

11    That's effectively your motion to dismiss; correct?

12         MR. GREENFIELD:  Yes.  And we can -- I was going to

13    raise this with the Court.  I think we could do it two

14    different ways.  We could have an opposition to their motion to

15    amend that focuses on their lack of good cause for delaying for

16    two years and pointing out 90 percent of the facts in their new

17    theory were available to them two years ago, and the prejudice.

18    And we could separately, if the Court then allows the

19    amendment, have a motion to dismiss.

20         Alternatively, we can, if it's helpful to the Court,

21    we can put it all in one place, we could put it in our

22    opposition brief.  If we're going to do that, then I

23    reluctantly would request a few more pages and a little bit

24    more days.  I never like to ask for more pages --

25         THE COURT:  I know, but I appreciate why you believe

NAVCtetC

1    you have to, because this is the motion to dismiss that I'm not

2    letting you file.

3           MR. GREENFIELD:  Yes.

4           THE COURT:  You would be doing it through the prism of

5    futility.  I think I know the answer to this, but I have to

6    ask, you're not consenting in any circumstance to the filing of

7    this proposed amended complaint?

8           MR. GREENFIELD:  That's correct.

9           THE COURT:  Thank you.

10          Mr. Shindi, are you in the same boat, sir, as it were?

11          MR. SHINDI:  Yes, your Honor.

12          THE COURT:  Are you making separate arguments or are

13   you co-signing Mr. Greenfield's arguments this afternoon?

14          MR. SHINDI:  No, we are co-signing with

15   Mr. Greenfield's arguments this afternoon.

16          And just to reiterate again that Mr. Potter is an

17   individual in this case, and so want to be mindful of any

18   additional burden he might face.

19          THE COURT:  Of course.  Thank you.

20          MR. SHINDI:  Thank you.

21          THE COURT:  Mr. Greenfield, there's going to be have

22   to be motion practice of some sort.  I don't want to cut you

23   off, but there are other things you want to speak about on the

24   issue of futility or the propriety of the amendment or the

25   interplay of Rule 15 and Rule 16, because I think I am familiar

NAVCtetC

1    with those concepts.

2            When you are done telling me that, I would like you to

3    please engage in Mr. Dunlap's proposal of having the motion for

4    leave to amend proceed in parallel with the motion for class

5    certification.  My gut reaction is scepticism, but I think

6    that's just as the judge who would have to decide both of them.

7    If you believe as well, sir, that the two motions can proceed

8    in parallel, I'll hear from you.

9            MR. GREENFIELD:  I think I share your scepticism.  I

10   think in terms of the class period, they can always -- they're

11   not bound by whatever class periods are in their complaint,

12   they can move to certify a class for whatever period they

13   choose.  Similarly, if they want to drop parties or claims,

14   they can do that without an amended complaint.

15           Whether or not they can proceed in parallel, I think

16   the issue that jumps out at me is that they have, at least in

17   our view, very different theory of liability.  And if they're

18   going to argue that injury and damages are class issues and not

19   individual issues, their damages model or their explanation of

20   injury.

21           THE COURT:  May I ask you to repeat that sentence?  I

22   was taking notes and you were just a bit ahead of me, sir.

23           MR. GREENFIELD:  No problem.  The one issue that

24   jumped out at me in proceeding in parallel is that if

25   plaintiffs are going to argue that injury and damages are

NAVCtetC

```
 1    class-wide issues, then their theory of injury and damages has
 2    to match up with their theory in the complaint.  We think that
 3    it's a pretty different theory in their proposed second amended
 4    complaint from their existing complaint.  So I think they need
 5    to choose which theory they're following if they're going to
 6    make that argument.  If they're going to concede that injury
 7    and damages are individual issues, which I doubt they will,
 8    then maybe that's not a problem.
 9            I guess one other thought on that is it's not totally
10    clear to me from their complaint, I'll admit, but there's some
11    suggestion in their complaint that parties were injured if they
12    purchased during certain periods when they say USDT was debased
13    because there was an outstanding receivable.  It's not clear
14    they're saying a person was injured if they bought Bitcoin
15    during a period when there was no outstanding receivables.  So
16    the class definition might also depend on first amended
17    complaint versus proposed second amended complaint.
18            THE COURT:  What else should I ask, sir?
19            MR. GREENFIELD:  Nothing you don't already know.  I
20    will sit.
21            THE COURT:  Actually, before you sit down, let me
22    please look at my notes.  Right now, the class certification
23    motion is due on November 20th.  Remind me, please, sir, what's
24    the schedule for expert discovery in this case or does that
25    follow the certification motion?
```

NAVCtetC

1          MR. GREENFIELD:  That follows the decision on the

2     certification motion.

3          THE COURT:  So that isn't happening now any way you

4     look at it.

