

March 13, 2024

**Via ECF and E-mail**
The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)
      **Plaintiffs' Notice of Supplemental Authority**

Dear Judge Failla:

Plaintiffs write to notify the Court of the Second Circuit's ruling in *Williams v. Binance*, No. 22-972, --- F.4th ---, 2024 WL 995568 (2d Cir. Mar. 8, 2024) (attached hereto as Exhibit A), reversing the district court's dismissal of plaintiffs' federal and state securities law claims because the claims were impermissibly extraterritorial—a decision B/T Defendants relied upon in opposi-tion to Plaintiffs' motion for leave to amend and in their proposed sur-reply. *See* ECF No. 505 at 43; ECF No. 519-1 at 9 n.7.

*Williams* confirms that Plaintiffs have sufficiently alleged that Pinchas Goldshtein's bitcoin futures trading constituted domestic transactions under the Commodity Exchange Act ("CEA") and that the Court should reject Defendants' extraterritoriality argument.[1] The Second Circuit rejected the district court's holding that plaintiffs' alleged transactions were impermissibly extraterritorial where the securities at issue were listed on a crypto-exchange that claimed to be based in Malta and plaintiffs bought crypto tokens while located in the U.S. The alleged transactions were domestic transactions because they became irrevocable within the United States where "[p]laintiffs entered into the Terms of Use with Binance, placed their trade orders, and sent payments, all of which they claim occurred from their home states within the United States." *Williams*, 2024 WL 995568, at *7.[2] Goldshtein likewise accessed Deribit—accessible to U.S. users during the relevant period—and conducted his futures trading, including executing transactions and sending

---

[1] The CEA and the federal securities law "appl[y] the same framework for evaluating the [existence of domestic transactions]." *Williams*, 2024 WL 995568, at *5 n.2.

[2] The Second Circuit found these allegations to provide a "second, interrelated reason" for finding domestic transactions. *Williams*, 2024 WL 995568, at *6. The court also determined allegations that plaintiffs' transactions were matched over Binance's servers located in the United States were an additional reason for finding a domestic transaction. *Id.* at *6.

payments, from within the United States. *See* ECF No. 480-1 (Proposed Second Amended Complaint) ¶ 22; ECF No. 506-9 (Goldshtein Deposition Transcript) 98: 9-10.

The Second Circuit further explained that where a crypto exchange disclaims a physical location and claims not be subject to the oversight of any country's regulatory authority, "facts concerning the formation of contracts, the placement of purchase orders, the passing of title, or the exchange of money," relevant to whether a transaction is domestic, are entitled to more weight. *Williams*, 2024 WL 995568, at *4,*7. "[I]rrevocable liability may attach between different parties and intermediaries in a securities transaction at more than one transactional step," and the "*submi[ssion of] purchase offers*" is one of those steps. *Id.* (emphasis added). The Second Circuit distinguished *City of Pontiac Policemen's & Firemen's Retirement Systems v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014), which B/T Defendants rely on, ECF No. 505 at 43, in two ways: (1) the plaintiff's lack of ability to revoke the transaction plus factors like domestic payment were sufficient, beyond the "mere placement of a buy order" to plead a domestic transaction; and (2) sovereignty and comity concerns "are less present" if the relevant exchange disclaims location and regulatory oversight. *Williams*, 2024 WL 995568, at *7. Here, similarly, Goldshtein entered and settled futures contracts in the United States, incurring liability to take or deliver bitcoin at a predetermined price and time and passing title domestically, *see* ECF No. 515 at 20-21 & n.10, and the concerns of sovereignty and comity are less present given Deribit's public statements that it is unregulated.[3]

---

[3] Even though Deribit is allegedly based in Panama, it is not regulated. *See, e.g.*, Olga Kharif and Ben Bartenstein, *Bitcoin Exchange Deribit Looks to Relocate to Dubai from Panama HQ*, BLOOMBERG LÍNEA (Jan. 26, 2023, 10:18 AM), https://www.bloomberglinea.com/english/bitcoin-exchange-deribit-looks-to-relocate-to-dubai-from-panama-hq/ (Deribit's chief legal compliance and regulatory officer said in an interview, "We've had a number of clients who basically intimated to us that they would like to trade on a crypto exchange that's actually regulated. . . . In Panama, we are not regulated."); *see also* Aziz, *Deribit Exchange: 2020 Master the Crypto User Review Guide*, MASTERTHECRYPTO, https://masterthecrypto.com/deribit/ ("Deribit is unregulated . . . . For most of its history, Deribit accepted users from the United States. However, as of January 2020, U.S.-based users are banned from registering."). Deribit purportedly moved to Panama from the Netherlands in 2020 because of the presumed adoption of new regulations that would have applied to cryptocurrency firms. *See* William Foxley, *Dutch Derivatives Exchange Deribit to Move to Crypto-Friendly Panama*, COINDESK (Jan. 9, 2020, 3:02 PM), https://www.coindesk.com/business/2020/01/09/dutch-derivatives-exchange-deribit-to-move-to-crypto-friendly-panama/. The Court may take judicial notice of this publicly available information. *See Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 262-64 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019) (taking judicial notice of statements made in a television interview, among others).

Respectfully submitted,

| /s/ Andrew R. Dunlap | /s/ Todd M. Schneider |
|---|---|
| Philippe Z. Selendy | Todd M. Schneider (*pro hac vice*) |
| Andrew R. Dunlap | Jason H. Kim (*pro hac vice*) |
| Oscar Shine | Matthew S. Weiler (*pro hac vice*) |
| Laura M. King | SCHNEIDER WALLACE COTTRELL |
| SELENDY GAY PLLC | KONECKY LLP |
| 1290 Sixth Avenue | 2000 Powell Street, Suite 1400 |
| New York, NY 10104 | Emeryville, CA 94608 |
| pselendy@selendygay.com | tschneider@schneiderwallace.com |
| adunlap@selendygay.com | jkim@schneiderwallace.com |
| oshine@selendygay.com | mweiler@schneiderwallace.com |
| lking@selendygay.com | |

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*