# Exhibit E

UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSION

| | | | |
|---|---|---|---|
| **In the Matter of:** | ) | | RECEIVED CFTC |
| | ) | | |
| iFinex Inc., BFXNA Inc., and BFXWW Inc., | ) ) ) | CFTC Docket No. 22-05 | Office of Proceedings Proceedings Clerk |
| | ) | | **9:20 am, Oct 15, 2021** |
| **Respondents.** | ) ) ) | | |

**ORDER INSTITUTING PROCEEDINGS PURSUANT TO
SECTION 6(c) AND (d) OF THE COMMODITY EXCHANGE ACT, MAKING
FINDINGS, AND IMPOSING REMEDIAL SANCTIONS**

## I.     INTRODUCTION

The Commodity Futures Trading Commission ("Commission") has reason to believe that from at least March 1, 2016 through at least December 31, 2018 (the "Relevant Period") Respondents iFinex Inc. ("iFinex"), BFXNA Inc. ("BFXNA"), and BFXWW Inc. ("BFXWW") all doing business as "Bitfinex" (collectively, "Respondents" or "Bitfinex"), violated Sections 4(a) and 4d of the Act, 7 U.S.C. §§ 6(a) and 6d (2018); and that BFXNA further violated Part VII. A of the Commission's 2016 Order in *In re BFXNA Inc. d/b/a Bitfinex*, CFTC No. 16-19, 2016 WL 3137612 (June 2, 2016) ("2016 Order"), which directed BFXNA to cease and desist from violating Sections 4(a) and 4d, as Bitfinex has continued to offer, confirm the execution of, and receive funds for financed retail commodity transactions that were not made on or subject to the rules of a board of a trade that has been designated or registered by the CFTC.  Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether Bitfinex engaged in the violations set forth herein and to determine whether any order should be issued imposing remedial sanctions.

In anticipation of the institution of an administrative proceeding, Respondents have submitted an Offer of Settlement ("Offer"), which the Commission has determined to accept. Without admitting or denying any of the findings or conclusions herein, Respondents consent to the entry of this Order Instituting Proceedings Pursuant to Section 6(c) and (d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions ("Order"), and acknowledges service of this Order.[1]

---

[1] Respondents consent to the use of the findings of fact and conclusions of law in this Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof.  Respondents do not consent, however, to the use of this Order, or the

## II. FINDINGS

The Commission finds the following:

### A. SUMMARY

During the Relevant Period and continuing to the present day, Respondents have offered spot and leveraged, margined, or financed trading in various digital assets including bitcoin, ether, and tether tokens.[2] Throughout the Relevant Period, Respondents have offered, executed, and/or confirmed the execution of off-exchange leveraged, margined, or financed transactions with U.S. customers who were not eligible contract participants or eligible commercial entities[3] (collectively, "non-ECPs" or "retail customers"), in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2018). Respondents have also accepted fiat currency, bitcoin, U.S. dollar tether tokens ("USDt"), and other cryptocurrencies in connection with the aforementioned retail commodity transactions. By accepting funds and orders for retail commodity transactions, Respondents also operated as a futures commission merchant ("FCM") without obtaining the required registration in violation of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2018).

On June 2, 2016, the Commission entered an administrative order finding that from in or about April 2013 to at least February 2016, BFXNA had violated the then-effective Sections 4(a) and 4d of the CEA, and ordering BFXNA to cease and desist from the violations as charged. *See* 2016 Order. By continuing to offer, execute, and/or confirm the execution of retail leveraged, margined, or financed commodity transactions that were not made on or subject to the rules of a board of trade that has been designated or registered by the CFTC as a contract market for the specific commodity, and by accepting funds and orders for those transactions, throughout the Relevant Period, BFXNA, has also violated Part VII. A of the 2016 Order.

### B. RESPONDENTS

**iFinex Inc.** was incorporated in the British Virgin Islands on May 21, 2013. iFinex operates the Bitfinex trading platform. iFinex has never been registered with the Commission in any capacity.

---

findings or conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party or claimant, other than: a proceeding in bankruptcy or receivership; or a proceeding to enforce the terms of this Order. Respondents do not consent to the use of the Offer or this Order, or the findings or conclusions in this Order, by any other party in any other proceeding.

