UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex<br>Crypto Asset Litigation | Case No.: 1:19-cv-09236 (KPF) |

# DEFENDANT PHILIP G. POTTER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

WILLKIE FARR & GALLAGHER LLP
Charles D. Cording
Andrew N. Shindi
787 Seventh Avenue
New York, NY 10019
ccording@willkie.com
ashindi@willkie.com

VALLIERE LLC
Timothy Alfred Valliere
43 West 43rd Street, Suite 70
New York, NY 10036
tvalliere@tavlaw.com

*Attorneys for Defendant Philip G. Potter*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................1

I      Plaintiffs Lack Good Cause to Amend and Granting Leave Would Be Unduly
Burdensome to Potter......................................................................................................1

II     The Summary Allegations Against Potter in the SAC Fail to State a Claim........................3

CONCLUSION.................................................................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. Astoria Bank*,
  2015 WL 4394072 (E.D.N.Y. July 16, 2015) ................................................................. 2

*In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*,
  2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ............................................................... 5

*Commodity Futures Trading Comm'n v. Gorman*,
  2023 WL 2632111 (S.D.N.Y. Mar. 24, 2023) ............................................................... 5

*Commodity Futures Trading Comm'n v. Gorman*,
  587 F. Supp. 3d 24 (S.D.N.Y. 2022) ............................................................... 3, 4, 5

*In re Crude Oil Commodity Litig.*,
  2007 WL 1946553 (S.D.N.Y. June 28, 2007) ............................................................... 5

*In re Edward D. Jones & Co., L.P. Sec. Litig.*,
  2019 WL 2994486 (E.D. Cal. July 9, 2019) ............................................................... 4

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009) ............................................................... 1–2

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  850 F. App'x. 38 (2d Cir. 2021) ............................................................... 2

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005) ............................................................... 4

*In re Rough Rice Commodity Litig.*,
  2012 WL 473091 (N.D. Ill. Feb. 9, 2012) ............................................................... 5

*In re Sotheby's Hldgs. Inc. Sec. Litig.*,
  2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ............................................................... 4

**Statutes**

7 U.S.C. § 9(1) ............................................................... 3

**Regulations**

17 C.F.R. § 180.1(a)(1) ............................................................... 3

Defendant Philip G. Potter respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend (ECF No. 479, the "Motion to Amend"). Potter joins in and incorporates by reference the Memorandum of Law in Opposition to Plaintiffs' Motion to Amend filed by the Bitfinex-Tether Defendants (the "B-T Opp.").

## PRELIMINARY STATEMENT

After two years of discovery, numerous document requests and interrogatories, eighteen depositions, and the production of hundreds of thousands of documents, Plaintiffs now seek to upend this litigation, which has been pending for over four years, and pursue an entirely new market manipulation theory. Plaintiffs' eleventh-hour Motion to Amend should be denied.

No good cause exists for the proposed Second Amended Complaint (ECF No. 480-1, the "SAC"). The short answer as to why is that the Motion to Amend was filed too late—three years after Plaintiffs received notice of fundamental defects in their market manipulation theory, almost two years after Plaintiffs' deadline for amending their pleading and, even then, only after fact discovery had closed. The only explanation for why Plaintiffs find themselves in this position—seeking to pursue an entirely new theory of the case after the close of fact discovery—is their own lack of diligence. Furthermore, the amendment would be futile as to Potter. Many substantive allegations against Potter on which this Court relied in its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (ECF No. 182, the "MTD Order") have been abandoned. The allegations that remain are insufficient to state claims against him.

