

January 26, 2024

**Via ECF and E-mail**
The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF)

Dear Judge Failla:

Plaintiffs generally oppose Defendants' motion for leave to file a sur-reply, ECF No. 519. The parties agreed to, and the Court ordered, a briefing schedule without a sur-reply. ECF No. 490. Courts in this Circuit also heavily disfavor sur-replies. *See, e.g.*, *Kapiti v. Kelly*, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008); *Sec. & Exch. Comm'n v. Xia*, 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022) (citing *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975)).

Defendants' proposed sur-reply does not identify any argument that Plaintiffs raised for the first time in the Reply and primarily repeats arguments from their Opposition that Plaintiffs rebutted or addresses arguments from Plaintiffs' opening Motion.

*First*, Plaintiffs did not raise a new argument in the Reply that the Anonymous Trader did not pay actual dollars for his USDT. *Contra* ECF No. 519. Defendants asserted in the Opposition that he did so, *see, e.g.*, Opp. 3, 27, and Plaintiffs simply rebutted that assertion, Reply 15 (citing SAC ¶¶ 279, 313-20, 332). Defendants' proposed sur-reply largely repeats the same assertions from their Opposition. *See* ECF No. 519-1 at 6-7 (citing Opp. 5-6, 16, 27, 28 n. 9).

*Second*, Plaintiffs did not raise a new argument in the Reply that Defendants' commingling of USDT and U.S. dollars on Bitfinex facilitated a price premium on that exchange. *Contra* ECF No. 519. Plaintiffs allege in their opening Motion that the bitcoin premium on Bitfinex was in part caused by the commingling of debased USDT with other assets on Bitfinex. *See* Mot. 5 (citing SAC ¶ 313). Defendants responded that debased USDT could not have contributed to the premium because there was no USDT trading on Bitfinex, Opp. 16, 31, and Plaintiffs rebutted by explaining that Bitfinex treated USDT and U.S. dollars as equivalent so that customers could deposit USDT to trade even though trading was denominated in U.S. dollars, Reply 17-18 (citing SAC ¶ 285). Defendants' proposed sur-reply does not engage with Plaintiffs' response. ECF No. 519-1 at 7.

*Third*, Defendants' proposed sur-reply repeats arguments from their Opposition that Plaintiffs rebutted or addresses arguments from Plaintiffs' opening Motion. For example:

- Defendants claim (again) that Bitfinex's credit lines were "generally" used to "advanc[e] assets that were in the process of being deposited to the Bitfinex exchange (*e.g.*, a pending wire transfer)." ECF No. 519-1 at 3; *see also* Opp. 32 (credit lines allowed customers to begin trading before a deposit was received by Bitfinex, "*e.g.*, while a wire transfer was being processed").[1] In fact, Defendants testified that Bitfinex extended credit lines in bitcoin cash and other assets to ensure the quality and liquidity of Bitfinex's order books, ECF No. 516-4 (Ardoino Bitfnex 30(b)(6) Tr.) at 114:2-22, and to facilitate market making. *See* ECF No. 516-5 (Devasini Tr.) at 113-15 (testifying that credit lines were extended "where the market has high volatility and high volume," when "you might need the availability of U.S. dollars or specific coins in order to make a market [*sic*] so big customers were normally offered this kind of facilities.").

- Defendants assert (again) that there is no basis for the "assertion that credit lines allowed Bitfinex customers to 'buy more cryptocommodities on its exchange than they otherwise would have.'" ECF No. 519-1 at 4; *see also* Opp. 31-32 ("there is no basis to infer that permitting margin trading creates increased demand for any cryptocommodity . . . .The same is true for Bitfinex's 'credit lines'"). In fact, Devasini testified to the contrary. *See* Reply 18; *see also* ECF No. 516-5 at 110:11-17 ("Q. . . . [I]f Bitfinex issued credit lines to customers, those customers could trade for more crypto assets on Bitfinex than they would have been able to trade absent the credit lines, is that fair? A. Yes.").

- Defendants assert (again) that their October 2023 admission that they lack records of financial backing for nearly $400 million in receivables for USDT is not new information showing that Bitfinex had insufficient funds. ECF 519-1 at 2; *see also* Opp. 22 ("the *lack of historical financial records* does not justify Plaintiffs' delay in seeking to amend") (original emphasis). In fact, as Plaintiffs explained, Defendants' lack of records is compelling circumstantial evidence that they lacked the underlying funds. Reply 7.

- Defendants now dispute ████████████████████████████████, which Plaintiffs discussed in their opening Motion, *see* Mot. 5, 24, but Defendants opted not to address in their Opposition. While they now assert that ████████████████████████████████████████████████████████████████, Devasini stated otherwise in his communication with the Anonymous Trader, ECF No. 516-13 at -499 (████████████████████████████████████████████████████████████),

---

[1] Defendants also assert for the first time that they were not required to produce Bitfinex's credit line records because "[t]he parties agreed" that Bitfinex had "no obligation to produce records of loans by Bitfinex to other customers." *Compare* ECF No. 519-1 at 4 n. 2 *with* ECF No. 459 at 3 (objecting to production on the basis that the records are not responsive to Revised RFPs 29 and 31). This is not true. Plaintiffs moved to compel these records and the Court held that "financial records regarding assets Bitfinex held to cover credit lines it extended would fall within the scope of Revised RFP 29." ECF No. 460.

███████████████████████████████, ECF No. 516-15 (Anon. Trader Tr.) at ████
███████████████████████████████████████████████████████████████████████████.

Defendants had 45 pages in their Opposition to address these points; no additional briefing on them is warranted.

Respectfully submitted,

| | |
|---|---|
| /s/ Andrew R. Dunlap | /s/ Todd M. Schneider |
| Philippe Z. Selendy | Todd M. Schneider (*pro hac vice*) |
| Andrew R. Dunlap | Matthew S. Weiler (*pro hac vice*) |
| Oscar Shine | SCHNEIDER WALLACE COTTRELL |
| Laura M. King | KONECKY LLP |
| SELENDY GAY ELSBERG PLLC | 2000 Powell Street, Suite 1400 |
| 1290 Sixth Avenue | Emeryville, CA 94608 |
| New York, NY 10104 | tschneider@schneiderwallace.com |
| pselendy@selendygay.com | mweiler@schneiderwallace.com |
| adunlap@selendygay.com | |
| oshine@selendygay.com | |
| lking@selendygay.com | |

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*