**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| In re Tether and Bitfinex Crypto Asset Litigation |

Case No.: 1:19-cv-09236-KPF-SN

**DEFENDANT PHILIP G. POTTER'S ANSWER TO PLAINTIFFS'**
**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

WILLKIE FARR & GALLAGHER LLP
Charles D. Cording
787 Seventh Avenue
New York, NY 10019-6099
Tel.: (212) 728-8000
Email: CCording@willkie.com

*Attorney for Defendant Philip G. Potter*

Defendant Philip G. Potter,[1] by and through his undersigned counsel, hereby submits the following answer and affirmative defenses ("Answer") to the allegations contained in Plaintiffs' Second Amended Consolidated Class Action Complaint (the "SAC").[2]

## PRELIMINARY STATEMENT

### I.    INTRODUCTION

1.     Defendant denies the allegations in Paragraph 1 of the SAC.

2.     Defendant denies the allegations in Paragraph 2 of the SAC, except admits that the Tether platform ("Tether") issues USDT, admits that USDT is a stablecoin, admits that USDT is intended to track the U.S. dollar and maintain a consistent market price over time, admits that Tether stated during the alleged Class Period that USDT was backed by Tether's USDT reserves, and admits that Tether stated during the alleged Class Period that it would redeem USDT in exchange for one U.S. dollar per USDT (less fees).

3.     Defendant denies the allegations in Paragraph 3 of the SAC, except admits that Tether and Bitfinex were under common control and management during the alleged Class Period, admits that at certain times during the alleged Class Period Tether issued USDT to the Bitfinex exchange ("Bitfinex") prior to receiving a payment of U.S. dollars, admits that Bitfinex paid Tether

---

[1]     Defendant served as the Chief Strategy Officer ("CSO") of Tether and Bitfinex through February 2018. Accordingly, unless otherwise noted, the admissions and denials contained in this Answer are to Defendant's best recollection with respect to the time period during which he served as their CSO.

[2]     The titles and headings throughout the SAC do not constitute well-pleaded allegations of fact and, therefore, no response is required. To the extent any response is required, Defendant denies the allegations and characterizations of allegations set forth in the titles and headings of the SAC. Additionally, unless otherwise indicated in this Answer, the footnotes to the SAC do not set forth a claim for relief or allege facts to which a response is required. To the extent a response is deemed required, the allegations in the footnotes are denied. Moreover, by referring to or admitting the existence of any documents quoted, described, or otherwise referenced in the SAC, Defendant does not acknowledge or concede that (1) such documents are what they purport to be, are accurate as to their substance, constitute business records within the meaning of the rules of evidence, or are otherwise admissible on any other basis, or (2) Defendant has any knowledge or information concerning the document quoted, described, or otherwise referenced at any particular point in time prior to the filing of the SAC, unless explicitly admitted herein.

in full for all issuances of USDT, admits that USDT was backed by Tether's USDT reserves during the alleged Class Period, and admits that at certain times during the alleged Class Period Tether's USDT reserves included an account receivable for amounts owed by Bitfinex.

4.    Defendant denies the allegations in Paragraph 4 of the SAC.

5.    Defendant denies the allegations in Paragraph 5 of the SAC, except lacks knowledge or information sufficient to form a belief as to interpretation and understanding of "the market."

6.    Defendant denies the allegations in Paragraph 6 of the SAC.

7.    Defendant denies the allegations in Paragraph 7 of the SAC, except admits that Tether issued USDT in exchange for U.S. dollars, admits that Tether and Bitfinex were under common control and management during the alleged Class Period, admits that at certain times during the alleged Class Period Tether issued USDT to Bitfinex prior to receiving a payment of U.S. dollars, admits that Bitfinex paid Tether in full for all issuances of USDT, admits that USDT was backed by Tether's USDT reserves during the alleged Class Period, admits that at certain times during the alleged Class Period Tether's USDT reserves included an account receivable for amounts owed by Bitfinex, and lacks knowledge or information sufficient to form a belief as to the alleged belief of "the market."

8.    Defendant denies the allegations in Paragraph 8 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that the Anonymous Trader engaged in trading in their Bitfinex account using an automated software program at certain times during the alleged Class Period.  Defendant states that analysis of the prices of bitcoin and other "cryptocommodities," as that term is used by Plaintiffs, and of the

Anonymous Trader's transactions is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies them.

9.    Defendant denies the allegations in Paragraph 9 of the SAC, excepts admits that, during the time Defendant served as CSO, Bitfinex credited deposits of USDT to customer accounts as U.S. dollar balances and permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT.  Defendant states that the analysis of the relative prices of bitcoin on different crypto-asset exchanges and the Anonymous Trader's transactions is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies them.

10.    Defendant denies the allegations in Paragraph 10 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a Bitfinex customer during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant also admits that (i) during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT, (ii) Bitfinex processed customer withdrawals of USDT from its hot wallets, (iii) Bitfinex sometimes requested that Tether issue USDT to Bitfinex's hot wallets to facilitate customer withdrawals, and (iv) Bitfinex sometimes transferred USDT from its cold wallets to its hot wallets to facilitate customer withdrawals.

11.    Defendant denies the allegations in Paragraph 11 of the SAC.

12.    Defendant denies the allegations in Paragraph 12 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) "greenlaning" is a security feature that is available to Bitfinex customers who meet certain security

requirements and that permits them to withdraw assets from the Bitfinex exchange without a manual email confirmation, (ii) the Anonymous Trader's account was "greenlaned," (iii) the default "greenlane" withdrawal limit was $250,000, (iv) a customer's "greenlane" withdrawal limit was set by reference to the assets the customer held on the Bitfinex exchange, (v) Bitfinex extended credit lines to a limited number of customers, (vi) Bitfinex required such credit lines to be overcollateralized by assets held in the customers' Bitfinex accounts, (vii) Bitfinex did not charge its customers fees or interest for credit lines that it extended to them, and (viii) Bitfinex extended credit lines to the Anonymous Trader on the same terms as other Bitfinex customers.

13.    Defendant denies the allegations in Paragraph 13 of the SAC, except lacks knowledge or information sufficient to form a belief as to interpretation and understanding of "the market."

14.    Defendant denies the allegations in Paragraph 14 of the SAC.

15.    Defendant denies the allegations in Paragraph 15 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a Bitfinex customer during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant also admits that (i) during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT, and (ii) Bitfinex processed customer withdrawals of USDT from its hot wallets.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the operation of the Anonymous Trader's automated software program or its alleged effect on the market.

16.    Defendant denies the allegations in Paragraph 16 of the SAC.

17.     Paragraph 17 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 17 is necessary, Defendant denies them, and respectfully refers the Court to the cited exchange for its complete contents.

18.     Paragraph 18 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 18 is necessary, Defendant denies them, except admits that Plaintiffs assert claims under the Commodity Exchange Act and the Sherman Act.

## II.    PARTIES

### A. Plaintiffs

19.     Paragraph 19 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 19 is necessary, Defendant denies them, except Defendant lacks knowledge or information sufficient to form a belief as to Matthew Script's alleged citizenship and crypto-asset purchases.

20.     Paragraph 20 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 20 is necessary, Defendant denies them, except Defendant lacks knowledge or information sufficient to form a belief as to Jason Leibowitz's alleged citizenship and crypto-asset purchases.

21.     Paragraph 21 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 21 is necessary, Defendant denies them, except Defendant lacks knowledge or information sufficient to form a belief as to Benjamin Leibowitz's alleged citizenship and crypto-asset purchases.

22.     Paragraph 22 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 22 is necessary, Defendant denies

them, except Defendant lacks knowledge or information sufficient to form a belief as to Pinchas Goldshtein's alleged citizenship and crypto-asset purchases.

### B. Defendants

#### 1. DigFinex

23.     Paragraph 23 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 23 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the SAC.

24.     Defendant denies the allegations in Paragraph 24 of the SAC, except admits that Mr. Devasini and Mr. Ardoino are shareholders of DigFinex, admits that Mr. Ardoino is the Chief Technology Officer of Bitfinex, and admits that Mr. Hoegner is the General Counsel of Bitfinex. Defendant became a shareholder of DigFinex in or around August 2016.  As of September 21, 2018, however, Defendant is no longer a shareholder of DigFinex.

#### 2. The Bitfinex Defendants

25.     Defendant lacks knowledge or information sufficient to form a belief as to the truth the allegations in Paragraph 25 of the SAC, except admits that iFinex Inc. operates Bitfinex, an online platform for exchanging and trading digital assets.

26.     Paragraph 26 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 26 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the SAC, except admits that iFinex, Inc. operates Bitfinex.

27.     Paragraph 27 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 27 is necessary, Defendant states

that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the SAC.

28.    Paragraph 28 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 28 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the SAC.

### 3. The Tether Defendants

29.    Defendant denies the allegations in Paragraph 29 of the SAC, except admits that Tether authorized, issued, redeemed, and destroyed USDT during the alleged Class Period and that Tether Operations Limited owns and operates the Tether platform.

30.    Paragraph 30 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 30 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the SAC, except admits that Tether Holdings Limited is incorporated in the British Virgin Islands, and admits that Tether Holdings Limited wholly owns Tether Limited, Tether Operations Limited, and Tether International Limited.

31.    Paragraph 31 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 31 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the SAC, except admits that Tether Operations Limited is incorporated in the British Virgin Islands, and admits that Tether Operations Limited owns the Tether platform.

32.    Paragraph 32 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 32 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations

in Paragraph 32 of the SAC, except admits that Tether International Limited is incorporated in the British Virgin Islands.

33.     Paragraph 33 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 33 is necessary, Defendant states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the SAC, except admits that Tether Limited is incorporated in Hong Kong.

### 4. The Individual Defendants

34.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the SAC, except admits that for a period of time Mr. van der Velde served as Chief Executive Officer of certain entities affiliated with Bitfinex and Tether and held shares of certain entities affiliated with Bitfinex and Tether.

