# Exhibit 28
# Filed Under Seal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF)<br><br>**ATTORNEYS' EYES ONLY** |

**B/T DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES 16-25**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and Local Civil Rule 33.3, Defendants iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Operations Limited, Tether Limited, Tether International Limited, DigFinex Inc., Giancarlo Devasini, and Ludovicus Jan van der Velde (together, the "B/T Defendants"), by their undersigned counsel, object and respond to Plaintiffs' Interrogatories 16-25 (the "Interrogatories") addressed to the B/T Defendants.

**INTRODUCTORY STATEMENT**

Nothing in the B/T Defendants' responses and objections herein shall be construed as a waiver of their rights to: (i) object on the grounds of competency, relevance, materiality, hearsay, admissibility or any other proper grounds to the use of any information provided in response to the Interrogatories, or the subject matter thereof, for any purpose, in whole or in part, in any subsequent stage or proceeding in this or any other action; (ii) object on any and all grounds, at any time, during any discovery procedure relating to the subject matter of these documents in this or any other action; (iii) object on any grounds to any request for further responses to the Interrogatories or any other discovery requests; or (iv) assert the attorney-client privilege, the work product doctrine, and/or any other applicable privilege, protection, or prohibition against

disclosure. These objections and responses do not constitute, and shall not be interpreted as the B/T Defendants' agreement with, or admission as to the truth or accuracy of, any legal or factual characterization or allegation stated or implied in Plaintiffs' Definitions and Instructions or in any of the individual Interrogatories.

All of the General Objections and Objections to Definitions and Instructions set forth herein are incorporated into each of the Specific Objections and Responses to the individual Interrogatories set forth below and have the same force and effect as if fully set forth therein. Without waiving any of the General Objections to the extent they apply to each of the individual Interrogatories, the B/T Defendants may specifically refer to certain General Objections in responding to a particular Interrogatory. The failure of the B/T Defendants to object to any specific Interrogatory or Definition and Instruction on a particular ground shall not be construed as a waiver of their rights to object on any additional ground(s). Any objection or lack of an objection to any portion of an individual Interrogatory shall not be deemed an admission that the B/T Defendants can identify information in response to such Interrogatory. A partial answer to any Interrogatory to which the B/T Defendants have objected, in whole or in part, is not intended to be a waiver of the objection.

These responses are based on the information currently available to the B/T Defendants. The B/T Defendants reserve the right to amend, supplement, or modify their responses and objections at any time in the event that they obtain additional or different information to the extent required under Rule 26(e)(1) of the Federal Rules of Civil Procedure.

## **GENERAL OBJECTIONS**

1. The B/T Defendants object to each Interrogatory and to each Definition and Instruction to the extent that they seek information that is neither relevant to the claims or

defenses asserted in this action nor proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

2. The B/T Defendants object to each Interrogatory and to each Definition and Instruction as overly broad and unduly burdensome to the extent that they purport to require the B/T Defendants to "state all facts and Identify all Documents (by Bates number) and testimony that support [the B/T Defendants'] contention[s]." Where appropriate, the B/T Defendants will instead provide the primary factual bases for their contentions. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 6290584, at *3 (S.D.N.Y. Oct. 27, 2020) (holding that contention interrogatories are "proper" where they ask the party to "explain the factual bases" for its contentions "by providing the material facts upon which [it] will rely, but not a detailed and exhaustive listing of all the evidence that will be offered"); *Linde v. Arab Bank, PLC*, 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012) ("Courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and piece of evidence a party may wish to offer concerning a given issue at trial.").

3. The B/T Defendants object to each Interrogatory and to each Definition and Instruction to the extent that they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, joint defense privilege, common interest privilege, or any other applicable privileges, protections, or prohibitions against disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege, protection,

3

or prohibition against disclosure is not intended and should not be construed to constitute a waiver of such privilege or protection, or concession that no such prohibition applies.

