

Selendy|Gay

February 12, 2025

**Via ECF**
Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

**MEMO ENDORSED**

Re:   *In re Tether and Bitfinex Crypto Asset Litigation*, 19-CV-09236 (KPF) (S.D.N.Y.)

Dear Judge Failla,

We write on behalf of Plaintiffs to oppose B/T Defendants' Letter Motion to Preclude Expert Rebuttal Reports and for an Extension of Time (Dkt. 596, the "Motion").

**I.   Plaintiffs Should Be Permitted to Serve Rebuttal Expert Reports**

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) (the "Rule") expressly permits parties to submit expert evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Consistent with the Rule, courts in this District routinely allow plaintiffs to submit, with their reply class certification papers, expert reports responding to opinions or criticisms offered by defendants' experts—even if the relevant scheduling orders do not expressly allow them. *See*, *e.g.*, *Iowa Pub. Emps. Ret. Sys. v. Bank of Am. Corp.*, No. 17-CV-6221 (KPF), Dkts. 298, 476 (S.D.N.Y. Oct. 21, 2021); *In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), Dkts. 192, 338 (S.D.N.Y. Nov. 23, 2015).[1] Per the Rule and this common practice, Plaintiffs may submit such expert reports with their class certification reply papers in this case.

Defendants' assertion that the Scheduling Order (Dkt. 578) forbids expert reports with class certification reply papers, Mot. at 1, is incorrect. Nowhere in that Order (or elsewhere) did Plaintiffs waive their rights under the Rule to serve such reports, and they would not have done so. Courts overwhelmingly reject arguments that scheduling orders that are silent on this issue bar rebuttal reports. *See S.E.C. v. Badian*, 2009 WL 5178537, at *4 (S.D.N.Y. Dec. 23, 2009);[2] *Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, 2013 WL 5771166, at *4 (D. Conn. 2013). This is more than sufficient to deny Defendants' motion.

If the Court believes that it should modify or clarify the Scheduling Order, we respectfully ask that Plaintiffs be permitted to serve their expert rebuttal reports by June 13, 2025, the current deadline for class certification replies. Courts regularly modify scheduling orders to permit such

---

[1] *Sandata Technologies, Inc. v. Infocrossing, Inc.*, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007), the only case Defendants cite (Mot. at 2), is not to the contrary. There, the party seeking to submit an expert report (1) represented that it would not file *any* expert reports; (2) subsequently filed an *opening* report on the date the parties were to exchange *rebuttal* reports; and (3) later attempted to submit another report after the expert discovery deadline had passed. *Id.* at *1-2. None of those circumstances are present here.

[2] Defendants fail to distinguish *Badian*, Mot. at 2: Here, as there, the Scheduling Order provides deadlines for the parties' initial class certification reports but is silent on class certification rebuttal reports.

reports. *See, e.g.*, *Badian*, 2009 WL 5178537, at *7; *Associated Elec. Gas Ins. Servs.*, 2013 WL 5771166, at *1, *4. As the party with the burden of proof on class certification, Plaintiffs should be allowed to have their experts respond to Defendants' critiques of those experts' work, as provided by the Rule. Rebuttal reports will assist the Court by crystalizing any points of disagreement among the parties' experts on specialized subjects and will ensure that the Court has a robust record on which to rule. This modification will not affect any current deadline.

Defendants' claims of prejudice are, at best, premature, as Plaintiffs have not yet served their rebuttal reports. Until they do so, Defendants' assertion that these reports will offer new opinions "for the first time on reply when Defendants have no opportunity to respond," Mot. at 2, is rank speculation. It is also speculative that Defendants will not be able to re-depose Plaintiffs' experts or serve sur-reply papers if warranted. *Id*. If, after reviewing Plaintiffs' rebuttal reports, Defendants have a valid basis to seek additional depositions or briefing, they can ask the Court for such relief at that point. *See, e.g.*, *Iowa Pub. Emps. Ret. Sys. v. Bank of Am. Corp.*, No. 17-CV-6221 (KPF), Dkt. 476 (S.D.N.Y. Oct. 21, 2021) (allowing submission of a 15-page sur-reply after a class certification movant submitted voluminous rebuttal reports alongside their reply brief). But Defendants' speculation about future prejudice cannot warrant the "drastic remedy" of excluding Plaintiffs' experts from serving rebuttal reports at all, which would be contrary to the "judicial preference for determination of issues on the merits." *In re Specialist & Other Vessel Owner Limitation Actions*, 2020 WL 8665287, at *2 (S.D.N.Y. June 30, 2020) (internal quotations and citation omitted).

