UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | No. 19 Civ. 9236 (KPF)<br><br>**FILED UNDER SEAL** |

# THE B/T DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

Michael Jason Lee (*pro hac vice*)
LAW OFFICES OF MICHAEL JASON
LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
(858) 550-9984

Sunjina K. Ahuja (*pro hac vice*)
Christopher J. Beal (*pro hac vice*)
DILLON MILLER, AHUJA & BOSS, LLP
5872 Owens Ave., Suite 200
Carlsbad, California 92008
(858) 587-1800

Maeve L. O'Connor
Michael Schaper
Elliot Greenfield
Natascha Born
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Attorneys for Defendants iFinex Inc., DigFinex Inc., BFXNA Inc., BFXWW Inc., Tether International, S.A. de C.V., Tether Operations, S.A. de C.V., Tether Holdings, S.A. de C.V., Tether Limited, Giancarlo Devasini, and Ludovicus Jan van der Velde*

The B/T Defendants submit this sur-reply memorandum of law to address the new class definitions ("Revised Class Definitions") proposed by Plaintiffs for the first time in their reply memorandum of law (Dkt. No. 624, "Reply").

## ARGUMENT

Contrary to Plaintiffs' assertion that their Revised Class Definitions "moot many of Defendants' objections" (Reply 18), the superficial changes in those definitions do not resolve any of the problems that make class treatment of this lawsuit inappropriate under Rule 23.

As a threshold matter, the Revised Class Definitions do not address: (*i*) Plaintiffs' fundamentally flawed and wholly unreliable common impact model, (*ii*) the inclusion of a substantial number of uninjured putative class members, (*iii*) the predominance of individual issues as to extraterritoriality and reliance, and (*iv*) the lack of a class representative for the Futures Sub-Class. (Opp'n 11-21, 28-29, 35-45, 47-48.)  Plaintiffs do not argue otherwise.

Plaintiffs' unsupported assertion that the Revised Class Definitions address Defendants' arguments as to predominance and class conflicts is incorrect. (Reply 19.)  **First**, the Revised Class Definitions do not address the predominance of individual issues as to economic injury. (Opp'n 21-35.)  As Defendants explained with respect to the original classes, there is no class-wide proof that a particular putative class member was injured – *i.e.*, incurred an economic loss – by any supposed inflation of crypto assets. (*Id.*)  Instead, determining whether each putative class member suffered an injury – a core element of Plaintiffs' claims and the basis of Article III standing – would require a highly individualized, transaction-by-transaction examination of whatever evidence might exist regarding that investor's crypto transactions. (*Id.*)  And that examination must include any and all transactions in the Class Assets, both acquisitions and dispositions, whether purchased or sold for fiat currency or stablecoins, traded for other crypto assets, or otherwise acquired (*e.g.*, gifted, mined, or received in connection with a fork). (*Id.*)

Ultimately, determining the element of injury would require a mini-trial for each putative class member, involving analysis and argument regarding pseudo-anonymous blockchain records, incomplete trade confirmations from exchanges, homemade spreadsheets or notes, contemporaneous emails and other communications, and testimony. (Opp'n 29-35.) Even Plaintiffs, who filed this lawsuit and had document preservation obligations, were unable to produce complete records of their crypto transactions. (Opp'n 33-35.)

Limiting the proposed Class to those who purchased Class Assets "with fiat currency or stablecoins" and eliminating the phrase "or otherwise acquired" do nothing to resolve this core problem. (Reply 19.) The *only* impact of that change would be to exclude investors who *never* purchased Class Assets with fiat currency or stablecoins during the proposed class period. For all remaining putative class members, however, determining whether a particular investor was better or worse off economically as a result of supposed inflation would still require examination of *all* of that investor's crypto transactions – including crypto-for-crypto transactions and crypto acquired by gift, mining, or otherwise. (Opp'n 21-35.) Furthermore, even determining whether a Class Asset was acquired in exchange for "fiat currency or stablecoins" would require a highly factual inquiry if, for example, the Class Asset was acquired via a blockchain transaction, as blockchain records simply record a transfer of a crypto asset from one address to another and include no information regarding what, if anything, was sent in exchange. (Opp'n 30.)

***Second***, the Revised Class Definition does not resolve the class conflicts that arise from putative class members' trades of Class Assets for other Class Assets. Plaintiffs claim that the prices of all Class Assets were inflated by different amounts. (Opp'n 26-27.) Consequently, as Plaintiffs tacitly admit, trades of one Class Asset for another necessarily give rise to irreconcilable class conflicts because they involve putative class members trading against each

other. (Opp'n 45-46.) Each party will want to show that they acquired the more inflated asset and disposed of the less inflated asset, in direct conflict with each other. (*Id.*) The Revised Class Definition does not eliminate those conflicts because, as discussed above, determining whether a particular putative class member suffered an economic loss would require examination of *all* of that investor's crypto transactions – including trades of one Class Asset for another. For example, an investor might have engaged in purchases and sales of bitcoin for U.S. dollars, and also traded bitcoin for ether. Or an investor might have purchased bitcoin for U.S. dollars, later traded it for ether, and then sold the ether for U.S. dollars. The combinations and permutations are endless, and the class conflicts inherent in Plaintiffs' theory cannot be avoided.

Intra-class conflicts also exist, as to both the Class and Futures Sub-Class, because Plaintiffs advance four different proposals for estimating the degree to which USDT was supposedly "debased" or "unbacked," combined with two different models of the purported bitcoin price "overcharge." (Opp'n 46.) Each of those eight inconsistent and contradictory approaches leaves some putative class members better off at the expense of others, including Plaintiffs themselves. (Opp'n 46-47.) That makes sense because, under a theory of bitcoin price inflation, economic loss depends on the *relative* inflation at acquisition and disposition. Thus, although a putative class member would "prefer higher inflation" at the time of acquisition (Reply 19), that putative class member would prefer lower inflation at the time of disposition. And, contrary to Plaintiffs' assertion, this intra-class conflict applies equally to the Futures Sub-Class, as DeRamus acknowledges that the price of a futures contract "is related to the price of the underlying asset (also referred as the spot price)." (Reply 19; DeRamus Rep. ¶ 72.) Neither of the Revised Class Definitions resolves these intra-class conflicts.

## CONCLUSION

The Court should deny Plaintiffs' Amended Motion for Class Certification.

3

Dated: New York, New York
       August 15, 2025

DEBEVOISE & PLIMPTON LLP

/s/ *Elliot Greenfield*

Maeve L. O'Connor
Elliot Greenfield
Natascha Born
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*moconnor@debevoise.com*
*egreenfield@debevoise.com*
*nborn@debevoise.com*

Michael Jason Lee (*pro hac vice*)
LAW OFFICES OF MICHAEL JASON LEE, APLC
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
(858) 550-9984
*michael@mjllaw.com*

Sunjina K. Ahuja (*pro hac vice*)
Christopher J. Beal (*pro hac vice*)
DILLON MILLER, AHUJA & BOSS, LLP
5872 Owens Ave., Suite 200
Carlsbad, California 92008
(858) 587-1800
*sahuja@dmablaw.com*
*cbeal@dmablaw.com*

*Attorneys for Defendants iFinex Inc., DigFinex Inc., BFXNA Inc., BFXWW Inc., Tether International, S.A. de C.V., Tether Operations, S.A. de C.V., Tether Holdings, S.A. de C.V., Tether Limited, Giancarlo Devasini, and Ludovicus Jan van der Velde*