Selendy|Gay

 SCHNEIDER² WALLACE COTTRELL KIM LLP

June 2, 2026

**Via ECF and E-mail**
The Honorable Katherine Polk Failla
U.S. District Court, Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   ***In re Tether and Bitfinex Crypto Asset Litigation**, 19 Civ. 9236 (KPF)*

Dear Judge Failla:

On behalf of Plaintiffs and the Classes, we request a pre-motion conference under the Court's Individual Rule 4.A. Defendant Giancarlo Devasini knowingly destroyed irreplaceable evidence going to whether USDT was fully backed. To remedy that spoliation, Plaintiffs wish to move for an adverse inference and preclusion of evidence.[1] Defendants do not consent.

Whether "each USDT was backed by a U.S. dollar in Tether's bank account," Dkt. 561 at 4, and "how Tether's USDT reserves were structured," *id.* at 18, are central issues in this case. The evidence shows that each USDT was not backed one to one by U.S. dollars in Tether's bank accounts. Ex. A at 7-8. Defendants contend this does not matter because Bitfinex held funds backing obligations it owed Tether, which Tether considered receivables and Bitfinex considered payables. *Id.* at 8-9; Ex. B at 83:17-84:19. Plaintiffs disagree with that assertion and have sought to test it through discovery of payables, receivables, and financial records. They moved to compel production of such materials five times. *See* Dkts. 239, 328, 425, 456, 462.

Defendants long avoided answering whether they had records showing that Bitfinex could back its payables to Tether during the Class Period. *See, e.g.*, Ex. C at 3 (refusing to provide information on Bitfinex accounts because "no Bitfinex account ever held USDT reserves"—while maintaining that Tether's receivables from Bitfinex were USDT reserves). Toward the end of discovery, Defendants admitted that Bitfinex (1) commingled customer funds, Bitfinex's own funds, and funds held to repay loans to Tether in "omnibus" accounts, Ex. D at 44:11-46:7; (2) kept no historical records of its total assets and liabilities, *id.* at 46:10-48:21; and (3) could not "recreate historical records" of the same "'at all points' during the [Class Period]," Ex. E at 123.

When deposed, Devasini testified that while accepting receivables comes with a risk that they will not be paid, Ex. D at 41:3-16, Defendants "███████████████████████████" the payables it owed to Tether, *id.* at 40:25-41:2, because "█████████████████████████████████████████," *id.* at 41:17-23. Devasini testified that he "████████████████████████████████████████" during the Class Period in a paper

---

[1] This request is timely. *See Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2023 WL 5154416, at *5 (S.D.N.Y. Aug. 10, 2023) (Failla, J.) (spoliation decided on summary judgment); *Smith v. Interstate Mgmt. Co. LLC*, 2022 WL 4537947, at *14 (S.D.N.Y. Sep. 28, 2022) (Failla, J.) (same).

notebook.[2] Ex. D at 41:25-42:20; 43:9-25. Devasini testified that he likely threw away his note-book after 2020, *id.* at 52:23-53:17, and Defendants later confirmed that Devasini could not find the notebook and it was likely "████████████████████████."[3] Dkt. 473-6 at 1.

Devasini also testified that he checked to see whether Bitfinex had sufficient U.S. dollars to cover the USDT that it received from Tether, Ex. D at 73:24-18, by looking at Bitfinex's omnibus accounts and deducting the amount of customer assets, *id.* at 74:19-75:3. But he confirmed that Defendants have no historical records of which funds were proprietary funds and which were customer funds, *id.* at 48:9-21, and no records ████████████████████████ ████████████████████" *id.* at 78:20-25. After discovery closed, Devasini submitted a declaration supporting Defendants' class certification filings, in which he asserted that, during the Class Period, he "confirm[ed] in real time that Bitfinex always held sufficient U.S. dollars … to pay the amounts owed to Tether for USDT issuances." Dkt. 644-4 ¶ 21; *see id.* ¶ 25. Per his testimony, the only contemporaneous written evidence of Devasini tracking the amounts that Bitfinex promised to pay Tether was the notebook that he threw away.[4]

Second Circuit law warrants sanctions for Devasini's spoliation of his notebook. Sanctions for destruction of physical evidence are proper if (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed;" (2) "the records were destroyed with a culpable state of mind;" and (3) "the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (cleaned up), *superseded as to ESI by* Fed. R. Civ. P. 37(e) (2015); *see Hoffer v. Tellone*, 128 F.4th 433, 439 (2d Cir. 2025) (*Residential* still applies to "loss of non-electronic evidence.").

On the first prong, Devasini had a clear preservation obligation. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed." *Ahamed v. 563 Manhattan Inc.*, 2024 WL 3061942, at *5 (E.D.N.Y. Mar. 29, 2024) ("*Ahamed I*") (cleaned up) (collecting Second Circuit cases), *modified*, 2024 WL 3061962 (E.D.N.Y. June 17, 2024) ("*Ahamed II*"). Devasini's duty to preserve arose, at latest, when Plaintiffs sued in October 2019. He threw away his notebook after 2020.

