# Exhibit C

**Debevoise**
**&Plimpton**

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

September 26, 2023

BY EMAIL

Philippe Z. Selendy
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com

Todd M. Schneider
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street
Emeryville, CA 94608
tschneider@schneiderwallace.com

**Re:  *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19 Civ. 9236 (KPF) (S.D.N.Y.)**

Dear Counsel:

We write on behalf of the B/T Defendants pursuant to the Court's September 7 Order regarding Plaintiffs' Rule 30(b)(6) notice directed towards the Bitfinex Defendants.

Plaintiffs moved the Court to compel the Bitfinex Defendants to provide Rule 30(b)(6) deposition testimony in connection with Topic 17 of the Bitfinex Notice.  (Dkt. No. 425 at 2.) Specifically, Plaintiffs sought testimony "regarding accounts identified by B/T Defendants as holding amounts Bitfinex Defendants owed to Tether's reserves," and in particular, "(*i*) the periods when such accounts were used, (*ii*) the purpose of assets held in such accounts, and (*iii*) whether such accounts held customer funds, payroll, operating expenses, or other assets used for the operation of the Bitfinex exchange."  (*Id.*)  Plaintiffs claimed that they needed this information "to determine if accounts that B/T Defendants contend held USDT reserves were comingled with other assets."  (*Id.*)

The Court denied Plaintiffs' request for Rule 30(b)(6) deposition testimony, and it instructed the B/T Defendants to "proffer a written response to Topic 17, which response shall either provide the requested information regarding the accounts, or elaborate in greater detail the position of B/T Defendants that Bitfinex accounts did not 'h[o]ld USDT reserves.'"  (Dkt. No. 445.)  The B/T Defendants elaborate below on their position that Bitfinex accounts did not hold USDT reserves.

Philippe Selendy and Todd Schneider                    2                    September 26, 2023

The accounts holding USDT reserves were the subject of Plaintiffs' Interrogatory No. 13, which asked the B/T Defendants to "identify all account(s) holding Reserves from February 17, 2015 to June 5, 2020." (B/T Defendants' Second Amended Responses and Objections to Plaintiffs' Third Set of Interrogatories at 6.)  In response to Interrogatory No. 13, the B/T Defendants provided five appendices identifying more than 700 documents by Bates numbers, as follows:

- Appendix A identified documents showing the accounts that were held by or for Tether at banks or financial institutions and that held Reserves during the Relevant Period;

- Appendix B identified documents showing the USDT loans that Tether extended to borrowers and for which the borrowers' repayment obligation served as Reserves during the Relevant Period, and identifying the collateral for those loans;

- Appendix C identified documents relating to Bitfinex's obligation under the Facility Agreement dated March 19, 2019, which deemed amounts transferred to Bitfinex by Tether as loans drawn against a secured and revolving line of credit, and which served as Reserves during the Relevant Period;

- Appendix D identified statements for Tether's Account No. 342579 on the Bitfinex exchange, which held Reserves during the Relevant Period; and

- Appendix E identified Tether's gold holdings that served as Reserves during the Relevant Period.

(*Id.* at 6-7.)  In addition, the B/T Defendants identified two documents that reflected "receivables that Bitfinex owed to Tether that served as Reserves during the Relevant Period."  (*Id.* at 8.)

Beyond USDT reserves, the B/T Defendants also sought to address Plaintiffs' assertion in their "letter dated February 22, 2023" that "the October 11, 2019 report generated by Berkeley Research Group 'does not identify' the Bitfinex accounts that held amounts sufficient to satisfy and were used to pay the receivables that Bitfinex owed Tether."  (*Id.*)  As an accommodation, the B/T Defendants provided the Bates numbers of documents identifying those Bitfinex accounts.  (*Id.*)  The B/T Defendants' response was clear that "receivables that Bitfinex owed to Tether . . . served as Reserves" – *not* the accounts that Bitfinex ultimately used to pay those amounts to Tether, which the B/T Defendants identified at Plaintiffs' request.  (*Id.*)

This distinction is crucial.  Tether issues the USDT stablecoin and holds reserves for the USDT that it issues.  Typically, Tether's customers paid Tether in U.S. dollars in exchange for an issuance of USDT.  And Bitfinex – like other customers of Tether – paid U.S. dollars to Tether in exchange for USDT.  Tether held those amounts and counted them as USDT reserves – *i.e.*, as the assets backing USDT.

During the Relevant Period of February 17, 2015 through June 5, 2020, there were also instances in which Tether did not immediately receive payment in U.S. dollars for the USDT that it issued to Bitfinex – for example because of banking delays, many of which lasted only a few days. While Bitfinex always repaid Tether in full for the amount of USDT issued to it, in the meantime

Philippe Selendy and Todd Schneider                3                September 26, 2023

the asset that Tether temporarily held and counted as part of its USDT reserves was a "receivable" in the amount of the issued USDT.  A "receivable" is an amount owed to a company, and is accounted for as an *asset* of the company that is owed that payment.  For that reason, as noted above, the B/T Defendants identified in response to Interrogatory No. 13 "receivables that Bitfinex owed to Tether that served as Reserves during the Relevant Period." (*Id.* at 8.)

By contrast, Bitfinex has never issued USDT, and no Bitfinex account ever held USDT reserves.  That Bitfinex, at times, owed money to Tether has no bearing on that fact.  Neither the funds that Bitfinex ultimately used to repay Tether nor the accounts holding those funds served as a component of Tether's USDT reserves.  As discussed above, the asset held by Tether that counted as part of its USDT reserves is the receivable.

Accordingly, there is no basis to conclude that the Bitfinex accounts identified by the B/T Defendants in their response to Interrogatory No. 13 "held USDT reserves" during the Relevant Period.  Moreover, Plaintiffs' stated basis for seeking information regarding Bitfinex's accounts is "to determine if *accounts that B/T Defendants contend held USDT reserves* were comingled with other assets."  (Dkt. No. 425 at 2 (emphasis added).)  As set forth above, the B/T Defendants do *not* contend that Bitfinex's accounts held USDT reserves.

Best regards,

/s/ Elliot Greenfield