Selendy|Gay

SCHNEIDER² WALLACE COTTRELL KIM LLP

September 17, 2026

**Via ECF and E-mail**
The Honorable Katherine Polk Failla
U.S. District Court, Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

**MEMO ENDORSED**

**Re: *In re Tether and Bitfinex Crypto Asset Litigation*, 19 Civ. 9236 (KPF)**

Dear Judge Failla:

We write on behalf of Plaintiffs and the Classes to oppose B/T Defendants' motion to strike, Dkt. 675 ("Mot.").

Rule 26(a)(2)(D)(ii) permits expert reports "intended solely to contradict or rebut evidence on the same subject matter identified by another party." This includes reply reports, which rebut rebuttal reports. *Palatkevich v. Choupak*, 2014 WL 5463371, at *2 (S.D.N.Y. Oct. 22, 2014).

Rule 26 does not "require an expert to anticipate every argument made by an opposing expert or risk preclusion." *S.W. v. City of New York*, 2011 WL 3038776, at *4 (E.D.N.Y. July 25, 2011). Nor are experts limited to "addressing criticisms in [a] rebuttal report by arguing, for example, that they are invalid or irrelevant." *Contra* Mot. 1 (citing nothing). In reply reports, experts may introduce new methodologies, evidence, or data when offered "for the purpose of rebutting or critiquing the opinions of [an opposing] expert witness." *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009); *see also Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) ("[R]ebuttal and reply reports 'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.'").

The paragraphs that B/T Defendants challenge here fall comfortably within this rule. Defendants submitted four rebuttal reports. Dkts. 676-2, 676-3; Exs. A, B. All four respond to Dr. David DeRamus's Opening Report, Dkt. 676-1 ("OR"). DeRamus's Reply Report, Dkt. 676 ("RR"), defends his opening by rebutting Defendants' experts:

- In opening, DeRamus opined that Defendants increased cryptocommodity prices, OR ¶ 30, undermined a defining feature of USDT by not fully backing it with USD, *id.* ¶¶ 172-73, 318-20, and exerted centralized control over cryptocommodity prices even though investors sought decentralization, *id.* ¶¶ 132-33, 151. Dr. Justin McCrary responded that price increases alone do not show harm to competition. Dkt. 676-2 §§ 3.4, 4.3. DeRamus replied by highlighting that, even under McCrary's view, Defendants harmed competition by degrading product quality, RR ¶¶ 15, 251-52, and interfering with the "competitive process of price formation" for cryptocommodities, *id.* ¶¶ 11, 14, 178.

- In opening, DeRamus opined that cryptocommodities constitute a relevant product market, OR ¶¶ 124-49, and non-BTC Class Cryptocommodity prices and returns closely tracked BTC's, *id.* ¶ 481. McCrary and Dr. Stephen McKeon responded that his market analysis was flawed because cryptocommodities, other digital tokens, fiat, and physical assets are substitutes, Ex. B ¶ 39; Dkt. 676-2 ¶¶ 110, 112, and lacked empirical support, Ex. B § III;

Dkt. 676-2 § 5.2. In reply, DeRamus showed that cryptocommodities and these other assets were *not* substitutes, including through swap and price analyses, RR ¶¶ 163-65, and confirmed that his correlation analysis was sound by performing an additional study tracking trading volumes, *id.* ¶ 151.

- In opening, DeRamus did not define a "stablecoin market" as the relevant product market because his analysis does not require one. In rebuttal, McCrary speculated that DeRamus offered a monopoly leveraging theory that required such a market. Dkt. 676-2 ¶¶ 48-49. In reply, DeRamus explained that he did not offer that theory, but noted that his Opening Report had sufficient analysis to define a stablecoin market, OR ¶ 154, "if the fact finder need[ed]" to determine whether it was a relevant market. RR ¶¶ 12, 174, 176-77.