5          MR. GREENFIELD:  There's experts only in class cert.

6          THE COURT:  Yes, so what's available to me scheduling

7     one motion, scheduling two motions basically.  No chance of

8     settlement; right?

9          MR. GREENFIELD:  I don't think so.

10          THE COURT:  Thank you.

11          Mr. Dunlap I'll hear new reply, please.

12          MR. DUNLAP:  Yes, your Honor, you asked him to hum a

13     few bars of his theory.  I don't know how much accountability

14     you want.  We think it is within what we said before, there is

15     theory put forward in the proposed amended complaint they did

16     create USDT without having sufficient U.S. dollars and we have

17     cited or we can show you, actually, things from discovery where

18     they concede that they didn't actually have in their bank

19     accounts the U.S. dollars necessary to back the USDT that was

20     in circulation throughout the class period.

21          And when they say that the conspiracy that was

22     originally pled involved the exchange defendants and the crypto

23     capital defendants, there are reasons we're not pursuing those

24     now.  Bittrex is in bankruptcy.  There is a severe collection

25     risk.  We're not going to get anything from them.  Poloniex,

NAVCtetC

1    the current Poloniex defendants sold its position to another

2    entity and we've had a very limited opportunity to get

3    documents from them again, and they've agreed to some limited

4    cooperation with us, so we thought it best to let them go.

5         Crypto Capital's assets are still being seized.

6    Defendant Fowler has been sentenced to something like 75 months

7    in prison.  Again we think the collectability issues with those

8    defendants is severe, which is why we're letting them go.

9         As to the idea that somehow conspiracy or collusion

10   with the anonymous trader is new, I would refer the Court to

11   the filings the parties made back in 2020.  You may recall the

12   exchange defendants came forward and said wait a minute, these

13   accounts are actually owned by the anonymous trader, not by

14   Bitfinex.  They said can we move for summary judgment on that

15   basis.

16        We put in a letter, this is docket 137, we said then

17   if an individual, not Bitfinex is the registered owner of the

18   1J1D and 1886 account, the complaint lays out numerous facts

19   more than reasonable to infer the owner was part of defendant's

20   scheme.  We went on.  Plaintiffs could disprove the assertion

21   that the account's owner was not part of the defendant's scheme

22   through evidence linking the individual to the defendants.

23   Plaintiffs could obtain such evidence through discovery such

24   as:  One, the individual's communications with the relevant

25   defendants; two, defendant's trading records for Bittrex and

NAVCtetC

1  Poloniex; three, the individuals and the relevant defendants

2  internal documents regarding that trading activity; four,

3  expert analysis of that trading activity; and five, depositions

4  of the individual and defendants regarding the individual's

5  role in the scheme.

6        They were on notice three years ago that we were

7  pursuing, in discovery, connections between the anonymous

8  trader and the defendants .that's what we did.  We got all of

9  their communications or at least as many as they would produce

10  with the anonymous trader, we got his trading records, we got

11  their internal communications about him.  We submitted him to

12  deposition, they got to depose him, where they did not use all

13  their time.  For them to come forward now and say this is a

14  complete surprise and some new theory they haven't heard of, we

15  just don't think is backed up by the facts here.

16        THE COURT:  I believe one of the other things

17  Mr. Greenfield said was the information that's now being

18  presented in the proposed amended complaint — and I say this

19  without opining on it because I don't know — was information

20  that was in your possession years ago.

21        MR. DUNLAP:  Some of the information was, but a lot of

22  the information was not.  Your Honor may recall that you

23  compelled them to produce certain financial records over a year

24  ago and it turns out they didn't produce all those records.

25  And I think you had to issue a total of three orders, the last

NAVCtetC

1      one I believe at the end of May of this year requiring them to

2      produce documents.  They didn't finish making that production

3      until the end of June.  We then had to have our experts look at

4      that information.  We started requesting depositions, we asked

5      for them starting in August, but with one exception where we

6      had a conflict.  They did not make their employees and their

7      witnesses available to us for deposition until the middle of

8      September.  And in fact, your Honor may recall, the first of

9      those deponents they tried to push off for a month at the last

10     minute and we had to come to your Honor to compel that to go

11     forward.  So we were not actually able to take depositions from

12     these individuals until September and October.

13             And I just want to be careful here because of the

14     number of things they told us there the defendants have marked

15     as confidential or attorneys' eyes only, but there are a number

16     of facts that we learned in discovery from the defendants in

17     those depositions that we did not know and we could not have

18     known before we took those depositions.  Is I'm glad to go into

19     those now, but I want to make sure I'm respecting the

20     confidentiality part of the order.

21             THE COURT:  At base, you are disagreeing with the

22     suggestion of Mr. Greenfield to the argument of Mr. Greenfield

23     that you had the information you needed to make these

24     amendments at an earlier time?