[2] Bitcoin, ether, litecoin, and tether tokens, along with other digital assets, are encompassed within the broad definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018), and are therefore subject to applicable provisions of the Act and Regulations, which include Section 6(c)(1) of the Act and Regulation 180.1(a). *See, e.g., CFTC v. McDonnell*, 287 F. Supp. 3d 213, 226 (E.D.N.Y 2018) ("Virtual currencies can be regulated by CFTC as a commodity."), *mot. for reconsideration denied*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018).

[3] Eligible contract participants and eligible commercial entities are defined in Sections 1a(18) and 1a(17) of the Act, 7 U.S.C. §§ 1a(17), (18) (2018), respectively.

**BFXNA Inc**. was incorporated in the British Virgin Islands on November 4, 2014. BFXNA is a wholly-owned subsidiary of iFinex. According to Bitfinex's Terms of Service ("TOS"), U.S. persons and individuals who make deposits, withdrawals, or transfers through U.S. financial institutions are BFXNA's customers. BFXNA has been registered as a money service business ("MSB") with the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of the Treasury since January 30, 2015. BFXNA has never been registered with the Commission in any capacity.

**BFXWW Inc**. was incorporated in the British Virgin Islands on April 28, 2015. BFXWW is a wholly-owned subsidiary of iFinex. According to Bitfinex's TOS, BFXWW contracts with non-U.S. customers. BFXWW has never been registered with the Commission in any capacity.

**C.     FACTS**

Bitfinex offers trading of cryptocurrency products,[4] including bitcoin, ether, litecoin, and tether tokens, to customers on its website, www.bitfinex.com, the Bitfinex mobile application, and by direct connection to its trading engine servers via the Bitfinex application programming interface.

Bitfinex offers trading on a leveraged or margined basis on both long and short positions. The amount of initial equity Bitfinex requires that a customer have in order to trade on margin varies by product. For example, for the BTC/USD pair, the maximum leverage for margin trading is 10x, meaning that the customer must have 10% of the value of that position, subject to certain haircuts. During the Relevant Period, the substantial majority of margin trading was financed through Bifinex's peer-to-peer ("P2P") funding program. Through P2P, Bitfinex customers who held fiat or cryptocurrency in their Bitfinex account would "lend" those funds to other Bitfinex customers. To provide margin funding, Bitfinex customers had to create a funding order that included the amount of funds available, interest rate, and period of funding. Bitfinex set the minimum financing duration at two days, and the maximum duration at 120 days. Once an offer to borrow was accepted, the financing recipient would then use those funds to buy, sell, and trade on the Bitfinex platform.

To trade with margin, Bitfinex customers are required to hold a percentage of the value of their open positions in a "Margin Wallet" on the exchange. Margin Wallets can hold fiat or cryptocurrencies such as tether tokens or bitcoin. A customer's margined positions will remain open until the customer submits a closing trade, or Bitfinex initiates a forced liquidation. Typically, Bitfinex customers receive a margin call when the net value of their account equity held in the Margin Wallet drops below the required amount of margin for their open positions. If the equity falls below the required maintenance margin, Bitfinex will force-liquidate the customer's positions and will act as the counterparty to that transaction. During the Relevant Period, Bitfinex's TOS required that, to engage in margin trading, customers:

---

[4] Beginning in or around September 2019, certain customers could trade cryptocurrency swaps products or "perpetual contracts" on the Bitfinex platform. Respondents represent that these products are offered by iFinex Financial Technologies Limited, a subsidiary of iFinex, Inc.

> . . . irrevocably appoint Bitfinex to act as your exclusive agent in respect of any contract on the Site in which you are a Financing Recipient. Specifically, you hereby grant Bitfinex agency, and you authorize and instruct Bitfinex: to implement, levy, monitor, and maintain a lien on all Fiat amounts and Digital Tokens in your name or control in any Account (including any subaccount or any Digital Tokens Wallet) on the Site in favor of one or more Financing Providers (a "Lien"); and, to liquidate any Digital Tokens or Fiat in your name or control in any Account (including any subaccount or any Digital Tokens Wallet) if necessary to ensure that any Financing Provider on the Site from whom you have obtained financing is repaid in full.

Bitfinex force-liquidated certain positions and/or acted as a counterparty to certain transactions with non-ECP U.S. persons during the Relevant Period.