## ARGUMENT

**I   Plaintiffs Lack Good Cause to Amend and Granting Leave Would Be Unduly Burdensome to Potter.**

When a party files a motion to amend after the pleading deadline, "'the lenient standard under Rule 15(a) [. . .] must be balanced against the requirement under Rule 16(b) that the Court's

1

scheduling order shall not be modified except upon a showing of good cause.'" *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009). Good cause "requires the moving party to have acted 'diligen[tly]'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021). Here, Plaintiffs cannot demonstrate diligence, particularly when they have been aware for years of the purportedly new information included in the SAC. *See* B-T Opp. at Argument § I.B. Moreover, courts often deny leave to amend where the pleading sets forth an entirely new theory of the case. *See, e.g.*, *Ahmed v. Astoria Bank*, 2015 WL 4394072, at *3 (E.D.N.Y. July 16, 2015).

Originally, Plaintiffs alleged that the Defendants made strategically timed purchases of unbacked USDT. Under this purported scheme, Tether would issue unbacked USDT to Bitfinex, which would then be deposited into accounts held by Bittrex and Poloniex. These timed purchases created the illusion that USDT was in high demand, thereby artificially inflating the prices of other cryptocommodities. (FAC at ¶¶ 7–13, 187). Now, Plaintiffs have removed Bittrex and Poloniex from the scheme, alleging instead that ███████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████ Nor was Potter questioned about the "scheme" during his. Given the slew of factual issues surrounding this new theory— ██████████ ███████████████████████████████████████████████████████████████ ████████████████████████ Plaintiffs' insistence that they will "seek no new discovery," (ECF No. 480 at 2), strains credulity. No additional discovery should be permitted, and any more discovery would be particularly burdensome for Potter, an individual defendant, who left Bitfinex and Tether nearly **six years ago**. With fact discovery now closed,

2

Plaintiffs are not entitled to a redo, especially when they have been on notice of a fundamental flaw in their theory for years.[1]

II      **The Summary Allegations Against Potter in the SAC Fail to State a Claim.**

In the SAC, Plaintiffs claim that Potter violated Sections 6(c)(1) and 22 of the Commodity Exchange Act ("CEA"), and Rule 180.1(a)(1) promulgated thereunder, by "communicating false information about USDT being fully backed by U.S. dollars, debasing USDT by failing to keep sufficient dollars in Tether's accounts to match the number of issued USDT and otherwise misrepresenting the demand for cryptocommodities by issuing unbacked USDT." SAC at ¶ 411. Plaintiffs' entire market manipulation scheme fails at the outset because it is contradictory and implausible for the reasons set forth by the Bitfinex-Tether Defendants. *See* B-T Opp. at Argument § III.A. But as explained below, Plaintiffs failed to plead their CEA claim against Potter for several additional reasons.

Section 6(c)(1) of the CEA makes it unlawful for any person to "use or employ . . . in connection with any swap, or a contract of sale of any commodity . . . any manipulative or deceptive device or contrivance," in violation of CFTC regulations. 7 U.S.C. § 9(1). In turn, CFTC Rule 180.1(a)(1) prohibits "any person . . . in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery . . . to intentionally or recklessly . . . [u]se or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud[.]" 17 C.F.R. § 180.1(a)(1). This Rule thus "prohibit[s] what courts call 'scheme liability' for 'those who, with scienter, engage in deceitful conduct.'" *Commodity Futures Trading Comm'n v. Gorman*, 587 F. Supp. 3d 24, 40 (S.D.N.Y. 2022) (citation omitted). To plead a scheme liability

---

[1] Crucially, Plaintiffs have known for over ***three years*** that ██████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ Bittrex and Poloniex reiterated this point in their August 2020 request for summary judgment and September 2020 motion to dismiss. *See* ECF Nos. 135 and 147.