35.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the SAC, except admits that Mr. Devasini was the Chief Financial Officer of Bitfinex and Tether, and respectfully refers the Court to the webpages cited in Footnote 20 concerning Smart Property Solutions SA for their complete contents.

36.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the SAC.

37.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the SAC.

38.     Defendant admits that he was the CSO of the Bitfinex and Tether enterprises until in or around the end of February 2018, with his departure officially announced in June 2018. Defendant admits the allegations in the second and third sentence of Paragraph 38 of the SAC, except denies that he currently serves as a director of Tether Holdings Limited or is currently a shareholder of DigFinex.

## III.    JURISDICTION AND VENUE

39.    Paragraph 39 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 39 is necessary, Defendant denies them, except admits that this Court has subject matter jurisdiction over this matter.

40.    Paragraph 40 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 40 is necessary, Defendant denies them, except admits that this Court is the proper venue for this action.

41.    Paragraph 41 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 41 is necessary, Defendant denies them, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the B/T Defendants.

42.    Paragraph 42 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 42 is necessary, Defendant denies them, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations as they relate to the B/T Defendants.

## IV.    FACTUAL ALLEGATIONS

### A.  Crypto-assets and the Cryptocommodity Market

#### 1.  Bitcoin: The First Crypto-Asset

43.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the SAC, except admits that this case purports to concern "crypto-assets," as that term is used by Plaintiffs, and lacks knowledge or information sufficient to form a belief as to the accuracy or completeness of Plaintiffs' definition of "crypto-assets.

44.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the SAC, except admits that Bitcoin was the world's first

major "crypto-asset," as that term is used by Plaintiffs, admits that the term "Bitcoin" is used to refer to a computer protocol, software, and community, and admits that the term "bitcoin" is used to refer to a unit of exchange.

45.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the SAC.

46.    Defendant denies the allegations in Paragraph 46 of the SAC, except admits that Bitcoin employs a ledger system commonly referred to as the "blockchain," admits that bitcoin may be received by users via a digital "address," and admits that certain information about transactions recorded on the Bitcoin blockchain is public.

47.    Defendant denies the allegations in Paragraph 47 of the SAC, except admits that the Bitcoin blockchain allows for the transfer of bitcoin, and admits that certain information about transactions recorded on the Bitcoin blockchain is public.

48.    Defendant denies the allegations in Paragraph 48 of the SAC, except admits that the term "mining" is sometimes used to describe the process through which transaction data is added to the Bitcoin blockchain, and admits that "miners" may receive a reward of new bitcoin.

49.    Defendant denies the allegations in Paragraph 49 of the SAC, except admits that the number of new bitcoin entering circulation decreases over time.

50.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the SAC, except admits that some "crypto-assets," as that term is used by Plaintiffs, utilize a "Proof of Stake" mechanism.

51.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the SAC, except admits that the Bitcoin protocol was first

described in a white paper authored under the pseudonym Satoshi Nakamoto, and respectfully refers the Court to the white paper cited in Footnote 30 for its complete contents.

52.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the SAC, except admits that there is not a "Bitcoin Inc." that administers or manages Bitcoin as a whole.

53.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the SAC, except admits that bitcoin's decentralization distinguishes it from certain other assets.

### 2.  The Diversification of Crypto-Assets

54.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the SAC, except admits that the number of "crypto-assets," as that term is used by Plaintiffs, have increased since the creation of Bitcoin, and respectfully refers the Court to the cited cointmarketcap.com website for its complete contents.

55.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the SAC.

56.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the SAC.

57.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the SAC.

58.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the SAC.

59.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the SAC.

### 3.  The Cryptocommodity Market

60.    Paragraph 60 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 60 is necessary, Defendant denies them, except admits that some "crypto-assets," as that term is used by Plaintiffs, share certain of Bitcoin's features.

61.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the SAC.

62.    Paragraph 62 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 62 is necessary, Defendant denies them.

63.    Paragraph 63 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 63 is necessary, Defendant denies them, except admits that "ether" can refer to a unit of exchange in the "Ethereum" system.

64.    Paragraph 64 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 64 is necessary, Defendant denies that "fiat currency and gold (or other precious metals) are not substitutes for cryptocommodities," as that term is used by Plaintiffs, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 64 of the SAC.

65.    Paragraph 65 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 65 is necessary, Defendant denies that "other crypto-assets" are "not substitutes for cryptocommodities," as those terms are used by Plaintiffs, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 65 of the SAC.

66.     Paragraph 66 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 66 is necessary, Defendant denies them.

67.     Paragraph 67 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 67 is necessary, Defendant denies them.

68.     Paragraph 68 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 68 is necessary, Defendant denies them, except admits that a futures contract is an agreement to purchase or sell an asset at a predetermined date, and admits that, in the context of bitcoin futures, investors are exposed to the future price of bitcoin.

69.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the SAC.

70.     Paragraph 70 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 70 is necessary, Defendant denies them.

71.     Paragraph 71 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 71 is necessary, Defendant denies them.

72.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the SAC.

73.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the SAC, and respectfully refers the Court to the unidentified "regulatory filings" for their complete contents.

74.      Paragraph 74 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 74 is necessary, Defendant denies them, except admits that there are crypto-exchanges in many different countries, and admits that certain crypto-exchanges permit trading by customers located in other countries.

### a. The Cryptocommodity Market Is Susceptible to Manipulation.

75.      Paragraph 75 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 75 is necessary, Defendant denies them.

76.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the SAC.

77.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the SAC.

78.      Paragraph 78 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 78 is necessary, Defendant denies them.

79.      Paragraph 79 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 79 is necessary, Defendant denies them.

80.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the SAC.

81.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 of the SAC.

82.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the SAC, and respectfully refers the Court to the "Willy Report" cited in Footnotes 35 and 36 for its complete contents.

83.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the SAC, and respectfully refers the Court to the article from the Journal of Monetary Economics cited in Footnote 37 for its complete contents.

84.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the SAC, and respectfully refers the Court to the article from the Journal of Monetary Economics cited in Footnote 38 for its complete contents.

85.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 of the SAC, and respectfully refers the Court to the article from the Journal of Monetary Economics cited in Footnote 39 for its complete contents.

86.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the SAC, and respectfully refers the Court to the article from the Journal of Monetary Economics cited in Footnote 40 for its complete contents.

87.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 of the SAC, and respectfully refers the Court to the article from CoinTelegraph cited in Footnote 41 for its complete contents.

88.     Defendant denies the allegations in Paragraph 88 of the SAC.

### b. The Cryptocommodity Bubble

89.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the SAC, except admits that the price of bitcoin varied

between 2014 and July 2017, and respectfully refers the Court to the coinmarketcap.com website cited in Footnote 42 for its complete contents.

90.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the SAC, except admits that in December 2017 the price of bitcoin reached what was then an all-time high.

91.    Defendant denies the allegations in Paragraph 91 of the SAC, except admits that the price of bitcoin in February 2018 and in December 2018 was lower than the price of bitcoin in December 2017.

92.    Defendant denies the allegations in Paragraph 92 of the SAC, and respectfully refers the Court to the article from Bloomberg cited in Footnote 43 for its complete contents.

93.    Defendant denies the allegations in Paragraph 93 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 relating to the prices of "other cryptocommodities," as that term is used by Plaintiffs, and the market capitalization of "all virtual currencies."

**4.  How Crypto-Assets Are Transferred and Exchanged**

94.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the SAC, except admits that control of USDT may be attested through cryptographic keys, and admits that there are both public and private cryptographic keys.

95.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the SAC, except admits that a public cryptographic key may be used to produce a Bitcoin address, admits that a Bitcoin address may be used to identify a transferee of bitcoin, admits that Bitcoin addresses consist of a string of alphanumeric characters, and admits that Bitcoin addresses are at times abbreviated by reference to a portion of those alphanumeric characters.

96.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the SAC, except admits that a private key permits the holder of the private key to access the corresponding Bitcoin address.

97.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97 of the SAC, except admits that in certain circumstances a transferor may transfer bitcoin to a recipient's Bitcoin address, and admits that a transferor may authorize certain bitcoin transfers with the transferor's private key.

98.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the SAC, except admits that for transfers of bitcoin between Bitcoin addresses, the transferor's Bitcoin address, the recipient's Bitcoin address, and the quantity of assets transferred are visible on the Bitcoin blockchain.

99.     Defendant denies the allegations in Paragraph 99 of the SAC.

100.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 of the SAC, except admits that Bitfinex allows for trading of certain assets between Bitfinex accountholders.

101.     Defendant denies the allegations in Paragraph 101 of the SAC, except admits that a customer who wishes to use Bitfinex must first create a Bitfinex account, admits that a Bitfinex customer may deposit certain digital assets to Bitfinex using a deposit address assigned by Bitfinex, admits that Bitfinex credits customers' deposits of digital assets to their account balances, admits that Bitfinex stores digital assets in hot and cold wallets, and lacks knowledge or information sufficient to form a belief as to the functioning of other exchanges.

102.     Defendant denies the allegations in Paragraph 102 of the SAC, except lacks knowledge or information sufficient to form a belief as to the functioning of exchanges other than

Bitfinex, and respectfully refers the Court to the Poloniex webpage cited in Footnote 44 for its complete contents.

103.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 of the SAC.

104.    Defendant denies the allegations in Paragraph 104 of the SAC, except admits that Bitfinex customers who seek to withdraw "crypto-assets," as that term is used by Plaintiffs, from their Bitfinex accounts must specify an address to which the "crypto-assets" will be transferred, admits that when Bitfinex customers withdraw "crypto-assets" from their accounts Bitfinex transfers the "crypto-assets" to the specified address, admits that withdrawals of "crypto-assets" from the Bitfinex exchange are reflected in customers' account balances, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the functioning of other exchanges.

105.    Defendant denies the allegations in Paragraph 105 of the SAC, except admits that certain information about transactions recorded on a blockchain is public, admits that trades on the Bitfinex exchange generally are recorded on Bitfinex's internal ledger rather than a blockchain, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the functioning of other exchanges.