4. The B/T Defendants object to each Interrogatory and to each Definition and Instruction to the extent that they are unreasonably cumulative, duplicative, or seek information or documents obtainable from some other source that is more convenient, less burdensome, or less expensive than the efforts it would take for the B/T Defendants to provide the information or documents, including through requests for production under Rule 34 of the Federal Rules of Civil Procedure. *See* Local Rule 33.3(b)(1) (interrogatories may be served during discovery only "if they are a more practical method of obtaining the information sought than a request for production or a deposition"); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

5. The B/T Defendants object to each Interrogatory and to each Definition and Instruction to the extent that they seek information that is not in the possession, custody or control of the B/T Defendants.

6. The B/T Defendants object to each Interrogatory and to each Definition and Instruction to the extent that they seek information already in the possession, custody or control of Plaintiffs or that is obtainable from public sources.

7. The B/T Defendants object to each Interrogatory to the extent that it calls for disclosure of evidence to be presented by any expert, including through an expert report or testimony, in advance of the deadline for disclosure of such evidence, and the B/T Defendants will not make such premature disclosures. The B/T Defendants reserve the right to rely on any

appropriate evidence presented by any expert, including in connection with subjects relating to any Interrogatory.

8. The uniform definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules are incorporated by reference as if fully set forth herein, except as stated otherwise.

9. The B/T Defendants object to Plaintiffs' use of the term "US dollars" in Interrogatory Nos. 16, 17, 18, 19, 21, and 22 as vague and ambiguous. The B/T Defendants will interpret "US dollars" to refer only to the fiat currency of U.S. dollars, and not any U.S. dollar-equivalents.

## OBJECTIONS TO THE DEFINITIONS AND INSTRUCTIONS

1. The B/T Defendants object to the Definitions and Instructions insofar as they are broader than or purport to require more than the requirements of the Federal Rules of Civil Procedure and the Local Rules. The B/T Defendants will respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Rules.

2. The B/T Defendants object to Definition 8 as vague and confusing, and note that Plaintiffs do not use the defined terms in these Interrogatories.

3. The B/T Defendants object to Definitions 10 and 24 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that they refer to persons or entities other than the B/T Defendants, as defined above, and for the avoidance of doubt, iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Operations Limited, Tether Limited, Tether International Limited, DigFinex Inc., Giancarlo Devasini, and Ludovicus Jan van der Velde. The B/T Defendants will interpret "You," "Your," "Defendant," and "B/T Defendants" to mean the B/T Defendants listed in the preceding sentence.

5

4. The B/T Defendants object to Definition 11 to the extent that the definition of the term "burn" does not reflect the B/T Defendants' actual practices, and note that Plaintiffs do not use the term "burn" in these Interrogatories.

5. The B/T Defendants object to Definition 13 to the extent it is broader than or purports to require more than the Federal Rules of Civil Procedure and the Local Rules.

6. The B/T Defendants object to Definition 14 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it refers to persons or entities other than Poloniex, LLC and Bittrex, Inc. The B/T Defendants note that Plaintiffs do not use the term "Exchange Defendants" in these Interrogatories.

7. The B/T Defendants object to Definition 18 as vague and confusing, and will interpret "issuance" to the mean the process of releasing USDT into circulation by providing it to a customer and "issue" to mean the action of releasing USDT into circulation by providing it to a customer.

8. The B/T Defendants object to Definition 20 as vague, confusing, and overly broad, and note that Plaintiffs do not use those defined terms in these Interrogatories.

9. The B/T Defendants object to Definition 21 as vague and confusing, and will interpret "Reserves" to mean the assets that backed USDT between February 17, 2015 and June 5, 2020 (the "Relevant Period").

10. The B/T Defendants object to Definition 23 as vague and confusing, and will interpret "USDT" to mean the token created by the B/T Defendants that is pegged 1-to-1 to the U.S. dollar and trades under the symbol USD₮.

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 16:**

Do you contend that Tether issued USDT only in exchange for a contemporaneous exchange of US dollars during the entire relevant period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 16:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 16 as vague insofar as it refers to a "contemporaneous exchange" of U.S. dollars for USDT, and will interpret "contemporaneous" to mean occurring on the same day.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: No, the B/T Defendants do not contend that Tether issued USDT only in exchange for a contemporaneous exchange of U.S. dollars during the entire relevant period.