## II. Defendants' Request for Yet Another Extension Should Be Denied

Defendants' basis for their requested three-week extension to file their class certification papers—that Plaintiffs purportedly "delayed production of information required by" the Expert Discovery Stipulation and Order (Dkt. 589, the "Expert Stipulation")—is false.

**DeRamus Report**. The DeRamus Report contains 719 detailed footnote citations. While Defendants say that a small subset of citations referencing "backup materials" were "vague," Mot. at 3, the Report clearly identified the location of those materials: (1) specific figures (and the data and calculations underlying them) with dedicated, clearly labeled backup folders;[3] (2) Defendants' own transactions, pulled from Defendants' own records and stored in dedicated backup folders;[4] (3) simple calculations apparent on the face of the Report, replicated in a dedicated backup folder;[5] (4) publicly available data and blockchain data, that were processed and segregated in readily

---

[3] For example, FN 85 relates to outstanding USDT during the Class Period, as depicted in Figure 3. The backup materials, in turn, contain a "figure to production" mapping document, as well as a clearly-labeled "Figures" folder with the underlying calculations and data for each figure.

[4] For example, FN 468 relates to the Anonymous Trader's transactions on a specific date. The backup materials, in turn, contain an "AT Transaction" folder with a file of the Anonymous Trader's processed transaction data, as well as a source code file, otherwise known as a "script," that pulls the Anonymous Trader's transactions from the data file for the date in question. A cursory review of the script file makes the relevant portion readily apparent.

[5] For example, FN 149 relates to Poloniex's generated fees during the Class Period. The calculation of the numbers—and the sources of the numbers—appear in the above-line text itself, though the backup materials' scripts also lay out a replication of that calculation.

identifiable backup folders;[6] and (5) details and sensitivities regarding DeRamus' econometric analyses, sequestered in a separate "analysis" backup folder and organized by topic.[7] These materials, along with the mapping document Plaintiffs had already provided, enabled Defendants to understand and reproduce the calculations in the DeRamus Report, thereby fully satisfying Plaintiffs' obligation under the Expert Stipulation. Expert Stipulation ¶ 3. Even if these citations were somehow insufficient (they were not), Plaintiffs provided an additional spreadsheet further mapping the citations to the corresponding supporting materials within three business days of Defendants' request, on January 27, 2025, Mot. at 3—leaving Defendants over six weeks to take DeRamus's deposition.[8]

**Malek Report**. While Defendants say that Plaintiffs failed to produce spreadsheets underlying eight exhibits to the Malek Report, Mot. at 3, that Report complied with the Expert Stipulation by setting forth all the information necessary for Defendants to understand and recreate those exhibits: (1) the Report details how Malek generated each exhibit;[9] (2) each exhibit includes notes and sources describing Malek's calculations;[10] (3) and the accompanying workpapers contain the underlying data, inputs, analyses, and calculations that Malek used to generate the exhibits.[11] Defendants do not explain why this information was insufficient for them to understand and reproduce Malek's work. In any event, after Defendants first raised this issue on January 28, 2025, Plaintiffs provided Excel-format versions of the eight exhibits three days later, on January 31, 2025—leaving Defendants six weeks to take Malek's deposition.

Because Defendants fail to show any deficiency in either the DeRamus or Malek Report, and had over six weeks to depose Plaintiffs' experts in any event, they fail to show the good cause for their (second) request for (another) three-week extension of the schedule. *See Whitney Lane Holdings, LLC v. Sgambettera & Assocs., P.C.*, 2011 WL 4711882, at *1 (E.D.N.Y. Oct. 4, 2011). ("[T]o demonstrate 'good cause' a party must show that despite their diligence the time table could not have reasonably been met.") (internal citation omitted); *see also* Dkt. 563 (describing existing class certification briefing schedule as generous).