---

[2] Devasini testified that he tracked ████████████████████. Ex. D at 50:17-52:14. Defendants "████████████," deemed it "████████████," and ████████████████████. Dkt. 473-6 at 1. Other than ████████████████████, Devasini could name no method Bitfinex used to record its financial information during the Class Period. Ex. D at 57:12-19.

[3] Devasini moved out of Lugano, Switzerland in June 2023. Enrico Kampmann, *Geld für Gelati, Terror und Drogen*, WOZ (Apr. 17, 2025) [https://perma.cc/3TBM-T8JC]; Davide Illarietti, *Lo «sconosciuto» più ricco del Ticino*, Corriere del Ticino (Apr. 28, 2024) [https://perma.cc/9D9P-H5CN]. This was well after Plaintiffs noticed his deposition on May 25, 2023. Ex. F.

[4] When Plaintiffs, per the Court's Individual Rule 4.A, asked for Defendants' position, Defendants replied that Plaintiffs had "misstate[d] and mischaracterize[d]" Devasini's testimony. Ex. G at 2. When Plaintiffs asked what they misstated or mischaracterized, Defendants said it was "unclear what information Plaintiffs seek." *Id.* at 1.

On the second prong, Devasini had the requisite state of mind. "[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently," *Residential*, 306 F.3d at 108 (cleaned up); a "case by case approach is appropriate." *Creighton v. City of New York*, 2017 WL 636415, at *19 (S.D.N.Y. Feb. 14, 2017) (cleaned up). Devasini tracked the amounts Bitfinex owed to Tether—which he asserts that he confirmed Bitfinex could cover from its proprietary U.S. dollar assets—in the notebook he destroyed. As Devasini acted after "the duty to preserve attache[d]," he was, "at a minimum, negligent," *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); *see Creighton*, 2017 WL 636415, at *19 (same), although his culpability was greater, *see infra*.

On the third prong, the notebook was plainly relevant. "For the purpose of spoliation, 'relevant' means that the evidence must be of the sort that a reasonable jury could find harmful to the spoliator's case." *Port Auth. Police Asian Jade Soc. of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*, 601 F. Supp. 2d 566, 570 (S.D.N.Y. 2009); *see Residential*, 306 F.3d at 109. The notebook was the only contemporaneous evidence of Devasini tracking the amounts that Bitfinex owed to Tether in exchange for USDT and so of his assertions that Bitfinex was "good for the money." *See Residential*, 306 F.3d at 109 (relevance can be shown with "deposition testimony regarding the nature of the missing documents"). This evidence was irreplaceable. *See Mule v. 3D Bldg. & Constr. Mgmt. Corp.*, 2021 WL 2788432, at *14 (E.D.N.Y. July 2, 2021) (party seeking sanctions must show that it "is prejudiced without" the destroyed evidence).

Plaintiffs request two remedies. *First*, the Court should instruct the jury that it must infer the missing notebook would have shown that Bitfinex did not have sufficient unencumbered U.S. dollars to cover the amounts that it owed to Tether. *See, e.g.*, *Ahamed I*, 2024 WL 3061942, at *8 (awarding adverse inference after finding defendant acted with "at least negligence, if not gross negligence"), *modified by Ahamed II*, 2024 WL 3061962, at *5 (reaching same result under "intent to deprive" standard). *Second*, the Court should preclude Defendants from offering any new documents or testimony purporting to reconstruct Bitfinex's ability to cover the amounts it owed to Tether with unencumbered U.S. dollars. These remedies are appropriate where, as here, a party "has deprived the opposing party of key evidence needed to litigate a contested issue." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *11 (S.D.N.Y. June 27, 2017); *see Mule*, 2021 WL 2788432, at *17.

These remedies are especially warranted because Devasini's culpability exceeded mere negligence. *See Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 288 (S.D.N.Y. 2009) ("[T]he severity of the sanctions imposed should be congruent with the destroyer's degree of culpability."). Devasini discarded his notebook well after suit was filed, knowing it was the only contemporaneous written record of Bitfinex's historical liabilities to Tether. Knowingly discarding this evidence, after the duty to preserve attached, supports an inference of intent—especially because "intentionality with respect to the spoliation of evidence" does not require "a showing of malice." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 506 (S.D.N.Y. 2013) (ESI destroyed "willfully" when deleted on direct employee request despite a "good faith explanation"); *see Residential*, 306 F.3d at 108 (sanctions permitted where evidence is "destroyed knowingly, even if without intent to breach a duty to preserve it" (cleaned up)); *see also Mule*, 2021 WL 2788432, at *11 (party's conduct fell "between negligence and gross negligence, closer to the latter than the former," where party discarded damaged documents without consulting counsel).

3

Respectfully submitted,

/s/ Andrew R. Dunlap
Philippe Z. Selendy
Andrew R. Dunlap
Oscar Shine
Laura M. King
SELENDY GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
adunlap@selendygay.com
oshine@selendygay.com
lking@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

*Co-Lead Counsel and Attorneys for Plaintiffs and the Certified Classes*

4