- In opening, DeRamus conducted an event study showing that USDT issuances caused price inflation on U.S.-based exchanges. OR ¶¶ 422-36. In rebuttal, Dr. Terrence Hendershott criticized him for (1) not analyzing global BTC prices or certain additional exchanges, Dkt. 676-3 ¶¶ 64-69, (2) relying on correlated returns, *id.* ¶¶ 73, 80-84, and (3) not showing that larger USDT issuances caused correspondingly larger increases in cryptocommodity prices, *id.* ¶¶ 106-11. In reply, DeRamus showed that (1) USDT issuances increased BTC prices on all relevant exchanges, including Hendershott's, RR ¶¶ 670-78, figs. 37-39; (2) he properly relied on correlated returns because his statistical tests accounted for the correlation and the average price impact of USDT issuances over the 12 hours after issuance was statistically significant, contra Hendershott, *id.* ¶ 702, fig. 46; and (3) larger issuances were, in fact, associated with greater price increases, *id.* ¶¶ 719-23, figs. 53-54.

- In opening, DeRamus showed that the prices and returns of non-BTC Class Cryptocommodities generally followed those of BTC. OR ¶¶ 481-82, 491-96, figs. 85-86, 88-89. Hendershott faulted DeRamus for not analyzing whether USDT issuances caused prices of those assets to increase and purported to show that they did not, Dkt. 676-3 § VIII.A, and he criticized DeRamus's extrapolation of BTC overcharges to other Class Cryptocommodities, *id.* § VIII.B. DeRamus replied with a pooled regression showing that USDT issuances did increase prices of non-BTC Class assets, RR ¶¶ 809-12, fig. 62, and an empirical analysis showing those prices were more volatile than BTC prices, *id.* ¶¶ 813-15, fig. 64.

- In opening, DeRamus showed that the Quantity Theory of Money supports his theory that increases in USDT supply caused higher cryptocommodity prices. OR ¶¶ 398-410, 460. Hendershott responded that changes in USDT supply could have been offset by changes in its velocity. Dkt. 676-3 § IV.B.4. DeRamus disproved this speculation in reply by showing that USDT velocity was stable over the relevant period while USDT supply increased. RR ¶¶ 639-42, 851, fig. 34.

- In opening, DeRamus showed that the AT accounted for large increases in USDT inflows to and trading volumes on Poloniex and Bittrex, OR ¶¶ 118-21, 420-21, increasing cryptocommodity prices, *id.* ¶¶ 432-35, fig. 70. In rebuttal, Hendershott asserted that DeRamus had not explained how those USDT flows increased prices. Dkt. 676-3 ¶ 116. DeRamus replied that he had, RR ¶ 633, and he confirmed those conclusions by applying an article he cited in opening, *see* OR ¶ 257 n.563, to the AT's increased USDT-related trading volumes, confirming his conclusions and associating the AT with a 13%-16% increase in BTC

prices on Poloniex and Bittrex. RR ¶¶ 664-66.

The other statements B/T Defendants challenge (Mot. 3) also properly rebut their experts. *See* RR ¶¶ 541-50 (analyzing market value discount, in response to Ex. A § V.F); *id.* ¶¶ 385, 416, 612 (citing Jump Trading's withdrawals from Bitfinex, in response to Ex. A ¶¶ 212-13); *id.* ¶ 390 (discussing Philip Potter's margin funding, in response to Ex. A ¶¶ 216-21); *id.* ¶ 602 (quantifying gross purchases by B/T accounts, in response to Ex. A § VIII.A); *id.* ¶ 455 (citing data file on credit extended to the Bitfinex "reserve account," in response to Ex. A § VIII.B); *id.* ¶ 458 (analyzing file on USD deposits in Bitfinex accounts, in response to Ex. A ¶¶ 299-300); *id.* ¶¶ 467-68, figs. 18-22 (analyzing cumulative net proceeds for B/T accounts, in response to Ex. A fig. 30).