25             MR. DUNLAP:  Correct, we did not have all of the

NAVCtetC

1    information.  Some of the information, yes, but we did not have

2    all of the dots to be connected, and that's what we tried to do

3    in discovery.

4              THE COURT:  All right.

5              MR. DUNLAP:  So we will follow whatever you want to do

6    here, clearly.  If you think it's more effective for us to do

7    briefing on the motion for leave and push off class

8    certification, we are glad to do that.

9              THE COURT:  Glad is a relative term, sir.

10             MR. DUNLAP:  Yes, glad is a relative term.  We prefer

11   to move the case forward, we prefer to do it in parallel, we

12   hear the concerns you're raising, we hear the concerns the

13   other side is raising.  We will go along with whatever you

14   would like.  And if you're going to grant the other side extra

15   pages, we might have a request of our own for the reply, but

16   let's take a look and see what they have to say, especially if

17   they're going to be briefing -- we, in our opening motion, we

18   tried to brief both why we met Rule 15 and why it would not be

19   futile, why it would be pass Rule 12(b).

20             THE COURT:  My recollection of your briefing was that

21   the focus was on the absence of prejudice that could be

22   demonstrated; am I not correct?  I believe what you were

23   talking about was that your adversaries would not be able to

24   demonstrate prejudice.  And I think that there's more.  I'm not

25   sure that your brief, and forgive me if I'm not remembering

NAVCtetC

1     something in it, I'm not sure it really engaged on the issue of

2     the good cause point.

3              MR. DUNLAP:  Well, our brief tried to do a couple of

4     things.  The first section of the brief tried to engage on why

5     there was good cause and why there was lack of prejudice, and

6     we talked about our diligence, we talked about the fact that

7     we're not seeking any new discovery, we talked about a number

8     of things going to those factors, and then the back half of the

9     brief, the bulk of the brief was why we stayed claims under

10    Rule 12(b)., and so why the amendment would not be futile.

11             THE COURT:  Just one moment, please.  Thank you.

12             Perhaps I can be more explicit in what I mean when I'm

13    talking about the rule.  What I understand the inquires for me

14    to conduct are the one under Rule 15 and the one under Rule 16.

15             With respect to Rule 16, it's the issue of good cause.

16    When I typically think about good cause, what I'm usually

17    seeing is someone saying to me that information was withheld

18    from them or it wasn't until a particular deposition, and your

19    good cause argument is three pages -- two and a half pages

20    long.  It does seem to focus on the showing of undue prejudice,

21    it doesn't seem to focus on the good cause.  But, again, that's

22    my recollection of the document, which I'm trying to refresh as

23    I talk to you.  But maybe that is this is the argument you wish

24    to make.

25             MR. DUNLAP:  No, I understand the point you're making.

NAVCtetC

| | |
|---|---|
| 1 | We did focus on the lack of prejudice.  We will be glad -- if |
| 2 | they're really going to allege that we had all the information |
| 3 | necessary to make the allegations we did before completing |
| 4 | depositions, we will be glad to respond to that and lay out how |
| 5 | that is absolutely not the case.  But we did say that there was |
| 6 | relevant information that was disclosed in discovery and we |
| 7 | went through a number of those documents in the background |
| 8 | section.  Again, I don't want to -- |
| 9 | THE COURT:  We're not arguing with each other. |
| 10 | MR. DUNLAP:  Exactly. |
| 11 | THE COURT:  I'm just saying there's going to be an |
| 12 | opposition that says you knew all of this some time ago and |
| 13 | could have done this long ago, and I don't know that you've |
| 14 | answered that here, and perhaps that is what the reply is for. |
| 15 | MR. DUNLAP:  Yes. |
| 16 | THE COURT:  Unfortunately, sir, I don't think you've |
| 17 | persuaded me that these can run in parallel.  So perhaps what I |
| 18 | can ask is for you and Mr. Greenfield and your teams to speak |
| 19 | to each other, to discuss a schedule, including page |
| 20 | extensions, that would be realistic and that I might actually |
| 21 | sign off on. |
| 22 | So can I ask you to do that by the end of the week or |
| 23 | is that asking too much? |
| 24 | MR. DUNLAP:  I believe it's okay for us. |
| 25 | MR. GREENFIELD:  Yeah, that's fine. |

NAVCtetC

1          THE COURT:  Then we will have to adjourn the motion

2    for class certification, again, with much regret because I

3    don't see a way around it.

4          Does anyone want to bring anything else to my

5    attention?

6          MR. DUNLAP:  Not from the plaintiffs.

7          MR. GREENFIELD:  No.

8          THE COURT:  I'll look for your schedule.  I thank you

9    all very much.  I'll let you go.  Thank you.  We're adjourned.

10                              * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25