In the 2016 CFTC Order, the Commission ordered Bitfinex to cease and desist from offering, entering into, executing, or confirming the execution of financed retail commodity transactions to U.S. non-ECP customers unless such transactions are made on or subject to the rules of a board of a trade that has been designated or registered by the CFTC as a contract market or derivatives transaction execution facility in violation of Section 4(a) of the Act, and from accepting orders for retail commodity transactions and receiving funds from those customers in connection with those transactions in violation of Section 4d(a) of the Act, and order.

Bitfinex's TOS stated that U.S. persons, subject to certain exceptions for ECPs as determined by Bitfinex in its sole discretion, could not access the platform's services as of October 5, 2017, and U.S. entities could not access the platform's services as of August 15, 2018. During the Relevant Period, customers, including those in the U.S., needed to provide only their name and a valid email address to open a "basic account" with Bitfinex. Throughout the Relevant Period, a basic account holder could deposit and withdraw cryptocurrencies, engage in exchange and margin trading, and provide margin funding, among other activities.

Respondents represent that Bitfinex has performed its own IP/location checks for customers for all accounts, including basic accounts, throughout the Relevant Period, including whenever a customer accessed their account; and further represent that since at least in or about November 2017, identified non-ECP U.S. persons were not permitted to withdraw fiat or stablecoin.[5] Respondents also represent, that in or around November 2017, they expanded user verification procedures, previously in place for New York residents and others, to include U.S. individual customers.

However, during the Relevant Period, Bitfinex's actions were not adequate to prohibit non-ECP U.S. persons from engaging in retail commodity transactions. Bitfinex was aware that some non-ECP U.S. customers continued to access the platform after the changes to the TOS. For example, in March 12, 2018, a Bitfinex manager reminded the entire customer support team

---

[5] Bitfinex also represents that its Onboarding Team rejected new applications submitted by self-identified U.S. citizens or residents and proactively screened certain customers onboarded before the prohibition on U.S. persons went into effect.

4

that customers "can deposit/withdraw cryptocurrencies and trade fully (including USD pairs) without being verified on our site, there are no limits to this . . . . As background – it['s] not that hard to buy/sell BTC or whatever from another site and transfer it here, so anyone who is that motivated to use our site will have done so already. . ." Bitfinex customers, including those in the U.S., could click through and simply ignore the TOS and continue to access the Bitfinex platform.

In November 2018 Bitfinex developed an "Individual On-boarding Procedure" that outlined the "Know-Your-Customer" ("KYC")[6] program developed to "mitigate against Bitfinex, its customers, and the products and services Bitfinex provides being used to facilitate money laundering, terrorist financing, sanctions violations, or other illicit activity." That procedure allowed U.S. citizens that were "Bitfinex Personnel" (i.e., current employees or contractors) to trade on the Bitfinex Platform. In internal documents dated November 26, 2018, Bitfinex Personnel were advised that the platform "can no longer accept US residents (as of 4 Aug. 2017) if encountered" and instructed to not include U.S. persons on the "worksheet" used to track customer verification requests.

Throughout the Relevant Period, Bitfinex accepted deposits and withdrawals in fiat currency, and other cryptocurrencies, including bitcoin and USDt. Bitfinex's systems and TOS required that customers needed to be "verified" in order to deposit fiat assets and USDt tokens, but need not be verified to deposit bitcoin or certain other cryptocurrencies. Respondents have represented that a customer cannot withdraw fiat or cryptocurrency assets, including USDt tokens, bitcoin, and other digital assets, without Bitfinex confirming that the customer is not a U.S. person. However, Bitfinex customers have been able to deposit cryptocurrencies and enter into retail commodity transactions on the Bitfinex platform without providing documentary proof of residence.

At various times during the Relevant Period, Bitfinex's customer service representatives communicated with U.S.-based customers regarding various issues related to their accounts, including address changes that clearly identified the customers' geographic location. On various occasions, customer service representatives encouraged customers based in the U.S. to use a VPN to create a private network from a public internet connection and mask the customer's internet protocol (IP) address. For example, on or around April 3, 2018, a Bitfinex customer service representative informed a U.S. based customer that the platform is "not against VPNs . . . by any means -quite the opposite actually" and further stated that "Most users who simply use our platform to trade or offer margin funding will not need to provide KYC information"; however, if "AML-CTF flags are triggered . . . we may require our users to provide KYC information."[7]

---

[6] Bitfinex had a KYC program in place throughout the Relevant Period. Bitfinex represents that the Individual On-boarding Procedure updated and enhanced prior customer verification procedures.

[7] Respondents represent that after the Relevant Period, there may have been some U.S. customers that its systems did not identify and that they closed accounts for customers identified as being non-ECP U.S. persons.

### III. LEGAL DISCUSSION

A. **Bitfinex Engaged in Illegal, Off-Exchange Retail Commodity Transactions in Violation of Section 4(a) of the Act**

Pursuant to Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2018), any agreement, contract, or transaction in any commodity that is entered into with or offered to (even if not entered into with) non-ECPs on a leveraged or margined basis or financed by the offeror, counterparty, or a person acting in concert with the offeror or counterparty is, subject to certain exceptions, subject to Section 4(a) of the Act, 7 U.S.C. § 6(a) (2018), "as if the agreement, contract, or transaction was a contract of sale of a commodity for future delivery."

Section 4(a) of the Act makes it unlawful for any person to offer to enter into, enter into, execute, confirm the execution of, or conduct an office or business in the United States for the purpose of soliciting, or accepting any order for, or otherwise dealing in any transaction in, or in connection with, a commodity futures contract, unless such transaction is made on or subject to the rules of a board of trade that has been designated or registered by the CFTC as a contract market for the specific commodity.

During the Relevant Period, Respondents offered to enter into, entered into, executed, and/or confirmed the execution of margined or leveraged retail commodity transactions with non-ECP U.S. persons on the Bitfinex platform. These retail commodity transactions were not conducted on or subject to the rules of a board of trade that has been designated or registered by the CFTC as a contract market and therefore violated Section 4(a) of the Act.

B. **Bitfinex Operated as an Unregistered Futures Commission Merchant in Violation of Section 4d(a)(1) of the Act.**

Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2018), in relevant part, defines an FCM as any individual, association, partnership, corporation or trust that engages in soliciting or in accepting orders for or acting as a counterparty in "any agreement, contract, or transaction described in . . . section (2)(c)(2)(D)(i)" and, in connection therewith, "accepts any money . . . or property (or extends credit in lieu thereof) to margin . . . trades or contracts that result or may result therefrom." Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2018), in pertinent part, makes it unlawful for any person to act as an FCM unless registered with the Commission as an FCM.

As described above, Bitfinex, while not registered as an FCM, acted during the Relevant Period as an FCM as defined in Section 1a(28) of the Act by accepting orders for and acting as a counterparty to retail commodity transactions with customers, and accepting money or property, including bitcoin and other cryptocurrencies, to margin these transactions. Therefore, Respondents violated Section 4d(a)(1) of the Act.

C. **BFXNA Violated the Prior Commission Order**

The Commission issued its 2016 Order in *In re BFXNA Inc. d/b/a Bitfinex*, CFTC No. 16-19, 2016 WL 3137612 (June 2, 2016), and found that Respondent BFXNA had violated Sections 4(a) and

4d of the CEA, 7 U.S.C. §§ 6(a), 6d (2012).  Part VII. A of the 2016 Order directs Respondent BFXNA Inc. to cease and desist from violating Sections 4(a) and 4d.

During the Relevant Period, BFXNA repeatedly violated the CEA, Regulations, and the 2016 Order because it offered to enter into, executed, and/or confirmed the execution of leveraged, margined, or financed retail commodity transactions, and none of the financed retail commodity transactions were conducted on or subject to the rules of a board of trade that has been designated or registered by the CFTC as a contract market in violation of Section 4(a) of the Act.  BFXNA also repeatedly violated the CEA, Regulations, and the 2016 Order because it accepted orders for retail commodity transactions and received funds from those customers in connection with retail commodity transactions while not registered with the Commission in any capacity in violation of Section 4d of the Act.  Respondent BFXNA thus violated Part VII. A of the 2016 Order.

### III.   FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that, during the Relevant Period, Respondents iFinex Inc., BFXNA Inc., and BFXWW Inc. violated Sections 4(a) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6(a), 6d(a)(1) (2018) and Respondent BFXNA Inc. further violated Part VII. A of the 2016 Order.

### IV.   OFFER OF SETTLEMENT

Respondents have submitted the Offer in which they, without admitting or denying the findings and conclusions herein:

A.  Acknowledge service of this Order;

B.  Admit the jurisdiction of the Commission with respect to all matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based on violation of or enforcement of this Order;

C.  Waive:

    1.  The filing and service of a complaint and notice of hearing;

    2.  A hearing;

    3.  All post-hearing procedures;

    4.  Judicial review by any court;

    5.  Any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer;

    6.  Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018), and 28 U.S.C. § 2412 (2018), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2020), relating to, or arising from, this proceeding;

7.     Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this proceeding; and

8.     Any claims of Double Jeopardy based on the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief, including this Order.

D.     Stipulate that the record basis on which this Order is entered shall consist solely of the findings contained in this Order to which Respondents have consented in the Offer;

E.     Consent, solely on the basis of the Offer, to the Commission's entry of this Order that:

1.     Makes findings by the Commission that Respondents violated Sections 4(a) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6(a), 6d(a)(1) (2018), and that BFXNA violated Part VII. A. of the 2016 Order;

2.     Orders Respondents to cease and desist from violating Sections 4(a) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6(a), 6d(a)(1) (2018);

3.     Orders Respondents to pay, jointly and severally, a civil monetary penalty in the amount of $1.5 million dollars ($1,500,000), plus any post-judgment interest if the civil monetary penalty is not paid within ten days of the date of entry of this Order; and

4.     Orders Respondents and their successors and assigns to comply with the conditions and undertakings consented to in the Offer and as set forth in Part V of this Order.

Upon consideration, the Commission has determined to accept the Offer.

### V.    ORDER

**Accordingly, IT IS HEREBY ORDERED THAT:**

A.     Respondents and their successors and assigns shall cease and desist from violating Sections 4(a) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6(a), 6d(a)(1) (2018).

B.     Respondents shall pay, jointly and severally, a civil monetary penalty in the amount of $1.5 million dollars ($1,500,000), (the "CMP Obligation"), within ten days of the date of the entry of this Order. If the CMP Obligation is not paid in full within ten days of the date of entry of this Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

       Respondents shall pay the CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> CFTC
> c/o ESC/AMK326; RM 265
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

       If payment is to be made by electronic funds transfer, Respondents shall contact Marie Thorne or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  Respondents shall accompany payment of the CMP Obligation with a cover letter that identifies the paying Respondents and the name and docket number of this proceeding.  The paying Respondent(s) shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

C.    Respondents and their successors and assigns shall comply with the following conditions and undertakings set forth in the Offer:

    1.    <u>Public Statements</u>:  Respondents agree that neither they nor any of their successors and assigns, agents, or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in this Order or creating, or tending to create, the impression that this Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondents': (i) testimonial obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a party.  Respondents and their successors and assigns shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement.

    2.    <u>Prevention of Unlawful Trading</u>:  Respondents shall implement, as necessary, and maintain systems and procedures reasonably designed to prevent U.S. persons (subject to certain exceptions for ECPs as defined by the Act) from engaging in any leveraged, margined, or financed transactions and/or providing or receiving margin funding on Respondents' trading platform.[8]  Such systems and procedures

---

[8] Respondents represent that as part of their efforts to comply with this undertaking, they will enhance their existing systems and procedures to require that starting January 1, 2022, any new customer seeking to engage in lending on the platform be subject to at least the "Basic Plus" level of verification.

9

shall be implemented on or before December 31, 2021, and all existing open margined or leveraged positions held by identified U.S. persons (subject to certain exceptions for ECPs as defined by the Act) shall be closed.

3. <u>Cooperation</u>:  Respondents shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in this action, and in any current or future Commission investigation or action related thereto. Respondents shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action.

4. <u>Partial Satisfaction</u>:  Respondents understand and agree that any acceptance by the Commission of any partial payment of Respondents' CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

5. <u>Change of Address/Phone</u>: Until such time as Respondents satisfy in full their CMP Obligation as set forth in this Consent Order, Respondents shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

6. Until such time as Respondents satisfy in full their CMP Obligation, upon the commencement by or against Respondents of insolvency, receivership, or bankruptcy proceedings or any other proceedings for the settlement of Respondents' debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

**The provisions of this Order shall be effective as of this date.**

By the Commission.

_____
Christopher J. Kirkpatrick
Secretary of the Commission
Commodity Futures Trading Commission

Dated:  October 15, 2021