3

claim under Rule 180.1(a)(1), Plaintiffs must allege that (i) Potter committed a manipulative or deceptive act, (ii) in furtherance of the alleged scheme, and (iii) with scienter. *Id.*

"'A scheme liability claim is aimed at inherently deceptive conduct.'" *Id.* Here, however, Plaintiffs fail to allege that Potter committed any manipulative or deceptive acts. *See* SAC ¶ 411. Many of the allegations directed at Potter in the prior complaint have been abandoned.[2] In fact, the only specific acts directed at Potter in the SAC—such as developing the idea for USDT, incorporating Tether, and receiving emails—are routine corporate functions. They are not, by their nature, manipulative or deceptive acts. *See In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2019 WL 2994486, at *7 (E.D. Cal. July 9, 2019) (dismissing scheme liability claim where acts fell within "'normal course of business'" and thus did not constitute "an actionable deceptive scheme"); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 502–03 (S.D.N.Y. 2005) (defendant must engage in conduct that is in itself deceptive). Indeed, none of the acts taken in furtherance of the scheme were even allegedly performed by Potter. *See* SAC at ¶ 411. Furthermore, the SAC fails to allege scienter as to Potter because it rests on nothing more than Potter's former executive position at Bitfinex and Tether, which is insufficient. *See, e.g., In re Sotheby's Hldgs. Inc. Sec. Litig.*, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000).

In addition, the SAC alleges that the Defendants engaged in "price manipulation" by using debased USDT to inflate the price of various cryptocommodities—a second scheme liability claim where price manipulation is the underlying manipulative act. SAC ¶ 413. Under this theory, Plaintiffs must also allege that (1) Potter possessed an ability to influence market prices; (2) an artificial price existed; (3) Potter caused the artificial prices; and (4) Potter specifically intended

---

[2] Gone from the SAC are the allegations of Potter evading banking laws and anti money-laundering regulations, coordinating with Crypto Capital to improperly access correspondent banks, playing "cat-and-mouse tricks," and concealing the overlap in ownership between Bitfinex and Tether—all allegations this Court relied on when denying, in part, Potter's Motion to Dismiss. *See* MTD Order at 23, 43 n.28, 74, 92.

4

to cause the artificial price. *Gorman*, 587 F. Supp. at 41; *see also Commodity Futures Trading Comm'n v. Gorman*, 2023 WL 2632111, at *3 (S.D.N.Y. Mar. 24, 2023).

Here, Plaintiffs fail to plead that Potter had an ability to manipulate and did manipulate cryptocommodity prices. Again, the only specific acts directed at Potter in the SAC are routine corporate functions. None is capable of evidencing Potter's ability to manipulate cryptocommodity prices. *See In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *6 (N.D. Ill. Feb. 9, 2012) (dismissing complaint where plaintiffs merely alleged that defendants, all of whom occupied an executive role, had the ability to cause and did cause artificial prices). Plaintiffs also do not allege any facts showing that Potter was "the proximate cause of [any] price artificiality." *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, 2012 WL 6700236, at *16 (S.D.N.Y. Dec. 21, 2012). ███████████████████████████████████████████████████████████████████████████████████████████████████████████ *See id.* at *17; *see also In re Crude Oil Commodity Litig.*, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007). For the same reasons stated above, Plaintiffs also fail to plead scienter as to Potter. Without more, Plaintiffs have failed to state a price manipulation claim against Potter.[3]

## CONCLUSION

For the foregoing reasons, and for the reasons articulated by the Bitfinex-Tether Defendants, Potter respectfully requests that this Court deny Plaintiffs' Motion to Amend.

Respectfully submitted,

---

[3] Equally deficient are Plaintiffs' allegations that Potter violated the Sherman Antitrust Act. The SAC is devoid of any allegations that Potter engaged in anti-competitive conduct, such as agreeing to restrain trade.

Dated: December 8, 2023
New York, New York

                    **WILLKIE FARR & GALLAGHER LLP**

                    <u>/ s / *Charles D. Cording*</u>
Charles D. Cording
Andrew N. Shindi
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019-6099
ccording@willkie.com
ashindi@willkie.com


**VALLIERE LLC**
Timothy Alfred Valliere
VALLIERE LLC
43 West 43rd Street, Suite 70
New York, NY 10036
tvalliere@tavlaw.com


*Attorneys for Defendant Philip G. Potter*

6