## B.  Defendants Manipulate Cryptocommodity Prices

106.    Defendant denies the allegations in Paragraph 106 of the SAC, and respectfully refers the Court to Defendant's answers to Paragraphs 23-38 above.

### 1.  Defendants Operate Bitfinex, a Crypto-Exchange

107.    Defendant denies the allegations in Paragraph 107 of the SAC, except admits that Bitfinex is a crypto-exchange that allows users to deposit and withdraw certain fiat currencies, and

respectfully refers the Court to the New York Times article cited in Footnote 45 for its complete contents.

108.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 of the SAC, excepts admits that Bitfinex was launched in 2012, and respectfully refers the Court to the unidentified post on bitcointalk.org for its complete contents.

109.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 of the SAC, and respectfully refers the Court to data.bitcoinity.org and the Initial Exchange Offering of LEO Tokens cited in Footnote 46 for their complete contents.

110.    Defendant denies the allegations in Paragraph 110 of the SAC, and respectfully refers the Court to the cited New York Attorney General report for its complete contents.

111.    Defendant denies the allegations in Paragraph 111 of the SAC, and respectfully refers the Court to the Bitcointalk.org thread cited in Footnote 50 for its complete contents.

## 2.    Defendants Create Tether—and USDT—To Support Bitfinex

112.    Defendant denies the allegations in Paragraph 112 of the SAC, except admits that Tether authorized, issued, redeemed, and destroyed USDT during the alleged Class Period, and admits that USDT was one of the first stablecoins.

113.    Defendant denies the allegations in Paragraph 113 of the SAC, except admits that stablecoins are intended to track traditional fiat currency or other assets and maintain a consistent market price over time.

114.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the SAC, except admits that USDT is not mined, admits that

Tether issues USDT, and admits that stablecoins are intended to track traditional fiat currency or other assets and maintain a consistent market price over time.

115.    Paragraph 115 of the SAC purports to quote from public interviews and sworn testimony of Defendant without identifying the source of those statements.  On that basis, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 of the SAC.

116.    Paragraph 116 of the SAC purports to quote from or characterize statements made by Defendant without identifying the source of those statements.  On that basis, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 of the SAC.

117.    Defendant denies the allegations in Paragraph 117 of the SAC, except admits that Tether authorized, issued, redeemed, and destroyed USDT during the alleged Class Period.

118.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 of the SAC, except admits Tether Holdings Limited was incorporated in the British Virgin Islands in September 2014.

119.    Defendant denies the allegations in Paragraph 119 of the SAC, except admits that Defendant was a Director of Tether Holdings Limited at the time of its incorporation, and admits that Mr. Devasini was a shareholder of Tether Holdings Limited at the time of its incorporation.

120.    The first and third sentences of Paragraph 120 of the SAC purport to quote from or characterize statements made by Defendant without identifying the source of those statements.  On that basis, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in those sentences.  Defendant also lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 120 of the SAC.

Defendant respectfully refers the Court to the Wall Street Journal article cited in Footnotes 51 and 52 for their complete contents.

121.    Defendant denies the allegations in Paragraph 121 of the SAC, except admits that the U.S. dollar tether token is referred to as "USDT," and respectfully refers the Court to the CoinDesk article cited in Footnote 53 for its complete contents.

122.    Defendant denies the allegations in Paragraph 122 of the SAC, and respectfully refers the Court to the CoinDesk article cited in Footnotes 54 and 55 for its complete contents.

123.    Defendant denies the allegations in Paragraph 123 of the SAC, except admits that, during the alleged Class Period, Tether issued USDT in exchange for U.S. dollars, admits that Tether stated during the alleged Class Period that USDT was backed by Tether's USDT reserves, and admits that Tether redeemed USDT in exchange for U.S. dollars.

124.    Defendant denies the allegations in Paragraph 124 of the SAC, except admits that, during the alleged Class Period, Tether issued USDT in exchange for U.S. dollars, admits that USDT was backed by Tether's USDT reserves, and admits that Tether redeemed USDT in exchange for U.S. dollars.

125.    Defendant denies the allegations in Paragraph 125 of the SAC, except admits that, during the alleged Class Period, Tether issued USDT in exchange for U.S. dollars, admits that Tether redeemed USDT in exchange for U.S. dollars, and admits that Tether charged a fee for USDT issuance and redemption.

126.    Defendant denies the allegations in Paragraph 126 of the SAC, except admits that Tether's issuances and destructions of USDT are recorded on the blockchain, and admits that transmittals of U.S. dollars associated with Tether's issuances and redemptions are generally not public.

127.    Defendant denies the allegations in Paragraph 127 of the SAC, except admits that USDT is intended to track the U.S. dollar and maintain a consistent market price over time.

128.    Defendant denies the allegations in Paragraph 128 of the SAC, except respectfully refers the Court to the March 20, 2015 snapshot of the Tether webpage cited in Footnote 56 for its complete contents and denies any allegation or characterization inconsistent therewith.

129.    Defendant denies the allegations in Paragraph 129 of the SAC, except respectfully refers the Court to the March 20, 2015 snapshot of the Tether webpage cited in Footnote 57 for its complete contents and denies any allegation or characterization inconsistent therewith.

130.    Defendant denies the allegations in Paragraph 130 of the SAC, except respectfully refers the Court to the Bitfinex webpage cited in Footnote 58 for its complete contents and denies any allegation or characterization inconsistent therewith.

131.    Defendant denies the allegations in Paragraph 131 of the SAC, except respectfully refers the Court to the Tether white paper cited in Footnote 59 for its complete contents and denies any allegation or characterization inconsistent therewith.

132.    Defendant denies the allegations in Paragraph 132 of the SAC, except respectfully refers the Court to the Tether white paper cited in Footnotes 60 and 61 for its complete contents and denies any allegation or characterization inconsistent therewith.

133.    Defendant denies the allegations in Paragraph 133 of the SAC, except respectfully refers the Court to the Tether white paper cited in Footnote 62 for its complete contents, and denies any allegation or characterization inconsistent therewith.

134.    Defendant denies the allegations in Paragraph 134 of the SAC, except respectfully refers the Court to the Tether white paper cited in Footnote 63 for its complete contents and denies any allegation or characterization inconsistent therewith.

135.    Defendant denies the allegations in Paragraph 135 of the SAC, except respectfully refers the Court to the Declaration of Mr. van der Velde cited in Footnote 64 for its complete contents and denies any allegation or characterization inconsistent therewith.

136.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 of the SAC, and respectfully refers the Court to the Tether website cited in Footnote 65 for its complete contents.

137.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137 of the SAC, and respectfully refers the Court to the Tether website cited in Footnote 66 for its complete contents.

138.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138 of the SAC, and respectfully refers the Court to the affirmation of New York Assistant Attorney General Brian Whitehurst cited in Footnote 67 for its complete contents.

139.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 of the SAC, and respectfully refers the Court to the Bloomberg article cited in Footnote 68 for its complete contents.

140.    Defendant denies the allegations in Paragraph 140 of the SAC, except admits that Tether stated it would redeem one USDT in exchange for one U.S. dollar (less fees).

141.    Paragraph 141 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 141 is necessary, Defendant denies them.

142. Defendant denies the allegations in Paragraph 142 of the SAC, except lacks knowledge or information sufficient to form a belief as to the market capitalization of "crypto-assets," as that term is used by Plaintiffs, other than USDT.

### C. Defendants Debased USDT

143. Defendant denies the allegations in Paragraph 143 of the SAC.

144. Defendant denies the allegations in Paragraph 144 of the SAC.

145. Defendant denies the allegations in Paragraph 145 of the SAC, except admits that Tether authorized USDT by creating them on a blockchain and placing them in a Tether treasury wallet, admits that Tether considered USDT to be issued and in circulation once the USDT had been transferred to a Tether customer, admits that Tether did not consider USDT that had been authorized but not issued or USDT that had been quarantined to be issued, and admits that issued USDT was backed by Tether's USDT reserves.

146. Tether's USDT issuances and redemptions are a matter of public record because they are visible on the blockchain, and analysis of Tether's USDT issuances and redemptions is a matter for expert opinion to which no response is required. To the extent any response to the allegations in Paragraph 146 of the SAC is required, Defendant denies them.

147. Defendant denies the allegations in Paragraph 147 of the SAC, except admits that USDT was backed by Tether's USDT reserves during the alleged Class Period, and admits that at certain times during the alleged Class Period Tether's USDT reserves included, in addition to U.S. dollars in accounts that were held by or for Tether, an account receivable for amounts owed by Bitfinex and other assets.

148. Defendant denies the allegations in Paragraph 148 of the SAC.

149. Defendant denies the allegations in Paragraph 149 of the SAC, and respectfully refers the Court to the CoinDesk article cited in Footnote 70 for its complete contents.

150. Paragraph 150 of the SAC states legal conclusions to which no response is necessary. To the extent that any response to the allegations in Paragraph 150 is necessary, Defendant denies them, except admits that Defendant was a director of Tether Holding Limited in November 2014, and admits that Mr. Devasini was a shareholder of Tether Holdings Limited in November 2014.

151. Defendant denies the allegations in Paragraph 151 of the SAC, except admits that Tether Limited was incorporated in September 2014, admits that Mr. van de Velde and Mr. Devasini were directors of Tether Limited in November 2014, and respectfully refers the Court to the cited CoinDesk article for its complete contents.

152. Defendant respectfully refers the Court to the cited snapshot of a Tether webpage from March 2015 for its complete contents, and denies any allegation or characterization in Paragraph 152 of the SAC inconsistent therewith.

153. Defendant denies the allegations in Paragraph 153 of the SAC.

154. Defendant denies the allegations in Paragraph 154 of the SAC, except admits that Tether and Bitfinex were under common control and management during the alleged Class Period.

155. Defendant denies the allegations in Paragraph 155 of the SAC, except respectfully refers the Court to the cited Tether white paper for its complete contents and denies any allegation or characterization inconsistent therewith.

156. Defendant denies the allegations in the first sentence of Paragraph 156 of the SAC, except admits that Tether issued USDT to Tether customers through the Tether platform until November 2017, and admits, based on his recollection and/or information that has come to light during the litigation, that Tether then suspended USDT issuances to Tether customers other than Bitfinex. Defendant lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in the second sentence of Paragraph 156, and respectfully refers the Court to the Tether webpage cited in Footnote 77 for its complete contents.

157.    Tether's USDT issuances are a matter of public record because they are visible on the blockchain, and analysis of Tether's USDT issuances is a matter for expert opinion to which no response is required.  To the extent any response to the allegations in Paragraph 157 of the SAC is required, Defendant denies them, except admits that Tether issued USDT to Bitfinex.

158.    Paragraph 158 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 158 is necessary, Defendant denies them.

159.    Defendant denies the allegations in Paragraph 159 of the SAC, except admits that during the alleged Class Period, Tether issued USDT in exchange for U.S. dollars, admits that USDT was backed by Tether's USDT reserves, and admits that Tether redeemed USDT in exchange for U.S. dollars.

160.    Defendant denies the allegations in Paragraph 160 of the SAC, except admits that Tether's business involved U.S. dollar deposits and redemptions of USDT in exchange for U.S. dollars.

161.    Defendant denies the allegations in Paragraph 161 of the SAC, except admits that, during certain periods of time, Bitfinex and Tether used Taiwan-based banks with correspondent bank agreements with U.S.-based banks in order to send and receive international wire transfers of U.S. dollars.

162.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the SAC.

163.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 of the SAC, except admits that during certain periods of time, Bitfinex used Taiwan-based banks with correspondent bank agreements with U.S.-based banks to facilitate customer withdrawals of U.S. dollars from their Bitfinex accounts.

164.    Defendant denies the allegations in Paragraph 164 of the SAC, and respectfully refers the Court to the Bank for International Settlements report cited in Footnote 81 for its complete contents.

165.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165 of the SAC.

166.    Defendant denies the allegations in Paragraph 166 of the SAC, except admits that, during certain periods of time, Bitfinex and Tether used Taiwan-based banks with correspondent bank agreements with U.S.-based banks in order to send and receive international wire transfers of U.S. dollars.

### 1. 2017: Tether Issues USDT to Bitfinex in Exchange for IOUs

167.    Defendant denies the allegations in Paragraph 167 of the SAC, except admits that, for certain periods of time, Tether and/or Bitfinex held U.S. dollars in accounts at certain Taiwanese banks (the "Taiwan Banks"), admits that, for certain periods of time, Tether held USDT reserves in accounts at the Taiwan Banks (among others), and respectfully refers the Court to the complaint cited in Footnote 83 (the "Wells Fargo Complaint") for its complete contents.

168.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 of the SAC, except admits that, during certain periods of time, Tether used the Taiwan Banks, which used Wells Fargo as a correspondent bank, in order to send and receive international wire transfers of U.S. dollars, and respectfully refers the Court to the Wells Fargo Complaint for its complete contents.

169.    Defendant denies the allegations in Paragraph 169 of the SAC, except admits that on or about March 31, 2017, Wells Fargo stopped servicing outgoing wire transfers from Bitfinex's and Tether's accounts at the Taiwan Banks, and respectfully refers the Court to the Wells Fargo Complaint for its complete contents.

170.    Defendant denies the allegations in Paragraph 170 of the SAC, and respectfully refers the Court to the Wells Fargo Complaint for its complete contents.

171.    Defendant denies the allegations in Paragraph 171 of the SAC, except respectfully refers the Court to the cited April 22, 2017 statement for its complete contents and denies any allegation or characterization inconsistent therewith.

172.    Defendant denies the allegations in Paragraph 172 of the SAC, except respectfully refers the Court to the cited April 22, 2017 statement for its complete contents and denies any allegation or characterization inconsistent therewith.

173.    Defendant denies the allegations in Paragraph 173 of the SAC.

174.    Defendant denies the allegations in Paragraph 174 of the SAC, except admits that Tether issued USDT after March 31, 2017.

175.    Defendant denies the allegations in Paragraph 175 of the SAC, except admits that in or around May 2017 Tether transferred a portion of its USDT reserves to an account at the Bank of Montreal that Stuart Hoegner, General Counsel of Tether, held in trust for Tether Limited.

176.    Paragraph 176 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 176 is necessary, Defendant denies them, except admits that the account held in trust for Tether Limited at the Bank of Montreal held USDT reserves and was used to pay Tether's customers U.S. dollars for USDT redemptions.

177.    Defendant denies the allegations in Paragraph 177 of the SAC, except admits that Bitfinex opened an account with Noble Bank in September 2017.

178.    Defendant denies the allegations in Paragraph 178 of the SAC.

179.    Defendant denies the allegations in Paragraph 179 of the SAC, except admits that Tether opened an account with Noble Bank in September 2017.

180.    Defendant denies the allegations in Paragraph 180 of the SAC, except admits that Tether issued USDT to Bitfinex between April 3, 2017 and September 29, 2017.

181.    Defendant denies the allegations in Paragraph 181 of the SAC, except admits that Tether issued USDT to Bitfinex between April 3, 2017 and September 29, 2017, admits that for certain of these USDT issuances Bitfinex paid Tether when Tether's Noble Bank account was opened, and respectfully refers the Court to the B/T Defendants' answer as to the timing and amounts of those transfers.

182.    Defendant denies the allegations in Paragraph 182 of the SAC, except admits that between May 23, 2017 and September 15, 2017 Tether counted as part of its USDT reserves an account receivable in the amount of the USDT that it issued to Bitfinex, admits that Bitfinex paid Tether the full balance of the accrued account receivable when Tether's Noble Bank account was opened, and respectfully refers the Court to the B/T Defendants' answer as to the timing and amounts of those transfers.

183.    Defendant denies the allegations in Paragraph 183 of the SAC, except admits that between March 31, 2017 and September 15, 2017 Tether's USDT reserves consisted of U.S. dollars in accounts that were held by or for Tether as well as accounts receivable for amounts owed by Bitfinex.

184.    Defendant denies the allegations in Paragraph 184 of the SAC, except admits that Tether Limited engaged Friedman LLP to determine the amount of Tether's cash reserves and issued USDT as of September 15, 2017 at 8:00 p.m. EDT.

185.    Defendant denies the allegations in Paragraph 185 of the SAC, except admits that Bitfinex transferred USD from its Noble Bank account to Tether's Noble Bank account, and respectfully refers the Court to the B/T Defendants' answer as to the timing and amounts of those transfers.

186.    Defendant denies the allegations in Paragraph 186 of the SAC, except admits that Tether Limited engaged Friedman LLP to determine the amount of Tether's cash reserves and issued USDT as of September 15, 2017 at 8:00 p.m. EDT, and respectfully refers the Court to Friedman LLP's Memorandum Regarding Consulting Services Performed cited in Footnote 91 for its complete contents.

187.    Defendant denies the allegations in Paragraph 187 of the SAC, and respectfully refers the Court to the September 30, 2017 statement cited in Footnote 92 and to the Friedman LLP Memorandum cited in Footnote 93 for their complete contents.

188.    Defendant denies the allegations in Paragraph 188 of the SAC, except admits that Friedman LLP resigned from its engagement with Tether Limited in January 2018, and respectfully refers the Court to the cited communication from Friedman LLP for its complete contents.

189.    Defendant denies the allegations in Paragraph 189 of the SAC, except admits that Friedman LLP resigned from its engagement with Tether Limited in January 2018, and respectfully refers the Court to the cited communication from Friedman LLP for its complete contents.

190.    Defendant denies the allegations in Paragraph 190 of the SAC.

191.    Defendant denies the allegations in the first sentence of Paragraph 191 of the SAC. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 191.

### a.    Receivables Were Not One-to-One Dollar Backing

192.    Defendant denies the allegations in Paragraph 192 of the SAC, except admits that Tether and Bitfinex were under common control and management during the alleged Class Period, admits that at certain times during the alleged Class Period Tether issued USDT to Bitfinex prior to receiving a payment of U.S. dollars, admits that Bitfinex paid Tether in full for all issuances of USDT, admits that USDT was backed by Tether's USDT reserves during the alleged Class Period, and admits that at certain times during the alleged Class Period Tether's USDT reserves included an account receivable for amounts owed by Bitfinex.

193.    Defendant denies the allegations in Paragraph 193 of the SAC.

194.    Defendant denies the allegations in Paragraph 194 of the SAC.

195.    Defendant denies the allegations in Paragraph 195 of the SAC, except lacks knowledge or information sufficient to form a belief as to the alleged beliefs of unidentified "traders."

196.    Defendant denies the allegations in Paragraph 196 of the SAC.

### b.    Bitfinex Did Not Have U.S. Dollars Sufficient to Pay for the USDT Issuances it Received at the Time of Issuance

197.    Defendant denies the allegations in Paragraph 197 of the SAC.

198.    Defendant denies the allegations in the first sentence of Paragraph 198 of the SAC. The allegations in the second and third sentence of Paragraph 198 purport to characterize statements made by Defendant without identifying the source of those statements.  On that basis,

Defendant lacks knowledge or information sufficient to form a belief as to the truth of those statements.

199.    Defendant denies the allegations in Paragraph 199 of the SAC.

200.    Defendant denies the allegations in Paragraph 200 of the SAC, except, based on his recollection and/or information that has come to light during the litigation, (i) admits that Bitfinex did not maintain separate bank accounts for the U.S. dollars that it owed to Tether for USDT issuances or for customers' assets, and (ii) states that Bitfinex carefully tracked its assets and liabilities, customer assets, and amounts owed to Tether for USDT issuances in real time and confirmed that Bitfinex's net assets, excluding customer assets, were sufficient to pay the amounts owed to Tether for USDT issuances.

201.    Defendant denies the allegations in Paragraph 201 of the SAC, except, based on his recollection and/or information that has come to light during the litigation, (i) admits that during the alleged Class Period Bitfinex did not produce conventional balance sheets, and (ii) states that Bitfinex carefully tracked its assets and liabilities, customer assets, and amounts owed to Tether for USDT issuances in real time and confirmed that Bitfinex's net assets were sufficient to pay the amounts owed to Tether for USDT issuances.  Defendant respectfully refers the Court to the B/T Defendants' answer as to whether Bitfinex can recreate historical records of its assets and liabilities from during the alleged Class Period.

202.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202 of the SAC.

203.    Defendant denies the allegations in Paragraph 203 of the SAC, and states that, based on his recollection and/or information that has come to light during the litigation, Bitfinex carefully tracked its assets and liabilities, customer assets, and amounts owed to Tether for USDT issuances

in real time and confirmed that Bitfinex's net assets, excluding customer assets, were sufficient to pay the amounts owed to Tether for USDT issuances.

204.    Defendant denies the allegations in Paragraph 204 of the SAC.  Defendant states that the Initial Exchange Offering of LEO Tokens cited in Footnote 95 refers to a profit – not "total revenues" – of $333.5 million in 2017, respectfully refers the Court to the Initial Exchange Offering of LEO Tokens for its complete contents, and denies any allegation or characterization inconsistent therewith.  Defendant further states that, based on his recollection and/or information that has come to light during the litigation, Bitfinex carefully tracked its assets and liabilities, customer assets, and amounts owed to Tether for USDT issuances in real time and confirmed that Bitfinex's net assets, excluding customer assets, were sufficient to pay the amounts owed to Tether for USDT issuances.

205.    Defendant denies the allegations in Paragraph 205 of the SAC.

### 2.  2018-19: Tether Issues More USDT to Bitfinex In Exchange for IOUs and Loans Bitfinex its U.S. Dollar Reserves

206.    Defendant denies the allegations in Paragraph 206 of the SAC.

207.    Defendant denies the allegations in Paragraph 207 of the SAC.

208.    Defendant denies the allegations in Paragraph 208 of the SAC.

209.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 209 of the SAC.

210.    Defendant denies the allegations in Paragraph 210 of the SAC, except admits that Bitfinex used Crypto Capital to send and receive customer payments, and lacks knowledge or information sufficient to form a belief as to truth of the allegations regarding Crypto Capital's business.

211.    Defendant denies the allegations in Paragraph 211 of the SAC.

212.    Defendant respectfully refers the Court to the exchange cited in Paragraph 212 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

213.    Defendant respectfully refers the Court to the exchange cited in Paragraph 213 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

214.    Defendant respectfully refers the Court to the exchange cited in Paragraph 214 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

215.    Defendant respectfully refers the Court to the exchange cited in Paragraph 215 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

216.    Defendant respectfully refers the Court to the exchange cited in Paragraph 216 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

217.    Defendant denies the allegations in Paragraph 217 of the SAC, respectfully refers the Court to the cited exchange for its complete contents, and denies any allegation or characterization inconsistent therewith.

218.    Defendant denies the allegations in Paragraph 218 of the SAC.

219.    Defendant respectfully refers the Court to the exchange cited in Paragraph 219 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

220.    Defendant respectfully refers the Court to the exchange cited in Paragraph 220 of the SAC for its complete contents, and denies any allegation or characterization inconsistent therewith.

221.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 221 of the SAC.

222.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 222 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

223.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 223 of the SAC.

224.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 224 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

225.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 225 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

226.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 226 of the SAC.

227.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 227 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

228.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 228 of the SAC.

229.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 229 of the SAC.

230.    Defendant denies the allegations in Paragraph 230 of the SAC.

231.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 231 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

232.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232 of the SAC, and respectfully refers the Court to the October 7, 2018 statement cited in Footnote 104 for its complete contents.

233.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 233 of the SAC.

234.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 234 of the SAC.

235.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235 of the SAC, and respectfully refers the Court to the CNBC article cited in Footnotes 106 and 107 for its complete contents.

236.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

237.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 237 of the SAC.

238.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 238 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

239.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 239 of the SAC, and respectfully refers the Court to the Tether website cited in Footnote 108 for its complete contents.

240.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240 of the SAC, except admits that Tether held USDT reserves in its Deltec Bank & Trust Limited ("Deltec") account, and respectfully refers the Court to the November 1, 2018 announcement cites in Footnotes 109 and 110 for its complete contents.

241.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241 of the SAC, and respectfully refers the Court to the Tether website cited in Footnote 111 for its complete contents.

242.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242 of the SAC, except admits that USDT was backed by Tether's USDT reserves during the alleged Class Period.

243.    Defendant denies the allegations in the first sentence of Paragraph 243 of the SAC. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 243.

244.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244 of the SAC.

245.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 245 of the SAC.

246.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 246 of the SAC.

247.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247 of the SAC.

248.    Defendant denies the allegations in Paragraph 248 of the SAC.

249.    Defendant denies the allegations in the first sentence Paragraph 249 of the SAC. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 249, and respectfully refers the Court to the cited exchange for its complete contents.

250.    Defendant denies the allegations in Paragraph 250 of the SAC, except admits that Tether and Bitfinex were under common control and management during the alleged Class Period, and respectfully refers the Court to Defendant's answers to Paragraphs 23-38 above.

251.    Defendant denies the allegations in Paragraph 251 of the SAC.

### 3.    Investigations By The New York Attorney General and the U.S. Commodity Futures Trading Commission Confirm USDT Was Debased

252.    Defendant denies the allegations in Paragraph 252 of the SAC, and respectfully refers the Court to the cited NYAG press release for its complete contents.

253.    Defendant denies the allegations in Paragraph 253 of the SAC, and respectfully refers the Court to the NYAG press release cited in Footnote 112 for its complete contents.

254.    Defendant denies the allegations in Paragraph 254 of the SAC, and respectfully refers the Court to the NYAG Settlement Agreement cited in Footnote 113 for its complete contents.

255.    Defendant denies the allegations in Paragraph 255 of the SAC, and respectfully refers the Court to the CFTC press release cited in Footnote 114 for its complete contents.

256.    Defendant denies the allegations in Paragraph 256 of the SAC, and respectfully refers the Court to the CFTC press release cited in Footnote 115 for its complete contents.

257.    Defendant denies the allegations in Paragraph 257 of the SAC, and respectfully refers the Court to the CFTC press release cited in Footnote 116 for its complete contents.

### D.  The Anonymous Trader's Bot Traded Vast Amounts of Debased USDT for Cryptocommodities

258.    Defendant denies the allegations in the first sentence of Paragraph 258 of the SAC, except admits that USDT is successful in part because it is useful to the crypto community. Defendant further states that the second sentence of Paragraph 258 purports to quote a statement made by Defendant without identifying the source of that statement.  On that basis, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 258.

259.    Defendant denies the allegations in the first sentence of Paragraph 259 of the SAC, except admits that Poloniex integrated USDT onto its platform in 2015, and admits that Poloniex was the first crypto-exchange other than Bitfinex to do so.  Defendant further states that the second sentence of Paragraph 259 purports to quote a statement made by Defendant without identifying the source of that statement.  On that basis, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 259.

260.    Defendant denies the allegations in Paragraph 260 of the SAC, except admits that cross-exchange arbitrage may involve the simultaneous purchase of an asset on one exchange and sale of the same asset on a second exchange for a higher price, creating a profit from the difference between the prices on the two exchanges, less fees and other costs.

261.    Defendant denies the allegations in Paragraph 261 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of what "[s]everal crypto-

traders" allegedly "recognized" or the "strategies" they allegedly implemented, and admits, based on his recollection and/or information that has come to light during the litigation, that the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.

262.    Defendant denies the allegations in Paragraph 262 of the SAC.

263.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 263 of the SAC.

264.    Analysis of Tether's USDT issuances and the Anonymous Trader's transactions is a matter for expert opinion to which no response is required.  To the extent any response to the allegations in Paragraph 264 of the SAC is required, Defendant denies them, except admits that Tether issued USDT to Bitfinex.

### 1. The Anonymous Trader Developed an Automated Trading Bot

265.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 265 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period, and (ii) the Anonymous Trader used Bitfinex's application programming interface ("API") to connect his automated software program to the exchange.  Defendant respectfully refers the Court to the cited testimony by the Anonymous Trader for its complete contents.

266.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 266 of the SAC, and respectfully refers the Court to the cited testimony by the Anonymous Trader for its complete contents.

267.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 267 of the SAC, and respectfully refers the Court to the cited testimony by the Anonymous Trader for its complete contents.

268.     Analysis of the Anonymous Trader's transactions is a matter for expert opinion to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 268 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a Bitfinex customer during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.

269.     Analysis of the Anonymous Trader's transactions is a matter for expert opinion to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 269 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a Bitfinex customer in 2017 and 2018, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.

## 2. B/T Defendants Knew About the Anonymous Trader's Cross-Exchange Arbitrage Bot Well Before the Class Period Began

270.     Defendant denies the allegations in Paragraph 270 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that Defendant knew that the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.

271.    Defendant denies the allegations in Paragraph 271 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) "greenlaning" is a security feature that is available to Bitfinex customers who meet certain security requirements and that permits those customers to withdraw assets from the Bitfinex exchange without a manual email confirmation, and (ii) the Anonymous Trader's account was "greenlaned." Defendant respectfully refers the Court to the cited exchange for its complete contents.

272.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 272 of the SAC.

273.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 273 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

274.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

### 3. The Anonymous Trader's Bot Traded Vast Amounts of Debased USDT For Cryptocommodities

275.    Analysis of the Anonymous Trader's transactions and USDT issuances is a matter for expert opinion to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 275 of the SAC, except admits that, during the time Defendant served as CSO, Bitfinex credited deposits of USDT to customer accounts as U.S. dollar balances and permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT.

276.    Defendant denies the allegations in Paragraph 276 of the SAC.

277.    Defendant denies the allegations in Paragraph 277 of the SAC.

278.    Defendant denies the allegations in Paragraph 278 of the SAC.

279.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 279 of the SAC.

### 4.    Due To A Persistent Price Premium On Bitfinex, The Anonymous Trader's Trades Resulted In More Sales of Bitcoin On Bitfinex and More Purchases of Bitcoin on Other Exchanges

280.    Defendant denies the allegations in Paragraph 280 of the SAC.  Defendant states that the analysis of the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

281.    Defendant denies the allegations in Paragraph 281 of the SAC.  Defendant states that the analysis of the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

282.    Analysis of the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant denies the allegations in Paragraph 282 of the SAC, except admits that Bitfinex supported the BTC/USD trading pair during the alleged Class Period, admits that Bitfinex did not support a BTC/USDT trading pair during the alleged Class Period, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the trading pairs available on Bittrex and Poloniex.

283.    Analysis of the Anonymous Trader's transactions is a matter for expert opinion to which no response is required.  To the extent a response is required, Defendant lacks knowledge

or information sufficient to form a belief as to the truth of the allegations in Paragraph 283 of the SAC.

284.    Analysis of the Anonymous Trader's transactions is a matter for expert opinion to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 284 of the SAC.

285.    Defendant denies the allegations in Paragraph 285 of the SAC, except admits that (i) Bitfinex did not support the BTC/USDT trading pair during the alleged Class Period, and (ii) during the time Defendant serve as CSO, Bitfinex credited deposits of USDT to customer accounts as U.S. dollar balances and permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT.  Defendant also admits that, based on his recollection and/or information that has come to light during the litigation, the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant states that analysis of the Anonymous Trader's transactions is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

286.    Analysis of the Anonymous Trader's transactions and the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required.  To the extent any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 286 of the SAC.

287.    Analysis of the Anonymous Trader's transactions and the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required.

To the extent any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 287 of the SAC.

288.     Analysis of the Anonymous Trader's transactions and the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required. To the extent any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 288 of the SAC.

289.     Analysis of the Anonymous Trader's transactions and the relative prices of bitcoin on different crypto-asset exchanges is a matter for expert opinion to which no response is required. To the extent any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 289 of the SAC.

### E.  Defendants Facilitated the Anonymous Trader's Trading

290.     Defendant denies the allegations in Paragraph 290 of the SAC.

291.     Defendant denies the allegations in Paragraph 291 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.

292.     Defendant denies the allegations in Paragraph 292 of the SAC.

293.     Defendant denies the allegations in Paragraph 293 of the SAC.

### 1.  Defendants Gave the Anonymous Trader Vast Quantities of USDT

294.     Defendant denies the allegations in Paragraph 294 of the SAC, except admits that USDT may be used in cross-exchange arbitrage, and respectfully refers the Court to the cited testimony of Mr. van der Velde for its complete contents.

295.     Defendant denies the allegations in Paragraph 295 of the SAC, except admits that during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar

balances from customer accounts in the form of either U.S. dollars or USDT, irrespective of the market price of USDT on other exchanges, and admits that USDT was backed by Tether's USDT reserves during the alleged Class Period.

296.    Defendant denies the allegations in Paragraph 296 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a Bitfinex customer during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant also admits that during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Anonymous Trader's transactions on other exchanges.

297.    Defendant denies the allegations in Paragraph 297 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant also admits that Bitfinex could not execute a customer's request to withdraw USDT if Bitfinex had an insufficient supply of USDT.

298.    Defendant denies the allegations in Paragraph 298 of the SAC, except admits that Bitfinex processed customer withdrawals of USDT from its hot wallets, admits that Bitfinex's hot wallets were connected to the main infrastructure of the Bitfinex exchange, and admits that a withdrawal request could be referred to as "stuck" if, among other things, the relevant Bitfinex hot wallet did not contain sufficient USDT to cover the withdrawal request.

299.    Defendant denies the allegations in Paragraph 299 of the SAC, except admits that Bitfinex could add USDT to its hot wallets by transferring USDT from a Bitfinex cold wallet, admits that a cold wallet is a wallet that is not linked to the internet, admits that transferring assets from Bitfinex's cold wallets to its hot wallets required the approval of multiple individuals, and admits that Bitfinex could request that Tether issue USDT to Bitfinex's hot wallets.

300.    Defendant denies the allegations in Paragraph 300 of the SAC, except admits that Tether and Bitfinex were under common control and management during the alleged Class Period, admits that at certain times during the alleged Class Period Tether issued USDT to Bitfinex prior to receiving a payment of U.S. dollars, and states that Bitfinex paid Tether in full for all issuances of USDT.  Defendant also states that, based on his recollection and/or information that has come to light during the litigation, Bitfinex carefully tracked its assets and liabilities, customer assets, and amounts owed to Tether for USDT issuances in real time and confirmed that Bitfinex's net assets, excluding customers assets, were sufficient to pay the amounts owed to Tether for USDT issuances.

301.    Defendant denies the allegations in Paragraph 301 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a customer of Bitfinex during the alleged Class Period, and (ii) the Anonymous Trader at times contacted Bitfinex personnel for technical support if one of his withdrawal requests was "stuck."  Defendant also admits that (i) during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT, and (ii) Bitfinex sometimes transferred USDT from its cold wallets to its hot wallets to facilitate customer withdrawals.  Defendant lacks knowledge or

information sufficient to form a belief as to the truth of the allegations regarding the Anonymous Trader's alleged reasoning.

302.    Defendant denies the allegations in Paragraph 302 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that the Anonymous Trader had contact information for certain members of Bitfinex management, and admits that Bitfinex personnel provided technical support to its customers, including the Anonymous Trader.

303.    Defendant denies the allegations in Paragraph 303 of the SAC, except lacks knowledge or information sufficient to form a belief as to whether "speed of execution was paramount for the Anonymous Trader's bot operation," admits that Bitfinex takes pride in the quality of its customer support and its responsiveness to its customers, and respectfully refers the Court to the cited testimony of the Anonymous Trader and the cited Telegram chat for their complete contents.

304.    Analysis of the Anonymous Trader's crypto-asset transactions is a matter for expert opinion to which no response is required. To the extent any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 304 of the SAC.

305.    Defendant denies the allegations in Paragraph 305 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a customer of Bitfinex during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period. Defendant also admits that during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in

the form of either U.S. dollars or USDT. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Anonymous Trader's transactions on other exchanges.

306.    Defendant denies the allegations in Paragraph 306 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a customer of Bitfinex during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period. Defendant also admits that during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Anonymous Trader's transactions on other exchanges.

307.    Defendant denies the allegations in Paragraph 307 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Anonymous Trader's transactions on other exchanges.

### 2. Defendants Were Aware of and Facilitated the Bitfinex Price Premium

308.    Defendant denies the allegations in Paragraph 308 of the SAC.

309.    Defendant denies the allegations in Paragraph 309 of the SAC.

310.    Defendant denies the allegations in Paragraph 310 of the SAC, and respectfully refers the Court to the unidentified Bloomberg reporter's comments for their complete contents.

311.    Defendant denies the allegations in Paragraph 311 of the SAC.

312.    Defendant denies the allegations in Paragraph 312 of the SAC, except admits that Tether issued USDT in exchange for U.S. dollars, admits that Tether and Bitfinex were under common control and management during the alleged Class Period, admits that at certain times

during the alleged Class Period Tether issued USDT to Bitfinex prior to receiving a payment of U.S. dollars, admits that Bitfinex paid Tether in full for all issuances of USDT, admits that USDT was backed by Tether's USDT reserves during the alleged Class Period, and admits that at certain times during the alleged Class Period Tether's USDT reserves included an account receivable for amounts owed by Bitfinex.

313.    Defendant denies the allegations in Paragraph 313 of the SAC, except admits that (i) Bitfinex offered peer-to-peer margin trading to its customers, and (ii) Bitfinex extended credit lines to a limited number of customers.

314.    Defendant denies the allegations in Paragraph 314 of the SAC.

315.    Defendant denies the allegations in Paragraph 315 of the SAC, except admits that Bitfinex extended credit lines to a limited number of customers.  Defendant also admits, based on his recollection and/or information that has come to light during the litigation, that (i) Bitfinex required such credit lines to be overcollateralized by assets held in the customers' Bitfinex accounts, (ii) during the alleged Class Period Bitfinex did not maintain separate bank accounts for its customers' assets, and (iii) during the alleged Class Period Bitfinex and carefully tracked its assets and liabilities and customer assets in real time.  Defendant respectfully refers the Court to the B/T Defendants' answer as to whether Bitfinex can recreate historical records of its assets and liabilities from during the alleged Class Period.

316.    Defendant denies the allegations in Paragraph 316 of the SAC.

317.    Defendant denies the allegations in Paragraph 317 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

318.    Defendant denies the allegations in Paragraph 318 of the SAC, except admits that during the alleged Class Period Bitfinex offered peer-to-peer margin trading to its customers,

admits that during the alleged Class Period Bitfinex required its customers to post 30 percent collateral to open a bitcoin-U.S. dollar margin trading position and to maintain 15 percent collateral to keep the position open, and admits that the margin trading feature was popular with Bitfinex customers.

319.    Defendant denies the allegations in Paragraph 319 of the SAC.

320.    Defendant denies the allegations in Paragraph 320 of the SAC, and respectfully refers the Court to the cited exchange and testimony of Mr. Devasini for their complete contents.

321.    Defendant denies the allegations in Paragraph 321 of the SAC.

### 3. Defendants Helped the Anonymous Trader's Bot Trade Large Volumes

322.    Defendant denies the allegations in Paragraph 322 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) "greenlaning" is a security feature that is available to Bitfinex customers who meet certain security requirements and that permits them to withdraw assets from the Bitfinex exchange without a manual email confirmation, (ii) the Anonymous Trader's account was "greenlaned," (iii) the default "greenlane" withdrawal limit was $250,000, (iv) a customer's "greenlane" withdrawal limit was set by reference to the assets the customer held on the Bitfinex exchange, and (v) at one time the Anonymous Trader had a "greenlane" withdrawal limit of $5 million.

323.    Defendant denies the allegations in Paragraph 323 of the SAC.

324.     Defendant denies the allegations in Paragraph 324 of the SAC, except admits that Bitfinex notified customers connected to its API of platform maintenance and updates that might impact automated trading activities, admits that Bitfinex's Head of Customer Support on occasion messaged customers to notify them of platform maintenance on Bitfinex, and respectfully refers the Court to the cited exchange and testimony by the Anonymous Trader for their complete contents.

325.    Defendant denies the allegations in Paragraph 325 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period, and (ii) the Anonymous Trader used Bitfinex's API to connect their automated software program to the exchange.  Defendant also admits that Bitfinex notified customers connected to its API of platform maintenance and updates that might impact automated trading activities.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exchange between the Anonymous Trader and Mr. de Wolf, and respectfully refers the Court to the cited exchange for its complete contents

326.    Defendant denies the allegations in Paragraph 326 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exchange between the Anonymous Trader and Mr. de Wolf, and respectfully refers the Court to the cited communications for their complete contents.

327.    Defendant denies the allegations in Paragraph 327 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader, like certain other Bitfinex customers, communicated with Mr. Devasini and Mr. Ardoino, and (ii) Bitfinex personnel offered technical support to its customers, including the Anonymous Trader.

328.    Defendant denies the allegations in Paragraph 328 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

329.    Defendant denies the allegations in Paragraph 329 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader and other Bitfinex customers were in the highest volume trading tier and thus

the lowest fee tier, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period. Defendant also admits that during the alleged Class Period Bitfinex charged order execution fees based on a customer's trading volume. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the operation of the Anonymous Trader's automated software program and the Anonymous Trader's transactions on other exchanges.

330. Defendant denies the allegations in Paragraph 330 of the SAC.

331. Defendant denies the allegations in Paragraph 331 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exchange between the Anonymous Trader and Mr. Devasini in November 2018, and respectfully refers the Court to the cited testimony by the Anonymous Trader and the cited exchange for their complete contents.

332. Defendant denies the allegations in Paragraph 332 of the SAC, except admits that Bitfinex extended credit lines to a limited number of customers. Defendant also admits, based on his recollection and/or information that has come to light during the litigation, that (i) Bitfinex required such credit lines to be overcollateralized by assets held in the customers' Bitfinex accounts, (ii) Bitfinex did not charge its customers fees or interest for credit lines that it extended to them, and (iii) Bitfinex extended credit lines to the Anonymous Trader on the same terms as other Bitfinex customers.

333. Defendant denies the allegations in Paragraph 333 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exchange between the Anonymous Trader and Mr. Devasini, lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what the Anonymous Trader

allegedly "was aware of," respectfully refers the Court to Defendant's answers to Paragraphs 170-72 above, and respectfully refers the Court to the cited exchange for its complete contents.

334.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 334 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

335.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exchange between the Anonymous Trader and Mr. Devasini, and respectfully refers the Court to the cited exchange for its complete contents.

336.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 336 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

**F. Debased USDT Traded for Cryptocommodities Artificially Inflated Cryptocommodity Prices—And Defendants Knew It**

337.    Defendant denies the allegations in Paragraph 337 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Roman Empire.

338.    Defendant denies the allegations in Paragraph 338 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding a hypothetical secret "debasement" of a "non-currency."

339.    Defendant denies the allegations in Paragraph 339 of the SAC, except admits that Tether stated during the alleged Class Period that USDT was backed by Tether's USDT reserves, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what "the market" allegedly understood.

340.    Defendant denies the allegations in Paragraph 340 of the SAC, except admits that (i) Tether issued USDT in exchange for U.S. dollars, (ii) Tether and Bitfinex were under common control and management during the alleged Class Period, (iii) at certain times during the alleged Class Period Tether issued USDT to Bitfinex prior to receiving a payment of U.S. dollars, (iv) Bitfinex paid Tether in full for all issuances of USDT, (v) USDT was backed by Tether's USDT reserves during the alleged Class Period, (vi) at certain times during the alleged Class Period Tether's USDT reserves included an account receivable for amounts owed by Bitfinex, and (vii) Bitfinex extended credit lines to a limited number of customers.  Defendant also admits, based on his recollection and/or information that has come to light during the litigation, that Bitfinex required such credit lines to be overcollateralized by assets held in the customers' Bitfinex accounts.

341.    Defendant denies the allegations in Paragraph 341 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations about how "the market would have responded" and what "the market would have understood."

342.    Paragraph 342 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 342 is necessary, Defendant denies them, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations about what "the market would understand."

343.    Paragraph 343 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 343 is necessary, Defendant denies them.

     1.  **Debased USDT Funded Massive Crypto-Asset Purchased on Bittrex and Poloniex**

344.    Defendant denies the allegations in Paragraph 344 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that (i) the Anonymous Trader was a Bitfinex customer during the alleged Class Period, and (ii) the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant also admits that during the time Defendant served as CSO, Bitfinex permitted customers to withdraw U.S. dollar balances from customer accounts in the form of either U.S. dollars or USDT.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the operation of the Anonymous Trader's automated software program and the Anonymous Trader's transactions on other exchanges.

345.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 345 of the SAC.

346.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 346 of the SAC.

347.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 347 of the SAC.

348.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary,

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 348 of the SAC.

349.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 349 of the SAC.

### 2.    The Scale and Impact of the Cryptocommodity Manipulation.

350.    Defendant denies the allegations in Paragraph 350 of the SAC, except admits that USDT was backed by Tether's USDT reserves during the alleged Class Period, lacks knowledge or information sufficient to form a belief of the truth of the allegations regarding what "the market" allegedly "believed" or "perceived."  Defendant states that analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

351.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 351 of the SAC.

352.    Defendant denies the allegations in Paragraph 352 of the SAC, and states that analysis of the Anonymous Trader's transactions and their purported impact on the price of bitcoin is a matter for expert opinion to which no response is required.

353.    Defendant denies the allegations in Paragraph 353 of the SAC, except admits, based on his recollection and/or information that has come to light during the litigation, that the Anonymous Trader used an automated software program to conduct cross-exchange arbitrage during the alleged Class Period.  Defendant lacks knowledge or information sufficient to form a

belief as to the truth of the allegations regarding the operation of the Anonymous Trader's automated software program. Defendant states that analysis of the Anonymous Trader's transactions and their alleged impact on the price of bitcoin is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

354. Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required. To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 354 of the SAC.

355. Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required. To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 355 of the SAC.

356. Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required. To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 356 of the SAC.

357. Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required. To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 357 of the SAC.

358. Defendant denies the allegations in Paragraph 358 of the SAC. Defendant states that analysis of the Anonymous Trader's transactions and their alleged impact on the price of

bitcoin is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

359.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 359 of the SAC.

360.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 360 of the SAC.

361.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 361 of the SAC.

362.    Analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required.  To the extent that any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 362 of the SAC.

363.    Defendant denies the allegations in Paragraph 363 of the SAC.

364.    Defendant denies the allegations in Paragraph 364 of the SAC.

365.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 365 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

366.    Defendant denies the allegations in Paragraph 366 of the SAC, and respectfully refers the Court to the cited exchange for its complete contents.

367.    Paragraph 367 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 367 is necessary, Defendant denies them.

### 3.    Independent Expert Analysis Corroborates the Existence of Defendants' Manipulative Scheme

368.    Defendant denies the allegations in Paragraph 368 of the SAC.

369.    Defendant denies the allegations in Paragraph 369 of the SAC, and respectfully refers the Court to the article cited in Footnote 123 for its complete contents.

370.    Defendant denies the allegations in Paragraph 370 of the SAC, and respectfully refers the Court to the cited article for its complete contents.

371.    Defendant denies the allegations in Paragraph 371 of the SAC, and respectfully refers the Court to the article cited in Footnote 124 for its complete contents.

372.    Defendant denies the allegations in Paragraph 372 of the SAC, and respectfully refers the Court to the article cited in Footnote 125 for its complete contents.

373.    Defendant denies the allegations in Paragraph 373 of the SAC, and respectfully refers the Court to the article cited in Footnote 126 for its complete contents.

374.    Defendant denies the allegations in Paragraph 374 of the SAC, and respectfully refers the Court to the article cited in Footnote 127 for its complete contents.

375.    Defendant denies the allegations in Paragraph 375 of the SAC, and respectfully refers the Court to the cited article for its complete contents.

376.    Defendant denies the allegations in Paragraph 376 of the SAC, and respectfully refers the Court to the article cited in Footnote 128 for its complete contents.

377.    Defendant denies the allegations in Paragraph 377 of the SAC.

378.    Defendant denies the allegations in Paragraph 378 of the SAC, and respectfully refers the Court to the article cited in Footnotes 129 and 130 for its complete contents.

379.    Defendant denies the allegations in Paragraph 379 of the SAC.

380.    Defendant denies the allegations in Paragraph 380 of the SAC, and respectfully refers the Court to the report cited in Footnote 131 for its complete contents.

381.    Defendant denies the allegations in Paragraph 381 of the SAC, and respectfully refers the Court to the report cited in Footnote 132 for its complete contents.

382.    Defendant denies the allegations in Paragraph 382 of the SAC, and respectfully refers the Court to the report cited in Footnote 133 for its complete contents.

383.    Defendant denies the allegations in Paragraph 383 of the SAC.  Defendant states that Tether's USDT issuances and redemptions are a matter of public record because they are visible on the blockchain.  Defendant further states that analysis of alleged crypto-asset transfers, trades, and price movements are matters for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

384.    Defendant denies the allegations in Paragraph 384 of the SAC, except lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the cited company's alleged "mission," and respectfully refers the Court to the post cited in Footnote 134 for its complete contents.

385.    Defendant denies the allegations in Paragraph 385 of the SAC, and respectfully refers the Court to the cited post for its complete contents.

**G.  Defendants Profited From Their Scheme**

386.    Defendant denies the allegations in Paragraph 386 of the SAC.

387.    Defendant denies the allegations in Paragraph 387 of the SAC, except admits that he has personally held and traded "cryptocommodities," as that term is used by Plaintiffs, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the B/T Defendants' alleged "cryptocommodity" holdings.

388.    Defendant denies the allegations in Paragraph 388 of the SAC, except admits that he has personally held and traded "cryptocommodities," as that term is used by Plaintiffs, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the B/T Defendants' alleged "cryptocommodity" holdings.  Defendant states that analysis of holdings of "cryptocommodities" is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

389.    Defendant denies the allegations in Paragraph 389 of the SAC, except admits that Tether was a pioneer in the stablecoin market and is now the largest stablecoin issuer by market capitalization.

390.    Defendant denies the allegations in Paragraph 390 of the SAC.  Defendant states that Tether's USDT issuances and redemptions are a matter of public record because they are visible on the blockchain.  Defendant further states that analysis of Tether's USDT issuances and redemptions is a matter for expert opinion to which no response is required; to the extent a response is required, Defendant denies those allegations.

391.    Defendant denies the allegations in Paragraph 391 of the SAC, except admits that Tether is now the largest stablecoin issuer by market capitalization, and admits that USDT is backed by Tether's USDT reserves.

392.    Defendant denies the allegations in Paragraph 392 of the SAC.

393.    Defendant denies the allegations in Paragraph 393 of the SAC.

## V.    CLASS ALLEGATIONS

394.    Paragraph 394 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 394 is necessary, Defendant denies them, except admits that Plaintiffs purport to assert claims on behalf of the alleged "Class."

395.    Paragraph 395 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 395 is necessary, Defendant denies them, except admits that Plaintiffs purport to assert claims on behalf of the alleged "Cryptocommodity Futures Subclass."

396.    Paragraph 396 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 396 is necessary, Defendant denies them, except admits that Plaintiffs purport to exclude certain person or entities from the definition of the alleged "Class."

397.    Paragraph 397 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 397 is necessary, Defendant denies them.

398.    Paragraph 398 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 398 is necessary, Defendant denies them.

399.    Paragraph 399 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 399 is necessary, Defendant denies them.

400.    Paragraph 400 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 400 is necessary, Defendant denies them.

401.    Paragraph 401 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 401 is necessary, Defendant denies them.

402.    Paragraph 402 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 402 is necessary, Defendant denies them.

403.    Paragraph 403 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 403 is necessary, Defendant denies them.

404.    Paragraph 404 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 404 is necessary, Defendant denies them.

405.    Paragraph 405 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 405 is necessary, Defendant denies them.

406.    Paragraph 406 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 406 is necessary, Defendant denies that Plaintiffs, or any alleged class members, are entitled to the orders requested, and denies that this action may properly be maintained as a class action pursuant to Rules 23(a), (b) and (c)(4) of the Federal Rules of Civil Procedure.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Market Manipulation
### Commodities Exchange Act

407.    Defendant repeats each of the foregoing responses.

408.    Paragraph 408 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 408 is necessary, Defendant denies them.

409.    Paragraph 409 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 409 is necessary, Defendant denies them.

410.    Paragraph 410 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 410 is necessary, Defendant denies them.

411.    Paragraph 411 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 411 is necessary, Defendant denies them.

412.    Paragraph 412 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 412 is necessary, Defendant denies them.

413.    Paragraph 413 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 413 is necessary, Defendant denies them.

414.    Paragraph 414 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 414 is necessary, Defendant denies them.

415.    Paragraph 415 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 415 is necessary, Defendant denies them.

416.    Defendant denies that Plaintiffs, or any alleged class members, are entitled to the relief requested or to any relief.

## SECOND CAUSE OF ACTION

### Monopolization
### Sherman Antitrust Act Section 2

417.    Defendant repeats each of the foregoing responses.

418.    Paragraph 418 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 418 is necessary, Defendant denies them.

419.    Paragraph 419 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 419 is necessary, Defendant denies them.

420.    Paragraph 420 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 420 is necessary, Defendant denies them.

421.    Paragraph 421 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 421 is necessary, Defendant denies them.

422.    Paragraph 422 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 422 is necessary, Defendant denies them.

423.    Paragraph 423 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 423 is necessary, Defendant denies them.

424.    Paragraph 424 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 424 is necessary, Defendant denies them.

425.    Paragraph 425 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 425 is necessary, Defendant denies them.

426.    Paragraph 426 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 426 is necessary, Defendant denies them.

427.    Defendant denies that Plaintiffs, or any plaintiff class, are entitled to the relief requested or to any relief.

### THIRD CAUSE OF ACTION

**Agreement in Restraint of Trade**
**Sherman Antitrust Act Sections 1 and 3**

428.    Defendant repeats each of the foregoing responses.

429.    Paragraph 429 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 429 is necessary, Defendant denies them.

430.    Paragraph 430 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 430 is necessary, Defendant denies them.

431.    Paragraph 431 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 431 is necessary, Defendant denies them.

432.    Paragraph 432 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 432 is necessary, Defendant denies them.

433.    Paragraph 433 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 433 is necessary, Defendant denies them.

434.    Paragraph 434 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 434 is necessary, Defendant denies them.

435.    Paragraph 435 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 435 is necessary, Defendant denies them.

436.    Paragraph 436 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 436 is necessary, Defendant denies them.

437.    Paragraph 437 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 437 is necessary, Defendant denies them.

438.    Paragraph 438 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 438 is necessary, Defendant denies them.

439.    Paragraph 439 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 439 is necessary, Defendant denies them.

440.    Paragraph 440 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 440 is necessary, Defendant denies them.

441.    Paragraph 441 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 441 is necessary, Defendant denies them.

442.    Paragraph 442 of the SAC states legal conclusions to which no response is necessary.  To the extent that any response to the allegations in Paragraph 442 is necessary, Defendant denies them.

443.    Defendant denies that Plaintiffs, or any plaintiff class, are entitled to the relief requested or to any relief.

## COSTS, INTEREST, AND ATTORNEYS' FEES

444.    Defendant denies that Plaintiffs and the putative class are entitled to any relief, and respectfully requests that the Court dismiss all of the claims against Defendant with prejudice and order such further relief as the Court deems just and proper.

## JURY TRIAL

445.    No response is required to Plaintiffs' demand for a jury trial.

## GENERAL DENIAL

Defendant denies each and every allegation in the SAC, except as expressly admitted or otherwise stated above.

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the foregoing denials, Defendant asserts the following defenses.  By asserting these defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs.  No assertion of any defense is intended or may be construed as a concession that any particular issue or subject matter is relevant to Plaintiffs' allegations.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to plead fraud with particularity.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Plaintiffs cannot show loss causation.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Plaintiffs have failed to adequately plead reliance on any alleged misrepresentation or omission.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Plaintiffs have not suffered any damages or injury resulting from any act or omission of Defendant.  In the alternative, Plaintiffs' claims are barred,

in whole or in part, because the damages alleged in the SAC are speculative, remote, and/or not subject to proof or allocation.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Plaintiffs cannot show that Defendant acted with scienter.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs do not have standing to assert the claims in the SAC.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are not properly maintainable as class action claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs are not adequate class action representatives.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by laches, equitable estoppel, waiver, or other related equitable doctrines.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the substance of the information Plaintiffs allege was omitted or misrepresented was disclosed or was otherwise known to the markets and/or Plaintiffs.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Plaintiffs did not act with due diligence.

## FOURTEENTH AFFIRMATIVE DEFENSE

Should Plaintiffs recover damages from Defendant, Defendant is entitled to indemnification or contribution, either in whole or in part, from all persons or entities who caused Plaintiffs' damages.

### FIFTHTEENTH AFFIRMATIVE DEFENSE

Defendant did not engage in any conduct, combination, or conspiracy in restraint of trade.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' causes of action are barred, in whole or in part, because the alleged conduct did not lessen competition in any relevant market or markets.

### SEVENTEENTH AFFIRMATIVE DEFENSE

The purported relevant market alleged in the SAC is not a relevant antitrust market, and Plaintiffs cannot carry their burden of defining a proper relevant market.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Any and all of the challenged actions by Defendant were lawful, reasonable, justified, constitute bona fide business practices, and were carried out in furtherance of legitimate business interests, and therefore did not violate any law at issue and have not caused any injury to competition, the public, or Plaintiffs.

### NINETEENTH AFFIRMATIVE DEFENSE

Defendant did not manipulate the price of digital assets.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims fail because the relevant injuries, if any, were not proximately caused by the acts or omissions of Defendant, but, if they exist at all, were the result in whole or in part of intervening or supervening causes, and/or are impermissibly derivative rather than direct.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The injuries asserted by Plaintiffs, if any exist, were caused in whole or in part by the conduct of third parties for whom Defendant was not responsible, or through normal marketplace forces outside of their control.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, in whole or in part, because any claimed injury or damage has been offset by benefits or payments Plaintiffs received.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, in whole or in part, because the relief sought is broader than what is necessary to remedy the alleged harm.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs would be unjustly enriched if they were permitted to obtain recovery in this action.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendant hereby adopts and incorporates by reference any and all other defenses asserted or to be asserted by any other defendant to the extent that Defendant may share in such a defense.

### RESERVATION OF RIGHTS

This Answer is based on information currently available to Defendant. Defendant reserves the right to assert additional affirmative defenses to the extent they become known through discovery or otherwise following the date of this Answer. Defendant further reserves the right to withdraw defenses that he determines are not applicable during the course of discovery and other proceedings in this action.

### DEMAND FOR JURY TRIAL

Defendant demands a trial by jury in this action on all issues so triable.

### CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court enter judgment in his favor, against Plaintiffs, as follows:

a. a judgment denying all relief against them on all counts;

b. awarding him his reasonable attorneys' fees and costs; and

c. for such other and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of September 2024.

**WILLKIE FARR & GALLAGHER LLP**

*/ s / Charles D. Cording_____*
Charles D. Cording
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
Tel.: (212) 728-8000
Email: CCording@willkie.com

*Attorney for Defendant Philip G. Potter*

- 75 -