**INTERROGATORY NO. 17:**

Do you contend that USDT issued by Tether was fully backed one-to-one by US dollars held in accounts controlled by Tether during the entire relevant period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 17:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 17 as vague insofar as it refers to accounts "controlled by Tether," and will interpret that phrase to mean accounts held by or for Tether.

7

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: No, the B/T Defendants do not contend that USDT issued by Tether was fully backed one-to-one by U.S. dollars held in accounts controlled by Tether during the entire relevant period; Tether's USDT reserves comprised the assets identified in response to Plaintiffs' Interrogatory No. 13, including at certain times during the Relevant Period gold holdings and receivables for amounts that Bitfinex owed to Tether, among other assets.

**INTERROGATORY NO. 18:**

Do you contend that for Bitfinex payables owed to Tether for USDT issuances, Bitfinex held sufficient US Dollars to cover the full amount of those payables at the time of USDT issuance after excluding (a) any customer assets held by Bitfinex; and (b) any USDT issued by Tether to Bitfinex in exchange for receivables (or the US dollar equivalent)? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 18:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 18 as being overbroad and unduly burdensome and seeking discovery that is not relevant to the parties' claims and defenses or proportional to the needs of the case. Whether Bitfinex held sufficient U.S. dollars to pay Tether for USDT issuances at the time of the issuance is not relevant to Plaintiffs' claims and was not the subject of any request for production. The B/T Defendants also object to the reference to "USDT issued by Tether to Bitfinex in exchange for receivables" as vague and confusing because Tether did not issue USDT in exchange for receivables. Instead, Tether issued USDT to Bitfinex in exchange for U.S. dollars, and where Tether did not immediately receive that payment, Tether temporarily held and counted as part of

8

its USDT reserves a "receivable" in the amount of the issued USDT. The B/T Defendants further object to this Interrogatory to the extent it calls for disclosure of evidence to be presented by any expert in advance of the deadline for disclosure of such evidence, and the B/T Defendants will not make such premature disclosures.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: Yes, the B/T Defendants contend that Bitfinex held sufficient U.S. dollars to pay Tether for USDT issuances at the time of each issuance after excluding (1) customer assets held by Bitfinex and (2) any USDT issued to Bitfinex for which Bitfinex did not immediately provide payment in U.S. dollars and for which Tether recorded a receivable until such payment was received. The primary factual bases for that contention are the evidence that the B/T Defendants identified in response to Plaintiffs' Interrogatory No. 13 and in their October 13, 2023 letter pursuant to the Court's September 27, 2023 Order (Dkt. No. 460), as well as the deposition testimony of Mr. Devasini (*e.g.*, Tr. 40-41, 73-82), Paolo Ardoino, testifying as one of the Bitfinex Rule 30(b)(6) designees (*e.g.*, Tr. at 49-60, 66), and Philip Potter (*e.g.*, Tr. at 179-82, 241-42). In addition, to the extent necessary, the B/T Defendants will also rely upon testimony at trial to provide a factual basis for this contention.

**INTERROGATORY NO. 19:**

> Do you contend that Bitfinex held sufficient US dollars in bank accounts that it controlled, excluding customer assets, to cover all loans of US dollars or USDT made by Bitfinex (whether as credit lines, enabling of margin trading, or otherwise) throughout the relevant period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 19:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 19 as being overbroad and unduly burdensome and seeking discovery that is not relevant to the parties' claims and defenses or proportional to the needs of the case insofar as it concerns Bitfinex's loans of U.S. dollars or USDT to third parties. The Court expressly denied Plaintiffs' request for testimony from Bitfinex under Rule 30(b)(6) regarding Bitfinex's loans after the B/T Defendants argued that the topic was "wholly irrelevant" to the claims and defenses in this litigation. (Dkt. No. 431 at 2; Dkt. No. 445 at 4.) Moreover, Bitfinex's ability to "cover" loans is not the subject of any agreed or Court-ordered request for production.[1]

The B/T Defendants also object to this Interrogatory as vague and confusing insofar as it refers to the sufficiency of U.S. dollars held by Bitfinex to "cover all loans of US dollars or USDT made by Bitfinex," and will interpret this Interrogatory to concern whether Bitfinex owned the U.S. dollars or USDT that it lent to others. The reference to "margin trading" is confusing and nonsensical as the B/T Defendants have informed Plaintiffs on several occasions that margin trading on the Bitfinex exchange does not constitute a loan by Bitfinex. (*E.g.*, Dkt. No. 459 at 3.)

The B/T Defendants further object to this Interrogatory to the extent it calls for disclosure of evidence to be presented by any expert in advance of the deadline for disclosure of such evidence, and the B/T Defendants will not make such premature disclosures.

---

[1] Plaintiffs' only RFP concerning loans by the B/T Defendants is RFP 37, which the parties agreed would be limited to documents sufficient to show loans of USDT "either (i) between Bitfinex and Tether or (ii) by the B/T Defendants to any U.S. Exchange Defendant or the Anonymous Trader." (July 14, 2022 Ltr. at 4; *see also* Aug. 29, 2022 Ltr. at 6-7.)

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: Yes, the B/T Defendants contend that Bitfinex owned any U.S. dollars or USDT that it lent to others during the relevant period. The primary factual bases for that contention are the deposition testimony of Mr. Devasini (*e.g.*, Tr. 108, 119-22), Mr. Ardoino, testifying as one of the Bitfinex Rule 30(b)(6) designees (*e.g.*, Tr. 252-53, 282), and Bjorn de Wolf (*e.g.*, Tr. 113). In addition, to the extent necessary, the B/T Defendants will also rely upon testimony at trial to provide a factual basis for this contention.

**INTERROGATORY NO. 20:**

> Do you contend that Bitfinex did not track assets as backing payables to Tether for issued USDT that it also tracked as backing loans to Bitfinex customers (whether as credit lines, margin accounts, or otherwise) during the entire relevant period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 20:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 20 as being overbroad and unduly burdensome and seeking discovery that is not relevant to the parties' claims and defenses or proportional to the needs of the case insofar as it concerns whether Bitfinex held sufficient U.S. dollars to pay Tether for USDT issuances at the time of the issuance. (*See* Response No. 18, *supra*.) The B/T Defendants object to the reference to "margin accounts" for the reasons discussed in Response No. 19. The B/T Defendants also object to this Interrogatory on the basis that it concerns Bitfinex's purported "tracking" of assets "backing payables to Tether" and "backing loans to Bitfinex customers" whereas Bitfinex did not maintain or designate specific accounts or assets as backing for specific payables.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: Yes, the B/T Defendants contend that Bitfinex did not track assets as backing payables to Tether for issued USDT that it also tracked as backing loans to Bitfinex customers during the entire relevant period; Bitfinex did not track specific assets against specific payables or other obligations. The primary factual basis for that contention is the lack of any evidence in the record indicating that Bitfinex did track specific assets against specific payables or other obligations. To the extent necessary, the B/T Defendants will rely upon testimony at trial to provide a factual basis for this contention.

**INTERROGATORY NO. 21:**

Do you contend that B/T Defendants cannot identify the quantity of USDT deposited on or transferred to accounts on the Bitfinex exchange that it credited as US dollars during the relevant period up through November 2018? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 21:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: No, the B/T Defendants do not contend that they cannot identify the quantity of USDT deposited on or transferred to accounts on the Bitfinex exchange that it credited as U.S. dollars during the relevant period up through November 2018; that said, doing so would impose a substantial and undue burden on the B/T Defendants.

**INTERROGATORY NO. 22:**

Do you contend that B/T Defendants cannot identify trades of US dollars for cryptocommodities (or vice versa) made on the Bitfinex exchange that were backed by loans from Bitfinex to itself or its customers (whether as credit lines, margin accounts, or otherwise), including the dates, times, trading pairs, amounts, and accounts during the entire relevant time period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 22:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 22 as vague and confusing insofar as it refers to trades "that were backed by loans" and will interpret that phrase to mean trades using borrowed funds. The B/T Defendants also object to this Interrogatory as seeking discovery that has no relevance to Plaintiffs' claims. The B/T Defendants object to the reference to "margin accounts" for the reasons discussed in Response No. 19.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: The B/T Defendants contend that they cannot identify trades of U.S. dollars for cryptocommodities (or vice versa) made on the Bitfinex exchange by Bitfinex or its customers using funds borrowed from Bitfinex. This topic was not the subject of any discovery in this litigation, and, to the extent necessary, the B/T Defendants intend to rely upon testimony at trial to provide the factual basis for this contention.

**INTERROGATORY NO. 23:**

Do you contend that B/T Defendants did not know or have access to parameters that the Anonymous Trader established for the bot that he created on the Bitfinex exchange during the relevant period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

13

**RESPONSE NO. 23:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 23 as vague and confusing as to "parameters" for the Anonymous Trader's bot.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: While the B/T Defendants had a general understanding that the Anonymous Trader used a bot on the Bitfinex exchange to engage in cross-exchange arbitrage, they did not know or have access to any specific parameters that the Anonymous Trader established for that bot during the relevant period. The primary factual bases for that contention are the deposition testimony of the Anonymous Trader (*e.g.*, Tr. 58-67), Mr. Devasini (*e.g.*, Tr. 303-309), Mr. de Wolf (*e.g.*, Tr. 20), and Mr. Ardoino, testifying individually (*e.g.*, Tr. 148-49) and as one of the Bitfinex Rule 30(b)(6) designees (*e.g.*, Tr. 99-102, 107-108, 177-80). In addition, to the extent necessary, the B/T Defendants will also rely upon testimony at trial to provide a factual basis for this contention.

**INTERROGATORY NO. 24:**

Do you contend that B/T Defendants were not aware of periods during the relevant period when prices of crypto-assets on the Bitfinex exchange were higher compared to other crypto-exchanges? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 24:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 24 as vague and confusing as to "crypto-assets," and will interpret that term to refer to individual crypto-assets, rather than the class of crypto-assets as a whole.

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: No, the B/T Defendants contend that they were aware of periods during the relevant period when prices of individual crypto-assets on the Bitfinex exchange were higher compared to other crypto-exchanges.

**INTERROGATORY NO. 25:**

Do you contend that B/T Defendants did not know or understand that the Anonymous Trader's bot on the Bitfinex exchange was programmed to automatically withdraw USDT without human intervention during the relevant period? If your answer is anything other than an unqualified no, state all facts and Identify all Documents (by Bates number) and testimony that support your contention.

**RESPONSE NO. 25:**

The B/T Defendants incorporate each of their General Objections and Objections to the Definitions and Instructions as if specifically set forth herein. The B/T Defendants further object to Interrogatory 25 as vague and confusing as to "during the relevant period," and will interpret that phrase to mean "at any point during the relevant period."

Subject to and without waiving the foregoing objections, and reserving all rights to supplement this Response, the B/T Defendants respond as follows: No, the B/T Defendants contend that they did know or understand that the Anonymous Trader's bot on the Bitfinex exchange was programmed to automatically deposit and withdraw USDT and other crypto-assets as part of his cross-exchange arbitrage strategy without human intervention during the relevant period.

15

Dated: October 23, 2023

As to Objections:

| | |
|---|---|
| Michael Jason Lee<br>LAW OFFICES OF MICHAEL<br>JASON LEE, APLC<br>4660 La Jolla Village Drive, Suite 100<br>San Diego, California 92122<br>(858) 550-9984<br><br>Sunjina K. Ahuja<br>Christopher J. Beal<br>DILLON MILLER AHUJA & BOSS LLP<br>5872 Owens Ave., Suite 200<br>San Diego, CA 92008 | /s/ Elliot Greenfield<br>Maeve L. O'Connor<br>Andrew J. Ceresney<br>Michael Schaper<br>Elliot Greenfield<br>DEBEVOISE & PLIMPTON LLP<br>66 Hudson Boulevard<br>New York, New York 10001<br>(212) 909-6000<br><br>*Attorneys for Defendants Tether Holdings Limited, Tether Limited, Tether International Limited, Tether Operations Limited, iFinex Inc., DigFinex Inc., BFXNA Inc., BFXWW Inc., Ludovicus Jan van der Velde, and Giancarlo Devasini* |

16

**Verification to Follow**

17