---

[6] For example, FN 691 relates to Google Trends data, and FN 405 to Tether blockchain data. The backup materials' data folder contains separate "Trends" and "Tether blockchain" folders with the relevant underlying data. The "Trends" folder also includes a text file detailing exactly how DeRamus obtained the Google Trends data.

[7] For example, FN 679 relates to a "lag" used to confirm the robustness of DeRamus' overcharge model. The backup materials' "analysis" folder contains an "overcharge model" folder which, in turn, includes a file with the sensitivity analyses of DeRamus's overcharge model.

[8] While Defendants complain about receiving a "terabyte of data comprising over 89,000 files," Mot. at 3, 95% of that data is raw data files, clearly stored in a discrete location, separate from other backup folders.

[9] For example, Mr. Malek elaborates on the steps he took to generate Exhibit 1, including how he identified USDT issuances with "early," "same-day," "late," or no cash receipts. Dkt. 587-1 ¶¶ 60-63.

[10] For example, the "Notes and Sources" section of Exhibit 2 details calculations and provides that "the initial calculation for 'USDT in Circulation Net of Noncompliant Issuances' is 'USDT in Circulation' less 'Noncompliant Issuances.'" Dkt. 587-1 at Ex. 2.

[11] For example, Workpaper 1 contains the relevant inputs for each calculation and calculates USDT in circulation based on all USDT issuances and redemptions (more than 8,000 transactions in total) during the Class Period, each of which was provided to Defendants in Workpaper 1 on January 15.

Respectfully submitted,

| | |
|---|---|
| /s/ Andrew R. Dunlap | /s/ Todd M. Schneider |
| Philippe Selendy | Todd M. Schneider (*pro hac vice*) |
| Andrew R. Dunlap | Matthew S. Weiler (*pro hac vice*) |
| Oscar Shine | SCHNEIDER WALLACE COTTRELL |
| Laura M. King | KONECKY LLP |
| SELENDY GAY PLLC | 2000 Powell Street, Suite 1400 |
| 1290 Sixth Avenue | Emeryville, CA 94608 |
| New York, NY 10104 | tschneider@schneiderwallace.com |
| pselendy@selendygay.com | mweiler@schneiderwallace.com |
| adunlap@selendygay.com | |
| oshine@selendygay.com | |
| lking@selendygay.com | |

The Court is in receipt of B/T Defendants' letter motion regarding the schedule for class certification briefing and expert reports. (Dkt. #596). The Court is also in receipt of Plaintiffs' letter in response. (Dkt. #597). For the reasons that follow, B/T Defendants' motion is GRANTED.

To begin, the Court agrees with B/T Defendants that the scheduling order does not contemplate the filing of rebuttal expert reports with Plaintiffs' reply class certification papers. (*See* Dkt. #578 ¶ 7). B/T Defendants' argument is strengthened by the language in paragraph 8 of the scheduling order, which expressly provides the procedure for "Additional Experts," as in those used for purposes other than class certification. (*Id.* ¶ 8). In this section of the scheduling order, parties are expressly permitted to file "expert reports in reply to opposition reports." (*Id.*).

The Court will also grant B/T Defendants' request for an extension of the class certification briefing schedule. Because B/T Defendants have represented that additional time is needed for their experts to properly respond to the reports of Kenneth Malek and David DeRamus (Dkt. #596 at 2-3), the briefing schedule is hereby modified in accordance with the following:

- Defendants' deadline to depose Plaintiffs' class certification experts is **April 4, 2025;**
- Defendants' opposition to class certification and supporting expert reports are due on or before **May 2, 2025;**
- Plaintiffs' deadline to depose Defendants' class certification experts is **June 6, 2025;** and
- Plaintiffs' reply in support of class certification is due on or before **July 8, 2025.**

The Clerk of Court is directed to terminate the pending motion at docket entry 596.

Dated:     February 18, 2025          SO ORDERED.
           New York, New York

                                      *Katherine Polk Failla*

                                      HON. KATHERINE POLK FAILLA
                                      UNITED STATES DISTRICT JUDGE