Even if portions of DeRamus's Reply Report somehow fell outside Rule 26(a)(2)(D)(ii) (and none do), the Court should not strike them. "Exclusion of expert testimony is a drastic remedy[,] … even when there has not been strict compliance with Rule 26," *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003) (cleaned up), warranted only if the submission was not "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Of the four factors that guide this Court's discretion under Rule 37(c)(1), *FIH, LLC v. Found. Cap. Partners LLC*, 920 F.3d 134, 145 (2d Cir. 2019), three strongly weigh against excluding any of DeRamus's testimony: (1) "the party's explanation for the failure to comply with the disclosure requirement," *id.*, favors Plaintiffs, as DeRamus's opinions are "directly targeted to rebut" nearly 400 pages of criticisms from four experts, *Crowley v. Chait*, 322 F. Supp. 2d 530, 552 (D.N.J. 2004); (2) "the importance of the testimony of the precluded witnesses," *FIH*, 920 F.3d at 145, also favors Plaintiffs, as DeRamus's testimony directly responds to Defendants' experts on issues at the core of this complicated case; and (3) "the possibility of a continuance" further favors Plaintiffs, *id.*, as B/T Defendants ask for one in their alternative request for sur-reply reports. Mot. 3. As for the remaining factor, there is no "prejudice" to B/T Defendants "as a result of having to prepare to meet the new testimony," *FIH*, 920 F.3d at 145, because they can depose DeRamus about his reply opinions and challenge them through *Daubert* motions. *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, 2021 WL 1405185, at *3, *6 (S.D.N.Y. Apr. 14, 2021). This case is nothing like B/T Defendants', in which experts proposed new reports after they had been deposed.[1]

In sum, DeRamus replied properly to B/T Defendants' critiques of his opening opinions. There is no "sandbagging," as B/T Defendants will have a full opportunity to address the merits of his views. *Contra* Mot. 1. And the only "gamesmanship" here is B/T Defendants' gambit to avoid having to confront those views by moving to strike them on spurious grounds. *Contra id.*

The Court should deny B/T Defendants' motion.

[1] In *Grajeda v. Vail Resorts, Inc.*, expert discovery had closed, the expert had been deposed, and summary judgment had been denied. 2023 WL 4803755, at *3, *7 (D. Vt. July 27, 2023). In *Ebbert v. Nassau County*, expert discovery had closed and summary judgment was fully briefed. 2008 WL 4443238, at *13-14 (E.D.N.Y. Sep. 26, 2008). In *Brink's Global Services USA, Inc. v. Bonita Pearl Inc.*, the expert disclosure deadline had been extended twice, experts had been deposed, and dispositive motions were pending. 2024 WL 4227760, at *2-3, *7, *12 (S.D.N.Y. Sep. 18, 2024). And in *Lidle v. Cirrus Design Corp.*, expert reply reports were not permitted, the proposed reply report was five times longer than the opening report, the opining expert had already been deposed, and the plaintiffs had two other experts on the same subject. 2009 WL 4907201, at *4, *7 (S.D.N.Y. Dec. 18, 2009).

Respectfully submitted,

/s/ Andrew R. Dunlap
Philippe Z. Selendy
Andrew R. Dunlap
Oscar Shine
Laura M. King
SELENDY GAY PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
adunlap@selendygay.com
oshine@selendygay.com
lking@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

*Co-Lead Counsel and Attorneys for Plaintiffs and the Certified Classes*

The Court has reviewed (i) Defendants' application to strike portions of David W. DeRamus's expert reply report or, in the alternative, to seek leave to file a sur-reply (Dkt. #675-76), and (ii) Plaintiffs' opposition thereto (Dkt. #680-81). By way of background, Plaintiffs' expert DeRamus submitted a 368-page opening expert report on April 23, 2026; Defendants' expert Justin McCrary and Terrence Hendershott submitted two separate expert opposition reports on June 23, 2026, totaling 101 and 162 pages, respectively; and DeRamus submitted a 367-page expert reply report on August 24, 2026.

When the Court allowed Plaintiffs to file an expert reply report to Defendants' expert opposition reports, the Court never imagined that such a reply would exceed the length of Defendants' combined opposition, or that it would (as alleged) raise new methodologies not mentioned in Plaintiffs' opening report. Unfortunately, the Court cannot go back in time. But the Court also cannot say at this point that Plaintiffs' expert reply is improperly breaking new ground beyond the scope of Defendants' expert opposition.

Given these facts, the Court will allow Defendants to file one sur-reply report, but, having been burned by the parties in the past, the Court is constrained to specify a page limit of 75 pages with normal typeface conventions. Of course, Defendants should not feel compelled to use all 75 pages if fewer suffice. The sur-reply is limited to responding to any allegedly new methodologies or arguments made in Plaintiffs' expert reply report.

Defendants shall file their sur-reply on or before **November 17, 2026.** Consistent with this new deadline, expert discovery currently set to close on November 23, 2026 is hereby EXTENDED to close on **January 22, 2027.**

The Clerk of Court is directed to terminate the pending motion at docket entry 675.

Dated: September 18, 2026
New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE